1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2  MICHELLE LO (NYRN 4325163)
   Chief, Civil Division
3  KENNETH BRAKEBILL (CABN 196696)
   Assistant United States Attorney
4        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
5        Telephone: (415) 436-7167
         Facsimile: (415) 436-7169
6        Kenneth.Brakebill@usdoj.gov

7  Attorneys for the United States of America

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                          OAKLAND DIVISION
11

12  WILBUR P.G., et al.,              )  CASE NO. 4:21-cv-4457-KAW
                                      )
13              Plaintiffs,           )  **NOTICE OF MOTION AND MOTION TO**
                                      )  **TRANSFER; MOTION TO DISMISS**
14         v.                         )  **PLAINTIFFS' COMPLAINT**
                                      )
15  UNITED STATES OF AMERICA,         )  Date:    March 3, 2022
                                      )  Time:    1:30 p.m.
16              Defendant.            )  Place:   Remote via Videoconference or Zoom
                                      )
17                                       The Hon. Kandis A. Westmore
    _____
18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................ I

RELIEF REQUESTED ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND LEGAL BACKGROUND .......................................................... 2

    A.     Statutory Framework for Noncitizens Entering the Country. ............................. 2

    B.     Statutory Framework for Immigration Custody Relating to Unaccompanied
        Minors. ................................................................................................................ 3

    C.     Flores Agreement Requirements ......................................................................... 4

    D.     Executive Branch Directives Regarding Immigration Enforcement. .................. 5

    E.     Detention, Separation and Reunification of Plaintiffs. ....................................... 6

        1.     Plaintiff Family One: Wilbur P.G. and WBPE. ...................................... 6

        2.     Plaintiff Family Two: Erendira C.M. and YAMC. .................................. 7

        3.     Plaintiff Family Three: Joshua G.G. and KLGG. ................................... 8

    F.     Plaintiffs' Complaint ........................................................................................... 8

    G.     Subsequent Policy Changes. ............................................................................... 9

III.   LEGAL STANDARDS .......................................................................................... 9

    A.     Transfer Under 28 U.S.C. § 1404(a). .................................................................. 9

    B.     Dismissal for Lack of Subject Matter Jurisdiction. .......................................... 10

IV.    ARGUMENT ........................................................................................................ 11

    A.     The Court Should Transfer This Action to the District of Arizona. .................. 11

        1.     Venue Is Proper in the District of Arizona. .......................................... 12

        2.     The Balance of Relevant Factors Strongly Favors Transfer to the
            District of Arizona. ............................................................................... 12

            (a)     Most Operative Facts Alleged in Plaintiffs' Complaint
                Occurred in Arizona. ................................................................ 12

            (b)     The Convenience and Interests of the Parties Favor Transfer to
                the District of Arizona. ............................................................. 13

            (c)     The District of Arizona Has a Greater Local Interest in this
                Matter. ...................................................................................... 16

B.    In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction. ..................................................................................17

1.    Plaintiffs' Claims Are Barred By the Discretionary Function Exception. ....................................................................................................17

(a)    Legal Standard for Discretionary Function Exception Analysis. ..............17

(b)    The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations..........................................20

(c)    Plaintiffs' Remaining Claims Concerning their Detentions Are Barred by DFE. ..............................................................................22

(d)    Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of DFE in this Case. ................................................24

2.    Plaintiffs' Claims Relating to the Decision to Detain Them Separately From Their Children Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law. ...............................................................25

3.    Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue. ..................................................................................................27

4.    Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims. ......................................................................................................28

V.    CONCLUSION.....................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*A.P.F. v. United States*,
    492 F. Supp. 3d 989 (D. Ariz. 2020) ...................................................................... 25, 26, 28

*Accardi v. United States*,
    435 F.2d 1239 (3d Cir. 1970) ............................................................................................ 26

*Adams v. United States*,
    420 F.3d 1049 (9th Cir. 2005) .......................................................................................... 28

*Amazon.com v. Cendant Corp.*,
    404 F. Supp. 2d 1256 (W.D. Wash. 2005) ........................................................................ 16

*Antonelli v. Crow*,
    No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ............................................... 23

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*,
    571 U.S. 49 (2013) ........................................................................................................... 10

*Bailor v. Salvation Army,*
    51 F.3d 678 (7th Cir. 1995) .............................................................................................. 21

*Barroca v. United States*,
    No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ................................. 12, 13, 14

*Barton v. Barr*,
    140 S. Ct. 1442 (2020) .................................................................................................... 2, 3

*Bender v. Williamsport Area School Dist.*,
    475 U.S. 534 (1986) ......................................................................................................... 11

*Berkovitz v. United States*,
    486 U.S. 531 (1988) .................................................................................................... 18, 22

*Bhuiyan v. United States*,
    772 F. App'x 564 (9th Cir. 2019) ...................................................................................... 27

*Borquez v. United States*,
    773 F.2d 1050 (9th Cir. 1985) .......................................................................................... 26

*Bromlow v. D & M Carriers, LLC*,
    438 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................................................ 10

*Bultema v. United States*,
    359 F.3d 379 (6th Cir. 2004) ............................................................................ 23

*Bunikyte v. Chertoff*,
    No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................. 5, 21

*Bunker v. Union Pac. R.R. Co.*,
    No. 05-cv-04059-JW, 2006 WL 193856 (N.D. Cal. Jan. 23, 2006) ..................... 14

*C.M. v. United States*,
    No. CV-19-5217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020).................... 25, 28

*Campos v. United States*,
    888 F.3d 724 (5th Cir. 2018) ............................................................................ 23

*Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*,
    No. 17-cv-6491, 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ......................... 16

*Center for Biological Diversity v. Kempthorne*,
    No. 08-cv-1339-CW, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) ................... 10

*Chadd v. United States*,
    794 F.3d 1104 (9th Cir. 2015) ...................................................................... 18, 19

*Chen v. United States*,
    854 F.2d 622 (2d Cir. 1988).............................................................................. 27

*Clark v. Suarez Martinez*,
    543 U.S. 371 (2005).......................................................................................... 20

*Cohen v. United States*,
    151 F.3d 1338 (11th Cir. 1998) ........................................................................ 21

*Comm. Of Cent. Am. Refugees v. I.N.S.*,
    795 F.2d 1434 (9th Cir. 1986) .......................................................................... 20

*Commodity Futures Trading Comm'n v. Savage*,
    611 F.2d 270 (9th Cir.1979) ............................................................................. 10

*Conrad v. United States*,
    447 F.3d 760 (9th Cir. 2006) ............................................................................ 14

*Cosby v. Marshals Service*,
    520 F. App'x 819 (11th Cir. 2013) .................................................................... 23

*D.B. v. Cardall*,
    826 F.3d 721 (4th Cir. 2016) ............................................................................ 26

*Dalehite v. United States*,
    346 U.S. 15 (1953) ............................................................................................. 26

*Denson v. United States*,
    574 F.3d 1318 (11th Cir. 2009) ......................................................................... 25

*Dreier v. United States*,
    106 F.3d 844 (9th Cir. 1997) ............................................................................. 11

*Dupree v. United States*,
    247 F.2d 819 (3d Cir. 1957) .............................................................................. 26

