KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
BREE BERNWANGER - # 331731
bbernwanger@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:    415 814 7631

Attorneys for Plaintiffs Wilbur P. G.; Wilfredo
Baltazar P. E., a minor child; Erendira C. M.;
Yasmin Alicia M. C., a minor child; Joshua G.
G.; and Karl Luis G. G., minor child

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>            Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>Date:        March 3, 2022<br>Time:        1:30 p.m.<br>Dept.:       Remote via Videoconference or Zoom<br>Judge:       Hon. Kandis A. Westmore<br><br>Date Filed:  June 10, 2021<br><br>Trial Date:  Not yet set |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL ALLEGATIONS ..............................................................................3

        A.      The Government's family-separation practices ........................................3

        B.      The Plaintiff families' separations .........................................................5

III.    THE GOVERNMENT FAILS TO SHOW THAT TRANSFER IS
        APPROPRIATE...................................................................................................7

        A.      Legal standard.........................................................................................7

        B.      Plaintiffs' choice of venue is entitled to great deference .......................8

        C.      Because the only witnesses identified in this case reside in this District, the
                convenience-of-the-witnesses analysis favors Plaintiffs .......................9

                1.      The Government fails to show that Arizona is a more convenient
                        forum for even a single witness ..................................................9

                2.      Actionable conduct, and harms, occurred in several states ......11

        D.      The remaining factors generally favor Plaintiffs or are neutral............12

        E.      The public-interest factors unambiguously favor litigating in this District..........13

IV.     BECAUSE PLAINTIFFS' TORT CLAIMS ARE COGNIZABLE UNDER THE
        FTCA, THE MOTION TO DISMISS SHOULD BE DENIED .......................14

        A.      Applicable law and legal standard ........................................................14

        B.      The Government's Motion to Dismiss mischaracterizes Plaintiffs' claims...........15

        C.      The discretionary function exception does not apply here ....................17

                1.      Separating the Plaintiff families was not a discretionary act because
                        it violated the Constitution........................................................17

                2.      Plaintiffs are not required to show their constitutional right to
                        family integrity was clearly established.....................................20

                3.      Separating the Plaintiff families was not based on considerations of
                        public policy..............................................................................22

        D.      The due care exception does not shield the Government from liability for
                Plaintiffs' claims. ................................................................................24

                1.      The Government was not executing a statute or regulation when it
                        separated the Plaintiff families...................................................25

                2.      The Government did not exercise due care when separating the
                        Plaintiff families........................................................................26

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

1    E.    Plaintiffs' claims satisfy the FTCA's private analogue requirement. ....................27

2    F.    The Government's novel "systemic" tort prohibition lacks legal support
           and does not bar Plaintiffs' claims.........................................................................29

3  V.    CONCLUSION.........................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*800–Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ........................................................................................9

*A.P.F. v. United States*,
  492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................... *passim*

*Adams v. United States*,
  420 F.3d 1049 (9th Cir. 2005) ...................................................................................29, 30

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
  169 F. Supp. 3d 1079 (D. Or. 2016) ........................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................15

*Berkovitz by Berkovitz v. United States*,
  486 U.S. 531 (1988) ..............................................................................................24

*Borquez v. United States*,
  773 F.2d 1050 (9th Cir. 1985) .........................................................................25, 26

*C.M. v. United States*,
  No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ................. *passim*

*C.M. v. United States*,
  No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020) ............................25

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*,
  No. CV 17-6491 FMO, 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ...........................13, 14

*Carolina Cas. Co. v. Data Broad. Corp.*,
  158 F. Supp. 2d 1044 (N.D. Cal. 2001) ...................................................................9

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ..............................................................................................16

*Chen v. Pioneer Oil, LLC*,
  472 F. Supp. 3d 704 (N.D. Cal. 2020) .............................................................1, 7

*Corbello v. Devito*,
  No. 1:07CV985, 2008 WL 2097435 (E.D. Tex. May 19, 2008) ......................................8

*Cty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..............................................................................................17

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

*D.J.C.V. v. U.S. Immigr. & Customs Enf't,*
    No. 18 Civ. 9115 (AKH), 2018 WL 10436675 (S.D.N.Y. Oct. 15, 2018) ...........................23

*Davis v. United States,*
    No. EDCV 07-481-VAP, 2009 WL 10674302 (C.D. Cal. Sept. 4, 2009) .............................24

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ...........................................................................................11

*Dobek v. Wal-Mart Stores, Inc.,*
    No. CIV 03-297-TUC-FRZ, 2007 WL 2069832 (D. Ariz. July 17, 2007) .............................28

*Doe v. Epic Games, Inc.,*
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) .............................................................................10

*Doe v. Napa Valley Unified Sch. Dist.,*
    No. 17-cv-03753-SK, 2018 WL 4859978 (N.D. Cal. Apr. 24, 2018) ....................................24

*Doe v. United States,*
    419 F.3d 1058 (9th Cir. 2005) ..........................................................................................15

*Ruiz ex rel. E.R. v. United States,*
    No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18,
    2014) ..............................................................................................................................23

*Elemary v. Philipp Holzmann A.G.,*
    533 F. Supp. 2d 144 (D.D.C. 2008) ....................................................................................8

*Est. of Smith v. Shartle,*
    No. CV-18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ........................28

*Fazaga v. FBI,*
    965 F.3d 1015 (9th Cir. 2020), *cert. denied,* 141 S.Ct. 2720 (2021) ......................................14

*Fitbit, Inc. v. Koninklijke Philips N.V.,*
    336 F.R.D. 574 (N.D. Cal. 2020) ..............................................................................9, 10, 11

*Fleming v. Matco Tools Corp.,*
    384 F. Supp. 3d 1124 (N.D. Cal. 2019) ...............................................................................12

*Galvin v. Hay,*
    374 F.3d 739 (9th Cir. 2004) ....................................................................................17, 19, 21

*García-Feliciano v. United States,*
    No. CIV. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) ................................30

*Getz v. Boeing Co.,*
    547 F. Supp. 2d 1080 (N.D. Cal. 2008) ...............................................................................10

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

*Hatahley v. United States*,
    351 U.S. 173 (1956)..........................................................................................................27

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ........................................................................................12

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) .....................................................................1, 7, 9

*Lee v. United States*,
    CV 19-08051-PCT-DLR, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020)....................29, 30

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012)............................................................................................29

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) .......................................................................................7, 8

*Loumiet v. United States*,
    828 F.3d 935 (D.C. Cir. 2016) ...................................................................................20, 22

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*,
    241 F.3d 1208 (9th Cir. 2001) ...................................................................................23, 24

*Martinez v. United States*,
    No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July 10, 2018) .........................................................................................................................28

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
    302 F. Supp. 3d 1149 (S.D. Cal. 2018)......................................................................18, 23

*Ms. L. v. U.S Immigr. & Customs Enf't*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018)......................................................5, 18, 19, 27

*Nunez Euceda v. United States*,
    No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021)............. *passim*

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ...............................................................................21, 22, 30

*O'Toole v. United States*,
    295 F.3d 1029 (9th Cir. 2002) .......................................................................................14

*Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ...........................................................................19

*Peterson v. Martinez*,
    No. 3:19-cv-01447-WHO, 2020 WL 999832 (N.D. Cal. Mar. 2, 2020) ...............................22

*Plascencia v. United States*,
    No. EDCV 17-02515 JGB (SPx), 2018 WL 6133713, at *9 (C.D. Cal. May 25,
    2018) ...........................................................................................................................17

*Prescott v. United States*,
    973 F.2d 696 (9th Cir. 1992) ...................................................................................15, 27

*Rosenbaum v. Washoe Cty.*,
    663 F.3d 1071 (9th Cir. 2011) ......................................................................................17

*Rowen v. Soundview Commc'ns, Inc.*,
    No. 14-cv-05530-WHO, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ..........................12

*Sandoval v. Cty. of San Diego*,
    985 F.3d 657 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 711 (2021)..............................22

*Sook Young Hong v. Napolitano*,
    772 F. Supp. 2d 1270 (D. Haw. 2011) .........................................................................24

*SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*,
    No. CV 09-0291 JSW, 2009 WL 981233 (N.D. Cal. Apr. 13, 2009)............................10

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ........................................................................15

*United States v. Gaubert*,
    499 U.S. 315 (1991)................................................................................................17, 22

*United States v. Mitchell*,
    445 U.S. 535 (1980)......................................................................................................14

*United States v. Muniz*,
    374 U.S. 150 (1963)......................................................................................................27

*W.S.R. v. Sessions*,
    318 F. Supp. 3d 1116 (N.D. Ill. 2018) ..........................................................................23

*Walters v. Famous Transps., Inc.*,
    488 F. Supp. 3d 930 (N.D. Cal. 2020) ...........................................................7, 13, 14

*Welch v. United States*,
    409 F.3d 646 (4th Cir. 2005) ..................................................................................25, 26

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..........................................................................9

