STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH BRAKEBILL (CABN 196696)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7167
    Facsimile: (415) 436-7169
    Kenneth.Brakebill@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILBUR P.G., et al., | CASE NO. 4:21-cv-4457-KAW |
| Plaintiffs, | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER; MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| UNITED STATES OF AMERICA, | Date:    March 3, 2022 |
| Defendant. | Time:    1:30 p.m. |
| | Place:   Remote via Videoconference or Zoom |
| | The Hon. Kandis A. Westmore |

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ......................................................................................... i

3   I.   The Court Should Transfer This Action to the District of Arizona. ................................ 1

4        A.   Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference. ................ 1

5             1.   Forum Selection Is Entitled to "Little Deference" When a Complaint
                  Lacks Material Connection to the Chosen Forum. .................................... 1
6
7             2.   Plaintiffs' Admissions Underscore That Their Complaint Has No
                  Material Connection to the Northern District of California .......................... 3

8             3.   Plaintiffs' Allegations About Conduct Outside Arizona and Harms
                  Suffered in California Do Not Weigh Against Transfer. ............................. 4
9
10       B.   The Convenience of Parties and Witnesses Favor Transfer Despite the Lack of
                  Specific Trial Witness Identities. ................................................................. 5

11       C.   A Balancing of the Section 1404(a) Factors Favors Transfer ........................... 7

12  II.  Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction. ........ 9

13       A.   Plaintiffs' Claims Are Barred By the Discretionary Function Exception. ............ 10

14            1.   Defendant Satisfies the First Prong of the DFE Test. ............................. 10

15                 (i)   Plaintiffs Do Not Rebut that Government Decisions on
                         Detention and Separation Involved Discretionary Judgment. .......... 10
16
17                 (ii)  Plaintiffs Cannot Circumvent the DFE By Simply Alleging a
                         Constitutional Violation ................................................................ 12

18            2.   Defendant Satisfies the Second Prong of the DFE Test Because The
                   Decision to Detain Plaintiffs Separately Was Susceptible to Policy
19                 Considerations ............................................................................... 16

20            3.   Plaintiffs' Allegations Concerning Confinement Should be Dismissed
                   For Lack of Jurisdiction. ................................................................... 17
21
22       B.   Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are
                  Barred by the FTCA's Exception for Actions Taken While Reasonably
23                Executing Law. ............................................................................................ 18

24       C.   Plaintiffs' Claims Are Not Actionable Since There Is No Private Person
                  Analogue. ................................................................................................... 18

25       D.   Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort
                  Claims. ...................................................................................................... 19
26
27  III.  CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.P.F. v. United States*,
  492 F. Supp. 3d 989 (D. Ariz. 2020) ................................................................ 14

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
  169 F. Supp. 3d 1079 (D. Or. 2016) ............................................................... 2, 3

*Alabsi v. Savoya, LLC*,
  No. 18-CV-06510-KAW, 2019 WL 1332191 (N.D. Cal. Mar. 25, 2019)................ 8

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
  No. C 06-3805 JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) ........................ 1

*Barroca v. United States*,
  No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019)..................... *passim*

*Blanco Ayala v. United States*,
  982 F.3d 209 (4th Cir. 2020) ........................................................................ 10

*Breault v. United States*,
  No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019).................... 6, 7

*Bryan v. United States*,
  913 F.3d 356 (3d Cir. 2019)......................................................................... 13

*Butz v. Economou*,
  438 U.S. 478 (1978)................................................................................... 12

*Campbell v. Chavez*,
  402 F. Supp. 2d 1101 (D. Ariz. 2005) ............................................................ 12

*Camreta v. Greene*,
  563 U.S. 692 (2011) ................................................................................... 14

*Chen v. Pioneer Oil, LLC*,
  472 F. Supp. 3d 704 (N.D. Cal. 2020) .............................................................. 3

*Chess v. Romine*,
  No. 18-CV-05098-JSC, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018)................... 6

*Clip Ventures LLC v. Suncast Corp.*, ,
  No. C 10-04849 CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011)....................... 6

*C.M. v. United States,*
    No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) .................... 14

*Comm. Of Cent. Am. Refugees v. I.N.S.,*
    795 F.2d 1434 (9th Cir. 1986) .......................................................... 11

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) .................................................................... 12

*D.B. v. Poston,*
    119 F. Supp. 3d 472 (E.D. Va. 2015) ................................................... 18

*Daniels v. Williams,*
    474 U.S. 327 (1986) .................................................................... 12

*Dobek v. Wal-Mart Stores, Inc.,*
    No. CIV 03-297-TUC-FRZ, 2007 WL 2069832 (D. Ariz. July 17, 2007) ......................... 19

*Doe v. Holy See,*
    557 F.3d 1066 (9th Cir. 2009) .......................................................... 10

*Est. of Smith v. Shartle,*
    No. CV-18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ...................... 19

*Fabus Corp. v. Asiana Exp. Corp.,*
    No. C-00-3172 PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ............................... 1

*Fazaga v. FBI,*
    965 F.3d 1015 (9th Cir. 2020) .......................................................... 15

*Fisher Bros. Sales, Inc. v. United States,*
    46 F.3d 279 (3d Cir. 1995) ............................................................. 18

*Fitbit, Inc. v. Koninklijke Philips N.V.,*
    336 F.R.D. 574 (N.D. Cal. 2020) ......................................................... 6

*Flores v. Lynch,*
    828 F.3d 898 (9th Cir. 2016) ........................................................... 11

*Galvin v. Hay,*
    374 F.3d 945 (9th Cir. 2004) ........................................................... 15

*GATX/Airlog Co. v. United States,*
    286 F.3d 1168 (9th Cir.2002) ........................................................... 16

*Gomez v. Arizona,*
    No. CV-16-04228, 2017 WL 5517449 (D. Ariz. Nov. 17, 2017) ............................... 12

*Harrison v. Fed. Bureau of Prisons*,
    464 F. Supp. 2d 552 (E.D. Va. 2006) ............................................................. 17

*Harrist v. United States*,
    No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) ........................... 6, 7

*Herbert v. VWR Int'l, LLC*,
    686 F. App'x 520 (9th Cir. 2017) ............................................................. 5

*Hoefer v. U.S. Dep't of Com.*,
    No. C 00 0918 VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ................................ 4

