UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P.G., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE, OR, ALTERNATIVELY, MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Re: Dkt. No. 29 |

On January 5, 2022, Defendant United States filed a motion to transfer venue to the District of Arizona, or, in the alternative, to dismiss the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Defendant's motion in its entirety.

## I. BACKGROUND

Before 2017, generally, when federal immigration officials apprehended parents with their children, the parents and children were detained together if they were detained at all. (Compl., Dkt. No. 1 ¶ 21.) In 2017, the Government began considering separating detained immigrant parents from their children to deter people from seeking asylum in the United States. (Compl. ¶¶ 22-23.) The Government piloted its family-separation program in Texas in 2017. (Compl. ¶¶ 24-30.)

On April 6, 2018, the Government brought its family-separation practice to the entire border. (Compl. ¶ 45.) As a part of this effort, the Department of Justice issued a policy ("Zero-Tolerance Policy") that targeted immigrant parents apprehended with their children for

1  prosecution. *Id.* In adopting the Zero-Tolerance Policy, the Government believed that family
2  separations would both deter immigration generally and pressure separated families into dropping
3  their asylum claims. (Compl. ¶¶ 2, 42-51.)  The Government separated families where the parents
4  were never prosecuted, as happened to two of the Plaintiff families here. (Compl. ¶¶ 54, 117, 170.)
5  Even where the parent was prosecuted, the Government kept the families separated even after the
6  parent served a cursory sentence like Plaintiff Erendira C.M.'s three-day, "time served" sentence
7  for misdemeanor "illegal entry." (Compl. ¶ 57.)  Parents were separated from their children for
8  months, oftentimes without knowing anything about where their children were, and with the
9  children thinking they would never see their parents again. (Compl. ¶¶ 56-57.)

Plaintiffs are a father and son from El Salvador (Wilbur P.G. and Wilfredo Baltazar P.E.), one mother and daughter from Guatemala (Erendira C.M. and Yasmin Alicia M.C.) and one father and son from Guatemala (Joshua G.G. and Karl Luis G.G.) (collectively "Plaintiffs"), who, in May 2018, crossed the United States-Mexico border without documentation to seek asylum. (Compl. ¶¶ 10-12, 68, 118, 153-154.) Shortly after crossing the border into Arizona, Plaintiffs were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol Agents for illegal entry and initially held in CBP facilities in Arizona. (Compl. ¶¶ 68-70, 118-119, 122, 154-157, 160.)  Plaintiffs allege that the Government forcibly separated each Plaintiff parent from the child "in CBP's Arizona facilities." (Compl. ¶ 67.)

After being separated from their parents, the Plaintiff children were placed in the custody of the Office of Refugee Resettlement ("ORR"), which takes custody of unaccompanied children. (Compl. ¶¶ 100, 144, 186.)  Erendira C.M. spent three days in criminal custody after a misdemeanor conviction for illegal entry into the United States; otherwise, all parent Plaintiffs were detained by Border Patrol and another Department of Homeland Security ("DHS") jailer, Immigration and Customs Enforcement. (*See, e.g.,* Compl. ¶¶ 71, 130, 161.)  Plaintiffs were held apart for weeks, during which time federal agents failed to provide basic information about their family members' whereabouts. (*See, e.g.,* Compl. ¶¶ 89, 140.)

While detained, Plaintiffs suffered various harms, including a sexual assault suffered by one child Plaintiff, *id.* ¶¶ 100-105; serious medical issues suffered by multiple Plaintiffs, Compl.

2

¶¶ 87-88, 92-93, 169; and severe emotional distress stemming from the separations, Compl. ¶¶ 94, 99, 136, 141, 168. The parents feared that they would be deported, while their children would remain with strangers in the United States. (Compl. ¶¶ 85, 134, 138, 168.) Plaintiffs were ultimately reunited after months of detention, but they continue to suffer prolonged effects related to their forcible separation. (Compl. ¶¶ 111-116, 150-152, 194-196.)

On June 10, 2021, Plaintiffs filed this lawsuit. On January 5, 2022, Defendant filed a motion to transfer, or in the alternative, to dismiss the case for lack of subject matter jurisdiction. (Def.'s Mot., Dkt. No. 29.) On February 2, 2022, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 40.) On February 16, 2022, Defendant filed a reply. (Def.'s Reply, Dkt. No. 41.)

