STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7167
Fax: (415) 436-6748
kenneth.brakebill@usdoj.gov

Attorneys for Defendant

KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY (# 230423)
TRAVIS SILVA (# 295856)
CHRISTOPHER S. SUN (# 308945)
CHRISTINA LEE (# 314339)
JACQUELINE CONCILLA (# 335733)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
BREE BERNWANGER - # 331731
131 Steuart Street #400
San Francisco, CA 94105
Telephone: 415-814-7631

Attorneys for Plaintiffs WILBUR P. G.;
WILFREDO BALTAZAR P. E., a minor child;
ERENDIRA C. M.; YASMIN ALICIA M. C., a
minor child; JOSHUA G. G.; and KARL LUIS
G. G., minor child

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILBUR P.G., et al., | CASE NO. 4:21-cv-4457-KAW |
| Plaintiffs, | |
| v. | **FURTHER JOINT CASE MANAGEMENT STATEMENT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | Honorable Kandis A. Westmore |

The parties to the above-captioned action jointly submit this FURTHER CASE MANAGEMENT STATEMENT pursuant to the Court's October 5, 2022 Order (ECF No. 61) and Section 8 of the Court's Standing Order:

**1. Jurisdiction and Service**

Plaintiffs bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. There are no known issues regarding personal jurisdiction, venue, or service at this time. Defendant has been served.

Defendant asserts that the Court lacks subject-matter jurisdiction for the reason that Congress has not waived the federal government's sovereign immunity from claims for money damages in the circumstances presented in this case.

**2. Facts**

This case concerns three Plaintiff families that entered the United States by crossing from Mexico into Arizona in or around May 2018. ECF No. 1 ¶ 3. Plaintiffs are three pairs of parents and children, totaling six individuals: a father and son from El Salvador (using pseudonyms Wilbur P.G. and Wilfredo Baltazar P.E.), one mother and daughter from Guatemala (using pseudonyms Erendira C.M. and Yasmin Alicia M.C.) and one father and son from Guatemala (using pseudonyms Joshua G.G. and Karl Luis G.G.) (collectively "Plaintiffs"). *Id*. ¶¶ 10-12. Plaintiffs allege that "[t]he government forcibly separated these parents and children in CBP's [Customs and Border Protection] Arizona facilities without notice or explanation," and "Plaintiffs then spent weeks detained in different facilities with the government facilitating little to no communication between parents and children." *Id*. ¶ 67.

According to the Complaint, Plaintiffs' separations resulted from the United States' adoption of a "Family-Separation Policy" that "intentionally separat[ed] immigrant families [] for the express purpose of causing families emotional harm." ECF No. 1 ¶ 1. Plaintiffs allege that "[t]he policymakers who created and directed the implementation of the Policy sought to 'deter' immigrants, believing that if arriving asylum-seekers were subjected to inhumane treatment—including the severe emotional distress of having their children taken from them—they would 'give up' on their asylum applications and agree to be deported from the United States." *Id*. ¶ 2. Plaintiffs allege that the parents were separated from their children for months, oftentimes without knowing anything about where their children were, and

with the children thinking they would never see their parents again. *Id.* ¶¶ 56-57. Plaintiffs were ultimately reunited after months of detention, but they continue to suffer prolonged effects related to their forcible separation. *Id.* ¶¶ 111-116, 150-152, 194-196.

Defendant admits that in 2018, the United States implemented a Zero-Tolerance policy which directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." ECF No. 45 ¶¶ 45, 54. Defendant further admits that some families were separated at the United States–Mexico border during the Zero-Tolerance policy, and some children were classified as Unaccompanied Children ("UCs") and transported to Office of Refugee Resettlement ("ORR")-funded care provider facilities. *Id*. ¶ 16, 54. Defendant contends that federal law required that children be placed into ORR custody once the children were classified as UCs. ECF No. 29 at 2:21-3:6, 3:26-4:10. Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent. ECF No. 45 ¶ 53. Defendant admits that the three Plaintiff families in this action were separated. *Id*. ¶ 54.

