KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - #335733
jconcilla@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
BREE BERNWANGER - # 331731
bbernwanger@lccrsf.org
VICTORIA PETTY - #338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 814 7631

*Attorneys for Plaintiffs*

STEPHANIE M. HINDS
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:     415 436-7167
Facsimile:     415 436-7169

*Attorneys for United States of America*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>           Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING PRIVILEGE LOG SUFFICIENCY** |

Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America (the "Government") (collectively, the "Parties") hereby jointly submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order.  The Parties met and

conferred by video conference on January 26, 2023 and February 2, 2023 and were unable to resolve the disputed issue described below.  The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: February 9, 2023

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Travis Silva* | */s/ Kelsey J. Helland* |
| Travis Silva<br>KEKER, VAN NEST & PETERS LLP<br>*Attorney for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |

2044201

**Background:**  This is a dispute about the adequacy of the privilege log ("Privilege Log" or "Log") produced by the Government in this case. The question before the Court is whether the Government should be compelled to produce a revised Log.

**Plaintiffs' Position**

*Background.*  The Government has produced over 50,000 documents. Most are "policy-level" documents that the Government also produced in similar litigation pending in the District of Arizona. With respect to the "policy-level" documents produced to date, the Government "reused" the Log it created for the Arizona litigation. The Log shows that the Government asserted the attorney-client privilege ("ACP") 5,683 times and the qualified deliberative process privilege ("DPP") 5,319 times. But the Government's Log fails to justify the Government's privilege assertions, and accordingly the Government should be compelled to produce a Log that complies with the Federal Rules and this Court's Standing Order ¶ 21.

*Legal standard and the Log's inadequacies.* "If a party withholds material as privileged it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified." *Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925, at *9 (N.D. Cal. Aug. 11, 2022). A privilege log's "primary purpose is to provide information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 233 (S.D.W. Va. 2015) (simplified). The Log falls far short of that standard, frustrating Plaintiffs' efforts to assess the Government's privilege assertions. For example, contrary to Standing Order ¶ 21 (which implements the Federal Rules' requirements for privilege logs), the Log often fails to indicate positions of authors or recipients; identify which authors or recipients are attorneys; "specify separately" the title, description, subject matter, and specific basis for the privilege claim; or distinguish between the date a document was prepared and the date it was circulated. Many entries also omit key information (e.g. 485 list no author, 143 list no date, and 6 have no subject/description). These deficiencies leave Plaintiffs little ability to "assess whether the assertion of privilege is justified." *Rodriguez*, 2022 WL 3327925, at *9.

Below, Plaintiffs explain how the Log's inadequacies prohibit Plaintiffs from assessing the Government's ACP and DPP assertions, which are the two most common assertions. Examples of deficient entries are set forth in Exhibits A (DPP) and B (ACP). Plaintiffs then explain why the Court should dismiss the Government's burden and ripeness objections and explain why the Government's appeals to decisions made by the Arizona court are unpersuasive.

Deliberative Process Privilege. When invoking deliberative process, a privilege log must show that the document is both (1) predecisional or generated before the agency's final decision and (2) deliberative, meaning it was prepared to help the agency formulate its position. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86 (2021). To show that a document is predecisional, "the agency should point to the decision or policy for which the agency prepared the document." *Cal. Native Plant Soc'y v. EPA*, 251 F.R.D. 408, 413 (N.D. Cal. 2008). The privilege log must also include "detailed information as to how any documents purportedly protected by deliberative process privilege fit into the deliberative process." *De Abadia-Peixoto v. DHS*, 2012 WL 5869599, at *6 (N.D. Cal. Nov. 16, 2012) (Westmore, M.J.).

The Log fails to include predicate information for DPP assertions. Many entries do not identify the decision to which a document contributed, making it impossible to assess whether it is predecisional. For example, the Government claims that a June 15, 2018, email with the