*Elgamal v. Bernacke*,
    714 F. App'x 741 (9th Cir. 2018) ...................................................................... 27

*Elgamal v. United States*,
    No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) .............................. 27

*Est. of Smith v. Shartle*,
    No. cv-18-00323-TUC-RCC, 2020 WL 1158552, *2 (D. Ariz. Mar. 10, 2020) .................... 28

*Fazaga v. Fed. Bureau of Investigation*,
    916 F.3d 1202 (9th Cir. 2019) ........................................................................... 24

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
    592 F.2d 364 (7th Cir. 1979) ............................................................................. 26

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ..................................................................................... 11, 17

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ...................................................................... 4, 5, 21

*Flores v. Rosen*,
    984 F.3d 720 (9th Cir. 2020) ............................................................................... 4

*Gandarillas-Zambrana v. BIA*,
    44 F.3d 1251 (4th Cir. 1995) ............................................................................. 20

*Garza v. United States*,
    161 F. App'x 341 (5th Cir. 2005) ...................................................................... 24

*GATX/Airlog Co. v. United States,*
    286 F.3d 1168 (9th Cir. 2002) ........................................................................... 18

*Gaubert v. United States*,
    499 U.S. 315 (1991) ..................................................................... 18, 19, 24, 25

*Gonzalez v. United States*,
    814 F.3d 1022 (9th Cir. 2016) ..................................................................... 17, 18, 19, 22

*Hansen v. Combined Transp., Inc.*,
    No. 13-cv-1298, 2013 WL 5969863 (W.D. Wash. Nov. 7, 2013)................................. 14, 16

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952)........................................................................................... 21

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)........................................................................................... 25

*Harrison v. Fed. Bureau of Prisons*,
    464 F. Supp. 2d 552 (E.D. Va. 2006) .................................................................. 23

*Hernandez v. United States*,
    83 F. App'x. 206 (9th Cir. 2003) ........................................................................ 21

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ............................................................................. 20

*J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ............................................................................. 24

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ............................................................................. 10

*Kelly v. United States*,
    241 F.3d 755 (9th Cir. 2001) ............................................................................. 18

*Kennewick Irr. Dist. v. United States*,
    880 F.2d 1018 (9th Cir. 1989) ........................................................................... 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)..................................................................................... 10, 11

*Koval v. United States*,
    No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) ....................... 12

*Lam v. United States*,
    979 F.3d 665 (9th Cir. 2020) ..................................................................... 18, 19, 22

*Lee v. United States*,
    No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .......... 28, 29

*Lehman v. Nakshian*,
    453 U.S. 156 (1981)........................................................................................... 17

*Lineberry v. United States*,
    No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009)..........................................23

*Lipsey v. United States*,
    879 F.3d 249 (7th Cir. 2018) ....................................................................................................21

*Mejia-Mejia v. ICE*,
    No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019) ...............................22

*Miller v. United States*,
    163 F.3d 591 (9th Cir. 1998) ....................................................................................................19

*Mirmehdi v. United States*,
    662 F.3d 1073 (9th Cir. 2011) ..................................................................................................21

*Ms. L v. ICE*,
    302 F. Supp. 3d 1149 (C.D. Cal. 2018) ...................................................................................25

*Nordquist v. Blackham*,
    No. C06-5433 FDB, 2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) .........................15, 16

*Nunez Euceda v. United States*,
    No. 2:20-cv-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021)................................25, 26

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) .......................................................................................17, 19, 24

*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 .......................................................................................................14, 15

*Patel v. United States*,
    398 F. App'x 22 (5th Cir. 2010) ..............................................................................................23

*Payne-Barahona v. Gonzalez*,
    474 F.3d 1 (1st Cir. 2007)..................................................................................................25, 26

*Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ..................................................................21, 22, 23, 24

*Powell v. United States*,
    233 F.2d 851 (10th Cir. 1956) ..................................................................................................26

*Reed ex rel. Allen v. U.S. Dep't of Interior*,
    231 F.3d 501 (9th Cir. 2000) ....................................................................................................18

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999).................................................................................................................20

*Reyna as next friend of J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ................................................................ 24

*Reynolds v. United States*,
    549 F.3d 1108 (7th Cir. 2008) ............................................................. 19

*Robinson v. United States*,
    586 F.3d 683 (9th Cir. 2009) ............................................................... 11

*Routh v. United States*,
    941 F.2d 853 (9th Cir. 1991) ............................................................... 19

*Sabow v. United States*,
    93 F.3d 1445 (9th Cir. 1996) ............................................................... 18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ............................................................. 11

*Santana-Rosa v. United States*,
    335 F.3d 39 (1st Cir. 2003) ................................................................. 21

*Sasso v. Milhollan*,
    735 F. Supp. 1045 (S.D. Fla. 1990) ..................................................... 20

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*,
    343 F.3d 1036 (9th Cir. 2003) ............................................................. 10

*Sickman v. United States*,
    184 F.2d 616 (7th Cir. 1950) ............................................................... 26

*Sierra Club v. Whitman*,
    268 F.3d 898 (9th Cir. 2001) ............................................................... 11

*Sloan v. H.U.D.*,
    236 F.3d 756 (D.C. Cir. 2001) ............................................................. 23

*Smith v. Corizon Health, Inc.*,
    No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ............... 10

*Smith v. United States*,
    375 F.2d 243 (5th Cir. 1967) ............................................................... 20

*Steel v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................. 10

*Teplin v. United States*,
    No. 17-CV-02445-HSG, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) ....... 18, 19

*Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.,*
   594 F.2d 730 (9th Cir. 1979) .................................................................................................. 11

*United States v. Armstrong,*
   517 U.S. 456 (1996)............................................................................................................... 20

*United States v. Dominguez-Portillo,*
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018).................................... 4, 5, 21

*United States v. Lopez-Flores,*
   63 F.3d 1468 (9th Cir. 1995) .................................................................................................. 21

*United States v. Nixon,*
   418 U.S. 683 (1974)............................................................................................................... 20

*United States v. Olson,*
   546 U.S. 43 (2005)................................................................................................................. 27

*United States v. Testan,*
   424 U.S. 392 (1976)............................................................................................................... 17

*United States v. Varig Airlines,*
   467 U.S. 797 (1984)......................................................................................................... 19, 22

*Valdez v. United States,*
   56 F.3d 1177 (9th Cir. 1995) .................................................................................................. 28

*Van Dinh v. Reno,*
   197 F.3d 427 (10th Cir. 1999) ................................................................................................ 21

*W.S.R. v. Sessions,*
   318 F. Supp. 3d 1116 (N.D. Ill. 2018) ................................................................................... 24

*Westbay Steel, Inc. v. United States,*
   970 F.2d 648 (9th Cir. 1992) .................................................................................................. 27

*Whisnant v. United States,*
   400 F.3d 1177 (9th Cir. 2005) ................................................................................................ 19

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ................................................................................................ 11

## **Statutes**

6 U.S.C. § 279(2)(B).................................................................................................................... 4

6 U.S.C. § 279(a) ......................................................................................................................... 3

6 U.S.C. § 279(g)(2) ........................................................................................................... 3