*Williams v. Robert Half Int'l Inc.*,
    No. 4:20-CV-03989-KAW, 2020 WL 12655622 (N.D. Cal. Sept. 18, 2020) ..............13

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

*Xue Lu v. Powell,*
 621 F.3d 944 (9th Cir. 2010) ............................................................29

**State Cases**

*Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner,*
 745 P.2d 611 (Ariz. Ct. App. 1987) ...................................................12

*Ford v. Revlon, Inc.,*
 734 P.2d 580 (Ariz. 1987) ..................................................................12

*Pankratz v. Willis,*
 744 P. 2d 1182 (Ariz. Ct. App. 1987) ................................................28

**Federal Statutes**

8 U.S.C. § 1232(b)(3) ...............................................................................26

28 U.S.C. § 1404(a) ....................................................................................7

28 U.S.C. § 2680(a) ..................................................................................27

Federal Tort Claims Act................................................................. *passim*

**Constitutional Provisions**

Fifth Amendment .................................................................................18, 19

Due Process Clause ....................................................................................5

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

## I.     INTRODUCTION

Plaintiffs are three family pairs—three parents and their children (aged 6, 11, and 13 at the time)—that were forcibly separated by immigration officials who treated them with deliberate cruelty and disregard. Plaintiffs' well-supported allegations, which must be taken as true, include that the Government's purpose in separating them was to cause them so much emotional distress that they would voluntarily give up their asylum claims and, further, to generate media publicity so frightening that other families would decide not to seek asylum in the United States. The Government's admitted practice of separating children from their families at the United States-Mexico border caused them immense suffering—as it was intended to. As a result, they bring suit under the Federal Tort Claims Act ("FTCA"), alleging claims under Arizona law.

In moving to transfer this case, or alternatively to dismiss the Complaint, the Government's moving papers ignore—or outright misstate—the relevant legal standards and mischaracterize Plaintiffs' claims. The Court should reject the Government's efforts to inject distractions and allow Plaintiffs claims—as Plaintiffs pled them—to proceed.

The Government's Transfer Motion fails to acknowledge—let alone grapple with—clear Ninth Circuit law that resident plaintiffs receive substantial deference in their selection of a forum. Only if the Government makes a "strong showing"[1] that the balance of factors "clearly favors transfer"[2] can the Court grant its motion. The Government cannot meet that standard. Courts of this District require a party seeking transfer to identify the witnesses that would be inconvenienced absent a transfer and to describe what testimony they would provide. The Government fails to identify even one trial witness. If anything, litigating in this District is more convenient because the only witnesses either party has identified (the Plaintiffs) reside here. Furthermore, even if the Government could identify Arizona-based trial witnesses, they would likely be the Government's employees, whose convenience is not relevant to the analysis. Moreover, the Government has not explained why transfer would serve the interests of justice. The relevant factors favor denying the Motion because Arizona's courts are substantially more

---

[1] *Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 710 (N.D. Cal. 2020).

[2] *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

1818362

congested than courts in this District and because this case does not present any novel issues of Arizona law. The Government's transfer arguments lack even a modicum of merit.

The Motion to Dismiss also fails. The Government never argues that Plaintiffs fail to state a claim under Arizona law; indeed, the Government concedes that Plaintiffs' separations were a "human tragedy." Instead, the Government asserts Plaintiffs' claims are not actionable under the FTCA. As the Government acknowledges, district courts within this Circuit have already rejected these arguments. *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996–97 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) ("*C.M. I*"); *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021). The Government first asserts that it is immune from liability because of the FTCA's "discretionary function" and "due care" exceptions ("DFE" and "DCE," respectively). But neither exception applies. It's black letter law that, because government officials lack discretion to violate the Constitution, the DFE cannot shield unconstitutional conduct from liability. And there is no doubt that Plaintiffs' forcible, prolonged separation violated the Constitution. As courts in the Southern and Central Districts of California, the District of Arizona, and the District of the District of Columbia have concluded, the family-separation practice at issue "shocks the conscience," serves no legitimate government purpose, and violates due process. The DFE therefore does not bar Plaintiffs' claims.

Neither does the DCE. That exception applies only where the Government is carrying out a duty imposed by statute or regulation. But the Government abandoned the challenged practice in 2018, and the Government's opening papers even state that "President Biden took action to undo the policies that led to Plaintiffs' separation." Mot. at 9:5-6. How could President Biden have done that if the separation was required by statute or regulation? The answer is that the separations were not mandated by statute or regulation and the DCE does not apply.

Next, the Government argues that Plaintiffs' claims do not satisfy the FTCA's private analogue requirement. FTCA actions are available where the United States, if a private person, would be liable. The Government argues that, because only it can enforce immigration laws, there is no private-person analogue for its tortious separation of the Plaintiff families. But the

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

Government confuses context with conduct. The issue is not whether private individuals could operate in a context similar to the government. Rather, the question is whether private individuals could be held liable in tort for analogous conduct. Here, that conduct is not enforcing immigration laws, it is forcibly separating families and cruelly prolonging their separation. As courts have already determined, private individuals are liable for such conduct under Arizona law.

Finally, the Government asks the Court to dismiss Plaintiffs' claims on the grounds that there can be no FTCA liability where there are joint tortfeasors, calling such litigation "systemic." There is, however, no such rule. The only cases the Government cites pertain to the availability of tort defenses, not the sovereign-immunity issue, and are thus inapposite.

Beyond these clear legal defects, the Motion to Dismiss further suffers from the Government's insistence on mischaracterizing Plaintiffs' claims. To argue the various FTCA rules discussed above, the Government repeatedly cites cases about its discretion to detain immigrants and to prosecute. But general detention or prosecutorial authority are not at issue here. Rather, Plaintiffs, who are masters of their complaint, challenge how and why federal officials tore, and kept, their families apart. Plaintiffs' allegations—which must be taken as true—establish that federal officials engaged in this conduct to inflict emotional distress on Plaintiffs, to get them to abandon legitimate legal claims to asylum, and to leverage Plaintiffs' suffering to deter other people from immigrating to this country. This cruelty was a feature, not a bug, of the Government's plan. As several other courts have determined, the Government's conduct is actionable under the FTCA. This Court should reach the same conclusion as those courts and deny the Motion to Dismiss.

## II.   FACTUAL ALLEGATIONS

### A.   The Government's family-separation practices

Before 2017, when federal immigration officials apprehended parents with their children, the parents and children were detained together (if at all). Compl. ¶ 21. In 2017, the Government changed tack and began considering separating detained immigrant parents from their children. *Id.* ¶ 22-23. The purpose was to deter people from seeking asylum in the United States. *Id.* ¶ 22.

The Government piloted its family-separation program in Texas in 2017. *Id.* ¶¶ 24-30.

Both the U.S. Attorney for the Western District of Texas and the federal magistrate judge who presided over many criminal prosecutions related to the Texas pilot program criticized the program, including by criticizing the Government's haphazard tracking of families (so that parents and children could remain in contact and eventually be reunified) and by noting the severe emotional toll that separated families faced. *Id.* ¶¶ 31-33, 37.

After the pilot program concluded, federal officials continued to develop a broader family-separation program. The officials responsible for the program's development, including the Counsellor to the Attorney General, were contemporaneously aware of the criticism that the U.S. Attorney for the Western District of Texas and the federal magistrate judge had made about the Texas pilot. *Id.* at ¶ 32. These officials also knew that prior administrations had rejected family separations as unduly traumatizing and detrimental to the immigrant families and, in particular, their children. *Id.* ¶¶ 34-35. Government officials responsible for managing the care and custody of children separated from their parents communicated to supervisors that family separations are "inconsistent" with the Government's "legal requirement to act in the best interest of the child." *Id.* ¶ 38. The American Academic of Pediatrics also directly warned the Government that family separations devastate family relationships. *Id.* ¶ 39.

In April 2018, the Government brought its family-separation practice to the entire border. As a part of this effort, the Department of Justice issued a policy ("Zero-Tolerance Policy") that targeted immigrant parents apprehended with their children for prosecution. *Id.* ¶ 45. In adopting the Zero-Tolerance Policy, the Government's goal was to prosecute parents traveling with children for misdemeanor border entry as a means to separate the families.

Government officials believed that such family separations would both deter immigration generally and also pressure separated families into dropping their asylum claims. *Id.* ¶¶ 2, 42-51. The Government's practices separated thousands of families while the Zero-Tolerance Policy was in place. But the Zero-Tolerance Policy itself did not cause, and cannot explain, the scope and horror of the separations that immigrant families endured. The Government separated families where the parents were never prosecuted, as happened to two of the Plaintiff families here. *Id.* ¶¶ 54, 117, 170. And even where the parent was prosecuted, the Government kept the families

separated even after the parent served a cursory sentence like Plaintiff Erendira C. M.'s three-day, "time served" sentence for misdemeanor "illegal entry." As Plaintiffs' experiences illustrate, parents were separated from their children for months, oftentimes without knowing anything about where their children were, and with the children thinking they would never see their parents again. *See infra* at 6-7. Nothing in the Zero-Tolerance Policy required, or even plausibly explains, the callousness and cruelty with which government agents treated the Plaintiffs.