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ............................................................... 11

*J.S.G. v. Sessions*,
    330 F. Supp. 3d 731 (D. Conn. 2018) ........................................................ 14

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,
    319 F. Supp.3d 491 (D.D.C. 2018) .......................................................... 14

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ............................................................. 3, 7

*Koval v. United States*,
    No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) ............................ 4

*Lam v. United States*,
    979 F.3d 665 (9th Cir. 2020) .............................................................. 16

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) ........................................................ 3

*Lee v. United States*,
    No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ................. 19

*Limone v. United States*,
    579 F.3d 79 (1st Cir. 2009) ............................................................... 13

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ............................................................... 2

*Machado v. CVS Pharmacy, Inc.*,
    No. 13-CV-04501-JCS, 2014 WL 631038 (N.D. Cal. Feb. 18, 2014) ............................ 9

*Martinez v. United States*,
    No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July 10, 2018) ................. 19

*McElroy v. United States*,
   861 F. Supp. 585 (W.D. Tex. 1994)................................................................................. 13

*Morris v. Safeco Ins. Co.*,
   No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ................................ 5, 6

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018)............................................................................ 14

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018)............................................................................ 14

*Nunez Eueda v. United States*,
   No. 220CV10793VAPGJSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) .................... 14

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ........................................................................................... 15

*Pankratz v. Willis*,
   744 P. 2d 1182 (Ariz. Ct. App. 1987) .............................................................................. 19

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................................................... 5

*Ruiz v. Darigold, Inc.*,
   No. 14-CV-02054-WHO, 2014 WL 4063002 (N.D. Cal. Aug. 14, 2014) ................... 6, 7, 9

*Ryan v. U.S. Immigration & Customs Enf't*,
   974 F.3d 9 (1st Cir. 2020)................................................................................................. 19

*Silva v. Aviva PLC*,
   No. 15-CV-02665-PSG, 2016 WL 1169441 (N.D. Cal. Mar. 25, 2016)............................. 9

*Singh v. Roadrunner Intermodal Servs., LLC*,
   No. 15-CV-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015) ............................ 5

*Smith v. Corizon Health, Inc.*,
   No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016)................................. 4

*Sorensen v. Daimler Chrysler AG*,
   No. C 02-4752 MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003)...................... 3

*Strandberg v. City of Helena*,
   791 F.2d 744 (9th Cir. 1986) ............................................................................................ 17

Texas, *Peña Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) ................................................................... 10, 11, 17

*United States v. Dominguez-Portillo*,
  No. EP-17-MJ-4409-MAT, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018).............................. 11

*United States Fid. & Guar. Co. v. United States*,
  837 F.2d 116 (3d Cir. 1988)................................................................................................ 15

*Walters v. Famous Transports, Inc.*,
  488 F. Supp. 3d 930 (N.D. Cal. 2020) .................................................................................. 3

*Washington v. Reno*,
  35 F.3d 1093 (6th Cir. 1994) ............................................................................................... 17

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ................................................................................ 5

*Wilson v. Walgreen Co.*,
  No. C-11-2930 EMC, 2011 WL 4345079 (N.D. Cal. Sept. 14, 2011) .................................. 8

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017).................................................................................................. 12, 13

**Statutes**

6 U.S.C. § 279(a) ........................................................................................................................ 11

6 U.S.C. § 279(g)(2) .................................................................................................................... 18

8 U.S.C. § 1225 ........................................................................................................................... 10

8 U.S.C. § 1226(a) ...................................................................................................................... 10

8 U.S.C. § 1231(g)(1) ............................................................................................................ 10, 11

8 U.S.C. § 1232(b)(3) .................................................................................................................. 18

8 U.S.C. § 1232(c)(2)(A) ............................................................................................................. 11

8 U.S.C. § 1325(a)(1).................................................................................................................. 11

Cal. Pen. Code § 847(b)(1) ......................................................................................................... 15

I.      **The Court Should Transfer This Action to the District of Arizona.**

A.      **Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference.**

Plaintiffs suggest that, as residents of the Northern District of California, they receive "substantial deference in their selection of a forum" and their choice is accorded "great weight." ECF No. 40 at 1:15-17, 8:2-3. Plaintiffs further assert that their forum selection "is *the* factor that is considered dispositive unless the defendant makes a 'clear' showing that transfer is necessary." *Id*. at 9:7-8 (emphasis in original). This latter statement is inaccurate. But in any event, the specific facts pled in the Complaint demonstrate that the District of Arizona is a more appropriate venue for this litigation.

1.      **Forum Selection Is Entitled to "Little Deference" When a Complaint Lacks Material Connection to the Chosen Forum.**

A plaintiff's choice of forum "is not absolute" and "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where … the forum chosen lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp*., No. C-00-3172 PJH, 2001 WL 253185, *1 (N.D. Cal. Mar. 5, 2001) (granting motion to transfer). Indeed, a plaintiff's choice is "entitled to 'little deference'" where most allegations of tortious conduct in the complaint occurred in the transferee district and the other tortious conduct occurred in another district "situated a substantial distance" away from the plaintiff's chosen forum. *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, *2 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer FTCA case). Moreover, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *AV Media, Pte, Ltd. v. OmniMount Sys., Inc*., No. C 06-3805 JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (finding "Plaintiff's choice of forum is entitled to little deference" and "this [choice of forum] factor weighs in favor of transfer"; granting motion to transfer to District of Arizona where despite some connections to the Northern District, "the facts giving rise to the underlying causes of action have no material connection to this forum").

In *Barroca*,[1] the district court granted the United States' motion to transfer venue under Section

---

[1] Plaintiffs' Opposition does not address *Barroca* or the other cases cited in Defendant's opening memorandum on transfer, in particular those concluding that a plaintiff's forum choice is entitled to little to no weight when that forum lacks any significant connection with the activities alleged in the complaint. *See, e.g.,* ECF No. 29 at 16:2-10 (granting motion to transfer in each case).

1404(a) in a case where a majority of tortious conduct pled in the plaintiff's FTCA complaint occurred in the transferee state (Kansas) and where plaintiff had also alleged specific negligent conduct in three locations in California but a "substantial distance" away from this district. 2019 WL 5722383, at *2. As in *Barroca*, venue in this case is more appropriate outside this district because Plaintiffs plead no tortious conduct here, but rather allege that most of the allegedly tortious activity occurred in Arizona (and that the rest occurred in locations substantial distances away in New York, Georgia, and Louisiana). Put simply, because the allegations in the Complaint have no material connection to the Northern District of California, Plaintiffs' choice to sue in this district is accorded little deference in the transfer analysis.