## II.  LEGAL STANDARD

### A.  Motion to Transfer Venue

Generally, "[a] plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic)*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011). When determining whether to transfer an action to another district, a court must employ a two-step analysis. First, the court considers the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Once the party seeking transfer has made this showing, the court has discretion to consider motions to change venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Pursuant to Section 1404(a), a court weighing a motion to transfer should consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. 28 U.S.C. § 1404(a). In the Ninth Circuit, a court may weigh additional factors, including: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of

1  compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of
2  access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000).
3  "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for
4  transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne,* No. 08–1339, 2008
5  WL 4543043 CW, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.,* 487 U.S. at 29). "The
6  defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice
7  of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

### B.   Motion to Dismiss

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### III.   DISCUSSION

The Government moves to transfer this case to the District of Arizona or, in the alternative, dismiss the complaint for lack of subject matter jurisdiction.  The Court will first address the motion to transfer.

### A.   Motion to Transfer Venue

As an initial matter, Defendant contends that the case should be transferred to the District of Arizona, because the case may have been brought there, and that the Section 1402(a) factors strongly favor transfer. (Def.'s Mot. at 11-12.)  Plaintiffs oppose transfer, but they concede that the case could have been filed there. (*See* Pls.' Opp'n at 7.)

4

Plaintiffs reside in the Northern District of California and chose to file their case here. "In general, the Court affords a plaintiff's chosen forum great weight." *Ramondetta v. Konami*, Case No. 08-cv-1002-JSW, 2008 WL 11396774, at *4 (N.D. Cal. May 19, 2008).

Defendant concedes that the Plaintiffs' choice of forum weighs against transfer, but it argues that the deference is substantially reduced where that locale lacks any real connection to the activities alleged in the complaint. (Def.'s Mot. at 16.) Defendant further argues, "[w]hile it might be more convenient for Plaintiffs to litigate in this forum, the actual increased burden on Plaintiffs prior to trial would likely be minimal." *Id.*

Plaintiffs are permitted to bring suit against an officer of the United States in the judicial district in which they reside so long as no real property is involved in the action. *See* 28 U.S.C. § 1391(e)(1)(C); *see also Kumar v. Mayorkas*, No. C 12-06470 MEJ, 2013 WL 5313718, at *4 (N.D. Cal. Sept. 23, 2013) (citing *Gu v. Napolitano*, 2009 WL 2969460, at *3 (N.D. Cal. Sept. 11, 2009)). There is no real property involved, and other family separation cases have found venue to be proper based on residency of the plaintiffs and declined to consider the Section 1404(a) factors. *See Nunez Euceda v. United States*, No. No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *4 (C.D. Cal. Apr. 27, 2021).

The undersigned, however, will briefly address whether the convenience of the parties, the convenience of the witnesses, and the interests of justice support a change of venue pursuant to Section §1404(a). First, adjudicating the case in the Northern District is most convenient for the parties since Plaintiffs reside here.

Second, as to convenience of the witnesses, Defendant argues that most anticipated witnesses are located outside the Northern District, because "[w]hile the Complaint does not name any individual agents or officers, it repeatedly alleges improper conduct by many different government officials in connection with Plaintiffs' arrests, separation, and detention." (Def.'s Mot. at 12.) Several witnesses, however, are likely Defendant's employees. *See id.* Courts in this district have found that "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to transfer at trial, regardless of forum." *Alul v. Am. Honda Motor Co., Inc.*, Case No. 16-cv-4384-JST, 2016 WL 7116934, at *4

(N.D. Cal. Dec. 7, 2016) (internal quotation omitted); *see also SkyRiver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*, Case No. 10-cv-3305-JSW, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010); *Hendricks v. StarKist*, Case No. 13-cv-729-YGR, 2014 WL 1245880, at *4 (N.D. Cal. Mar. 25, 2014) ("Even if StarKist is correct in claiming that it will provide more witnesses and those witnesses will provide the most relevant testimony in this case, StarKist still only refers to party witnesses, and not the non-party witnesses with which this factor is chiefly concerned. . . [T]his will not be a sufficient reason to justify a transfer[.]"); *Ramondetta*, 2008 WL 11396774, at *4 (giving less weight to the convenience of witnesses who were the defendant's officers and employees). In opposition, Plaintiffs point out that the Government fails to identify a single potential witness, and those employees may have been since reassigned to other Border Patrol posts if they are still employed, so Arizona may not be convenient to them either. (Pls.' Opp'n at 10.) Moreover, Plaintiffs argue that Defendant has failed to make its "strong showing" that Arizona is more convenient than California, because it has not identified witnesses and their anticipated testimony with particularity. (Pls.' Opp'n at 11 (citing *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020)). The Court agrees with both arguments. Since Defendant has not met their burden, this factor is neutral. *See Fitbit,* 336 F.R.D. at 587.