**3. Legal Issues**

Plaintiffs assert five causes of action under Arizona law for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, and loss of consortium arising out of Plaintiffs' separation after crossing into the United States. ECF No. 1 ¶¶ 214-240. Plaintiffs claim that they suffered extreme emotional distress when they were separated, during their separation and after they were reunified. *Id*. ¶ 4. Defendant denies that Plaintiffs are entitled to the requested relief and asserts various defenses, including that Plaintiffs' claims are barred to the extent that they are based on the exercise or performance, or the failure to exercise or perform, a discretionary function or duty. ECF No. 45 at 33 ¶ 2.

Accordingly, the parties believe the Court may be called upon to resolve a number of legal issues, including but not limited to: (1) whether Defendant intentionally inflicted emotional distress upon Plaintiffs; (2) whether Defendant breached any duties of care to Plaintiffs that proximately caused them damages; (3) whether Defendant abused judicial process in the conduct of proceedings against Plaintiffs; (4) whether Defendant breached a fiduciary duty in its supervision of, or negligently

supervised, Plaintiff children, thereby proximately causing them damage; (5) whether Plaintiffs suffered a loss of consortium; (6) whether Plaintiffs' claims are barred by the discretionary function exception to the FTCA; (7) whether Plaintiffs' claims are barred by the FTCA's due care exception (28 U.S.C. § 2680(a)); and (8) whether Plaintiffs' claims are barred because the challenged government actions have no private-person analogue.

### 4. Motions

#### (i) Motion to Transfer; Motion to Dismiss

On January 5, 2022, Defendant filed a Motion to Transfer; Motion to Dismiss, which the parties fully briefed. ECF Nos. 29, 40, 41. The Court denied the motions on May 10, 2022. ECF No. 44.

#### (ii) Unopposed Motion for Protective Order Relief

On September 6, 2022, Defendant filed an unopposed administrative motion for protective order relief. ECF No. 54. The Court granted this motion on September 7, 2022, resulting in the entry of a protective order for use in this litigation.

### 5. Amendments to the Pleadings

The parties have no plans to amend the pleadings.

### 6. Evidence Preservation

The parties previously certified that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirmed that they met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### 7. Disclosures

As part of the initial case management process, the parties agreed to engage in two disclosure exchanges prior to the opening of discovery on September 13, 2022. ECF No. 47 at 4-5. The parties made their disclosure of documents dependent on the execution of privacy waivers by each Plaintiff and the entry of an appropriate protective order. *Id.* The privacy waivers were executed on July 18, 2022, and the Court entered a stipulated protective order on September 7, 2022. Subsequently, on September 9, 2022, Defendant produced 200,731 pages of documents bearing the Bates range CD-US-U-00000001 to CD-US-0200731A. On September 13, 2022, Plaintiffs produced nine pages of

documents bearing the Bates range PGPLFS00000001 to PGPLFS00000009.

**8. Discovery**

    **(i)  Discovery Schedule**

Pursuant to the parties' agreement during the initial case management process, formal discovery in this case opened on September 13, 2022. ECF No. 47 at 8. Fact discovery is currently scheduled to close on June 9, 2023. ECF No. 50.

    **(ii)  Discovery Served by the Parties**

On November 22, 2022, Plaintiffs served their first two sets of discovery requests: a First Set of Requests for Production, listing 52 document requests, and First Set of Interrogatories, listing eight interrogatories. Pursuant to the parties' agreement, Defendant's responses are due on January 12, 2023.

On September 13, 2022, Defendant served its first two sets of discovery requests: a First Set of Requests for Production of Documents, listing six document requests; and a First Set of Interrogatories, listing eight interrogatories. Plaintiffs responded to the document requests on October 13, 2022, and, pursuant to the parties' agreement, Plaintiffs responded to the interrogatories on October 27, 2022.

No further written discovery has been propounded at this time.

No depositions have been noticed or taken.

    **(iii)  Document Productions During Discovery**

Apart from their September 13, 2022 production for the 90-Day Document Disclosure period, Plaintiffs have made one production of documents on October 27, 2022 totaling 163 pages (PGPLFS00000010 to PGPLFS00000172).

Apart from its September 9, 2022 production for the 90-Day Document Disclosure period, Defendant has made four productions of documents on December 8, 2022, December 15, 2022, December 19, 2022, and January 6, 2023. These productions total 22,684 pages (USA-00000001 to USA00022684).