description, "Pre-decisional deliberations regarding resources necessary for zero tolerance policy," is privileged. Ex. A, Bates No. CD-US-0199780. But Plaintiffs were separated in *May* 2018 pursuant to a policy that the Government admits it instituted in *April* and *May* 2018, meaning that a *June* document cannot possibly be "predecisional" as to that policy. Indeed, many of the Log's deliberative process entries concede that the document is about "implementation," rather than deliberation. *E.g.*, Ex. A, Bates No. CD-US-0199780. If the Government seeks to call such "implementation" documents "predecisional," it must identify the purported decision at issue to facilitate Plaintiff's review. Similarly, the Log's descriptions frequently fail to show how the document at issue "fits into the deliberative process." *De Abadia-Peixoto*, 2012 WL 5869599, at *6. Merely stating that a document is a "draft" or contains edits (e.g., Ex. A, CD-US-0052789) or that it "facilitates communication" (Ex. A, CD-US-0166092) is enough to demonstrate privilege. *Ctr. for Envtl. Health v. Perdue*, 2019 WL 6114513, at *5 (N.D. Cal. Nov. 18, 2020) (draft rule is predecisional and deliberative, but "a draft of something *other than* a rule might or might not be predecisional or deliberative").

       <u>Attorney-Client Privilege</u>. Traditional ACP principles apply where the government is a party. In particular, the Government must establish that the "primary purpose" of communication is for the Government to obtain legal advice. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759-60 (D.C. Cir. 2014). The Government must demonstrate that an agency "is dealing with its attorney as would any private party seeking advice to protect personal interests," *i.e.*, through a confidential communication seeking legal advice. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). The Log's deficiencies prevent Plaintiffs from assessing the Government's attorney-client privilege assertions. When justifying its attorney-client assertions, the Government ignores this Court's order to "specify separately" (1) the "title and description of the document"; (2) the "subject matter addressed in the document," *and* (3) "The specific basis for the claim that the document is privileged or protected." Instead, the Government provides (in a single field) information so cursory that Plaintiffs cannot meaningfully assess the assertion. For example, the Government provides these "Subject and/or Descriptions" for documents withheld for ACP: (1) "DOJ official's notes regarding meeting with DHS Secretary on family separation policy" (Ex. B, CD-US-00011128A); "The redaction includes a conversation with the AUSA and a discussion of options regarding family separation" (CD-US-00011128A); "Slideshow presented by USAO TXW to CBP regarding prosecution policy and setting forth prosecution guidelines" (CD-US-0021246); and "Email re discussion of implementation of executive order referencing OPLA input, OPLA counsel in loop" (CD-US-0184210). These descriptions are too brief to allow Plaintiffs to assess whether the "primary purpose" of the communication is to provide legal advice or whether a specific legal matter (as opposed to talking about law and policy generally) was discussed. *Kellogg Brown*, 756 F.3d at 759-60. Further, it is impossible to tell whether an attorney is giving legal advice or whether these are general policy discussions, or whether counsel "in the loop" was actually providing legal advice. *See Coastal States*, 617 F.2d at 863.

       ***Response to the Government's objections.*** The Government argues that this challenge is premature and that Plaintiffs did not exhaust the meet-and-confer process. Not so. The Government has confirmed that, even after it completes its forthcoming productions, it will ***not*** re-produce the Log for any document that remains on the Log. Furthermore, the Government has not produced any log at all for hundreds more documents specific to Plaintiffs. The Court should take up this issue now so that it can provide guidance to the parties before more "logging" occurs. Any delay could have substantial implication for the case schedule.

2044201

The Government claims that it is willing to confer about particular log entries. But the Government overstates its willingness to talk. When Plaintiffs raised particular deficiencies for discussion, the Government stated that its privilege assertions were "appropriate and consistent" with rulings from the Arizona court. This demonstrates an unwillingness to engage in meaningful discussion. The Government also argues that Plaintiffs can figure out more information about the documents by looking at context or to "public sources" (presumably websites like LinkedIn) for information about authors and recipients. This suggestion, however, shifts the burden of substantiating privilege assertions from the Government to Plaintiffs. The meet-and-confer discussions show how the Government wants this to work; it has told Plaintiffs to "view the headings of [logged] documents and see for themselves that they are unrelated to this litigation." Plaintiffs should not have to make assumptions about what lies beneath redactions; it is the job of Government attorneys to justify its privilege assertions.

Finally, the Government's invocation of decisions of the Arizona court is inappropriate and unfair. The Government acknowledges that the relevant orders and briefing are sealed, and, despite a request, it has refused to provide Plaintiffs with those documents. The Government cannot hide behind information it does not share with Plaintiffs. Moreover, the Government has not represented (likely because it cannot) that the Arizona court endorsed the adequacy of this Log. Rather, the Arizona court simply resolved *substantive* privilege challenges.