8 U.S.C. §§ 1182(d)(5) ........................................................................................................ 3

8 U.S.C. § 1225(a)(1) ........................................................................................................... 3

8 U.S.C. § 1225(a)(3) ........................................................................................................... 3

8 U.S.C. § 1225(b) ............................................................................................................... 3

8 U.S.C. § 1231(g)(1) ......................................................................................................... 20

8 U.S.C. § 1232(b)(1) ....................................................................................................... 3, 4

8 U.S.C. § 1232(b)(3) ................................................................................................... 3, 4, 26

8 U.S.C § 1325 ............................................................................................................. 5, 6, 7

8 U.S.C § 1325(a) ............................................................................................................ 2, 3

8 U.S.C § 1325(a)(1) ............................................................................................................ 7

28 U.S.C. § 1346(b)(1) ............................................................................................ 8, 9, 17, 27

28 U.S.C. § 1402(b) ......................................................................................................... 9, 12

28 U.S.C. § 1404(a) ..................................................................................................... passim

28 U.S.C. § 2674 ................................................................................................................ 27

28 U.S.C. § 2680 ................................................................................................ 17, 18, 19, 25

Arizona Revised Statutes § 46-455 ...................................................................................... 28

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................... 10, 11

**Other Authorities**

Attorney General Announces Zero-Tolerance Policy for Criminal Illegal
    Entry, (April 6, 2018), DOJ 18-417, 2018 WL 1666622 ............................................... 5

*Establishment of Interagency Task Force on the Reunification of Families*,
   Exec. Order 14,011 , § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021) ................................................. 1, 17

Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017)..................................................... 5, 6, 7, 8

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.  ........................................................ 20, 26

U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration
   Enforcement (April 11, 2017)............................................................................................................. 5

U.S. DOJ News Release: Attorney General Announces Zero-Tolerance
   Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417,
   2018 WL 1666622 (the "Zero-Tolerance Memorandum") ................................................................. 5

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 3, 2022, at 1:30 p.m., or as soon thereafter as the parties may be heard, in the above-entitled Court, before the Honorable Kandis A. Westmore, United States Magistrate Judge, Defendant United States of America ("Defendant") will and hereby does move this Court for an order transferring this matter to the District of Arizona pursuant to 28 U.S.C. § 1404(a), or, in the alternative, dismissing Plaintiffs' Complaint. Defendant's motion is based on this Notice; the following Memorandum of Points and Authorities; the supporting Declarations of James De La Cruz, Shawn Jordan and Christopher McGregor submitted herewith; matters of which the Court takes judicial notice; and such oral argument and additional evidence as the Court may permit.

**RELIEF REQUESTED**

Defendant seeks an order transferring this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a), or, in the alternative, dismissing the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This  is an action under the Federal Tort Claims Act ("FTCA") alleging injuries to three parents and their respective children caused by Defendant's implementation of zero-tolerance policies for individuals detained on suspicion of committing an illegal entry offense at the United States–Mexico border in May 2018. Plaintiffs assert five causes of action under Arizona law for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, and loss of consortium arising out of Plaintiffs' separation after crossing into the United States. *See* ECF No. 1 ("Complaint") ¶¶ 214-240.

The United States has denounced the prior practice of separating children from their families at the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy." *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14,011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). And this Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." The

Court should not, however, reach the merits of Plaintiffs' FTCA claims for two reasons.

First, the District of Arizona is the most appropriate forum for this litigation, and the Court should transfer this action to that District pursuant to 28 U.S.C. § 1404(a). Plaintiffs crossed the United States–Mexico border into the state of Arizona; the Plaintiff parents were separated from their children in Arizona; a substantial amount of the detention of Plaintiff parents occurred in Arizona; and two of the three Plaintiff children were placed in shelters in Arizona. None of the actionable conduct challenged in Plaintiffs' complaint occurred in this District or the state of California. The United States therefore respectfully requests that the Court transfer this action to the District of Arizona for all further proceedings, for the convenience of the parties and witnesses, and in the interest of justice.

If the Court determines not to transfer this case, Defendant respectfully requests that the complaint be dismissed for lack of subject-matter jurisdiction. Even accepting that the Zero-Tolerance Policy and related initiatives had profoundly negative effects on the noncitizens subjected to them, any injuries are not compensable as torts under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. Although the United States recognizes that district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have to date reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.    FACTUAL AND LEGAL BACKGROUND

### A.    Statutory Framework for Noncitizens[1] Entering the Country.

Under Section 1325 of Title 8 of the U.S. Code, when an individual enters the United States between official ports of entry, he or she may be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Section 1325(a) is a misdemeanor that is punishable by a fine and 'imprison[ment] not more than 6 months" for a first infraction. *Id*. When a parent and child are encountered together and the parent

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

is transferred to criminal custody for prosecution, there is no parent or legal guardian available to provide care and physical custody for the minor. Therefore, the minor becomes unaccompanied and thus subject to the provisions of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3). The TVRA requires the minor to be transferred into the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR"). 8 U.S.C. § 1232(b)(3).

All  noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). Individuals arriving in or present in the United States who following inspection are deemed inadmissible also are subject to removal from the United States and, as appropriate, detention pending such removal. *See id.* § 1225(b)(1)(A)(i). These provisions apply to both adults and children. In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody. *See, e.g.*, 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

**B.    Statutory Framework for Immigration Custody Relating to Unaccompanied Minors.**

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States without authorization. Specifically, the Department of Health and Human Services' ORR is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the TVPRA, "[e]xcept in the case of exceptional circumstances, any department or agency … shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least

1    restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not

2    release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once in ORR

3    custody, there are detailed statutory and regulatory provisions that must be applied before the child is

4    released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied

5    alien child may not be placed with a person . . . unless the Secretary of Health and Human Services

6    makes a determination that the proposed custodian is capable of providing for the child's physical and

7    mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the

8    custodian's identity and relationship to the child, if any, as well as an independent finding that the

9    individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* §

10   1232(c)(3)(A).  In some instances, a home study is required. *Id*. § 1232(c)(3)(B).

11        **C.    Flores Agreement Requirements.**

12        In 1996, the federal government entered into a settlement agreement referred to as the "Flores

13   Agreement." *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101). The

14   Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the

15   custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing

16   Flores Agreement ¶ 9). Under a binding interpretation of the Ninth Circuit, the Flores Agreement

17   "unambiguously" applies both to unaccompanied minors and to minors who are encountered together

18   with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the government must

19   expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility.

20   *Id*. at 902-03 (quoting Flores Agreement ¶ 12)). The government must also "make and record the prompt

21   and continuous efforts on its part toward . . . release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738

22   (9th Cir. 2020) (quoting Flores Agreement ¶ 14).

23        Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not

24   address … the housing of family units and the scope of parental rights for adults apprehended with their

25   children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because

26   that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*,

27   No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that

28   parents are entitled to care for their children if they were simultaneously arrested by immigration

authorities[.]"). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the Flores Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**D.      Executive Branch Directives Regarding Immigration Enforcement.**

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017). First, in January 2017, the former President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to … detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id*. § 2(b). Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law," *id*. § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute … and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id*. § 11(d).

Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, the former Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy

1  for all offenses referred for prosecution under section 1325(a)." *Id*. Consistent with EO 13767 and the

2  April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of

3  adults – including those traveling with children – who unlawfully entered the United States on the

4  Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of

5  those adults were transferred to ORR custody as required by the TVPRA. *See generally* William

6  Wilberforce Trafficking Victims Protection Reauthorization Act (2013).

7          **E.**      **Detention, Separation and Reunification of Plaintiffs.**

8          According to the Complaint, Plaintiffs are a father and son from El Salvador (Wilbur P.G. and

9  Wilfredo Baltazar P.E. ("WBPE")), one mother and daughter from Guatemala (Erendira C.M. and

10  Yasmin Alicia M.C. ("YAMC") and one father and son from Guatemala (Joshua G.G. and Karl Luis

11  G.G. ("KLGG")) (collectively "Plaintiffs"), who illegally crossed the United States-Mexico border in

12  May 2018. ECF No. 1 ¶¶ 10-12, 68, 118, 153-154. Shortly after crossing the border into Arizona,

13  Plaintiffs were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol Agents and

14  initially held in CBP facilities in Arizona. *Id*. ¶¶ 68-70, 118-119, 122, 154-157, 160. Plaintiffs allege that

15  "the government forcibly separated" each Plaintiff parent from the child "in CBP's Arizona facilities."

16  *Id*. ¶ 67; *see also* Declaration of Shawn Jordan ("Jordan Decl.") ¶¶ 10, 17-18, 23 (noting separations for

17  the three Plaintiff families occurred in Arizona).

18          **1.**      **Plaintiff Family One: Wilbur P.G. and WBPE.**

19          Wilbur P.G. and his son WBPE entered the United States illegally on or about May 27, 2018

20  near San Luis, Arizona. ECF No. 1 ¶¶ 68-69; Jordan Decl. ¶ 8. They were encountered by Border Patrol

21  Agents and apprehended for illegal entry. Jordan Decl. ¶¶ 8, 9. Wilbur P.G. and WBPE were transported

22  to the Yuma Border Patrol Station in Yuma, Arizona, where P.G. was interviewed by Border Patrol

23  Agents, processed for illegal entry and referred for prosecution for violation of 8 U.S.C. § 1325. *Id*. ¶ 9.

24  Wilbur P.G. remained in CBP custody in Yuma, Arizona until June 2, 2018, when he was transferred

25  into ICE custody at a detention facility in Florence, Arizona. ECF No. 1 ¶ 68-69, 86; Declaration of

26  Christopher McGregor ("McGregor Decl.") ¶ 5; Jordan Decl. ¶ 11. He remained in ICE custody in

27  Florence, Arizona until June 6, 2018, when he was then transferred to an ICE detention center in Eloy,

28  Arizona pending immigration proceedings. Wilbur P.G. remained in the Eloy, Arizona Detention

Facility until he was released on a $16,000 bond on July 20, 2018. ECF No. 1 ¶¶ 91, 106; McGregor Decl. ¶ 6.

Wilbur P.G. and WBPE were separated on May 27, 2018 in Yuma, Arizona. Jordan Decl. ¶ 10. WBPE was processed as a UAC, transferred into the care and legal custody of ORR and placed at Southwest Key Estrella, in Tucson, Arizona, on May 28, 2018. Declaration of James De La Cruz ("De La Cruz Decl.") ¶ 4. According to the Complaint, WBPE was separated from his father for two months. ECF No. 1 ¶¶ 100, 106. WBPE was discharged from Southwest Key Estrella on July 23, 2018 and reunited with his father. De La Cruz Decl. ¶ 4.

### 2. Plaintiff Family Two: Erendira C.M. and YAMC.

Erendira C.M. and her daughter YAMC entered the United States illegally on or about May 11, 2018, were encountered by Border Patrol Agents near San Luis, Arizona and apprehended for illegal entry. ECF No. 1 ¶¶ 118-119; Jordan Decl. ¶¶ 14-15. They were transported to the Yuma Border Patrol Station in Yuma, Arizona, where Erendira C.M. was interviewed by Border Patrol Agents and referred for prosecution for violation of 8 U.S.C. § 1325. Jordan Decl. ¶ 15. On May 16, 2018, Erendira C.M. was convicted of illegal entry, in violation of 8 U.S.C. § 1325(a)(1), and sentenced to time served. *Id*. ¶ 19; ECF No. 1 ¶¶ 130-131. Subsequently, Erendira C.M. was transferred "to a series of other detention facilities in Arizona." ECF No. 1 ¶ 138. She was first transferred to ICE custody at the Florence Staging Facility in Florence, Arizona on May 22, 2018 (Jordan Decl. ¶ 16), before being transferred on the same day to Santa Cruz County Jail in Nogales, Arizona. McGregor Decl. ¶ 7. Erendira C.M. stayed at the Nogales, Arizona jail for a day before returning to the Florence Staging Facility on May 23, 2018. *Id*. On May 24, 2018, Erendira C.M. was flown to Georgia to be housed at Irwin County Detention Center in Ocilla, GA, where she remained until July 20, 2018, when she was transferred to Port Isabel Detention Center in Los Fresnos, Texas. *Id*. She remained there until her release on July 25, 2018. *Id*.

Erendira C.M. and YAMC were separated in Yuma, Arizona. Jordan Decl. ¶ 18. YAMC was processed as a UAC, transferred into the care and legal custody of ORR and placed at Cayuga Centers, in New York, New York, on May 15, 2018. De La Cruz Decl. ¶ 5. According to the Complaint, YAMN was separated from her mother for approximately 10 weeks. ECF No. 1 ¶ 148. YAMC was discharged from Cayuga Centers on July 25, 2018 and reunited with her mother. De La Cruz Decl. ¶ 5.

### 3.   Plaintiff Family Three: Joshua G.G. and KLGG.

Joshua G.G. and his son KLGG entered the United States illegally on or about May 18, 2018 near San Luis, Arizona. ECF No. 1 ¶ 154; Jordan Decl. ¶ 21. They were encountered by Border Patrol Agents and apprehended for illegal entry. CBP Decl. ¶¶ 21-22. Joshua G.G. and KLGG were transported to the Yuma Border Patrol Station in Yuma, Arizona, where Joshua G.G. was interviewed by Border Patrol Agents and processed for expedited removal. ECF No. 1 ¶ 154, 156, 171; Jordan Decl. ¶ 22. Joshua G.G. was held in CBP custody from May 18, 2018 to May 21, 2018 at the Yuma, Arizona Border Patrol Station. Jordan Decl. ¶ 24. On May 21, 2018, Joshua G.G. was transferred to Wellton Border Patrol Station, Yuma Sector, Arizona. *Id*. ¶ 24. On May 29, 2018, he was transferred back to the Yuma Border Patrol Station. *Id.* On that same day, he was transferred from CBP custody into ICE custody at the Florence Staging Facility in Florence, Arizona. *Id*.; McGregor Decl. ¶ 10; ECF No. 1 ¶ 171.