In June 2018, a district court in the Southern District of California enjoined the Government from separating families absent a finding of parental unfitness, even where the parent had been prosecuted for misdemeanor entry under the Zero-Tolerance Policy. Compl. ¶ 60. In so doing, the district court determined that the class action plaintiffs who challenged the Government's family-separation practices were likely to succeed in showing that the practice violates the Due Process Clause of the U.S. Constitution.[3] *Id.*

### B. The Plaintiff families' separations

Plaintiffs are three parent-children pairs whom federal agents separated while those pairs were in the custody of immigration officials in May 2018. All three families came to the United States to seek asylum. Compl. ¶¶ 68, 118, 153. Plaintiffs were initially detained together in filthy, overcrowded cells controlled by the Border Patrol. *Id.* ¶¶ 72-73, 122-123. Some Plaintiffs were told by immigration officials that they would be separated or were otherwise verbally harassed. *Id.* ¶¶ 121, 155. Some Plaintiffs were forced to witness other family separations, which increased their anxiety. *Id.* ¶ 124-125. Eventually, all Plaintiffs were separated. Compl. ¶¶ 75-76, 126-128, 158-160. This is how Plaintiffs Erendira C. M. and Yasmin M. C. experienced their separation:

> Border Patrol agents came to the cell and called out their names. The agents ordered Erendira and Yasmin out of the cell. . . . The Border Patrol agents demanded that the children in the room form a line. The government agents put Yasmin in the line. Erendira asked a female Border Patrol agent leading the line where the government was taking the children. As before, the agent told Erendira, *no sé*—"I don't know." The agent began leading the line of children out of the room. Many of the parents in the room pressed forward, trying to hug and protect their children. Border Patrol agents restrained them. When Erendira, too, tried to grab ahold of her daughter, two Border Patrol agents physically held her back from Yasmin. Both Erendira and six-year-old Yasmin were sobbing as Border Patrol

---

[3] *Ms. L. v. U.S Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145-46 (S.D. Cal. 2018) ("*Ms. L. I*").

agents forced Yasmin to leave her mother behind. Border Patrol agents then marched Erendira back to the holding cell where she had previously been detained. . . . Erendira tried to speak with other mothers in an effort to figure out what was happening to her and her daughter, but the detained mothers' crying was so sustained that, for the remaining time that Erendira was confined in the holding cell, she was unable to have a conversation with another person.

*Id.* ¶ 126-128. Although details vary by family, Plaintiffs were given no notice of what was happening and no information about what would happen to their loved ones, despite Plaintiffs' frequent and frantic efforts to get this basic information from their jailers. Compl. ¶¶ 75-79, 80, 82, 124-129, 133, 165-166, 178. Plaintiffs Erendira and Joshua are native speakers of Mam, an indigenous language, and speak only some Spanish, however, the Government communicated with them only in Spanish and English, which they also did not speak. Compl. ¶¶ 129, 137, 157, 176. Government officials harassed Plaintiffs and informed at least one parent that the only way to get information about his son was to agree to deportation. Compl. ¶¶ 82, 83, 85.

After being forcibly separated from their parents, the Plaintiff children were placed in the custody of the Office of Refugee Resettlement ("ORR"), which takes custody of *un*accompanied children. Erendira C. M. spent three days in criminal custody after a misdemeanor conviction for illegal entry into the United States; otherwise, all parent Plaintiffs were detained by Border Patrol and another Department of Homeland Security ("DHS") jailer, Immigration and Customs Enforcement. Plaintiffs were held apart for weeks, during which time federal agents failed to provide basic information about their family members' whereabouts. *E.g.*, Compl. ¶¶ 89, 140.

Initially, Plaintiffs were prohibited from communicating with each other. Compl. ¶¶ 89, 133, 178. Eventually, the Government allowed phone calls, though these were infrequent and of short duration, and one set of Plaintiffs was prohibited from communicating in their native language. Compl. ¶¶ 99, 141, 184. While detained, Plaintiffs suffered various harms, including a sexual assault suffered by one child Plaintiff, *id.* ¶ 100-105; serious medical issues suffered by multiple Plaintiffs, *id.* ¶¶ 87-88, 92-93, 169; and severe emotional distress stemming from the separations, *id.* ¶¶ 94, 99, 136, 141, 168. The parents feared that they would be deported, while their children would remain with strangers in the United States. Compl. ¶¶ 85, 134, 138, 168.

Plaintiffs were ultimately reunited around the time that the federal court enjoined the

Government's family-separation practices. Plaintiffs continue to suffer prolonged effects related to their forcible separation at the hands of federal agents. *Id.* ¶¶ 111-116, 150-152, 194-196.

## III.    THE GOVERNMENT FAILS TO SHOW THAT TRANSFER IS APPROPRIATE

As the Government admits, it bears the burden of establishing that transfer is appropriate. Mot. at 10. But it fails to mention that a "great weight is generally accorded plaintiff's choice of forum," *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), that a "defendant must make a ***strong showing*** of inconvenience to warrant upsetting the plaintiff's choice of forum," *Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 710 (N.D. Cal. 2020) (emphasis added), or that "[t]he burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience ***clearly*** favors transfer," *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)) (emphasis added). Because the Government cannot make the required "strong showing" that the relevant factors "clearly favor[]" transfer, its Motion must be denied.

### A.    Legal standard

Plaintiffs do not dispute that venue could lie in Arizona. But the Government must also show that transfer would be for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Here, courts consider a "non-exclusive" list of factors. *Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 936 n.4 (N.D. Cal. 2020). While the Government cites a list of factors developed in a contract case with a forum-selection clause, *see* Mot. at 10 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)), Northern District courts often articulate this analysis:

> Relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Walters*, 488 F. Supp. 3d at 936 (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) and *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). "A motion to transfer should not merely shift the inconvenience from the moving party to the opposing party." *Chen*, 472 F. Supp. 3d at 708.

1818362

## B. Plaintiffs' choice of venue is entitled to great deference

The Ninth Circuit has made clear that a "great weight is generally accorded plaintiff's choice of forum." *Lou*, 834 F.2d at 739. Exceptions to this rule are limited, such as where the parties have agreed to a forum-selection clause, in a class action, or where plaintiffs are forum shopping. None of those factors are present here: there is no contract; this is an action brought by individuals for themselves and their children only; and Plaintiffs are residents of the forum. Indeed, a "plaintiff's choice of forum is especially given deference where the plaintiff is a resident of the forum in which the action is brought." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1096 (D. Or. 2016). This rule protects plaintiffs from having to litigate and, in particular from having to travel to testify, in some far-away forum. Here, all six Plaintiffs are percipient witnesses to both the separation that the Government enforced upon them ***and*** to the harms that flowed from that separation. They intend to testify at trial.[4] And, as Plaintiffs explain below, Plaintiffs are the only witnesses who have been identified in this action, meaning that all presently-known potential witnesses are located within this District.

Courts routinely consider a litigant's disability, age, or illness when resolving a transfer motion.[5] Here, half of the Plaintiffs are minor children who will experience the burdens of traveling to a trial or a deposition much differently than an adult.[6] It's one thing for a child to testify at a trial when she can return home at night. It's another thing entirely for her to do so while based in unfamiliar, temporary lodging. Trial in Arizona would also be more disruptive to the children Plaintiffs' educations than if trial were held in Oakland. *See* Plfs. Decls. at ¶¶ 3, 6.

These Plaintiffs' choice of venue is further entitled to deference because they are low-income individuals bringing an action against the Government. *See* Plfs. Decls. at ¶¶ 4-5. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a

---

[4] See the accompanying declarations of Wilber P. G., Erendira C. M. and Joshua G. G. in Support of Plaintiffs' Opposition to Motions to Transfer and Dismiss (collectively, "Plfs. Decls.") at ¶ 2.

[5] *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153 (D.D.C. 2008) (plaintiff's disability counseled against transfer); *Corbello v. Devito*, No. 1:07CV985, 2008 WL 2097435, *6 (E.D. Tex. May 19, 2008) (80-year-old defendant entitled to transfer over objection of in-forum plaintiff).

[6] *Cf.* ABA Mod. R. 1.14 cmts. 4 & 7 ("Client with Diminished Capacity" rule encompasses representation of minors).

1818362

large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). This same logic applies to a case brought by six low-income individuals against the Government. While Plaintiffs have pro bono counsel, there are hard costs—such as travel, lodging, and food—that go with attending a trial in another state, and the Government is better positioned to absorb those costs than are Plaintiffs.

A plaintiff's choice of forum is not just one factor among many; it is ***the*** factor that is considered dispositive unless the defendant makes a "clear" showing that transfer is necessary. *Lax*, 65 F. Supp. 3d at 776. As Plaintiffs show in the following discussion of the balancing test, the Government fails to overcome this presumption.