Plaintiffs' citation to *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), in support of their "substantial deference" position actually underscores that "minimal" deference should be given to Plaintiffs' decision to sue in this district. In *Lou*, where defendants had removed to the Central District of California and successfully transferred to the Southern District of New York, the key conduct at issue in the complaint – the negotiation and execution of a stock purchase agreement – occurred in New York, outside the forum of plaintiff's residence. *Id*. at 739. The Ninth Circuit upheld the district court's transfer to New York, concluding that "[i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [parties'] contacts with the forum, including those relating to [plaintiff's] cause of action," and that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." 834 F.2d at 739. As in *Lou*, transfer is proper here because virtually all of the operative facts pled in Plaintiffs' Complaint occurred *outside Plaintiffs' chosen forum*, including the key tortious conduct alleged in the Complaint: the separation of parent and child.

Plaintiffs' citations to three non-FTCA district court cases – one in Oregon and two in the Northern District of California – do not change the calculus. In each of those cases, the driving factor in whether to afford any deference to the plaintiff's forum choice was the plaintiff's contacts with that chosen forum, as they related to the allegations in the complaint. In *Adidas Am., Inc. v. Cougar Sport, Inc*., 169 F. Supp. 3d 1079 (D. Or. 2016), a business dispute involving a large Oregon-based business suing a small New York-based company with only four employees for various alleged unlawful business

practices, the Court denied defendant's motion to transfer the case away from the plaintiff's chosen
location in Oregon to New York. The Court found that the choice-of-forum factor "weighed heavily
against transfer" (*id*. at 1096), because unlike the case at bar, the allegations in that lawsuit involved
significant operative facts occurring in the chosen forum where plaintiff was headquartered and
primarily conducted business. Moreover, defendant sold allegedly infringing merchandise to customers
who lived in the chosen forum, and those customers were confused by the similar trademark that
plaintiff used in the forum district as part of its business there. *Id*. at 1092, 1093, 1095. And likewise,
both of the Northern District of California cases that Plaintiffs cite highlight what is lacking here:
significant additional contacts beyond the plaintiffs' residence here. *See Chen v. Pioneer Oil, LLC*, 472
F. Supp. 3d 704, 709-10 (N.D. Cal. 2020) (not affording "any deference" to plaintiff's forum selection
and transferring case to the Eastern District of California, emphasizing the need for "strong contacts
between the chosen forum and the dispute"; finding that the plaintiff's complaint did "not allege that any
of the challenged conduct occurred" in the chosen forum and that the Northern District of California had
"minimal contacts with the parties or [plaintiff's] claims"); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d
772, 777 (N.D. Cal. 2014) (recognizing that a plaintiff's choice of forum "is given less weight … where
there are not significant contacts between the forum and the allegations of the complaint" and, in that
case, denying motion to transfer where plaintiff "has significant contacts in this forum with respect to
the allegations of her complaint" and "some of the operative facts occurred in this forum"); *see also
Sorensen v. Daimler Chrysler AG*, No. C 02-4752 MMC (EDL), 2003 WL 1888866, *3 (N.D. Cal. Apr.
11, 2003) ("[plaintiff]'s choice of the Northern District is entitled to little, if any, deference" where "the
center of the accused activity" occurred outside this district; granting motion to transfer).[2]

### 2.     Plaintiffs' Admissions Underscore That Their Complaint Has No Material Connection to the Northern District of California.

Plaintiffs acknowledge "that many of the operative facts occurred in Arizona." ECF No. 40 at

___

[2] Citing a 1994 Southern District of New York case, Plaintiffs argue that their status as "low-income individuals bringing an action against the Government" entitles them to further deference as to their choice of forum in this district. Neither the Ninth Circuit nor the cases cited in Plaintiffs' opposition consider financial hardship in the Section 1404(a) analysis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 938 (N.D. Cal. 2020).

11:10. Plaintiffs also repeatedly state that their separation "*is* the challenged conduct" in this lawsuit. ECF No. 40 at 23:22 (emphases in original); *see also id.* at 28:19-21; *id.* at 15:16-18. Notwithstanding Plaintiffs' contrary view (*see id.* at 11:10-12), the fact that *none* of the allegedly tortious acts occurred in this district is an important factor militating in favor of transfer. *See, e.g., Barroca*, 2019 WL 5722383, at *3 (transferring FTCA action out of Northern District of California where "none of the negligent conduct is alleged to have occurred in the Northern District" and "the majority of plaintiff's allegations concern events occurring in [Kansas]"); *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016) (transferring case to Eastern District of California where "[a]ll of the events giving rise to plaintiff's claims occurred in Fresno" and "[t]he thrust of plaintiff's case" concerned his treatment at mental health facilities in Fresno); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, *3 (D. Ariz. Dec. 6, 2013) (transferring case to Eastern District of California where "[n]one of the acts complained of in plaintiff's complaint took place in Arizona and plaintiff did not live in Arizona when those acts occurred").

### 3.     Plaintiffs' Allegations About Conduct Outside Arizona and Harms Suffered in California Do Not Weigh Against Transfer.

Plaintiffs further defend their choice of forum in two ways, first by arguing that "Arizona is not the only state where the Government enforced separation on Plaintiffs." ECF No. 40 at 11:13-19 (citing partial detentions for three of the six plaintiffs in New York, Georgia, and Louisiana). But this argument overlooks the fact that none of the alleged misconduct occurred in this district. And even if some actions took place in other districts, Arizona is the state where each of the three Plaintiff families crossed the border, were detained and separated and where, as described in three Government declarations, a substantial portion of the detentions for the Plaintiff parents took place and where two of the three children were sheltered while in the custody of ORR. *See* ECF No. 1 ¶ 67; ECF Nos. 30-32; ECF No. 29 at 6:19-8:24. "Litigation should proceed where the case finds its 'center of gravity.'" *Hoefer v. U.S. Dep't of Com*., No. C 00 0918 VRW, 2000 WL 890862, *3 (N.D. Cal. June 28, 2000) (transferring case to District of Columbia under Section 1404(a)).