Third, the interests of justice do not require that the case be transferred. This is not a situation where the same parties have a lawsuit pending in another judicial district. *See Fitbit,* 336 F.R.D. at 587 (transfer is in the interests of justice because two other cases were already in the other forum). Indeed, Defendant does not even address this issue in its motion. Thus, this factor is neutral.

Taken together, the discretionary *Jones* factors do not support transfer, because this district is familiar with the FTCA and judges here routinely apply the laws of other states. Moreover, insofar as a substantial portion of the conduct occurred in Arizona, conduct also occurred in other states, as this was a national policy. The Court disagrees with Defendant's contention that Plaintiffs' contacts to the Northern District are minimal because they had no contacts until their release. (Def.'s Mot. at 14.) To the contrary, the complaint contains detailed allegations of the emotional trauma experienced by Plaintiffs after their arrival, which may result in the production

6

1    of records and non-party witnesses who reside here. (*See* Pls.' Opp'n at 11-12 (citing Compl.).)
2    The one exception that weighs in favor of transfer is that discovery may be more challenging
3    because the detention facilities are located in Arizona, but the undersigned is confident that the
4    parties will utilize the technology at their disposal, including depositions by video conference, to
5    fulfill their obligations. *See Williams v. Robert Half Int'l Inc.*, No. 4:20-CV-03989-KAW, 2020
6    WL 12655622, at *3 (N.D. Cal. Sept. 18, 2020) ("in the digital age, the access to records is neutral
7    given the portability of documents.") Thus, this factor only minimally weighs in favor of transfer.
8        Accordingly, the Court finds that Defendant has not made a sufficient showing that
9    transfer is warranted, and, therefore, DENIES the motion to transfer venue.

### B.   Motion to Dismiss

Alternatively, Defendant moves to dismiss the complaint for lack of subjection matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Def.'s Mot. at 1, 17.) Specifically, Defendant argues that Plaintiffs cannot prevail on their FTCA claims, because the undersigned is deprived of jurisdiction due to the discretionary function exception, the due process exception, the lack of a private-person analogue, and/or the prohibition against systemic tort claims. *Id.* at 17.

#### i.   Discretionary Function Exception

In opposition, Plaintiffs explain that they are not challenging the Government's authority to enforce federal and criminal immigration laws and make detention determinations. (Pls.' Opp'n at 16.) Rather, they are arguing that "Government officials engaged in tortious conduct by forcibly separating Plaintiff parents from their children without explanation, by refusing to provide Plaintiff parents information about their children's whereabouts or well-being, then by continuing Plaintiffs' separated detention for a prolonged time, all in a manner designed to increase Plaintiffs' emotional distress." *Id.* Indeed, as Plaintiffs point out, the Government has unsuccessfully argued this same discretionary function exception in connection with three other family separation cases in this circuit. *Id.* (citing *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996–97 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020); *Nunez Euceda*, 2021 WL 4895748, at *3). Since the family separation policy was a policy

7

prescribed by the Trump Administration, the front-line employees tasked with implementing the policy did not reasonably have any element of choice, and so Defendant's argument that *United States v. Gaubert,* 499 U.S. 315, 328-32 (1991) somehow negates the rationale of those district court decisions is unavailing. (*See* Def.'s Mot. at 25 n.2.)

Accordingly, the undersigned agrees with the analysis provided by these district courts and finds that the discretionary function exception does not apply.

### ii.  Due Care Exception

The FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).

Here, Defendant argues that pursuant to 8 U.S.C. § 1232(b)(3), the Government had the statutory authority to "transfer the custody" of the children to the care of ORR "not later than 72 hours after" determining that there is no parent available to care for them. (Def.'s Mot. at 26.) In this instance, the unavailability of the parents was due to them being detained for immigration proceedings or prosecution. *Id.*

The undersigned again disagrees. Indeed, as pointed out by other courts, "[t]he separations were conducted pursuant to executive policy, not pursuant to any statute or regulation; such actions are not shielded by the due care exception." *Nunez Euceda,* 2021 WL 4895748, at *4 (citing *A.P.F.*, 2020 WL 8173295, at *3 (citations omitted); *C.M.*, 2020 WL 1698191, at *3). The fact that the Government is now attempting to evade liability for a policy that is still being unwound, as some children are still waiting to be reunited with their families, is not legally defensible.

Accordingly, the due care exception does not apply.

### iii.  Private Person Analog

Defendant argues that Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue. (Def.'s Mot. at 27.) The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

8

occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To carry their burden, Plaintiffs' allegations must demonstrate "a persuasive analogy with private conduct." *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992) (quoting *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987)).