    **(iv)  Ongoing Discovery Issues**

The parties have been engaged since October 2022 in meet and confer efforts on a host of issues relating to the parties' discovery requests and responses, as well as to documents produced during the 90-day document disclosure period. Below is a non-exhaustive list of the topics in the parties' meet and

1  confer discussions. With respect to issues that are nearly ripe for judicial intervention, the parties plan to
2  hold a final meet and confer video conference in the days following the CMC, wherein the parties will
3  crystallize the disputes that remain pending at that time. They will thereafter file discovery letters
4  pursuant to Section 14 of the Court's Standing Order.

### (a) Defendant's Requests for Information Concerning Plaintiffs' Reasons for Leaving Their Countries of Origin

**Plaintiffs' position:** Defendant requests all documents and communications concerning Plaintiffs' reasons for leaving their countries of origin. Defendant claims the information is relevant to parsing out the trauma Plaintiffs suffered as a result of their separations from prior trauma, and to determining whether Plaintiffs in fact left their countries of origin to seek asylum in the United States. The request is improper. It is not in dispute that Plaintiffs have applied for asylum, or that Plaintiffs' asylum claims will not be litigated in this Court. To the extent this request seeks information about trauma Plaintiffs suffered before Defendant separated them, Plaintiffs offered to resolve the dispute by producing documents sufficient to identify traumatic events that precipitated the Plaintiffs' departure for the United States, to the extent such documents exist. Defendant rejected Plaintiffs' offer. Finally, Plaintiffs object to this request unless the Protective Order is amended to firewall discovery in this case from Plaintiffs' immigration proceedings, which proposal Defendant has refused. (*See* § 8.iv.d below.)

**Defendant's position:** Defendant believes information about the reasons Plaintiffs left their countries of origin is relevant to Plaintiffs' mental and emotional states and, therefore, causation and damages. This information may show the extent to which Plaintiffs' claimed emotional distress was not in fact caused by Defendant, but rather resulted from events Plaintiffs' experienced in their countries of origin. For the same reason, this information also goes directly to the extent of damages flowing from the alleged tortious acts, as opposed to other factors. In addition, Defendant submits that all of Plaintiffs' non-asylum reasons for leaving their countries of origin are relevant to determining the truth of, and providing context for, Plaintiffs' allegations that they left their countries of origin to seek asylum in the United States.

### (b) Defendant's Requests for Information Concerning Plaintiffs' Employment and Community Activities

**Plaintiffs' position**: Defendant requests "All documents and communications concerning all

1  employment, professional, volunteer, and community activities each Plaintiff has engaged in" in the
2  United States. In support of its overbroad requests, Defendant again contends that the information is
3  relevant to damages. But Plaintiffs do not currently seek damages for lost wages or for Plaintiffs'
4  inability to participate in specific community activities. Moreover, the requests are substantially
5  overbroad with no articulable boundaries (e.g., "ordinary activities of life") and thus overreach into the
6  most personal aspects of Plaintiffs' lives. Defendant's recent offer to discuss potential search terms is an
7  empty gesture given the nature of the request (e.g., all past paystubs). Plaintiffs reassert their Protective
8  Order objection here.

9  **Defendant's position:** Defendant believes that information concerning Plaintiffs' employment
10 and community activities is relevant to Plaintiffs' claimed $30 million in injuries and damages,
11 including their Complaint's allegation that the psychological and emotional consequences of the parent-
12 child separations linger to this day. Whether or not Plaintiffs "currently" seek damages related to
13 specific activities, this information would likely show the extent to which Plaintiffs are able to
14 participate in the ordinary activities of life—a standard measure of damages in emotional distress cases.
15 Defendant has repeatedly offered in good faith to narrow its requests to address Plaintiffs' objections.
16 Regarding community activities in particular, Defendant has limited the requests to Plaintiffs' most
17 significant activities, defined to include regularly scheduled activities lasting more than an hour each
18 week or other activities that are especially significant to Plaintiffs. Defendant has offered to discuss
19 potential search terms to aid Plaintiffs' searches.

20                             **(c)    Defendant's Requests for Medical Records**

21 **Plaintiffs' position:** Defendant's position below conflates two distinct issues, and there is
22 probably no dispute between the parties. First, on November 18, 2022, Plaintiffs agreed, in writing, to
23 produce all personal mental health records in their possession, custody, or control, and have expended
24 substantial resources procuring the same. Plaintiffs will produce these records as soon as the parties'
25 dispute over the Protective Order is resolved. Second, Defendant demanded that Plaintiffs sign blanket
26 HIPAA waivers so that Defendant can subpoena Plaintiffs' health care providers for documents. To
27 avoid unnecessary HIPAA-compliance procedures (which burden the Court), Plaintiffs will sign waivers
28 to permit Defendant to issue subpoenas for documents, but only to the extent that the document

subpoenas seek information properly within the scope of discovery. For that reason, Plaintiffs requested to review the subpoenas prior to their issuance. Defendant has not provided draft subpoenas, and so this issue is not ripe.

**Defendant's position:** Plaintiffs have produced no medical records to date, after initially taking the position in discovery responses and meet and confer that the patient-psychotherapist privilege shielded Plaintiffs' mental health records. As Defendant has made clear to Plaintiffs, Defendant believes that Plaintiffs' mental health records in their entirety are relevant in light of the Complaint's allegations. On January 9, 2023, Plaintiffs finally clarified that they are not asserting a relevance objection to Plaintiffs' mental health records. Nevertheless, Plaintiffs continue to withhold all of their medical records from production, notwithstanding that the Court entered a Protective Order that applies to these records on September 7, 2022.

### (d)    Plaintiffs' Request to Modify Protective Order

**Plaintiffs' position:** Plaintiffs seek to build a firewall between discovery materials in this case and Plaintiffs' immigration proceedings, whereby individuals involved in Plaintiffs' removal proceedings are screened off from receiving Plaintiffs' confidential discovery materials. The need for such measures became particularly apparent upon Defendant's insistence on conducting discovery into aspects of Plaintiffs' lives that are not relevant to this case (e.g., reasons for immigrating, employment history in the U.S.), but that could be relevant to Plaintiffs' immigration proceedings, where discovery is not available to the Government. Notably, Defendant served its discovery requests on September 13, 2022, *after* entry of the current Protective Order in this case on September 7, 2022. Defendant cites unpersuasive administrative burdens as a rationale for opposing Plaintiffs' request, such as, for example, a hypothetical need to share Plaintiffs' confidential materials with law enforcement officials testifying in both this case and Plaintiffs' removal proceedings. This example serves to highlight the need for Plaintiffs' proposed "firewall." Plaintiffs have made several proposals to address Defendant's articulated concerns, and Defendant is currently evaluating Plaintiff's most recent proposal.

**Defendant's position:** Plaintiffs' request to modify the Protective Order, which they previously agreed to, must be understood in the context of how the existing Protective Order was developed. In the parties' Initial Case Management Conference Statement, the parties agreed to using the protective order

1   from ongoing, related litigation in the District of Arizona. That protective order would be modified to
2   reflect certain procedures utilized in the Northern District of California. ECF No. 47 at 6-7. Among
3   other things, the parties contemplated that the use of such a protective order would facilitate Defendant's
4   production of approximately 60,000 documents, which were compiled for and produced in *C.M. v.*
5   *United States*, Civil Action No. 19-cv-05217-PHX SRB (D. Ariz.), and *A.P.F. et al. v. United States*,
6   Civil Action No. 20-cv-00065-PHX-SRB (D. Ariz.). A significant amount of document discovery
7   occurred in *C.M.* and *A.P.F.*, including ESI searches of DHS, CBP, ICE, HHS and DOJ custodians for
8   information relating to the creation, development and implementation of agency policies that resulted in
9   family separations at the United States-Mexico border, and that discovery was compiled into the above-
10  described corpus of documents. *See id*.

11          At the parties' Initial Case Management Conference on June 14, 2022, the Court directed the
12  parties to meet and confer concerning using the Model Protective Order in the Northern District of
13  California as the base protective order and, as necessary, modifying that order and explaining in a court
14  filing what modifications were necessary and why. To that end, on September 6, 2022, following
15  approximately three months of meet and confer between counsel for Plaintiffs and Defendant, Defendant
16  filed an unopposed administrative motion for protective order relief, which allowed Defendant to
17  produce approximately 200,000 pages of documents produced in *C.M.* and *A.P.F.* ECF No. 58 at 13
18  (entry of order), 33-49 (operative protective order).

19          After spending months negotiating a mutually acceptable Protective Order based on the Northern
20  District of California's Model Protective Order, Plaintiffs unilaterally halted their productions in
21  October 2022 until Defendant would agree to modify the Court-approved Protective Order. Plaintiffs
22  demanded that Defendant create a firewall such that Plaintiffs' confidential information in this matter
23  could not be disclosed to any government employee working on any of Plaintiffs' immigration
24  proceedings. Defendant has explained—and offered to stipulate on the record—that the existing
25  Protective Order already limits disclosure to individuals whose participation is reasonably necessary for
26  the litigation, and limits the use of Plaintiffs' confidential information to prosecuting or defending this
27  litigation. *See* ECF No. 58 at 41 (Section 7 of the Protective Order). Defendant has also explained the
28  significant administrative burdens that creating Plaintiffs' demanded firewall would place on the

government. In response, Plaintiffs have offered no evidence that the existing Protective Order is insufficient—only bare speculation that unnamed government employees might, in the future, accidentally or intentionally violate the existing Protective Order's clear terms.

### (e) Metadata Information

**Plaintiffs' position:** Defendant produced many documents without identifying relevant custodians or without providing the relevant metadata for documents, including most glaringly To/From/Subject information for emails. Defendant also failed to produce documents in native form. Plaintiffs requested a conference, including, if useful, of ESI liaisons, to discuss these issues. Other than receiving Defendant's draft CMC statement, Plaintiffs have not yet received a response.

**Defendant's position:** Defendant has produced documents and metadata to Plaintiffs in the ordinary formats that each respective agency involved in this matter typically collects and produces documents and metadata. With regard to the "To/From/Subject" information for emails, that information is present in and apparent from the face of the documents that Defendant has produced. Nevertheless, Defendant is investigating Plaintiffs' stated concerns and will work in good faith to address them.

### (f) Privilege Logs

**Plaintiffs' position:** After repeated requests, Defendant first produced a privilege log, with over 9,000 entries not listed in chronological order, on December 13, 2022. After additional requests, Defendant produced a sortable/filterable log in Excel format on January 4, 2023.

Defendant's privilege log does not meet the requirements of the Federal Rules or this Court's Standing Order. For example, the log does not set forth "[t]he steps taken to ensure the confidentiality of the communication"; nor does it set forth the "identity and position" of the authors, addressees, and recipients of all communications, as required by ¶ 21 of the Standing Order. Defendant does not represent that any court has found that this privilege log meets the Federal Rules' requirements, and certainly no other court has considered whether the privilege log complies with *this Court's* rules, which reasonably safeguard against improper privilege assertions. Further, while the meet/confer on this point is not yet complete,[1] the purported bases for several privilege assertions appear on initial review to be

---

[1] On January 4, 2023, nearly four months after Defendant's first production, and only after Plaintiffs' repeated requests, Defendant produced a privilege log in sortable format (i.e., Excel). As a result,

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                         9

suspect. For example, the "deliberative process" privilege is invoked over 5,000 times, including for several post-decisional documents and documents that have (from the face of the privilege log) nothing to do with decision-making.

Plaintiffs have not yet served a privilege log because they have not yet withheld any documents on the basis of privilege.

**Defendant's position:** Defendant has produced a privilege log in Excel format concerning 219,589 pages of Common Discovery, including the 200,731 pages of Common Discovery produced on September 9, 2022, and another 18,858 pages of Common Discovery that Defendant will produce upon completion of processing. This log, which was prepared for the Arizona litigation, and which has been litigated in the District of Arizona, is the product of significant resources expended by government personnel over the course of many months and is in substantial compliance with the Court's Standing Order. Including more than 8,000 rows, the log identifies documents by Bates range; describes the subject matter of the document or privileged material; identifies the author(s) and recipient(s), as well as separately identifying the attorneys, staff, or other organizations involved; identifies the date of the document; and identifies the nature of and basis for the privilege claim. The log also provides additional information that is not required by the Court's Standing Order. Given the vast amount of information already in the log, which Plaintiffs can already use to evaluate Defendant's privilege claims, any marginal value to Plaintiffs of adding any further information would be significantly outweighed by the burden on Defendant in collecting such information and revising the log, especially on the current discovery schedule for this litigation.

Plaintiffs have produced no privilege log in this case, notwithstanding a specific request by Defendant on November 4, 2022.

**9. Class Actions**

This case is not a class action.

**10. Related Cases**

There are approximately 30 pending cases across district courts in this country that arise out of

---

Plaintiffs' substantive review of Defendant's privilege log (which contains over 9,000 entries, which weren't initially in chronological order) is ongoing.

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                              10

separations of non-citizen families at the U.S-Mexico border in 2017 or 2018. *See* ECF No. 47 at 7. Two are pending in this District: *I.T. v. United States*, No. 4:22-cv-05333-DMR; and *J.R.G. v. United States*, 4:22-cv-05183-KAW.

**11. Relief Sought**

Plaintiffs' Complaint seeks the following relief: compensatory damages, punitive damages, attorney's fees and costs, and "[s]uch other and further relief as the Court deems just." Each Plaintiff's FTCA administrative claim sought $5 million in damages, for a total of $30 million requested by the Complaint. ECF No. 1-1.

**12. Settlement and ADR**

In 2021, the government engaged in negotiations to globally settle district court cases and pending administrative tort claims arising from family separations at the U.S.-Mexico border. Neither the Plaintiffs in this case nor their counsel were part of those negotiations. No settlement was reached.

In their Rule 26(f) conference, the parties discussed ADR and agreed that they would exchange disclosures and pursue discovery before engaging in any further ADR discussions. Defendant has filed its ADR certification and still believes it is premature to engage in ADR at this time. At the initial CMC, Plaintiff's counsel requested that—in lieu of verbally translating the Court's ADR manual into Mam and obtaining a Spanish translation of the manual—the Court permit Plaintiff's counsel to verbally counsel Plaintiffs about this Court's ADR program, including the substance of the ADR manual. The Court verbally agreed. Plaintiffs and their counsel have complied.

**13. Consent to Magistrate for All Purposes**

The parties consented to magistrate jurisdiction.

**14. Other References**

None.

**15. Narrowing of Issues**

The parties continue to engage in meet and confer to narrow the issues in the case.

**16. Expedited Trial Procedure**

None suggested at this time.

**17. Scheduling**

The Court entered a Case Management and Pretrial Order for Bench Trial on August 11, 2022. ECF No. 53 at 7-8. Per the Court's order, fact discovery closes on June 9, 2023; expert discovery closes on August 25, 2023; the last day to hear dispositive motions is on December 7, 2023; the pretrial conference is set for April 24, 2024; and trial is set for May 6, 2024. *Id.*

**18. Trial**

Plaintiffs and Defendant agree that claims brought under the FTCA are tried by the Court. The Court has set the length of the trial for 10 days. ECF No. 53 at 1. As discussed at the Initial CMC, the Court and the parties may revisit the exact amount of days for trial depending on the issues remaining in the case and the necessary witnesses and evidence.

**19. Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs are unaware of any non-party interested entities or persons. ECF No. 46.

Defendant is exempt from this requirement as a federal government entity.

**20. Professional Conduct**

The parties' counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Such Other Matters As May Facilitate Just, Speedy and Inexpensive Resolution**

None.

DATED: January 10, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Kelsey J. Helland*[2]
KENNETH W. BRAKEBILL
KELSEY J. HELLAND
Assistant United States Attorneys
Attorneys for Defendant

---

[2] In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                12

| | |
|---|---|
| 1 | KEKER, VAN NEST & PETERS LLP |
| 2 | */s/ Christina Lee* |
| 3 | BROOK DOOLEY |
| | TRAVIS SILVA |
| 4 | CHRISTOPHER S. SUN |
| | CHRISTINA LEE |
| 5 | JACQUELINE CONCILLA |
| | Attorneys for Plaintiffs |
| 6 | |
| 7 | |
| | LAWYERS' COMMITTEE FOR CIVIL |
| 8 | RIGHTS OF THE SAN FRANCISCO BAY AREA |
| 9 | |
| | */s/ Bree Bernwanger* |
| 10 | BREE BERNWANGER |
| | VICTORIA PETTY |
| 11 | Attorneys for Plaintiffs |

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                13