***Plaintiffs' final position and suggestion on where to go from here.*** Plaintiffs ask the Court to compel the production of a privilege log that complies with this Court's Standing Order ¶ 21 and that contains informational fields (i.e., columns) tailored to the specific privilege assertions. Alternatively, given the complexity of this issue, the Court should order formal (i.e., longer) briefing on this issue. However, the Government's suggestion of *in camera* review misses the point of this challenge and should be denied. This is *not* a challenge about substantive privilege calls. Plaintiffs are likely to bring such a challenge at a later point. Rather, this challenge is about compliance with Rule 26(b)(5)(B), and the Court can determine that from the face of the Log and the "as-produced" version of the Government's documents.

**Defendant's Position:** Plaintiffs' challenge to the Common Discovery privilege log is premature, for two reasons: (1) Plaintiffs have not yet received all of the documents at issue, and (2) the parties have not completed their meet-and-confers with respect to any particular documents. In any event, the Log fully complies with the federal rules and is in substantial compliance with this Court's Standing Order, and it would be unjustifiably burdensome to force the government to re-do the entire 8,000-row log rather than address any specific questions.

As the Court is aware, this is one of 34 tort cases pending across the country related to the government's implementation of a Zero-Tolerance policy at the southern border in 2018. Discovery in those cases has been facilitated by the litigants' agreement to use the "Common Discovery" related to policy issues produced by the government in two of the first-filed cases, both in the District of Arizona: *C.M. v. United States*, 19-cv-05217-PHX-SRB, and *A.P.F. v. United States*, No. 20-cv-00065-PHX-SRB (collectively, the "Arizona litigation"). In this case, the government produced 200,731 pages of Common Discovery on September 9, 2022.

The Log here is the exact same privilege log the government produced in the Arizona litigation. It has more than 8,000 rows, reflecting hundreds of attorney-hours. The Log also reflects the Arizona district court's rulings in four separate privilege disputes concerning the government's attorney-client privilege and the deliberative-process privilege assertions. In those orders, each of which followed *in camera* review of representative documents, the Arizona court

3

largely upheld the government's assertions of privilege.  The court found "for the most part that the redactions made by the government based on the attorney-client/work product privileges were carefully and correctly done."  *C.M.*, ECF No. 137 at 6 (Feb. 15, 2022).  The Arizona court also recognized that the deliberative process privilege could apply to deliberations related to "implementation" of the Zero-Tolerance policy that post-date the policy itself.  *C.M.*, ECF No. 142 at 8-9 (Feb. 24, 2022).[1]  And to the extent privilege claims were overruled, the government re-reviewed all affected documents (not just the representative samples) and revised redactions.  In fact, the government performed two separate re-reviews, totaling nearly 400 attorney-hours.

Although Plaintiffs have the most current Log from the Arizona litigation, Plaintiffs do not yet have the most current versions of all the Common Discovery documents, including thousands of documents where the redactions were revised or removed entirely during the re-review processes.  Indeed, 1,343 documents which were previously redacted are now unredacted, at least some of which are still present on the Log.  The government expects to produce the current versions of the documents to Plaintiffs in the coming weeks.

Plaintiffs' challenge to the government's privilege claims is thus inherently premature:  By definition, Plaintiffs cannot determine if they have enough information to evaluate a privilege claim without seeing what material on the document has been redacted and what material has been left unredacted.  The government has also expressed its willingness to investigate questions about specific documents, or groups or categories of documents.  Indeed, the government has already substantively responded to Plaintiffs' privilege inquiries about dozens of documents.  None of those documents are mentioned by Plaintiffs above; instead, all of the above entries are being raised for the first time in this letter.  Plaintiffs' challenge is thus premature for a second reason:  They have not exhausted the meet-and-confer process.

Plaintiffs instead chose to charge ahead with a broadsided challenge against the Log as a whole.  But Plaintiffs misunderstand the legal requirements for preparing privilege logs.  Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party claiming privilege "expressly make the claim," and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  The Ninth Circuit recognizes these requirements were "explicitly left indeterminate," and that "'[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.'"  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. Of Mont.*, 408 F.3d 1142, 1147-48 (9th Cir. 2005) (quoting 1993 advisory committee's note).  "[W]hile details may be appropriate under some circumstances, there are circumstances in which they would be unduly burdensome."  *Id.* at 1148.

Moreover, the question is not whether a privilege log standing alone has all of the information needed to evaluate a claim.  Rather, the question is whether the party evaluating the claim has the necessary information.  The Ninth Circuit has "previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).  In some cases, "summaries" or "redactions" may suffice.  *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989).

---

[1] The Arizona court's third and fourth privilege rulings were issued under seal.  *See C.M.*, ECF Nos. 234 (June 16, 2022); 246 (June 29, 2022).  If the court in *C.M.* and *A.P.F.* permits, the government can submit those sealed orders for this Court's *in camera* review, or file the orders under seal in this matter upon this Court's request (as well as share them with Plaintiffs).

Applying the Ninth Circuit's flexible approach, courts in this District routinely decline to order burdensome revisions to privilege logs when the desired information is available elsewhere. For example, in *In re Google RTB Consumer Privacy Litigation*, No. 21-cv-02155-YGR (VKD), 2022 WL 17072016 (N.D. Cal. Nov. 17, 2022), Judge DeMarchi refused the plaintiffs' request that Google revise 5,470 entries on a 10,500-line privilege log. "Given the very large number of logged documents, the Court [was] sympathetic to Google's argument that it would be unduly burdensome to include for every entry the level of detail that might be appropriate when only small numbers of documents are withheld from production." *Id.* at *4. Instead, Judge DeMarchi ordered a process where the parties would brief a set of representative documents by regularly noticed motion, which the Court would review *in camera*. *Id.*; *see also, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 249-241 (N.D. Cal. 2015) (despite "problems" with privilege log, the combination of the "privilege log, briefs, declarations and the in camera documents" sufficiently supported the privilege claims). Plaintiffs' assertion that the Log itself must contain comprehensive information for every single entry, such as identifying the "decision" at issue for every assertion of the deliberative process privilege, is inconsistent with the Ninth Circuit's and this District's precedent calling for a flexible approach that takes into account the burdens on the party preparing the log and other sources of the information.

The government recognizes that this Court's Standing Order contains specific requirements for privilege logs beyond what is required by Rule 26(b)(5). But the Log is in substantial compliance with the Standing Order. As the Exhibits attached to this letter make clear, the Log contains eleven columns of information, including, among other things, the "Basis for Claim," the "DOCDATE," the "Author," the "Recipient," the "Attorney/Staff Name," and the "Subject and/or Description" of the document or privilege claim. The Log therefore contains virtually all of the substantive information required by the Court's Standing Order. Plaintiffs nitpick that the Log does not always identify individuals' "positions" in every row, and that certain substantive information is provided in a single column instead of broken out into multiple columns. But Plaintiffs cannot seriously argue that either of these issues is preventing them from evaluating the government's privilege claims. *See In re Google*, 2022 WL 17072016, at *4 ("[P]laintiffs' demand for information about the document title or subject line, the organizational positions of the authors and recipients, and detail about the issue, regulation, or policy that is the subject of the document are unlikely to make it easier for plaintiffs or the Court to assess whether a document actually seeks or contains legal advice."). Indeed, Plaintiffs do not even represent that they have reviewed the documents themselves (including the other documents the government produced) to determine whether Plaintiffs already have the allegedly missing information. The documents at issue here are not redacted in full; email addresses and subjects are left unredacted, as are document titles and the authors, recipients, and subjects of memoranda. In the end, the Log is in substantial compliance with this Court's Standing Order, and it would be tremendously burdensome to order the government to re-do the Log wholesale to supplement any apparently missing information, when Plaintiffs may themselves already have that information and the government is willing to meet-and-confer regarding specific questions.

**Defendant's Final Proposed Compromise:** The government proposed that Plaintiffs (1) wait to receive the government's forthcoming amended productions, in which thousands of redactions have been narrowed or removed; (2) evaluate whether any information that Plaintiffs claim is missing is already in Plaintiffs' possession in the unredacted documents or other sources; and (3) meet-and-confer with the government regarding any information that Plaintiffs cannot identify, either on a document-by-document or categorical basis.

Dated: February 9, 2023

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| */s/ Travis Silva* | */s/ Kelsey J. Helland* |
| Travis Silva<br>KEKER, VAN NEST & PETERS LLP<br>*Attorney for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |

2044201