On June 2, 2018, Plaintiff Joshua G.G. was transferred to the Pine Prairie Processing Center in Pine Prairie, Louisiana, where he remained until he was transferred to the Alexandria Staging Facility in Alexandria, Louisiana on July 17, 2018. McGregor Decl. ¶ 11. The following day on July 18, 2018, Joshua G.G. was transferred back to Arizona at the Eloy Detention Center in Eloy, Arizona. *Id*. ¶ 12; ECF No. 1 ¶ 188. On July 24, 2018, he was processed through the Phoenix, Arizona District Office, before being transported to the Karnes County Residential Facility in Karnes City, Texas, where he was reunited with his son on July 26, 2018. McGregor Decl. ¶ 14.

Joshua G.G. and KLGG were separated on May 19, 2018 in Yuma, Arizona. Jordan Decl. ¶ 23. KLGG was held in CBP custody from May 18, 2018 to May 20, 2018 at the Yuma Border Patrol Station. *Id*. ¶ 25. KLGG was processed as a UAC, transferred into the care and legal custody of ORR and placed at Southwest Key Casa Phoenix, in Phoenix, Arizona, on May 20, 2018. De La Cruz Decl. ¶ 6. KLGG was discharged from Southwest Key Casa Phoenix on July 24, 2018 and reunified with his father. *Id.*

### F.   Plaintiffs' Complaint.

Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages for intentional infliction of emotional distress (Count 1), negligence (Count 2), abuse of process (Count 3), negligent supervision/breach of fiduciary duty, (Count 4) and loss

1  of consortium (Count 5). ECF No. 1 ¶¶ 214-240. Plaintiffs allege that these harms stemmed from the

2  government's violation of "the Constitution and multiple mandatory legal obligations when it separated

3  the Plaintiff families … during their detention." *Id*. at 52:14-15.

4        **G.**    **Subsequent Policy Changes.**

5        After assuming office, President Biden took action to undo the policies that led to Plaintiffs'

6  separation and to reunify the families that were affected by those policies. On February 2, 2021, the

7  President issued an Executive Order that condemned the "human tragedy" of the prior Administration's

8  Zero-Tolerance Policy, and that committed the United States government to "protect family unity and

9  ensure that children entering the United States are not separated from their families, except in the most

10  extreme circumstances where a separation is clearly necessary for the safety and well-being of the child

11  or is required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to

12  identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations

13  for the potential provision of immigration benefits and mental-health services to those separated

14  families. *Id.* § 4. In November 2021, the Task Force issued a report showing that 2,248 families had

15  been reunified and that 206 additional families were in the process of reunification. Interim Progress

16  Report, Interagency Task Force on the Reunification of Families 3, Nov. 29, 2021, available at

17  https://www.dhs.gov/sites/default/files/publications/21_1129_s1_interim-progress-report-family-

18  reunification-task-force.pdf.

19  **III.**    **LEGAL STANDARDS**

20        **A.**    **Transfer Under 28 U.S.C. § 1404(a).**

21        The FTCA provides an avenue for individuals to sue the federal government for conduct that

22  constitutes a tort under state law. The applicable substantive state law is "the law of the place where the

23  act or omission occurred."  28 U.S.C. § 1346(b)(1). Venue for an FTCA claim is governed by 28 U.S.C.

24  § 1402(b), which permits such a claim to be prosecuted "in the judicial district where the claimant

25  resides or where the act or omission occurred."  28 U.S.C. § 1402(b).

26        However, section 1404(a) of Title 28 of the United State Code provides for transfer to another

27  district court:

28            For the convenience of parties and witnesses, in the interest of justice, a district court
          may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which all parties have consented.

*See also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013). A district court's analysis under Section 1404(a) considers "both private factors, which go to the convenience of the parties and witnesses, and public factors which go to the interests of justice." *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016). In undertaking this analysis, courts in the Ninth Circuit weigh and consider various case-specific factors, including:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the Plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to Plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Center for Biological Diversity v. Kempthorne*, No. 08-cv-1339-CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). The moving party bears the burden of establishing that the proposed transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  In evaluating a motion under Section 1404(a), a court may consider the allegations of the complaint as well as declarations submitted by the parties. *See Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020).

**B.    Dismissal for Lack of Subject Matter Jurisdiction.**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 US 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court may dismiss an action under Rule 12(b)(1) if the

1    complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if

2    the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of

3    jurisdiction. *Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). A

4    facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke

5    federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge allows the court to

6    look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v.*

7    *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also can hear evidence outside the pleadings and

8    resolve factual disputes, if necessary, without treating the motion as one for summary judgment.

9    *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847

10   (9th Cir. 1997). "Once challenged, the party asserting subject matter jurisdiction has the burden of

11   proving its existence," and the plaintiff's allegations carry no presumption of truthfulness. *Robinson*,

12   586 F.3d at 685. Whether a facial or factual attack, because "[f]ederal courts … have only that power

13   that is authorized by Article III of the Constitution and the statutes enacted by Congress," *Bender v.*

14   *Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes the

15   action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction to

16   establish that it exists. *Kokkonen,* 511 U.S. at 377.

17        A district court cannot hear a suit against the United States unless the government has waived

18   sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional

19   in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly

20   resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See*

21   *Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898, 905-906 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    The Court Should Transfer This Action to the District of Arizona.

24        The United States moves to transfer this case to the District of Arizona "[f]or the convenience of

25   parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Both steps of the Section

26   1404(a) analysis are satisfied because (1) the District of Arizona is the appropriate forum for this dispute

27   and (2) the balance of relevant factors favors litigating this action in that venue. Accordingly, this Court

28   need not consider the merits of Plaintiffs' allegations, and should instead transfer the case to the District

1  of Arizona for further proceedings there.

2                **1.**      **Venue Is Proper in the District of Arizona.**

3        Section 1404(a) permits transfer to any district where the case "might have been brought." 28

4  U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1402(b), venue is proper in the District of Arizona, where the

5  majority of the allegedly tortious acts or omissions occurred. *See, e.g.*, *Barroca v. United States*, No. 19-

6  cv-00699-MMC, 2019 WL 5722383, *3 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer venue

7  under § 1404(a) in FTCA case where majority of allegations in plaintiff's complaint occurred in the

8  transferee state); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, *4 (D. Ariz. Dec.

9  6, 2013) (granting motion to transfer from District of Arizona to Eastern District of California where

10  "[t]he only connection that this case has to Arizona is that plaintiff happened to move there sometime

11  after the events upon which his claims are based occurred"); *see also* Part IV.A.2, *infra*.

12                **2.**      **The Balance of Relevant Factors Strongly Favors Transfer to the District of Arizona.**

13        Section 1404(a) balances the convenience and interests of the parties and the judicial districts "in

14  addition to the convenience of the witnesses." *See Barroca*, 2019 WL 5722383, at *2. Here, the

15  convenience of the parties and witnesses substantially favors transfer to the District of Arizona. Other

16  than the Plaintiffs, who currently reside in this District, most of the anticipated witnesses are located

17  outside this District – indeed, many of them in the District of Arizona. While the Complaint does not

18  name any individual agents or officers, it repeatedly alleges improper conduct by many different

19  government officials in connection with Plaintiffs' arrests, separation, and detention. However, none of

20  this conduct took place in this District or the state of California.

21             **(a)**      **Most Operative Facts Alleged in Plaintiffs' Complaint**

22                    **Occurred in Arizona.**

23        Plaintiffs' Complaint underscores that this is a case in which the majority of the allegedly

24  tortious acts occurred in Arizona. First, Arizona is the state where each Plaintiff parent and child

25  illegally entered the United States. ECF No. 1 ¶ 67. Arizona is also the state where each Plaintiff parent

26  and child were apprehended and detained after unlawful entry. *Id*. ¶¶ 68-75, 118-120, 154-155; Jordan

27  Decl. ¶¶ 8-12 (Wilbur P.G. and WBPE), 14-18 (Erendira C.M. and YAMC), 21-25 (Joshua G.G. and

28  KLGG).

Second, the alleged tortious act that is the centerpiece of Plaintiffs' Complaint – family separation – occurred in Arizona. The Complaint highlights that Plaintiffs' action is intended to address the alleged harms that flowed from the separation of each Plaintiff child from each Plaintiff parent. *See, e.g., id.* ¶ 3 ("This case is about six specific individuals who suffered because of the Family-Separation Policy. . . this separation was carried out by government officials implementing the Policy."), ¶ 4 ("All suffered from extreme emotional distress at the point in time when the government forcibly separated them [and] went on to endure additional weeks of sustained emotional distress during their forced separation"). As Plaintiffs acknowledge, Arizona is the state where each of the three Plaintiff families were separated. *Id.* ¶ 67 ("The government forcibly separated these parents and children in CBP's Arizona facilities without notice or explanation").

Third, Arizona is the state where a substantial portion of the detentions for the Plaintiff parents took place and where two of the three children were sheltered while in the custody and care of ORR. *See supra* at 6-8. Although two Plaintiff parents were held in Georgia, Texas, and Louisiana for a period of time and one Plaintiff child was placed with a foster parent in New York, no detention occurred in the state of California for any Plaintiff parent nor was any care rendered to any of the children in the state of California. *Id.* Simply put, aside from a phone call placed by one Plaintiff parent (Erendira C.M.) to her long-term partner "to explain the situation to him" while she was detained in Georgia (*see* ECF No. 1 ¶ 143), there was no contact between any Plaintiffs and the state of California, much less this District, until after the Plaintiffs had been reunited and released. None of the complained-of acts occurred in this District.

(b) **The Convenience and Interests of the Parties Favor Transfer to the District of Arizona.**

Factor one of the Ninth Circuit's test ("location where the relevant agreements were negotiated and executed") favors transfer because, to the extent there are any relevant "agreements" between Plaintiffs and the United States as it relates to their initial detentions and separation, those agreements, and the circumstances by which they were created, occurred in Arizona.

Factor two (which state is "most familiar with the governing law") favors transfer because all five of Plaintiffs' causes of action sound in the common law of Arizona, where the alleged torts

1    occurred. *See, e.g.*, *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) ("In assessing the United

2    States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort

3    occurred."); *Hansen v. Combined Transp., Inc.*, No. 13-cv-1298, 2013 WL 5969863, at *2 (W.D. Wash.

4    Nov. 7, 2013) ("[B]ecause plaintiff brings more claims under Oregon law than Washington law, this

5    factor favors transfer to Oregon."). Each of Plaintiffs' claims will be decided under Arizona law and,

6    thus, the District of Arizona is likely the district "most familiar with the governing law." *See Barroca*,

7    2019 WL 5722383, at *2 (determining that second factor of 1404(a) transfer analysis favored the

8    District of Kansas because "the majority of the causes of action alleged in the complaint will be decided

9    under Kansas law, and, consequently, the District of Kansas is likely the district 'most familiar with the

10    governing law.'").

11        Factors four ("respective parties' contacts with the forum") and eight ("ease of access to sources

12    of proof") also clearly favor transfer to the District of Arizona. As described *supra*, a substantial portion

13    of the conduct alleged in the Complaint occurred in Arizona. Thus, Arizona is where most of the

14    witnesses with knowledge reside, and the location of facilities where apprehension, initial detention, and

15    separation occurred, as well as the location of two of the shelter facilities where the minors resided while

16    in the care and legal custody of ORR.[2]

17        Factor five ("contacts relating to the plaintiff's cause of action in the chosen forum") favors

18    transfer. In light of the details pled in Plaintiffs' Complaint, there are minimal contacts relating to

19    Plaintiffs' causes of action in the Northern District of California, other than Plaintiffs themselves. The

20    first Plaintiff family had no contacts with this District until after their release from detention. ECF No. 1

21    ¶¶ 100, 106 (alleging two months of separation for Wilbur P.G. and WBPE); *see also* Jordan Decl. ¶¶ 8-

22    13. The Complaint pleads 41 paragraphs about the tortious conduct directed at Wilbur P.G. and his son

23    WBPE in Arizona, then references California as the location to which Wilbur P.G. would travel on bus

24    after his release and to finally reunite with WBPE at the San Francisco airport. ECF No. 1 ¶¶ 68-111.

25

26    _____

27    [2] "'The convenience of witnesses is often the most important factor in resolving a motion to transfer.'" *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (citing *Bunker v. Union Pac. R.R. Co.*, No. 05-cv-04059-JW, 2006 WL 193856, *2 (N.D. Cal. Jan. 23, 2006)). In analyzing this

28    factor, courts consider the convenience to all witnesses but give "more weight to the convenience of non-party witnesses." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005).

For the second Plaintiff family, the Complaint describes just three events and/or contacts they had with the Northern District of California. *Id.* ¶ 143 (while in detention in Georgia, parent Plaintiff Erendira C.M. had a "brief" telephone call to her long-term partner (and now husband) in Oakland to explain "she was somewhere near Atlanta and that YAMC had been taken from her"), ¶ 143 (after this phone call, YAMC's father began searching for her), ¶¶ 148-149 (after approximately ten weeks in custody, Erendira C.M. and YAMC were released and a religious charity helped arrange their transportation to California, where YAMC's father lives). For the third Plaintiff family, the Complaint makes no reference to California, let alone this District. *Id.* ¶¶ 153-193.

Factor six ("differences in cost of litigating in the two forums") also favors transfer. It will cost much more to litigate this case in the Northern District of California than it would in the District of Arizona. The United States anticipates that, if this case proceeds past the motion-to-dismiss stage, a significant amount of discovery will concern initial detention facilities located in Arizona. Further, the United States may have to call a significant number of witnesses relating to the detentions and separations that occurred at these facilities – including numerous CBP and ICE officials, officers and agents as well as employees of the shelters where the two minors were housed – most of whom are in the District of Arizona. Conducting site visits, meeting with witnesses, flying back and forth from California to Arizona while accommodating witness, site and attorney time will entail substantial costs. *See, e.g.*, *Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931, at *4 (W.D. Wash. Sept. 11, 2006) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or be deposed…. Here, all potential witnesses and parties, save one, reside in northern Texas. Accordingly, this factor favors transfer."); *see also Park*, 964 F. Supp. 2d at 1095 ("[g]enerally, litigation costs are reduced when venue is located near the most witnesses expected to testify[.]").

Factor seven ("the availability of compulsory process") also favors transfer to the District of Arizona. As explained in the Declaration of James De La Cruz, the facilities utilized by ORR for each of the Plaintiff children were not government facilities, nor were the individuals working there government employees. De La Cruz Decl. ¶ 3. Accordingly, the government does not control these non-party witnesses should they be unwilling to travel to California to testify; compulsory process would not be

1    available in the Northern District.

2         The only factor that favors maintaining this action in this District is Plaintiffs' choice of forum –

3    or factor three. Deference to a plaintiff's chosen venue is substantially reduced, however, where that

4    locale lacks any real connection to the activities alleged in the complaint. *See, e.g.*, *Amazon.com v.*

5    *Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); *Hansen*, 2013 WL 5969863, at *2;

6    *Nordquist*, 2006 WL 2597931, at *4 ("A plaintiff's choice of forum is given much less weight when the

7    forum lacks any significant contact with the activities alleged in the complaint. As previously noted, the

8    business is located in Texas, the Defendants reside in Texas, and the Plaintiff resided in Texas while

9    operating the business and during significant negotiations of the sale. This factor weighs heavily in favor

10   of transfer."). That is precisely the case here. *See supra* at 14-15 (noting the lack of connection between

11   the allegedly tortious conduct pled in Plaintiffs' Complaint and this District). While it might be more

12   convenient for Plaintiffs to litigate in this forum, the actual increased burden on Plaintiffs prior to trial

13   would likely be minimal. Plaintiffs' residency in this District cannot outweigh the substantial contacts

14   Plaintiffs and Defendant maintain with the District of Arizona. By contrast, the inconvenience to

15   Defendant of litigating this case in the Northern District of California instead of the District of Arizona

16   would be significantly greater.

17             **(c)      The District of Arizona Has a Greater Local Interest in this
                          Matter.**

18

19        Finally, the interests of justice also favor transfer. Plaintiffs' allegations focus significantly on

20   the behavior of government agents operating in the District of Arizona and the conditions of facilities

21   therein. The District of Arizona has the greater interest in keeping the people located in that District safe

22   from alleged government wrongdoing. *See, e.g., Canal A Media Holding, LLC v. United States*

23   *Citizenship & Immigration Servs.*, No. 17-cv-6491, 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018)

24   (finding that the transferee district "has a great interest in protecting its citizens from the unreasonable

     actions of a government agency") (internal citations and quotations omitted).

25        On balance, these factors weigh in favor of transfer. Plaintiffs' choice of forum should only be

26   given minimal weight because none of the alleged conduct occurred here. Therefore, Defendant requests

27   that the Court transfer this matter to the District of Arizona.

28

**B.     In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

If this Court determines not to transfer the case, Plaintiffs' claims should be dismissed. The government does not defend the merits of the policies at issue in this case, which have now been repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the Zero-Tolerance Policy. Family Reunification Task Force EO § 1. But Plaintiffs cannot prevail on their FTCA claims because this Court lacks subject-matter jurisdiction under established legal principles.

**1.     Plaintiffs' Claims Are Barred By the Discretionary Function Exception.**

**(a)     Legal Standard for Discretionary Function Exception Analysis.**

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is "a limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016). The statute allows individuals to sue the United States when a federal employee's conduct, within the scope of his or her employment, causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. *See* 28 U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). One such exception – the "discretionary function exception" ("DFE") – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *United States v. Gaubert*, 499 U.S. at 328-32. Courts must first ask whether the challenged conduct "'involve[s] an element of judgment or choice,' as determined by the 'nature of the conduct, rather than the status of the actor.'" *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018) (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States,* 794 F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy. . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Where no federal statute, regulation or policy prescribes a specific course of action to follow, the challenged conduct involves an element of judgment. *See Berkovitz*, 486 U.S. at 536. Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States,* 286 F.3d 1168, 1174-75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the agency's acts or failures to act are presumed to be discretionary. *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context – "the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Id*. at 677 (citing *Gonzalez*, 814 F.3d at 1030).

Second, if the conduct involves choice or discretion, courts must next determine whether "the judgment of the government employee [is] 'of the kind that the discretionary function exception was designed to shield.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 322-23). The DFE is designed to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy' through a tort action" – therefore, courts construe it as "protect[ing] only governmental actions and decisions based on considerations of public policy." *Id*.; *see also United States v.*

*Varig Airlines*, 467 U.S. 797, 814 (1984). Thus, the focus of this inquiry is "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are susceptible to policy analysis.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 325); *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (the discretion must be "susceptible to social, economic, or political policy analysis"); *Nurse*, 226 F.3d at 1001 (explaining that the decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)).

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1028 (9th Cir. 1989). Indeed, under the second prong, the government actors' subjective motive is immaterial because "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gonzalez,* 814 F.3d at 1027-28 (quoting *Gaubert,* 499 U.S. at 325) (emphasis added). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681 (citing *Gaubert*, 499 U.S. at 324; *Chadd*, 794 F.3d at 1104). And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (DFE applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse*, 226 F.3d at 1000. This result applies even where the government may have been negligent in the performance of such discretionary acts, as "negligence is irrelevant to the discretionary function inquiry." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d

Sess., at 10.

### (b)    The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations.

Although Plaintiffs allege harm stemming from the government's decisions to apprehend parent Plaintiffs and to prosecute the parents for unlawful entry (and in that regard, to separate the parents from their children), the government decisions at issue in Plaintiffs' Complaint are immunized by DFE because they involved an element of judgment or choice, and are susceptible to policy analysis.

First, the decisions described in Plaintiffs' Complaint are discretionary. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion").

Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[3] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems

---

[3] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

appropriate, arises from" statute).

Decisions relating to noncitizens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception."); *Hernandez v. United States*, 83 F. App'x 206 (9th Cir. 2003) (security measures pertaining to prisoners in a detention center are within the FTCA's DFE); *see also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by DFE); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units … must be viewed as falling within the discretionary function exception to the FTCA").

This discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE). Moreover, the Flores Agreement does not require release of a parent or mandate that parents be housed with a child. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007); *see supra* at 4-5. In this case, none of the "multiple mandatory legal obligations" Plaintiffs allege government officials violated (*see* ECF No. 1 ¶¶ 197-213) prescribes a specific course of action to follow in connection with the prosecution and subsequent separate detention of the Plaintiff parents and children in this case. Instead, the challenged decisions were the result of the exercise of discretion, thus satisfying the first prong of DFE.

Second, as other courts have recognized, policies related to the immigration custody of adults as well as the Zero-Tolerance Memorandum – which was subsequently revoked – "amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87. The Court should decline to engage in the sort of "second-guessing" and inquiry into government actors' intent in making decisions that the discretionary function exception was designed to prevent. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of DFE, the Court looks only at the nature of the conduct or decision at issue from a general and objective perspective – subjective intent is not part of the analysis. *Gonzalez*, 814 F.3d at 1032. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Indeed, notwithstanding the merit of these prior policy choices, they were policy choices nonetheless, even as described by the Complaint. *See*, *e.g.*, ECF No. 1 ¶¶ 17, 21, 23, 24, 44.

        **(c)    Plaintiffs' Remaining Claims Concerning their Detentions Are Barred by DFE.**

Plaintiffs' Complaint additionally alleges that the Plaintiff families' detentions were "in violation of the United States Constitution and multiple mandatory federal policies." ECF No. 1 ¶ 205. For example, Plaintiffs allege that "federal agents subjected them to harsh and cruel treatment in custody," contending that the government agents "held them in unsanitary cells and deprived them of adequate food, clean drinking water, adequate bedding, and sufficient spaced to sleep," failed to communicate with the Plaintiffs in a language or manner that they could comprehend and neglected to sufficiently inspect or document health issues. *Id*. ¶¶ 206-211.[4]

First, allegations "inextricably intertwined" with the separation are barred to the same extent as the separation itself. *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims "inextricably tied" or "inextricably linked" to conduct protected by section 2680(a) also barred). Second, to the extent not

---

[4] To the extent that these allegations relate to the children, they are also allegations of a *Flores* violation, and so must be brought in a *Flores* action, rather than an FTCA case.

otherwise subject to dismissal as non-cognizable under the FTCA, courts have repeatedly held that these other challenged "conditions of confinement" acts or omissions are independently barred by DFE because they involve discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations … including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE shielded decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the Zero-Tolerance Policy. As here, the plaintiffs alleged that the practices at issue were unlawful and challenged various associated conditions of confinement. *Id.* at 686-87. In dismissing the claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id.* at 687 ("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception."). The court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id*. (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort

Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id.* at. 688.

### (d) Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of DFE in this Case.

A plaintiff cannot circumvent DFE simply by alleging a violation of a constitutional right. In *Gaubert*, the Supreme Court held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. 499 U.S. at 322. And in *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000), the Ninth Circuit held that a constitutional violation "may" remove conduct from discretion but expressly left open the question of "the level of specificity with which a constitutional proscription must be articulated to remove the discretion of a federal actor." *Id*. at 1002 n. 2; *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional … directive, the FTCA claims may be able to proceed to that degree."); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

Here, Plaintiffs do not allege the violation of any constitutional provision with the requisite degree of specificity required by *Gaubert.* Plaintiffs instead allege that "[t]he Supreme Court has consistently recognized that the parent-child relationship is constitutionally protected" by principles  of substantive due process and that it is constitutionally important for children to remain with their parents." ECF No. 1 ¶ 198. But while an authoritative construction of a clearly-established constitutional provision can eliminate a government official's discretion, Plaintiffs do not allege that there was any such authoritative construction in place at the times relevant to their complaint. *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the substantive due process [right] to family integrity dictates release of the parents (as distinct from

reunification)"); *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2018) (plaintiffs did not

challenge the decision to detain adult noncitizens while in removal proceedings for the "sound reasons"

that the law calls for mandatory detention, with parole available in strictly limited circumstances); *see*

*also Payne-Barahona v. Gonzalez*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed

the constitutional issue . . . have uniformly held that a parent's otherwise valid deportation does not

violate a child's constitutional right.").

Thus, even if the conduct in question were later found unconstitutional, the DFE would still

shield the United States from tort liability. As the Supreme Court has long recognized, conduct may be

discretionary even if it is later determined to have violated the Constitution. The common law doctrine

of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates

the Constitution, as long as the constitutional right was not defined sufficiently so that the official should

have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment

officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."). Accordingly, whether, in retrospect, the separations at issue

here violated such a right has no bearing on the application of DFE. *See Denson v. United States*, 574

F.3d 1318, 1137-38 (11th Cir. 2009).[5]

> ### 2.      Plaintiffs' Claims Relating to the Decision to Detain Them Separately From Their Children Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.

Plaintiffs' claims relating to the decision to detain them separately from their children are

independently precluded because the FTCA prevents the United States from being held liable for "[a]ny

claim based upon an act or omission of an employee of the Government, exercising due care, in the

execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. §

2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations,

---

[5] In other cases, three district courts have held that the DFE is inapplicable because the plaintiffs allege that the Constitution was violated. *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 2:20-cv-10793, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-5217, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020). But those cases did not acknowledge or discuss the rule, established in *Gaubert*, that an official loses discretion only if a source of law "specifically prescribes" the challenged conduct.

resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation – even if that statute or regulation is later found unconstitutional or invalid, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction. S*ee Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the United States had statutory authority to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to care for them (here, because their parents were detained for immigration proceedings or prosecution). 8 U.S.C. § 1232(b)(3). That statute—which Plaintiffs do not challenge—required the separation of the children from the adults to provide care and physical custody while the adults were in immigration detention.[6] The enforcement of that statutory command cannot form the basis of an FTCA claim.[7]

---

[6] As noted *supra* at 3, the statutory UAC definition is a broad one that includes an assessment of parental fitness in determining if the parent is "available." For example, in *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016), the court upheld the government's determination that a minor was an "unaccompanied alien child" and affirmed transfer to ORR custody even though the minor lived with the mother in their family home because the mother's lack of fitness precluded her from "provid[ing] what is necessary for the child's health, welfare, maintenance, and protection."

[7] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996; *see Nunez Euceda*, 2021 WL 4895748, *4 (similar). But, as just described, federal law does require that children be placed into ORR custody if their parents are detained for prosecution. And for the reasons described above, the decision to detain those parents for prosecution is a quintessentially discretionary one.

### 3.      Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted). The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations, there is no private-person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold the Plaintiff parents in custody pending immigration proceedings or prosecution, resulting in the Plaintiff children's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as they have no private-person counterpart. *See, e.g., Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits.").[8]

---

[8] Two courts in Arizona recently found a private-person analogue to nursing home employees,

1

### 4.  Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability for under the FTCA. *See, e.g., Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Here, as in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the government as a whole, referring throughout to "the United States government," "the U.S. government," and "the government," rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. *See, e.g.*, ECF No. 1 at ¶¶ 1, 5, 20, 61, 67, 212, 213, 216-219, 227-228, 231-234, 237-239; *id*. at 4:14-16, 11:12, 16:4, 20:11, 52:14-15. The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

---

relying on *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, *2 (D. Ariz. Mar. 10, 2020), a case involving the Bureau of Prisons' duty toward inmates in its care. *See C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 995. The *Shartle* court found an analogy to a nursing home's duty of care in Arizona Revised Statutes § 46-455, which imposes civil liability on nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect.  Defendant respectfully submits that a nursing home's duty to safeguard against neglect is wholly different from the federal government's enforcement of federal criminal and immigration laws and does not provide the "persuasive analogy" required for jurisdiction under the FTCA.

**V.     CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to the District of Arizona or, in the alternative, dismiss Plaintiffs' Complaint.

Dated: January 5, 2022                                 Respectfully submitted,

                                                                        STEPHANIE M. HINDS
                                                                        United States Attorney

                                                                         /s/ *Kenneth Brakebill*
                                                                        Kenneth Brakebill
                                                                        Assistant United States Attorney

                                                                        Counsel for Defendant