### C. Because the only witnesses identified in this case reside in this District, the convenience-of-the-witnesses analysis favors Plaintiffs

Plaintiffs, witnesses to the mistreatment they suffered, live in this District. By contrast, the Government fails to actually identify any witnesses in Arizona for whom trial there would be more convenient. The Government further fails to explain why its overstated observation that some conduct at issue occurred in Arizona is relevant; indeed, it is not.

### 1. The Government fails to show that Arizona is a more convenient forum for even a single witness

The thrust of the Government's Transfer Motion is its unsupported argument that Government witnesses are located in Arizona. This is mere attorney say-so, and the Court should reject it. A court of this District recently "agree[d] with plaintiff that, typically, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020).[7] While the Government submitted three declarations to support its Transfer Motion, the declarants—one of whom is located in Washington, D.C.—are just custodians of records. The Government does not identify these declarants as trial witnesses; indeed, the Government fails to identify even a single

---

[7] This is a general rule in this District. *E.g.*, *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001).

1818362

trial witnesses, let alone to "explain their testimony" or "its relevance." *Fitbit*, 336 F.R.D. at 587. And this failure occurs even though the Government's declarants can purportedly pinpoint the exact location of Plaintiffs throughout their time in Government custody and so, presumably, know which Government employees were present when Plaintiffs were separated and detained. As in *Fitbit*, "Defendant[] ha[s] made no attempt to identify witnesses with any particularity," which militates against transfer. *Id.*

Even if the Government has no obligation to identify specific witnesses (and it does), its contention that "most" of its witnesses "are in the District of Arizona," Mot. at 15, misses the mark. To start, "[t]he Court . . . discounts any inconvenience to the parties' employees, whom the parties can compel to testify." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008). And, even if employee convenience were a proper part of the inquiry, the Government cannot identify any witness who would be inconvenienced. A substantial portion of Plaintiffs' allegations relate to decisions that were made in Washington D.C. or elsewhere in the United States. *E.g.*, Compl. ¶¶ 21-53. There is no reason why Arizona would be a more convenient forum for witnesses based in Washington. As for the Government officials who separated Plaintiffs in Arizona (officials the Government fails to identify), there is no evidence that these people remain in Arizona; for all the Court knows, these officials may be presently assigned to Border Patrol posts in Texas or Florida or Vermont, if they remain in the Government's service at all. Furthermore, the Government's reference to the burden of "site visits," Mot. at 15, is speculative, and its references to "flying back and forth from California to Arizona" and "attorney time" must be discounted because the "[c]onvenience of . . . counsel bears no weight in the analysis of convenience of the witnesses and parties." *SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*, No. CV 09-0291 JSW, 2009 WL 981233, at *3 (N.D. Cal. Apr. 13, 2009).[8] Further, to "evaluate witness convenience, courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (quotation marks omitted). Even if the Government had identified some number

---

[8] If the convenience of counsel was a relevant part of the analysis, it would favor Plaintiffs. The Government can be represented by the local U.S. Attorneys' Office wherever it litigates. Plaintiffs' pro bono counsel are based in San Francisco, where their firm's sole office is located.

1818362

of Arizona-based witnesses, it fails to explain how the nature and quality of their testimony outweighs Plaintiffs'.

The Government bears the burden of making a "strong showing" that Arizona is more convenient than California. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). It must do so by identifying witnesses and their anticipated testimony with particularity. *Fitbit*, 336 F.R.D. at 587. The Government fails this test. At the end, there are only six identified people who are reasonably expected to testify—the Plaintiffs, all of whom live in this District.

### 2. Actionable conduct, and harms, occurred in several states

While it is not contested that many of the operative facts occurred in Arizona, the Government repeats this fact without explaining its relevance. This contention, which the Government overstates, is irrelevant to the analysis.

Arizona is not the only state where actionable conduct occurred. Plaintiff Yasmin M. C. suffered harm in New York, where she was detained and suffered depression as a consequence of her separation from her mother. Compl. ¶¶ 144-146. Plaintiff Erendira C. M. suffered harm in Georgia, where she was detained and prohibited from speaking to her daughter except for brief periods of time. Compl. ¶ 141. Plaintiff Joshua was in Louisiana when the Government prohibited him from speaking to his son in their native language. Compl. ¶¶ 181, 184; *see* ECF No. 32 at ¶ 11. Arizona is not the only state where the Government enforced separation on Plaintiffs.

Furthermore, the Government misstates the Complaint by suggesting that Plaintiffs make no allegations related to California. Mot. at 2, 12-13. Plaintiffs make detailed allegations about the harms they suffered in California:

- In California, Wilfredo Baltazar P. E. struggled to make eye contact; suffered from separation anxiety; and needed "psychological support and therapy." Compl. ¶ 114.
- In California, Yasmin M. C. has cried in her sleep, refused to go to school, and attended some counseling. Compl. ¶¶ 150-152.
- In California, Karl G. G. has displayed symptoms of separation anxiety and has had trouble sleeping. Compl. ¶ 194-196.

1818362

While it is not necessary to establish venue, Plaintiffs allege a nexus between the Government's conduct and California.

### D.    The remaining factors generally favor Plaintiffs or are neutral

The Government's arguments about the remaining "factors" are easily dispatched; indeed, if anything, those factors favor Plaintiffs.

*Jones*' "factor one" about agreements isn't relevant here, where the parties have no contract. Mot. at 13. As Plaintiffs explain above, Arizona is one site of many where actionable conduct or harms occurred, and there is no identified witness who resides in Arizona.

*Jones*' "factor two" is about courts' familiarity with the law. The Government argues that Arizona judges' familiarity with Arizona law supports transfer. Mot. at 13-14. But this is a red herring. The Government's Motion to Dismiss does not argue that Plaintiffs fail to state a claim under Arizona law. Instead, the Government argues that Plaintiffs' claims are not cognizable under the FTCA. This Court is equally capable of resolving that federal question as is an Arizona federal court. Moreover, to the extent the case might turn on Arizona tort law, that is not a reason to transfer. Contrary to the Government's out-of-District citations, courts in this District have observed that "federal judges routinely apply the law of other states than the one in which they sit."[9] In any event, the state law at issue is not complicated. In relevant respects, Arizona is a Restatement state.[10] There is ample authority to guide this Court's resolution of any issues of Arizona law. This factor is neutral.

The next three *Jones* factors—deference to a plaintiff's choice of forum ("factor three"), parties' contacts with the forum ("factor four"), and contacts between the cause of action and the forum ("factor five")—all favor Plaintiffs. Plaintiffs provide the relevant analysis above where they discuss the substantial deference accorded to a plaintiff's forum choice; how the conduct at issue was spread across several states; how Plaintiffs continue to experience harm in California;

---

[9] *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1136 (N.D. Cal. 2019); *accord Rowen v. Soundview Commc'ns, Inc.*, No. 14-cv-05530-WHO, 2015 WL 899294, at *7 (N.D. Cal. Mar. 2, 2015).

[10] *See Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (Arizona follows Restatement for intentional infliction of emotional distress, which is Count One here); *Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*, 745 P.2d 611, 613 (Ariz. Ct. App. 1987) ("Arizona courts will look to the Restatement in the absence of Arizona authority to the contrary.").

and how the Government fails to establish that any witnesses continue to reside in Arizona.

*Jones*' "factor six" relates to the comparative cost of litigating in each forum. The Government argues that litigation in Arizona will be more economical and complains, for example, about "meeting with witnesses" in Arizona. Mot. at 15. Presumably, the Government is concerned about California-based counsel for the Government having to communicate with government authorities in Arizona. This is not a credible argument. The Government has already produced three declarations from out-of-state witnesses, demonstrating that counsel can coordinate the Government's defense from this District and, as previously noted, convenience of counsel is disregarded. The Government cites older cases about litigation costs and proximity to evidence. But this Court has previously "f[ound] that, in the digital age, the access to records is neutral given the portability of documents." *Williams v. Robert Half Int'l Inc.*, No. 4:20-CV-03989-KAW, 2020 WL 12655622, at *3 (N.D. Cal. Sept. 18, 2020). Furthermore, we are squarely in the age of the Zoom deposition, and Plaintiffs' counsel will work with the Government's counsel to assess the feasibility of remote depositions where that is practicable.

*Jones*' "factor seven" is about the availability of compulsory service. Again, the Government fails to identify a single witness, let alone an Arizona-based witness, who will refuse to testify at trial. As support for this argument, the Government notes that some of the people involved in Plaintiffs' detention are Government contractors, rather than Government employees. The Government does not claim that it cannot control its contractors, or that its contractors will refuse to comply with the discovery process. As the Government's own case notes, "[a]bsent identification of any witnesses who will testify or are unwilling to testify, the availability of compulsory processes in each district is irrelevant." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, No. CV 17-6491 FMO (JCx), 2018 WL 7297829, at *3 (C.D. Cal. Sept. 30, 2018).

### E.    The public-interest factors unambiguously favor litigating in this District

The typical public-interest factor that courts consider is the relative congestion of the dockets in the transferor and transferee districts. *Walters*, 488 F. Supp. 3d at 936. The Government is silent on this point, and for good reason. The average case in the District of

1818362

Arizona takes 20.9 months to complete, compared to 6.3 in this District. It takes about three years to bring a case to trial in the District of Arizona; it takes about two years in this District.[11] Transfer would mean even further delay in a case already delayed by the Government's repeated requests for extensions. And while the Government acknowledges that FTCA cases involving family separations are pending in the District of Arizona (where they have survived a motion to dismiss), *see Walters*, 488 F. Supp. 3d at 936, the Government does not assert that consolidating litigation there would be practical or support a transfer.

The Transfer Motion concludes by arguing that the District of Arizona has an interest in protecting people located there from "alleged government wrongdoing." Mot. at 16. But the Government misreads its own case. In *Canal A*, Florida-based plaintiffs sued the Government in Los Angeles because the Government wrongdoers were in Los Angeles. The Los Angeles judge sent the case to Florida so that the Florida court could protect its own residents. *See Canal A*, 2018 WL 7297829, at *4 ("[T]he outcome of this case will principally affect residents of Florida."). By that reasoning, this case should remain here, in the District where Plaintiffs reside.

## IV. BECAUSE PLAINTIFFS' TORT CLAIMS ARE COGNIZABLE UNDER THE FTCA, THE MOTION TO DISMISS SHOULD BE DENIED

### A. Applicable law and legal standard

Plaintiffs' causes of action arise under the FTCA. While the Government is generally immune from liability absent its consent, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), the FTCA provides that consent "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Fazaga v. FBI*, 965 F.3d 1015, 1064 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 2720 (2021) (quoting 28 U.S.C. § 1346(b)(1)).

The FTCA's waiver of sovereign immunity contains a number of exceptions. Because the FTCA is a remedial statute, those exceptions must be read narrowly, *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002), and the Government bears the burden of proving they apply.

---

[11] Declaration of Travis Silva in support of Plaintiffs' Opposition to Motions to Transfer and Dismiss, Ex. A.

*Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)).

On a motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). The "'complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017) (quoting *Braden v. Wal–Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009)). Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**B.    The Government's Motion to Dismiss mischaracterizes Plaintiffs' claims**

All of the Government's arguments for dismissal suffer from a common defect: they are directed at claims the Government might wish Plaintiffs had pled, but not the claims Plaintiffs have actually pled. The Government admits that it had a "prior practice of separating children from their families at the United States-Mexico border" and further admits that this practice constituted a "human tragedy." Mot. at 1. Plaintiffs allege causes of action arising out of this specific "prior practice" of the Defendant, which resulted in the forcible and prolonged separation of Plaintiff parents from their children by Government officials. Compl. ¶¶ 1-5, 67. But instead of arguing that Plaintiffs' allegations about the separations fail to state a claim, the Government directs its Motion to Dismiss at straw men by defending general governmental conduct that Plaintiffs aren't challenging. Thus, for example, the Government argues that Plaintiffs' claims fall within the DFE because it has "broad discretion" to "enforce the Nation's criminal laws," "decide whether to prosecute a case," and "arrange for appropriate places of detention." Mot. at 20. In the same vein, it contends that the DCE encompasses Plaintiffs' claims because there was a statutory requirement to "transfer the custody of [Plaintiff] children to the care of ORR not later than 72 hours after determining that there [wa]s no parent available to care for them." *Id.* at 26 (internal quotation marks and citation omitted). The Government also asserts that Plaintiffs cannot make the required showing that a private individual, under like circumstances, would be liable for the

15

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

conduct described in the Complaint "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations." *Id.* at 27.

But Plaintiffs aren't challenging any of that general conduct. They are not arguing that there is anything inherently tortious about the Government enforcing its laws, making prosecution decisions, transferring custody of unaccompanied children in detention, or deciding where to house detainees. Instead, Plaintiffs are arguing that Government officials engaged in tortious conduct by forcibly separating Plaintiff parents from their children without explanation, by refusing to provide Plaintiff parents information about their children's whereabouts or well-being, then by continuing Plaintiffs' separated detention for a prolonged time, all in a manner designed to increase Plaintiffs' emotional distress. The arguments the Government advances in support of dismissal do not address that specific conduct. That is a fatal defect. It is Plaintiffs, not the Government, who are "masters of the complaint" and choose which claims to assert. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987). The Government cannot mold Plaintiffs' claims to fit its preferred defenses. It must craft its defenses to address the claims.

This isn't the Government's first attempt at this ploy. This Circuit's district courts have resolved three motions to dismiss FTCA cases addressing the Government's family-separation practice. In each, the Government argued that, because it has discretion over some immigration decisions, it necessarily had discretion to separate Plaintiff families without notice and to keep them separated for weeks. The Government has lost all three of those motions. In one of those cases, *A.P.F. v. United States*, the court specifically "reject[ed] the United States' re-categorization of Plaintiffs' factual allegations as standalone claims."492 F. Supp. 3d 989, 996–97 (D. Ariz. 2020). In another case, *C.M. v. United States*, the court observed that, "[t]o the extent the United States [was] ask[ing] the Court to parse the Complaint to assess whether claims with respect to individual factual allegations are barred, the Court [would] decline[] to do so." No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) ("*C.M. I*"); *see also Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) (denying motion to dismiss). The result here should be no different.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

## C. The discretionary function exception does not apply here

The Government first argues that its actions are protected by the DFE, which bars claims that (1) "involve an element of judgement or choice," and (2) are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). But the DFE "does not shield unconstitutional government conduct." *A.P.F.*, 492 F. Supp. 3d at 996 (citing *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000)). The government must make both showings. It can make neither.

### 1. Separating the Plaintiff families was not a discretionary act because it violated the Constitution

The Government's argument fails as a threshold matter because the forcible, prolonged separations that Plaintiffs challenge here were unlawful and thus non-discretionary. "In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004). Because "federal officials do not possess discretion to violate constitutional rights, the discretionary function exception does not apply" where constitutional violations occur. *Id.* (quotations and citations omitted).[12] The Government's forcible and prolonged separation of Plaintiff families thus cannot qualify as discretionary for purposes of the DFE because Plaintiffs have plausibly alleged that it was unconstitutional.[13]

The Government cannot reasonably argue otherwise. The "substantive due process right to family integrity . . . is well established." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). Where substantive due process applies to the particular circumstances alleged, as here, the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

The allegations here easily meet this standard. Plaintiffs came to the United States seeking

---

[12] *E.g.*, *Plascencia v. United States*, No. EDCV 17-02515 JGB (SPx), 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018) ("[A]t this stage of the proceeding, the Court cannot determine whether a constitutional violation occurred and determines . . . the discretionary function exception does not apply.") (denying in relevant part motion to dismiss FTCA/IIED claim challenging ICE detention).

[13] It also violated a host of other legal mandates—a fact the Government never disputes. *See* Compl. ¶¶ 199-204.

17

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

asylum. Compl. ¶¶ 10-12. After they arrived, government agents ripped Plaintiff children out of their parents' arms; taunted Plaintiff parents, leading them to believe that they would never see their children again; and placed Plaintiffs in cells where they were forced to watch other families being forcibly separated, thus reinforcing the traumas they sustained. *See, e.g.* Compl. ¶¶ 75, 76, 82, 85, 96, 124-128, 134, 135, 159. And the Government's purpose for doing so was to dissuade Plaintiffs from pursuing their asylum claims—claims that Plaintiffs have a legal right to present— and to drum up publicity that might discourage others from seeking asylum. Compl. ¶ 2.

> Upon considering these same practices, the Southern District of California held:

> These allegations sufficiently describe government conduct that arbitrarily tears at the sacred bond between parent and child, and is emblematic of the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" . . . Such conduct, if true, as it is assumed to be on the present motion, is brutal, offensive, and fails to comport with traditional notions of fair play and decency. At a minimum, the facts alleged are sufficient to show the government conduct at issue "shocks the conscience" and violates Plaintiffs' constitutional right to family integrity.

*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("*Ms. L. II*") (citation omitted).

Indeed, ***every court*** that has considered the constitutionality of the Government's past practice of separating families at the border has found that the practice is likely unconstitutional. As in *Ms. L. II*, in *Jacinto-Castanon de Nolascov v. U.S. Immigr. & Customs Enf't*, the court "easily conclude[d]" that plaintiffs were "likely to succeed on . . . their substantive due process claim that their continued separation . . . violate[d] their right to family integrity under the Fifth Amendment." 319 F. Supp. 3d 491, 499 (D.D.C. 2018). And, in *J.S.R. by and through J.S.G. v. Sessions*, which considered the same family-separation practice, even the Government "agree[d] that a constitutional violation occurred when the Government separated children from their parents." 330 F. Supp. 3d 731, 741 (D. Conn. 2018). The *Ms. L. I* court ultimately enjoined the Government's family-separation practice, holding that "a finding of likelihood of success" on the substantive due process claim was "assured" in that case. *Ms. L. I*, 310 F. Supp. 3d at 1145. Tellingly, the Government cannot identify a single case—from any jurisdiction—concluding that forcibly separating families in circumstances analogous to those alleged in the Complaint is

constitutional.

Similarly, ***every court*** that has weighed in on the issue has concluded that, because the Government's practice of forcibly separating families at the border was almost certainly unconstitutional, it cannot be shielded by the DFE.[14] Thus, in *C.M. I*, the court followed *Ms. L I*, and concluded that plaintiffs had "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception." 2020 WL 1698191, at *4. The *A.P.F.* court reached a similar conclusion, holding that, "[b]ecause government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs." 492 F. Supp. 3d at 996. And in *Nunez Euceda*, the court, also following *Ms. L. I*, concluded that plaintiff "ha[d] plausibly alleged that the government's Policy [of separating families at the border] violated his constitutional rights" and that, as a result, "the discretionary function [exception] d[id] not bar [his] claims." 2021 WL 4895748, at *3.

The Government is asking this Court to break new ground. To hold that the DFE applies, the Court would need to conclude—at this early stage of the case, when the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor—either that the Government's separation of Plaintiff families was constitutional or that the DFE applies notwithstanding the likely unconstitutionality of that conduct. If this Court were to reach either conclusion, it would be the first. The uniform weight of authority in this Circuit—*Ms. L. I, C.M. I, A.P.F., and Nunez Escueda*—all hold that allegations of this type plausibly allege a constitutional violation. And the Ninth Circuit has long held that "[f]ederal officials do not possess discretion to violate constitutional rights." *Galvin*, 374 F.3d at 758.[15]

---

[14] The only court that has concluded the DFE applies to the Government's family-separation practice never considered whether the constitutionality of the practice made the DFE inapplicable. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 690 (S.D. Tex. 2020). The Government misleadingly tries to suggest otherwise by quoting a section of the order addressing whether the plaintiff could allege a Fifth Amendment claim for inadequate medical care under the FTCA. Mot. at 23-24 (quoting *Peña Arita*, 470 F. Supp. 3d at 689). Here, Plaintiffs do not assert a constitutional tort, as in a *Bivens* action. Rather, Plaintiffs note that—as the Ninth Circuit has held, *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004)—the fact that the challenged conduct was unconstitutional means that it necessarily falls outside the scope of the DFE.

[15] The First, Second, Third, Fourth, Fifth, Eighth, Ninth, and D.C. Circuits agree that the DFE does not shield government officials from FTCA liability when they exceed the scope of their

1818362

As noted above, the Government tries to distract from that obvious fact by mischaracterizing Plaintiffs' claims. It argues that its forcible and prolonged separation of Plaintiffs was discretionary because the Government has discretion "to enforce the Nation's criminal laws," "decide whether to prosecute a case," and "arrange for appropriate places of detention." Mot. at 20. These arguments are all red herrings. As the Government itself acknowledges, when deciding whether the DFE applies, the court "must first ask whether the *challenged conduct* involves an element of judgment or choice." *Id.* at 18 (emphasis added and quotation marks and citation omitted). Plaintiffs aren't challenging the Government's enforcement of criminal laws, prosecution decisions, or detention determinations. They are challenging government officials' forcible and prolonged separation of Plaintiff parents from their children, which was carried out with the intent to inflict emotional harm. That distinction is crucial because, while it is not inherently unconstitutional to enforce criminal laws, prosecute criminal suspects, or decide where to place detainees, it *was* unconstitutional to forcibly separate Plaintiff families, as numerous courts considering analogous circumstances have held. While the Government certainly has general discretion in how it enforces immigration law, its enforcement must comport with constitutional protections—and courts have determined that separating families in the manner alleged in the Complaint violates those protections. *See Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 501 ("While defendants have a legitimate interest in enforcing the immigration laws . . . nothing in federal law suggests that deterring immigration by indefinitely separating families . . . is a compelling or legitimate government objective."); *C.M. I*, 2020 WL 1698191, at *4 (concluding that "the United States was not enforcing federal law when it separated Plaintiffs").

## 2. Plaintiffs are not required to show their constitutional right to family integrity was clearly established

Recognizing that existing law does not support its position that the DFE applies, the Government tries to create entirely new law by urging the Court to hold that the Government has discretion to violate a constitutional right unless the right was "clearly-established" when the

constitutional authority. *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016).

1818362

violation occurred. Mot. at 24. That is a standard that courts apply when considering qualified immunity defenses in suits against government officials in their individual capacity,[16] not when considering the DFE in suits against the Government arising under the FTCA, and it is an improper standard to apply to FTCA litigation.

In the Ninth Circuit, the DFE does not apply where Plaintiffs' allegations, if taken as true, demonstrate that government officials violated their constitutional rights, even if the relevant constitutional rights were not "clearly established" at the time of the conduct. In *Galvin v. Hay*, the plaintiff brought both a *Bivens* claim against individual officers and a FTCA claim against the Government. The Ninth Circuit held that the defendant officials had violated constitutional rights, but were entitled to qualified immunity because the constitutional right was not clearly established. But, and in contrast, the Ninth Circuit also held that the DFE did not shield the Government from FTCA liability for that same conduct because the "defendants violated the Constitution" and "'government conduct cannot be discretionary if it violates a legal mandate.'" *Galvin*, 374 F.3d at 758 (quoting *Nurse*, 226 F.3d at 1002 & n.2).[17] Similarly, in *Nurse*, the Ninth Circuit reversed a district court's dismissal of FTCA claims even though it could "[]not determine at th[at] stage of the proceedings whether the acts of the . . . defendants violated the Constitution, and, if so, what specific constitutional mandates they violated." 226 F.3d at 1002. And while the court did not "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor," it held that the issue should be decided "as [a] case proceeds toward trial," not on a motion to dismiss, *id.* at 1002 & n.2 (concluding that the question of whether, and what provisions of, the Constitution had been violated were "not questions that can always be easily answered on a motion to dismiss"). Dismissing Plaintiffs' claims at this early stage would run afoul of these precedents.

Indeed, no court in any jurisdiction has ever used the "clearly established" standard when assessing whether the DFE applies, a point the Government's brief neglects to mention.[18] The

---

[16] The government cites qualified immunity cases without alerting the Court to their inapplicability here. *E.g.*, Mot. at 25:12 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[17] *Galvin* affirmed the dismissal of the FTCA claim on unrelated grounds not applicable here.

[18] To paper over this fact, the Government disingenuously asserts that the Supreme Court's

1818362

D.C. Circuit, for example, observed that it had "found no precedent in any circuit holding" that "principles similar to those that undergird qualified immunity should extend to preserve discretionary-function immunity for some unconstitutional acts." *Lomiet*, 828 F.3d at 946. And for good reason—the policy considerations that animated the "clearly established" standard in qualified immunity cases simply do not apply to FTCA claims. "[T]he premise of qualified immunity is that state officials should not be held liable" (by which the court means ***personally*** liable) "for money damages absent fair warning that their actions were unconstitutional," which is why constitutional rights must be "clearly established" before they are actionable. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 711 (2021). Otherwise, the "fear of personal monetary liability and harassing litigation [might] unduly inhibit officials in the discharge of their duties, to the detriment of the public interest." *Loumiet*, 828 F.3d at 946 (internal quotation marks omitted). But that premise is inapplicable here, where the Government, not individual officials, bears liability. Thus, there is no legal basis to apply qualified immunity standards to Plaintiffs' claims.

3. **Separating the Plaintiff families was not based on considerations of public policy**

Regardless of whether or not the Government's conduct qualified as discretionary—which it was not—the Government has failed to demonstrate that the forcible, prolonged separation of the Plaintiff families "implement[ed] social, economic or political policy considerations." *Nurse*, 226 F.3d at 1001. "It is not sufficient for the government merely to waive [sic] the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Peterson v. Martinez*, No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020). Because "the Government has the burden of proving the [DFE] applies . . . . [t]here must be reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was

_____

opinion in *United States v. Gaubert*, 499 U.S. 315 (1991), instructs Plaintiffs to "allege the violation of any constitutional provision with [a] requisite degree of specificity." Mot. at 24. *Gaubert* says no such thing. Indeed, the portion of *Gaubert* that the Government cites says nothing about pleading standards whatsoever, much less pleading standards applicable to "the violation of any constitutional provision" for FTCA claims. *Id.*; *see also Gaubert*, 499 U.S. at 322. In fact, the word "constitution" appears nowhere in the opinion.

policy-based or susceptible to policy analysis." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1216 (9th Cir. 2001).

The Government's separation of Plaintiffs was not based on legitimate social, economic, or political policy considerations. In general, there are very few legitimate reasons to forcibly separate parent from child. The "cruelty of . . . separation of a parent and child by the government" is only justified "in the most dreadful circumstances," such as when the parent is "unwilling or unfit" to care for the child—circumstances that are not present here. *D.J.C.V. v. U.S. Immigr. & Customs Enf't*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15, 2018). Unsurprisingly, courts that have evaluated the Government's practice of separating families at the border have been unable to discern any legitimate governmental objective the practice served. The *Ms. L. II* court, for example, concluded that separating families at the border was "emblematic of the exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective." *Ms. L. II*, 302 F. Supp. 3d at 1167 (internal quotation marks omitted). Tellingly, the Government's brief does not name a single policy objective that was served by the forcible and prolonged separation of Plaintiff families. That fact, alone, strongly suggests the separations do not satisfy the second prong of the DFE.[19]

Instead of clearly identifying which policy objectives Plaintiffs' separation purportedly served and why those objectives satisfy the second prong of the DFE, the Government vaguely asserts that it "spelled out the policies it sought to further" by separating Plaintiff families in "a series of Executive Branch directives." Mot. at 22. But those "directives" appear to concern prosecutorial and detention decisions (which is not the tortious conduct challenged here) rather than the Government's practice of separating families (which *is* the challenged conduct). *See id.* at 5. And the law of this Circuit does not permit courts to infer that those policy justifications

---

[19] *See W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1126 (N.D. Ill. 2018) ("Without any further explanation by the government on what objective is being served—and served legitimately—by separation, the government's insistence on keeping . . . boys from their fathers can only be deemed arbitrary and conscience shocking."); *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014) (government conduct was not susceptible to policy analysis because, among other things, "the Government ha[d] not offered any reason as to why the CBP Officers' actions . . . were justified by or susceptible to policy analysis").

1818362

apply to family separations. Instead, there must be support for that conclusion in the record. *Marlys Bear Med.*, 241 F.3d at 1216.

Other than that, the Government points to portions of the Complaint alleging that the Government's intent in separating Plaintiffs was to deter immigration. Mot. at 22. This is not a legitimate means to obtain that goal; "nothing in federal law suggests that deterring immigration by indefinitely separating families . . . is a compelling or legitimate government objective." *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 501–02.[20] The Government's proffered objective therefore cannot satisfy the DFE's second prong. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988) ("[T]he discretionary function exception insulates the Government from liability if the action challenged in the case involves the **permissible** exercise of policy judgment." (emphasis added)); *Davis v. United States*, No. EDCV 07-481-VAP (OPx), 2009 WL 10674302, at *3 (C.D. Cal. Sept. 4, 2009) ("Congress did not mean to shield from judicial fact finding the use of its employees' discretion to engage 'illegitimate means . . . to fulfill impermissible ends . . . .'" (quoting *Sabow v. U.S.*, 93 F.3d 1445, 1456 (9th Cir. 1996)).[21]

### D. The due care exception does not shield the Government from liability for Plaintiffs' claims

The Government's second attempt at convincing the Court to dismiss Plaintiffs' claims

---

[20] *See also Sook Young Hong v. Napolitano*, 772 F. Supp. 2d 1270, 1278 (D. Haw. 2011) ("keeping the families of immigrants united" is a goal of U.S. immigration law).

[21] The Government dedicates a section of its Motion to asking the Court to dismiss Plaintiffs' "claims concerning their detentions." Mot. at 22. But Plaintiffs have not alleged any independent claims concerning their detentions or conditions of confinement. So it is unclear what relief the Government is seeking. The Government has not moved to strike any of the allegations relating to confinement, presumably because Plaintiffs' allegations regarding conditions of confinement demonstrate, among other things, the harms resulting from Plaintiffs' separations. *See A.P.F.*, 492 F. Supp. 3d at 996–97 (observing that plaintiffs' "[a]llegations related to conditions of confinement" were "factual allegations primarily aimed at demonstrating the harm resulting from the separations"). The Government instead appears to ask the Court to issue an advisory opinion holding that some of the conduct alleged in the Complaint, if considered independently, might fall within the scope of one of the FTCA's exceptions. No procedural mechanism permits the Court to make such a holding. *Cf. Doe v. Napa Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 WL 4859978, at *2–3 (N.D. Cal. Apr. 24, 2018) (noting that "Defendants ha[d] not pointed to any authority demonstrating that it may attack portions of a single claim on a motion to dismiss" and "declin[ing] . . . to break Plaintiff's . . . claim apart and reframe it as separate claims"). Courts have refused to disassemble allegations in this manner when assessing FTCA claims concerning the Government's family-separation practice. *See A.P.F.*, 492 F. Supp. 3d at 996–97; *C.M. I*, 2020 WL 1698191, at *4.

concerns the DCE. That exception applies if (1) "a statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow", and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005).[22] The Government has failed to satisfy either prong of the DCE. Indeed, it does not address the second prong at all.

### 1. The Government was not executing a statute or regulation when it separated the Plaintiff families

There was no statute or regulation requiring the Government to separate Plaintiffs, and the Government does not even try to argue that there was. Nor could it. The Government has admitted it has stopped separating families in the circumstances alleged in the Complaint. *See* Mot. at 1. So that practice could not have been mandated by a statute or regulation, as every court that has addressed the question has concluded. *See Nunez Euceda,* 2021 WL 4895748, at *3–4; *A.P.F.*, 492 F. Supp. 3d at 995–96; *C.M. I*, 2020 WL 1698191, at *3.

Instead, the Government tries to alter the underlying rule by arguing that the DCE applies not only when a course of conduct is required by a statute or regulation, but also when the conduct is simply "authorized by statute or regulation." Mot. at 26. But that is not what *Welch* asks. Applying *Welch*, courts in this Circuit ask whether a statute or regulation **requires** Government officials to perform conduct when assessing a DFE defense. *E.g.*, *Nunez Euceda*, 2021 WL 4895748, at *3 (stating, en route to denying motion to dismiss FTCA/family-separation claim, that "[f]ollowing other courts in this circuit, the Court applies the two-prong test established by *Welch* . . . ."); *C.M. II*, 2020 WL 5232560, at *4 (assessing prevalence of *Welch*'s test and declining to certify denial of motion to dismiss for appeal); *A.P.F.*, 492 F. Supp. 3d at 995-96. The Government's argument is irrelevant to the proper analysis.

To justify departing from this settled law, the Government primarily relies on *Borquez v.*

---

[22] District courts throughout this Circuit apply the *Welch* test. *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560, at *4 (D. Ariz. July 6, 2020) ("*C.M. II*") denying motion for interlocutory appeal after Government failed to show a Circuit dispute regarding the test for deciding whether the DCE applies).

1818362

*United States*, 773 F.2d 1050, 1053 (9th Cir. 1985).[23] But, as *C.M. I* explains, 2020 WL 1698191, at *3, *Borquez* did not hold that the DCE encompasses any governmental conduct that was "authorized" by a statute or regulation. Instead, and at most, it creates a narrow exception to *Welch* and held that the DCE applies when a single statutory or regulatory provision expressly authorizes the exact tortious conduct challenged by a FTCA claim, such that the Court could not rule on the legality of the conduct without also ruling on the legality of the statutory or regulatory provision. In other words, *Borquez*'s holding only comes into play if adjudicating a FTCA claim would require the court to rule on the legality of a statutory or regulatory provision.

Plaintiffs' claims would not require the Court to rule on the legality of a statute or regulation; thus *Borquez* does not apply. There is no single statutory or regulatory provision that expressly authorized the Government to separate Plaintiffs in the circumstances alleged in the Complaint. And the Government doesn't identify any. After spending two paragraphs reciting the DCE standard, the Government uses a single sentence to identify the statute purportedly at issue: 8 U.S.C. § 1232(b)(3), which requires, subject to exceptions, that the Government transfer unaccompanied immigrant children from DHS to ORR custody within "72 hours [of] determining that such child is an unaccompanied alien child." That provision does not address—let alone authorize—the forcible, prolonged family separation described and challenged in the Complaint.

### 2. The Government did not exercise due care when separating the Plaintiff families

The Government omits the second *Welch* prong from its brief, incorrectly asserting that, "where a government employee's actions are authorized by statute or regulation . . . the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction." Mot. at 26. But, for the DCE to apply, the Government must not only show that officials were executing a statute or regulation, but also that those official actually "exercis[ed] due care" when

---

[23] The Government also cites to two other out-of-Circuit cases to support its position. Mot. at 26. Neither provides helpful guidance. *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.* did not address the DCE and instead considered "whether the [FTCA] . . . withdrew the sue-and-be-sued liability of FDIC under 12 U.S.C. s 1819 for torts not covered by that Act." 592 F.2d 364, 365 (7th Cir. 1979). *Sickman v. United States* addressed the DCE but does not opine on the appropriate test for determining when it applies. 184 F.2d 616, 619 (7th Cir. 1950).

doing so. 28 U.S.C. § 2680(a). "Due care," in turn, "implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956).

The Government has not even attempted to argue that its forcible and prolonged separation of the Plaintiff families was done with due care. Given that it is the Government's burden to prove that the DCE applies, that failure is, on its own, reason enough to reject application of the DCE to Plaintiffs' claims. *See Prescott*, 973 F.2d at 702. And Plaintiffs allege ample facts showing that the Government failed to take due care. Officials did not, for example, implement systems to track families so they could be reunited, despite warnings that such systems were necessary and did not yet exist. Compl. ¶¶ 52, 62, 98; *see also Ms. L. I*, 310 F. Supp. 3d at 1144 (observing that the "unfortunate reality is that . . . migrant children [we]re not accounted for with the same efficiency and accuracy as *property*"). They left Plaintiffs in the dark about why they were being separated and for how long. Compl. ¶¶ 75-76, 129. They kept parents and children separated for weeks without providing any updates or any means of communication. *Id.* ¶¶ 81, 100, 141, 142, 165, 178, 184. They refused to answer basic questions about where separated family members were located and how those family members were faring. *Id.* ¶¶ 78-79, 89. They attempted to leverage the pain of separation to coerce Plaintiffs into accepting deportation. *Id.* ¶¶ 85, 96. They mocked Plaintiffs. *Id.* ¶¶ 133, 209. They prohibited Plaintiffs from communicating in their native language. *Id.* ¶ 184. And, in at least one case, they badly botched the basic task of coordinating the return of a separated child to his parent. *Id.* ¶ 110. As these allegations show, Government officials did not exhibit even a "minimal concern" for Plaintiffs when separating them. *Hatahley*, 351 U.S. at 181. The DCE therefore does not apply.

## E.     Plaintiffs' claims satisfy the FTCA's private analogue requirement

The Government takes its third shot at dismissal by arguing that Plaintiffs' claims don't satisfy the FTCA's private analogue requirement, which requires Plaintiffs to show that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963). "Recognizing that the federal government could never be exactly like a private actor, the Ninth Circuit only requires courts to find the most reasonable analogy to private tortious conduct." *A.P.F.*, 492 F. Supp. 3d at 994 (internal quotation marks omitted).

1818362

The inquiry here is straightforward and clearly demonstrates that Plaintiffs' claims satisfy the private analogue requirement. Plaintiffs allege that Government officials forcibly separated Plaintiff parents from their children for a prolonged period of time and without reasonable justification. Thus, to satisfy the private analogue requirement, Plaintiffs need only show that a private individual would be liable under state law for improperly separating parent from child. That is the law in Arizona, especially where a defendant is responsible for the care and custody of the parent and child, as the Government was here.[24] Unsurprisingly, then, courts (including Arizona courts) have uniformly recognized that there is a private analogue under Arizona law for FTCA claims arising from the Government's separation of families at the border. *See A.P.F.*, 492 F. Supp. 3d at 994–95; *C.M. I*, 2020 WL 1698191, at *2; *cf. Nunez Euceda*, 2021 WL 4895748, at *4 (family separation FTCA claims satisfied private analogue requirement).

The Government does not seriously dispute that a private individual would be liable under Arizona law for improperly separating parent from child. Indeed, the Government has not asked the Court to dismiss any of Plaintiffs' causes of action for failure to state a claim under Arizona law. Instead, the Government argues that, "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations, there is no private-person analogue." Mot. at 27. There are two problems with this argument.

First, the Government has once more mischaracterized the relevant facts. Plaintiffs are not broadly challenging the Government's enforcement of laws or its detention determinations. The tortious conduct underlying Plaintiffs' claims is the prolonged and forcible separation of Plaintiff parents from their children by Government employees.[25] A private individual could be held liable

---

[24] *Pankratz v. Willis*, 744 P. 2d 1182, 1189 (Ariz. Ct. App. 1987) (finding that "the unilateral separation of a child from its parent can" qualify as intentional infliction of emotion distress ("IIED")); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *10–12 (D. Ariz. July 10, 2018) (threatening to separate family can qualify as IIED under Arizona law); *Dobek v. Wal-Mart Stores, Inc.*, No. CIV 03-297-TUC-FRZ, 2007 WL 2069832, at *4 (D. Ariz. July 17, 2007) (recognizing loss of consortium claims for parents and children); *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020) ("Like a nursing facility employee, a [prison] employee is tasked with the care of persons who are dependent upon them to make daily housing and safety determinations.").

[25] The cases the Government cites are inapposite. *Elgamal v. United States* held that there was no private analogue in Arizona for a negligence challenge to the adjudication of an application for adjustment of status to lawful permanent residence, a factual context that is wholly unrelated to Plaintiffs' claims of forcible and prolonged family separation. *See* No. CV-13-00867-PHX-DLR,

1 for forcibly separating a parent from their child. So, too, can the Government.

2 Second, the Government's argument misstates the law. The fact that the Government's

3 conduct occurred in a uniquely governmental context, like immigration or criminal detention,

4 does not mean there is no private analogue for the conduct. "Even for alleged torts occurring in

5 quintessentially federal contexts, the question remains whether analogous private liability exists

6 under state law." *Liranzo v. United States*, 690 F.3d 78, 97 (2d Cir. 2012). Stated differently,

7 "[a]nalogy not identity of circumstance is key." *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir.

8 2010). The conduct itself, not the context where the conduct occurred, is what determines whether

9 there is a private analogue. The Government's arguments to the contrary are without merit.

### F. The Government's novel "systemic" tort prohibition lacks legal support and does not bar Plaintiffs' claims

12 The Government's final attempt to convince the Court to dismiss Plaintiffs' claims

13 involves making a new rule from whole cloth. The Government asserts that "a plaintiff cannot

14 assert 'systemic' claims" against "the United States directly." Mot. at 28. Instead, they must

15 "allege tortious conduct by individual federal employees, acting within the scope of their

16 employment." *Id.*

17 At the outset, it is unclear what the Government means when it refers to "systemic" claims

18 or where the supposed prohibition against such claims springs from. The government cites *Adams

19 v. United States*, 420 F.3d 1049 (9th Cir. 2005), but that case merely holds that under the FTCA a

20 corporation cannot be an "employee" of the Government, which is not a question at issue here.

21 *Lee v. United States*, CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18,

22 2020), which notes that *Adams* is "not directly on point" to the issues in that case, dismissed a

23 claim where the plaintiff's allegations were "too vague and conclusory" because, among other

24 things, she had not "set forth the alleged acts or omissions of specific federal employees." *Id.* at

25 *5. Neither case discusses "systemic" litigation.

---

2015 WL 13648070, at *3 (D. Ariz. July 8, 2015). And *Bhuiyan v. United States* does not involve Arizona law at all. *See* No. 14-cv-00013, 2017 WL 2837023, *4 (D.N. Mar. Is. June 30, 2017), *cert. denied*, 140 S.Ct. 1147 (2020) (applying the law of Vermont and the Northern Marianas Islands).

The issues in *Adams* and *Lee* are not present here. Contrary to the Government's contention that Plaintiffs' Complaint "attribute[s] the alleged tortious conduct to the government as a whole," Mot. at 28, Plaintiffs identify and describe "individual federal employees, acting within the scope of their employment," *id.*, who engaged in tortious conduct by, for example, designing the Government's practice of separating families at the border, which resulted in Plaintiff parents being separated from their children, *see* Compl. ¶¶ 2, 17, 22, 23, 41-45; physically and forcibly separating Plaintiff parents from their children, even as those parents and children desperately clung to one another and wept, *id.* ¶¶ 15, 75-76, 127, 159; and using the pain of separation to try to coerce Plaintiff parents into accepting deportation, *id.* ¶¶ 85, 96. *See also Nurse*, 226 F.3d at 1001 (reversing dismissal of FTCA claims alleging that policy-makers "established policies that would result in false arrests and unlawful detentions").

To the extent the Government is protesting the Complaint's references to "the United States government," Mot. at 28, there is no legal authority supporting the proposition that a complaint containing FTCA claims should be dismissed because some of the allegations in the complaint reference the Government. Such a rule would make little sense given that the FTCA requires a "plaintiff [to] sue[] the United States itself." *García-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *3 (D.P.R. Apr. 23, 2014). This argument lacks a basis in law and the Court should reject it.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Government's Motion to Transfer and Motion to Dismiss in their entirety.

Dated: February 2, 2022        KEKER, VAN NEST & PETERS LLP

By:   */s/ Travis Silva*
       BROOK DOOLEY
       TRAVIS SILVA
       CHRISTOPHER S. SUN

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362

Dated: February 2, 2022

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA

By: _/s/ Bree Bernwanger_
BREE BERNWANGER

Attorneys for Plaintiffs Wilbur P. G.;
Wilfredo Baltazar P. E., a minor child;
Erendira C. M.; Yasmin Alicia M. C., a
minor child; Joshua G. G.; and Karl Luis
G. G., minor child

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. 4:21-cv-04457-KAW

1818362