Plaintiffs' second defense – concerning harms they suffered in California after the families were reunited (*see* ECF No. 40 at 11:20-12:2) – is unpersuasive. While these allegations may be relevant to

the issue of damages, that issue is less important than liability in a Section 1404(a) transfer analysis in general tort cases. *See Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) (noting greater importance of "material testimony tending to establish a basis to impose civil liability" than testimony on "the severity of [plaintiff's] emotional distress (*i.e.*, plaintiff's damages)") in Section 1404(a) transfer analysis; *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001) (damages witnesses in this district "not as important to the litigation" as witnesses "relevant to the underlying question of liability" in the transferee district).

**B.** **The Convenience of Parties and Witnesses Favor Transfer Despite the Lack of Specific Trial Witness Identities.**

Plaintiffs argue that the convenience of the witnesses favors the Northern District of California because they are the only identified witnesses in this case and it "is merely attorney say-so" that witnesses are in Arizona. ECF No. 40 at 8:12-14, 9:11-20. Plaintiffs' argument fails to offer the correct legal guidance for a Section 1404(a) analysis on this factor.

Identification of specific witnesses in the alternate forum is not a requirement when assessing convenience of parties and witnesses. "The Supreme Court and Ninth Circuit have rejected the notion that evidence in the alternative forum must be identified with a high degree of specificity." *Herbert v. VWR Int'l, LLC*, 686 F. App'x 520, 521-22 (9th Cir. 2017) (affirming grant of *forum non conveniens* motion where "[t]he record contained sufficient information to balance the parties' interests and the district court did not abuse its discretion by drawing illogical or implausible conclusions from the record regarding the *probable presence* of witnesses and evidence" in the alternate forum) (emphasis added); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) (rejecting necessity of affidavits identifying the witnesses and testimony for trial if trial were held in alternative forum).

Courts in this district have applied this general principle concerning witness identity when assessing the convenience of parties and witnesses factor in the Section 1404(a) transfer analysis. In *Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-CV-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015), where the complaint related to the transport of containers from the Central Valley into this district at the Port of Oakland, the defendants did not identify any particular witnesses or attest to the nature of their testimony, yet the Court concluded that the convenience of the witnesses and parties

weighed slightly in favor of transfer and transferred the case to the Eastern District of California. *Id*. at *3. Of significance to the Court was the fact that although defendants had only made general assertions of likely witnesses and did not specify whether these witnesses were party or non-party witnesses, the plaintiffs – like in the case at bar – also did not refute this "nor have they identified any potential non-party witnesses located in this District." *Id*. at *3. Other courts in this district similarly have weighed the convenience of witnesses factor in favor of transfer even where defendants did not identify specific witnesses, finding it significant that the plaintiffs – like in the case at bar – did not identify any non-party witnesses in this district. *See, e.g.*, *Chess v. Romine*, No. 18-CV-05098-JSC, 2018 WL 5794526, *6 (N.D. Cal. Nov. 2, 2018) (granting motion to transfer in tort case); *Ruiz v. Darigold, Inc*., No. 14-CV-02054-WHO, 2014 WL 4063002, *3-4 (N.D. Cal. Aug. 14, 2014) (finding "convenience of the witnesses strongly weighs in favor of transfer to the Western District of Washington" and granting motion to transfer tort action there).[3]

Courts in this district and in other federal districts also have eschewed the necessity of specifying identities of tort case witnesses and instead have looked to the *foreseeability of witnesses* in the transferee venue. *See, e.g., Clip Ventures LLC v. Suncast Corp.*, No. C 10-04849 CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) (granting Section 1404(a) transfer); *R.T.B. by & through Breault v. United States*, No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) ("*Breault*") (same); *Harrist v. United States*, No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) (same). In *Clip Ventures LLC*, plaintiff brought a qui tam action in its resident district, the Northern District of California, against an Illinois-based company whose products were manufactured, packaged, labeled and shipped from Illinois. The Court concluded that the convenience of the parties and witnesses was the "most significant factor[] in this case" and held that "[t]his factor favors transfer" notwithstanding the absence of a record of specifically identified witnesses from defendant. 2011 WL 839402, at *3. The Court reasoned that "one of the two parties and *all foreseeable witnesses* are located in the Northern

---

[3] Contrary to Plaintiffs' representation, the Court in *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574 (N.D. Cal. 2020), did not state that a movant's lack of identification of trial witnesses militates against transfer. *Id.* at 587. Plaintiffs also disregard that the Court in *Fitbit*, a case where "the center of the accused activity" was in the transferee district as opposed to the plaintiff's selected forum, granted defendant's transfer motion. *Id.* at 588.

1    District of Illinois," where "[t]he center of gravity of the case is," and plaintiff did not identify any non-

2    party witnesses in its home district. *Id*. at *3 (emphasis in original). Similarly, the district court in

3    *Breault* transferred the case to the Southern District of California over the plaintiffs' objection that the

4    government failed to carry its burden of specifying which particular healthcare providers and medical

5    staff would be called as witnesses and establishing the materiality of their testimony: "But in a

6    negligence case like this, the existence of such witnesses and the materiality of their testimony is not at

7    all speculative. This case concerns a medical event that occurred in California, which involved and was

8    witnessed by numerous medical professionals in California." 2019 WL 6492826, at *2. In *Harrist*, the

9    Court transferred the action to the Southern District of Mississippi, the "focus" of plaintiff's negligent

10   medical treatment claims. 2013 WL 11331168, at *3. The Court held that potential witnesses "*can

11   reasonably be expected* to reside outside the Eastern District of Texas and beyond the reach of this

12   Court's subpoena power" in a transferee district that "will clearly be the more convenient and less costly

13   venue for willing []witnesses." *Id*. (emphasis added).

14          **C.     A Balancing of the Section 1404(a) Factors Favors Transfer.**

15          A balancing of the multiple factors to be considered under Section 1404(a) favors transfer. *See

16   Barroca*, 2019 WL 5722383, at *2 (citing factors laid out by the Ninth Circuit in *Jones v. GNC

17   Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.), *cert. denied*, 531 U.S. 928 (2000); *see also* ECF No. 29

18   at 13:22-16:16).

19          Factor One: Plaintiffs dismiss the relevance of this factor ("location where relevant agreements

20   were negotiated and executed") because "the parties have no contract here." ECF No. 40 at 12:6-7.

21   However, Plaintiffs concede that the thrust of the alleged tortious conduct in their Complaint is their

22   detention and separation and, therefore, any documents memorializing these circumstances were created

23   in Arizona – not in this district.[4] Accordingly, this factor favors the government.

24          Factor 2: Plaintiffs argue that Arizona courts' familiarity with Arizona law does not support

25   transfer because Defendant's motion to dismiss does not argue that Plaintiffs fail to state a claim under

26

27          [4] Plaintiffs also allege that they signed or completed several agreements and/or documents in
     Arizona. ECF No. 1 ¶¶ 78, 89, 106 (Wilbur P.G. signed paperwork about son's separation in a shelter;
28   repeatedly filled out forms concerning son's whereabouts; signed papers securing his release), ¶ 120
     (Erendira C.M. signed a form from Border Patrol agent after initial detention).

Arizona law. But if this case proceeds past the motion to dismiss stage, each of Plaintiffs' claims will be decided under Arizona law, and the District of Arizona is the district most familiar with the governing law. *See Barroca*, 2019 WL 5722383, at *2 (where the tortious acts and injury giving rise to plaintiff's claims first took place in the transferee district, the law of that state applies under the FTCA and the transferee district is "likely the 'most familiar with the governing law'" there). This factor thus favors transfer to Arizona. *See id*.

Factors 3, 4 and 5: These factors concern the plaintiff's choice of forum (factor 3), the respective parties' contacts with the forum (factor 4) and contacts relating to plaintiff's cause of action in the chosen forum (factor 5). Plaintiffs' argument for these factors is (1) they are afforded substantial deference in their forum selection, (2) "the conduct is spread across several states," (3) they continue to suffer harm in California and (4) the government has not established that witnesses live in Arizona. ECF No. 40 at 12:22-13:1. As noted, Plaintiffs' arguments are either inaccurate (because no substantial deference to their forum is owed when there is no material connection between the allegations and this district; and damages issue outweigh civil liability issues in the transfer analysis) (*see supra* at 1:9-4:13, 4:27-5:7); incorrect (that identification of Arizona witnesses is necessary) (*see supra* at 5:7-7:12); or helpful to Defendant (that tortious conduct occurred in multiple states, albeit mostly in Arizona and in any event *outside this district*) (*see supra* at 4:15-26). These factors favor transfer to Arizona.

Factor 6: Plaintiffs argue that the portability of documents in the digital age and the advent of Zoom depositions minimize any increased costs with litigating in this district. ECF No. 40 at 13:9-14. First, as this Court has noted, courts "have differing opinions on the continuing relevance of this factor [ease of access to evidence] in the digital age." *Alabsi v. Savoya, LLC*, No. 18-CV-06510-KAW, 2019 WL 1332191, *9 (N.D. Cal. Mar. 25, 2019). Nevertheless, this Court has previously followed the opinion that "'[w]hile technological developments have reduced the weight of this factor in the transfer determination, this factor nonetheless weighs in favor of transfer.'" *Id*. (finding this factor "weighs only slightly in favor of transfer" where most of the documents related to the case are located outside this district). Second, the availability of Zoom depositions does not dispense with increased costs since "for trial, live testimony is as a general matter preferrable" over deposition excerpts for witnesses beyond the subpoena power of this district. *See Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079,

1   *4 (N.D. Cal. Sept. 14, 2011); *Silva v. Aviva PLC*, No. 15-CV-02665-PSG, 2016 WL 1169441, *5 (N.D.

2   Cal. Mar. 25, 2016); *see also Ruiz*, 2014 WL 4063002, at *4 (noting deposed witnesses would still need

3   to testify at trial and likely be outside the Court's subpoena power). Finally, Plaintiffs' dismissal of

4   increased costs due to Arizona site visits as "speculative" (ECF No. 40 at 10:19) is misplaced. Because

5   Plaintiffs place their detention conditions squarely at issue in their Complaint, evidence about the sites

6   may be relevant to this case and will be easier to obtain from the District of Arizona than from this

7   district. *See Ruiz*, 2014 WL 4063002, at *4 (access to farms and dairy products at issue in complaint

8   "will be easier" from their location in the transferee district). Thus, this factor favors the government.

9           Factor 7: Plaintiffs fall back on their argument that Defendant has not identified specific

10  witnesses unwilling or unavailable to testify. Plaintiffs miss the mark. The government has articulated

11  by way of declarations that the ORR facilities for the three Plaintiff children were not operated by the

12  government, but rather were privately owned and operated, state-licensed facilities. ECF No. 30 ¶ 3.

13  Further, certain individuals involved in the transportation for each Plaintiff family also were not

14  government employees. ECF No. 31 ¶¶ 12, 17, 24. Accordingly, the lack of compulsory process in this

15  district for these persons militates in favor of transfer. *See Machado v. CVS Pharmacy, Inc.*, No. 13-CV-

16  04501-JCS, 2014 WL 631038, *5 (N.D. Cal. Feb. 18, 2014) ("courts give more weight to the

17  convenience of non-party witnesses because non-party witnesses may not be subject to the court's

18  subpoena power").

19          Factor 8: Plaintiffs argue that cases in the District of Arizona seem to move more slowly,

20  extrapolating from general docket statistics that the relative congestion there favors keeping this case in

21  this district. ECF No. 40 at 13:26-14:4. Plaintiffs' argument is undermined by the fact that there are two

22  similar cases pending in the District Court of Arizona and those case dockets indicate that those cases

23  are advancing without delay. *See A.P.F. v. United States*, No. CV-20-00065-PHX-SRB (D. Ariz.); *C.M.*

24  *v. United States*, No. CV-19-05217-PHX-SRB (D. Ariz.). Indeed, by transferring this case, judicial

25  economy could be well served if discovery in all of these matters could be streamlined.

26  **II.    Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

27          This Court need not reach the issue of subject matter jurisdiction because this case should be

28  transferred to the District of Arizona. Dismissal is nevertheless appropriate even without transfer. While

Plaintiffs point to the decisions of two federal judges, *see, e.g.,* ECF No. 40 at 2:6-10, 16:15-27, 19:2-13, this Court of course is not bound by those decisions. Defendant respectfully submits that the better reading of the law aligns with the decision of a third federal judge in Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the discretionary function exception ("DFE")).

### A. Plaintiffs' Claims Are Barred By the Discretionary Function Exception.

#### 1. Defendant Satisfies the First Prong of the DFE Test.

Plaintiffs' Complaint tells us what this case is about: three families crossed the U.S.-Mexico border into Arizona and were allegedly forcibly separated in Arizona CBP facilities and detained for weeks, allegedly with little to no communication between parents and children. ECF No. 1 ¶ 67. While Plaintiffs attempt to reframe these allegations to avoid application of the DFE in this case (*see* ECF No. 40 at 15:12-16:14), as to the conduct pled in the Complaint, the government maintained discretion to act at all relevant times from the Plaintiffs' entry across the United States border through initial detention, separation, and continued detention. Plaintiffs' Opposition fails to rebut this discretion by demonstrating a single mandatory policy removing this discretion.

#### (i) Plaintiffs Do Not Rebut that Government Decisions on Detention and Separation Involved Discretionary Judgment.

Plaintiffs fail to show that government officials lacked discretion on the key decision points at issue. Further, Plaintiffs fail to do what is required to overcome Defendant's DFE defense: identify (1) a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and (2) conduct that violates this mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

Plaintiffs do not refute that the federal government possesses the express statutory authority to detain noncitizens after they illegally enter the country (*see* 8 U.S.C. §§ 1225, 1226(a)), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See* ECF No. 29 at 21:2-22:8; *see also Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing that in making decisions about investigation and detention, "DHS officers must make all the kinds of classic judgment

1  calls the discretionary function exception was meant to exempt from tort liability").

2  Plaintiffs also do not contest that the government had the discretion to house two adult Plaintiffs,

3  Wilbur P.G. and Joshua G.G., in secure adult immigration detention facilities. *See* 8 U.S.C. § 1231(g)(1)

4  (government has authority to "arrange for appropriate places of detention for aliens detained pending

5  removal or a decision on removal"); *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th

6  Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the

7  discretion of the [Secretary of Homeland Security].""). Nor do Plaintiffs contest that the government had

8  the discretion to prosecute the third adult Plaintiff, Erendira C.M., for illegal entry in violation of 8

9  U.S.C. § 1325(a)(1), and thus detain her for criminal proceedings. *See In re Sealed Case*, 829 F.2d 50,

10  63 (D.C. Cir. 1987) ("[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive

11  authority and absolute discretion to decide whether to prosecute a case.'"); ECF No. 31 ¶¶ 15-16

12  (describing Erendira C.M.'s custody history).

13  Plaintiffs do not rebut the government's discretion in making prosecutorial and detention

14  decisions about noncitizens who violated the law when they crossed the border in between ports of

15  entry. Indeed, as held by the Court in *Peña Arita*, the policy decisions resulting in separation, including

16  their implementation by DHS officers, are discretionary and protected by the DFE. *Peña Arita*, 470 F.

17  Supp. 3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected discretionary

18  decisions" as applied to family separation and that its use of the phrase "to the extent practicable" also

19  indicated "essentially discretionary judgment"). Moreover, the Flores Agreement – which Plaintiffs do

20  not address in their Opposition – does not require release of an adult parent, compel release of a child to

21  a parent that remains in custody, mandate that parents be housed with a child, or prescribe that parents

22  are entitled to be housed with their children in immigration detention. *Flores v. Lynch*, 828 F.3d 898,

23  906, 908 (9th Cir. 2016); *see also Dominguez-Portillo*, 2018 WL 315759, at *9, *14-15. Further, the

24  Department of Health and Human Services' ORR, which is statutorily charged with "the care and

25  placement of unaccompanied alien children who are in federal custody by reason of their immigration

26  status" (*see* 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)), utilizes its discretion to place unaccompanied

27  children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

28  Plaintiffs challenge none of this discretionary decision-making.

1

2

**(ii)     Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation.**

3

Plaintiffs primarily argue that violations of constitutional mandates categorically preclude

4

application of the FTCA's discretionary function exception. ECF No. 40 at 17:1-22:14. This argument

5

fails for several reasons.

6

As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See*

7

*Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D.

8

Ariz. 2005) ("Mere negligence does not amount to a constitutional deprivation."); *Gomez v. Arizona*,

9

No. CV-16-04228, 2017 WL 5517449, *4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim,

10

because "[m]ere negligence is insufficient—'the Constitution does not guarantee due care on the part of

11

state officials.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)). Thus, any

12

argument that constitutional violations can defeat DFE is inapplicable to Plaintiffs' negligence claims.

13

In any event, DFE is not made inapplicable by every allegation of unlawful or unconstitutional

14

conduct, rather only by a showing that the government official's discretion was limited by a specific,

15

clearly established directive, accompanied by plausible assertions that the specific directive was

16

violated. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for

17

discretionary acts would not be vitiated simply because alleged conduct might later be held

18

unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to

19

"clearly established constitutional limits"). The Court in that case held that officials sued for violations

20

of constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court

21

explained that were it otherwise, as relevant to the case at bar, "no compensation would be available

22

from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from

23

discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions

24

leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion

25

that falls within the scope of the DFE.

26

Since *Butz*, the Supreme Court has expressly held that government officials who exercise

27

discretionary functions are entitled to qualified immunity under certain circumstances in damages suits

28

for violating the Constitution while exercising their discretion. In *Ziglar v. Abbasi*, 137 S. Ct. 1843

(2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id.* at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

Nevertheless, Plaintiffs' Opposition incorrectly asserts that "no court in any jurisdiction has ever used the 'clearly established' standard when assessing whether the DFE applies." ECF No. 40 at 21:24-25; *see also id.* at 20:25-21:4. On the contrary, several courts have used the "clearly established" standard when assessing whether the FTCA's discretionary function exception is applicable. For example, in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), the Third Circuit concluded that the defendant CBP officers were entitled to qualified immunity with respect to the plaintiffs' *Bivens* claims because, even if their search of the plaintiffs' cruise ship cabin had violated the Fourth Amendment, the plaintiffs' right to be free from such a search was not "clearly established" as of the date the search was executed. *See id.* at 362-63. Having concluded that the officers did not violate the plaintiffs' clearly established rights under the Fourth Amendment, the Court went on to hold that the DFE barred plaintiffs' FTCA claims. *See id.* at 364 ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE.). Similarly, in *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994), the district court concluded that the DFE barred the plaintiff's FTCA claims even though he alleged that the actions of federal agents violated the Fourth Amendment. *See id.* at 593 ("[T]he statutory or constitutional mandate that eliminates discretion must be specific and intelligible so that the officer knows or should know he loses discretion when the particular circumstances arise which the mandate controls.); *id.* n.15 ("This requirement is not unlike the *Harlow* criteria for qualified immunity in constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right."). Likewise, in *Limone v. United States,* 579 F.3d 79 (1st Cir. 2009), the Court assessed the applicability of the DFE to bar a plaintiff's FTCA claim and held that the DFE did not apply to conduct that the court had previously found constituted "a clear violation of due process." *Id.* at 101-02 (finding government did not possess discretion to withhold exculpatory information).

The question then becomes whether a constitutional right was "clearly established" in the specific context of separation of parents and children who were apprehended together after crossing the

border between ports of entry in May 2018. Plaintiffs argue that the substantive due process right to family integrity "applies to the particular circumstances alleged" in this case, contending that the conduct of government officers was so "egregious" and "outrageous" as to "shock the contemporary conscience." ECF No. 40 at 17:18-24. In support of this contention, Plaintiffs rely on the decisions of three district court judges: (1) the June 6, 2018 and June 26, 2018 decisions in the *Ms. L.* litigation (*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ("*Ms. L I*"); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)); (2) the July 19, 2018 decision in *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018); and (3) the July 13, 2018 decision in *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). Decisions of district judges do not demonstrate that a right is "clearly established." *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) (decisions of a federal district court judge are not binding precedent in either a different judicial district, the same judicial district, or even on the same judge in a different case). In any event, all of the judicial decisions relied on by Plaintiffs were rendered *after* the occurrence of the conduct that forms the basis for Plaintiffs' claims, and they therefore are irrelevant to the analysis of whether the rights at issue were "clearly established."

Plaintiffs' other arguments seeking to avoid application of the "clearly established law" standard in this case are unpersuasive. First, Plaintiffs argue that "[t]he Government is asking this Court to break new ground" by holding "either that the Government's separation of Plaintiff families was constitutional or that the DFE applies notwithstanding the likely unconstitutionality of that conduct." ECF No. 40 at 19:14-18. Plaintiffs cite to "uniform weight of authority in this Circuit" that their allegations plausibly allege a constitutional violation. *Id.* at 19:18-21 (citing *Ms. L I*, two decisions in 2020 in the District of Arizona and a 2021 decision in the Central District of California[5]). As with the authority cited above, however, these decisions are neither binding precedent nor relevant in that they were issued after the occurrence of the alleged tortious conduct from which Plaintiffs' FTCA claims arise.

Second, Plaintiffs argue that the "clearly established" standard, even if it applied, should have no

---

[5] *See Ms. L. I,* 302 F. Supp. 3d 1149 (S.D. Cal. 2018); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021).

specificity requirement. ECF No. 40 at 21:24-25, 21 n.18. Plaintiffs contend that the Government's reliance on *United States v. Gaubert* is disingenuous in "assert[ing] that [*Gaubert*] instructs Plaintiffs to 'allege the violation of any constitutional provision with [a] requisite degree of specificity.'" *Id.* at 21 n.18. But the Ninth Circuit itself has reserved the question of what level of specificity is necessary before a constitutional provision will preclude the exercise of discretion by a Government official. *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly declining to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of the actor"). And in *Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020), the Court suggested that the same level of specificity is required regardless of whether a federal constitutional or statutory directive is at issue. *Id.* at 1065 (deferring issue of the DFE's applicability to district court, which must determine whether "any federal constitutional or statutory directives" specifically prescribed a nondiscretionary course of action so that "the FTCA claims may be able to proceed").

Finally, Plaintiffs rely on *Galvin v. Hay*, 374 F.3d 945 (9th Cir. 2004), to support their argument that the DFE does not apply where plaintiffs allege that the government violated their constitutional rights, even if the relevant constitutional rights were not clearly established at the time of the alleged conduct. ECF No. 40 at 21:5-7. In *Galvin*, the plaintiffs alleged constitutional torts under *Bivens* and false arrest under the FTCA. 374 F.3d at 743. Although the court in *Galvin* stated that the DFE did not apply to one example of unconstitutional conduct that the court elsewhere found was not clearly established, the court did so without any analysis of the proper standard for that conduct – and the court then dismissed the FTCA claims on different grounds. 374 F.3d at 758. The Court simply quoted from *Nurse* for the general proposition that "[t]he Constitution can limit the discretion of federal officials such that FTCA's discretionary function will not apply" and from *United States Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988), for the general premise that "[f]ederal officials do not possess discretion to violate constitutional rights." 374 F.3d at 758. Notably, however, for the second discrete constitutional violation at issue – the denial of a march permit – the Court applied the correct standard, upholding dismissal of plaintiff's FTCA claim because "the defendants' permit denial was not a violation of *clearly established law*, the officers 'had reasonable cause to believe the arrest was lawful.' Cal. Pen. Code § 847(b)(1)." *Id.* at 758 (emphasis added).

2.      **Defendant Satisfies the Second Prong of the DFE Test Because The Decision to Detain Plaintiffs Separately Was Susceptible to Policy Considerations.**

Plaintiffs argue that their separations were not based on policy considerations, but this assertion is flawed for several reasons. To begin, Plaintiffs contend that there must be a link between their separations and a specific policy objective. ECF No. 40 at 23:14-16 (Defendant "does not name a single policy objective that was served by the forcible and prolonged separation of Plaintiff families"); *see also id.* at 23:17-18 (the government does not "clearly identify[] which policy objective Plaintiffs' separation purportedly served"). But as reconfirmed recently by the Ninth Circuit in *Lam v. United States*, 979 F.3d 665 (9th Cir. 2020), the test is whether the government's actions "were *susceptible* to policy analysis." *Id.* at 674-75 (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir.2002) ("The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.") (emphasis in original)). Plaintiffs do not address this critical distinction. ECF No. 40 at 22:15-24:14.

Plaintiffs also do not discuss the various policies identified by Defendant in its opening memorandum. *See* ECF No. 29 at 20:3-22:4 (describing discretionary policy judgments relating to prosecution, placement and detention of noncitizen adults and minors). Plaintiffs dismiss the government's policy considerations relating to prosecution and detention of noncitizens illegally crossing the border, contending that "prosecutorial and detention decisions" are "not the tortious conduct challenged here" and that family separation is the only challenged conduct. ECF No. 40 at 20:8-11. But in describing the Zero-Tolerance Policy as a change from the policy of past presidential administrations, Plaintiffs' Complaint highlights that the separations at issue necessarily included detention and are thus directly linked with discretionary decisions to prosecute parents migrating across the border with children. *See* ECF No. 1 ¶ 21; *see also id.* ¶ 25 (new separation policy is "deviation from the government's prior policy of not prosecuting adults traveling with minor children" and has policy goal to "deter migration"), ¶ 44 (describing memorandum that recommended separating family units and placing adults into adult detention and minors into custody of HHS by increasing prosecution of parents for illegal entry, with the ultimate goal of having a substantial deterrent effect on unauthorized border crossings). Accordingly, the government's decisions regarding whether to prosecute noncitizens for

violations of criminal immigration statutes and where to detain noncitizens pending immigration proceedings are inextricably linked with the separation of the Plaintiff families.[6] Those decisions are quintessential discretionary judgments susceptible to policy considerations – as, of course, are the decisions of this Administration repudiating and reversing the policies of which Plaintiffs complain. *See Peña Arita*, 470 F. Supp. 3d at 686-87 (implementation of policies resulting in separations are discretionary conduct grounded in social, economic and political policy that court cannot second-guess).

### 3. Plaintiffs' Allegations Concerning Confinement Should be Dismissed For Lack of Jurisdiction.

Plaintiffs argue that they do not allege any independent claims concerning their detention or conditions of confinement. ECF No. 40 at 24 n.21. But Plaintiffs bring negligence claims related to their allegations that their conditions of confinement were crowded and unhygienic and that the government did not provide the Plaintiff parents with sufficient information about their children and did not facilitate sufficiently frequent communication between the parents and their children. *See, e.g.*, ECF No. 1 ¶¶ 72, 99, 105, 123, 129, 141, 162, 223. Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. *See* ECF No. 29 at 23:1-17 (collecting cases).

In particular, the amount of information provided to the Plaintiff parents and their ability to communicate by telephone are the result of their confinement in criminal custody and adult immigration detention facilities. The government's decisions concerning how much and when to furnish information to detainees and when to permit phone use are discretionary decisions susceptible to policy considerations, and thus they fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an

---

[6] Plaintiffs' efforts to exclude "detention" from the tortious conduct at issue is undermined by their designation as "parties" to this lawsuit "HHS employees … responsible for supervising and managing the *detention* of children the government classifies as unaccompanied, including at facilities where Plaintiff children were detained while separated from their parents." ECF No. 1 ¶ 16 (emphasis added).

FTCA claim.").  These claims should thus be dismissed for lack of jurisdiction.

**B.    Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

Plaintiffs argue that the government was not executing a statute or regulation when it separated the Plaintiff families. On the contrary, the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), required the Government to transfer the plaintiff children to ORR custody within 72 hours of the determination that the children were "unaccompanied."

As an initial matter, the decision to determine that the Plaintiff children were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). Here, Plaintiff Erendira C.M. was prosecuted and then housed in adult immigration detention after serving her sentence; Plaintiff Wilbur P.G. was referred for prosecution and housed in adult immigration detention; and Plaintiff Joshua G.G. was detained in adult immigration detention. In those circumstances, the DFE applies to the officials' determination that the Plaintiff children should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was covered by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data."). Once the discretionary decision was made that the Plaintiff children were "unaccompanied," the TVPRA required transfer of the children to the care and physical custody of ORR while the Plaintiff parents were detained.

**C.    Plaintiffs' Claims Are Not Actionable Since There Is No Private Person Analogue.**

Plaintiffs' legal claims uniquely arise out of the exercise of federal statutory authority that only the government possesses. Accordingly, the challenged conduct is that for which a private person could never be sued. This is especially true when, as here, the statutory authority being exercised pertains to

enforcement of federal immigration laws – namely, those relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."). Plaintiffs do not dispute that they were lawfully held in criminal custody or secure adult immigration detention pending immigration proceedings; they do not challenge these decisions. Thus, their claims are essentially a challenge to *where* and *with whom* noncitizens are detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private person counterpart. *See* ECF No. 29 at 27:21-27 (collecting cases).

The cases cited by Plaintiffs to suggest that Arizona law provides for a private analogue to the conduct in this case (*see* ECF No. 40 at 28:4-7, 28 n.24) do not support Plaintiffs' argument. None of those cases involved a government actor exercising statutory authority to separate parent and child, or the type of tortious conduct that Plaintiffs challenge in this case. *See Pankratz v. Willis*, 744 P. 2d 1182, 1184 (Ariz. Ct. App. 1987) (plaintiff-father initiating suit relating to ex-spouse disappearing with their child); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *10–12 (D. Ariz. July 10, 2018) (allowing claim relating to agents' interrogation methods); *Dobek v. Wal-Mart Stores, Inc.*, No. CIV 03-297-TUC-FRZ, 2007 WL 2069832, at *4 (D. Ariz. July 17, 2007) (recognizing loss of consortium claims for parents and children but providing no facts about the underlying claims); *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020) (claim relating to activities in detention as opposed to any type of separation).

**D.    Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.**

While Plaintiffs contend that "some of the allegations in the complaint reference the Government" (ECF No. 40 at 20:14-15), virtually all of the causes of action pled by Plaintiffs specifically reference only "the government." ECF No. 1 ¶¶ 214-240 (counts 1, 3-5 repeatedly reference "government conduct" and do not reference any federal agents). Under the principles of *Lee* and *Adams*, these allegations are too vague and conclusory to hold Defendant liable under the FTCA. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020).

III.    **CONCLUSION**

        For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to

the District of Arizona or, in the alternative, dismiss Plaintiffs' Complaint.


Dated: February 16, 2022                    Respectfully submitted,

                                            STEPHANIE M. HINDS
                                            United States Attorney

                                             /s/ *Kenneth Brakebill*
                                            Kenneth Brakebill
                                            Assistant United States Attorney

                                            Counsel for Defendant