Here, Defendant argues that there is no private-person analogue, because the federal government has the sole authority to enforce federal criminal and immigration laws and make detention decisions. (Def.'s Mot. at 27.) The Ninth Circuit recognizes that "the federal government 'could never be exactly like a private actor,'" and so only requires courts to "find the most reasonable analogy" to private tortious conduct. *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)). To find otherwise, would give the federal government absolute immunity to violate the rights of those for whom it has sole decision-making authority, such as undocumented immigrants, with impunity.

In the instant matter, Plaintiffs bring claims for intentional infliction of emotional distress ("IIED"), negligence, abuse of process, negligent supervision, and loss of consortium. (Compl. ¶¶ 214-240.) Plaintiffs specifically allege that, after the Pilot Program, Defendant was on notice that the family separation policy inflicted emotional trauma on the families, but still implemented the policy nationwide to deter asylum seekers from migrating with their children, and that this conduct was extreme and outrageous. (Compl. ¶¶ 21-23, 216.) Courts in this Circuit have recognized IIED claims where a federal agent's actions are motivated by malice, and unnecessarily separating asylum-seeking children from their parents is cruel and malicious. *See C.M.*, 2020 WL 1698191, at *2 (citing *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994)); *see also Martinez v. United States*, No. 2018 WL 3359562, at *10 (D. Ariz. July 10, 2018) (citing *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990) ("The Ninth Circuit has held that 'the tort of intentional infliction of emotional distress is not excluded as a matter of law.'"). "Courts in this Circuit also recognize negligence claims brought under the FTCA where, as here, a prisoner alleges an agent negligently placed him in a certain cell." *Nunez Euceda*, 2021 WL 4895748, at *4 (citing *C.M.*, 2020 WL 1698191, at *2 (citations omitted)). Thus, the private analog requirement

is satisfied and does not bar Plaintiffs' claims.

### iv. "Systemic" Tort Prohibition

Finally, Defendant argues that Plaintiffs' claims are impermissible, because they seek to raise direct liability and institutional tort claims against the United States rather than against individual federal employees. (Def.'s Mot. at 28.) The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)).

In opposition, Plaintiffs argue that their complaint does not raise an "institutional" claim, but rather that it identifies and describes

> "individual federal employees, acting within the scope of their employment," *id.*, who engaged in tortious conduct by, for example, designing the Government's practice of separating families at the border, which resulted in Plaintiff parents being separated from their children, *see* Compl. ¶¶ 2, 17, 22, 23, 41-45; physically and forcibly separating Plaintiff parents from their children, even as those parents and children desperately clung to one another and wept, *id.* ¶¶ 15, 75-76, 127, 159; and using the pain of separation to try to coerce Plaintiff parents into accepting deportation, *id.* ¶¶ 85, 96.

(Pl.'s Opp'n at 30.) Plaintiffs further contend that Defendant provides no legal authority for "the proposition that a complaint containing FTCA claims should be dismissed because some of the allegations in the complaint reference the Government. Such a rule would make little sense given that the FTCA requires a 'plaintiff [to] sue[] the United States itself.'" *Id.* (citing *García-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *3 (D.P.R. Apr. 23, 2014)).

In reply, and without providing any new or binding legal authority in support of its position, Defendant contends that the allegations in the complaint are too conclusory to hold the Government liable under the FTCA. (Def.'s Reply at 19.) The undersigned disagrees.

In their 65-page complaint, Plaintiffs detailed the horrors they allegedly experienced at the hands of specified government agencies, and they have identified several high-ranking government employees involved—including President Donald Trump, John Lafferty of the Asylum Office at U.S. Citizenship and Immigration Services (an agency within DHS), John Kelly (Secretary of Homeland Security and later White House Chief of Staff), and Attorney General Jeff

Sessions— and described, albeit vaguely, the employees involved in their actual separation. (*See, e.g.,* Compl. ¶¶ 19-23, 45-50.)  Plaintiffs also adequately allege what actions these agencies, their employees, and the named public officials took. (*See, generally,* Compl.)  The fact that they are unable to name the individual Border Patrol officers who forcibly separated them and detention center employees without the benefit of discovery, should not be fatal to their action, particularly given that none of the Plaintiffs spoke English at the time of detention and were not provided with adequate (or any) interpretive services. (*See* Compl. ¶ 234.)  Defendant, on the other hand, should be able to determine which individuals were involved based on the allegations in the complaint. These were, after all, Defendant's Border Patrol officers who detained Plaintiffs in Defendant's detention centers, which were operated by Government employees or contractors.

Accordingly, the Court finds that this is not a general systemic tort claim and denies Defendant's motion on these grounds.

### IV.    CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED.  Defendant shall file an answer within 14 days of this order.

IT IS SO ORDERED.

Dated: May 10, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge