STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7167
Fax: (415) 436-6748
kenneth.brakebill@usdoj.gov

Attorneys for Defendant

KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY (# 230423)
TRAVIS SILVA (# 295856)
CHRISTOPHER S. SUN (# 308945)
CHRISTINA LEE (# 314339)
JACQUELINE CONCILLA (# 335733)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
BREE BERNWANGER - # 331731
131 Steuart Street #400
San Francisco, CA 94105
Telephone: 415-814-7631

Attorneys for Plaintiffs WILBUR P. G.;
WILFREDO BALTAZAR P. E., a minor child;
ERENDIRA C. M.; YASMIN ALICIA M. C., a
minor child; JOSHUA G. G.; and KARL LUIS
G. G., minor child

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILBUR P.G., et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. 4:21-cv-4457-KAW <br><br> **JOINT DISCOVERY LETTER REGARDING DEFENDANT'S REQUEST FOR PRODUCTION NO. 4 AND INTERROGATORY NO. 4** <br><br> Honorable Kandis A. Westmore |

Pursuant to the Standing Order for Magistrate Judge Kandis A. Westmore, the parties hereby submit and attach hereto a joint letter concerning a discovery dispute relating to Defendant's Request for Production No. 4 and Interrogatory No. 4. Lead counsel for Plaintiffs and Defendant attest that they met and conferred by video conference on February 2, 2023 and have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery before submitting this Joint Discovery Letter.

DATED: February 9, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Kelsey J. Helland*[1]
KENNETH W. BRAKEBILL
KELSEY J. HELLAND
Assistant United States Attorneys
Attorneys for Defendant


KEKER, VAN NEST & PETERS LLP

*/s/ Travis Silva*
BROOK DOOLEY
TRAVIS SILVA
CHRISTOPHER S. SUN
CHRISTINA LEE
JACQUELINE CONCILLA
Attorneys for Plaintiffs


LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

*/s/ Bree Bernwanger*
BREE BERNWANGER
VICTORIA PETTY
Attorneys for Plaintiffs

---

[1] In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.



*United States Attorney*
*Northern District of California*

9th Floor, Federal Building  Phone (415)436-7200
450 Golden Gate Ave., Box 36055  Fax (415)436-7234
San Francisco, CA 94102-3495

February 9, 2023

**FILED VIA ECF**

The Honorable Kandis A. Westmore
United States Magistrate Judge
United States District Court, Northern District of California
Ronald V. Dellums Federal Building and United States Courthouse
1301 Clay Street, Fourth Floor
Oakland, California 94612

    Re:    *P.G. v. United States of America*, No. 4:21-cv-04457-KAW (N.D. Cal.)

Dear Judge Westmore:

Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively "Plaintiffs") and Defendant United States of America ("Defendant") jointly submit this discovery-dispute letter pursuant to the Court's Standing Order. This dispute concerns Defendant's Request for Production No. 4 and Interrogatory No. 4, both of which were served on September 13, 2022. The parties hereby attest that on February 2, 2023, lead trial counsel for Plaintiffs and Defendant unsuccessfully met and conferred by videoconference in an effort to resolve this dispute and that the parties have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this joint letter.

                                      Very truly yours,

| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP | STEPHANIE M. HINDS United States Attorney |
| By: /s/ *Travis Silva*_____ BROOK DOOLEY TRAVIS SILVA CHRISTOPHER S. SUN CHRISTINA LEE JACQUELINE CONCILLA *Attorneys for Plaintiffs* | By: /s/ *Kelsey J. Helland* KENNETH BRAKEBILL KELSEY J. HELLAND Assistant United States Attorneys *Attorneys for Defendant* |

**Unresolved Discovery Dispute:**  Whether Plaintiffs must produce documents and information sufficient to describe Plaintiffs' employment and community activities in response to Defendant's Request for Production No. 4 ("RFP 4") and Interrogatory No. 4 ("Rog 4"):

> All documents and communications concerning all employment, professional, volunteer, and community activities each Plaintiff has engaged in following entry into the United States, including, but not limited to, employment offers, contracts, agreements, descriptions of responsibilities, pay statements and records, termination or resignation letters, and any other documents created or maintained by each employer or other organization involved with such activities.  (RFP 4.)

> IDENTIFY and DESCRIBE all employment, professional, volunteer, and community activities each Plaintiff has engaged in following entry into the United States, including the name, street address, and telephone number of each employer or other organization involved with such activities, the date ranges for Plaintiffs' involvement in such activities, the number of hours per week Plaintiffs engaged in the activities, and any salaries, wages, or other compensation or benefits Plaintiffs received for such activities.  (Rog 4.)

**Defendant's Position:**  These discovery requests seek documents and information that are highly relevant to Plaintiffs' allegation of severe injury by Defendant and Plaintiffs' substantial damages demand.  The requested material is proportional to Defendant's need and is not outweighed by Plaintiffs' vague and unsupported burden assertions.

**Relevance.**  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."  *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO (DMR), 2018 WL 2441518, at *3 (N.D. Cal. May 31, 2018) (cleaned up).  In evaluating proportionality, courts consider, among other things, "the amount in controversy, the parties' relative access to relevant information, . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Plaintiffs' employment and community activities are directly related to the amount of damages.  Plaintiffs seek a substantial sum—$30 million—on the basis of intentional infliction of emotional distress, negligence, and other tort claims.  *See* Dkt. 1-1 (Civil Cover Sheet).  They allege that the government "caused the Plaintiffs severe emotional distress" that "changed them profoundly."  Dkt. 1 ("Compl.") ¶¶ 219, 240.  They allege "the consequences of the separations linger to this day, with parent-child bonds suffering from continuing harm, adults suffering from continuing anxiety, and children suffering severe developmental consequences."  *Id.* ¶ 219; *see also id.* ¶¶ 114-16, 150-52, 194-96, 240 (alleging various ongoing injuries, including anxiety, lack of sleep, and headaches).  Defendant is entitled to discover information concerning Plaintiffs' employment and community activities because they inform how, if at all, Plaintiffs' lives have been transformed, particularly in light of Plaintiffs' demand for $30 million.

The requested discovery is directly related to two standard components of personal injury damages under Arizona law: [1] "[l]oss of enjoyment of life, that is, the participation in life's

1

activities to the quality and extent normally enjoyed before the injury," and [2] "[l]ost earnings to date, and any decrease in earning power or capacity in the future." Rev. Ariz. Jury Inst. (Civil) 7th, Personal Injury Damages 1(4), (6) (2021) ("RAJI PID 1").

First, Plaintiffs' employment and their community activities—such as volunteering, club memberships, etc.—are relevant to determining whether Plaintiffs have been able to "participat[e] in life's activities to the quality and extent normally enjoyed before the injury." RAJI PID 1(6). Documents and information indicating that Plaintiffs are in fact well-adjusted and contributing members of their communities would tend to undermine Plaintiffs' claim of ongoing emotional devastation. Discovery concerning Plaintiffs' employment and ability to participate in desired activities will tend to make more or less probable the severe gravity of injuries alleged, including whether the government's conduct had a debilitating impact or whether Plaintiffs have been able to continue with daily activities of life. *See* F.R.E. 401.

Second, documents and information concerning Plaintiffs' employment—such as whether Plaintiffs have been able to obtain and maintain stable employment, and Plaintiffs' income—are relevant to Plaintiffs' "lost earnings" or "decrease in earning power." RAJI PID 1(4). Indeed, Plaintiffs allege that Plaintiff Wilbur P.G. sustained an untreated foot infection during detention that has "impacted the type of work he can do because he cannot stand or work on his feet without experiencing pain and soreness." Compl. ¶ 116. Plaintiffs' employment records also will shine light on whether their alleged emotional injuries—such as anxiety, headaches, lack of sleep, or depression—have negatively impacted their ability to earn income. *See Dornell v. City of San Mateo*, No. 12-cv-06065-CRB (KAW), 2013 WL 5443036, at *5 (N.D. Cal. Sept. 30, 2013) ("Plaintiff's personnel records are, at the very minimum, relevant to the severity of Plaintiff's emotional distress and are directly relevant to her claims of lost income.").

Plaintiffs respond that they "do not currently seek damages for lost wages or for Plaintiffs' inability to participate in specific community activities." Dkt. 64 at 6 (Joint CMC Statement); *see infra* p. 3 ("Plaintiffs do not presently seek to recover lost wages"). But setting aside the suggestion that they might seek them in the future (including based on "expert discovery"), Plaintiffs' Complaint contains no such limitation. To the contrary, Plaintiffs seek $30 million in "[c]ompensatory damages" and other relief, without any limitation. *See* Compl. Prayer for Relief; Civil Cover Sheet. And even if Plaintiffs did renounce such specific components of damages, the information requested is necessary to understand the magnitude of Plaintiffs' "pain, discomfort, suffering, disability, . . . and anxiety," RAJI PID 1(2), and, therefore, is relevant because it tends to make the existence of the significant alleged damages more or less probable. *See* F.R.E. 401. Plaintiffs' position that Defendant should not be allowed discovery related to Plaintiffs' "employers, schools, churches, and clubs" prevents Defendant from fully evaluating the alleged life-altering injuries comprising their $30 million claim. While Plaintiffs suggest this evidence could be "ascertained" "through experts," this only underscores Defendant's need to discover the factual matters that will form the basis for any experts' opinions.

**Burden.** Plaintiffs have not conducted any efforts to collect or review documents or information responsive to RFP 4 and Rog 4, claiming lack of relevance and lack of proportionality. Plaintiffs assert that Defendant's requests are overbroad, insofar as they seek "all" employment-related documents, and because "community" or "volunteer" activities are difficult to define. But Defendant has offered reasonable compromises to address these concerns: Plaintiffs could

2

produce documents sufficient to show the key aspects of Plaintiffs' employment activities, and Plaintiffs could limit their community-activities search to Plaintiffs' most significant activities (as defined in Defendant's final proposal below). Defendant has also repeatedly offered to discuss potential search terms or other techniques that might efficiently identify responsive documents and information. Rather than engage in any such discussions or even investigate how burdensome such searches would actually be, Plaintiffs have simply refused.

Finally, Plaintiffs object that RFP 4 and Rog 4 relate to the most intimate and private aspects of Plaintiffs' lives. But this Court has recognized that "any privacy interests may be protected through [the] protective order." *Dornell*, 2013 WL 5443036, at *5; *see also* Dkt. 58 at 34 (§ 2.2). More fundamentally, discovery is proper when Plaintiffs put these private aspects of their lives directly at issue by seeking a substantial monetary amount based on their alleged severe emotional distress. *See Huynh v. Wal-Mart Assocs., Inc.*, No. 18-cv-01631-VC (SK), 2019 WL 4645724, at *2 (N.D. Cal. Aug. 19, 2019) (rejecting plaintiff's argument that deposition of his wife was "unnecessary" "harassment," because defendants were "entitled . . . to explore Plaintiff's claim for emotional distress," including by "seek[ing] the testimony of a person close to the Plaintiff"). And the very size of "the amount in controversy" here—$30 million—weighs heavily in favor of granting Defendant's requested discovery. *See* Fed. R. Civ. P. 26(b)(1).

**Defendant's Final Proposed Compromise:** Defendant's final proposed compromise was that Plaintiffs would produce documents and information sufficient to identify the following aspects of Plaintiffs' employment activities: the identities of their employers, the hiring and termination dates, their income, and their absences; and that Plaintiffs would produce documents related to their most significant community activities, defined as regularly scheduled activities lasting more than an hour each week, or other activities which are especially significant to Plaintiffs.

**Plaintiffs' Position:** This invasive discovery should not be permitted. Plaintiffs have made clear that they do not intend to seek lost pay, so the adult Plaintiffs' employment histories are not probative of the relevant claims and defenses. The "community activities" portion of these requests similarly seeks irrelevant information and, furthermore, is too vague to be administered by a court. Finally, any marginal relevance of the information is greatly outweighed by the burden and potential prejudice imposed by these requests.

*Relevance.* Information about Plaintiffs' employment and "community activities" is not relevant to the issue of liability or damages. In essence, the Government argues that it is entitled to this discovery merely because Plaintiffs allege they have suffered emotional distress. But merely alleging emotional distress does not open up a plaintiff to discovery into every aspect of life.

The Government argues that Plaintiffs' employment records are relevant to lost earnings and potential diminished future earnings. This is incorrect. Plaintiffs have explained to the Government that Plaintiffs do not presently seek to recover lost wages as damages. Further, Plaintiffs have repeatedly acknowledged that, if their position changes (*i.e.*, in light of expert discovery), they would provide the requested information in a "documents sufficient to show" manner. For that reason, the Government's reliance on *Dornell v. City of San Mateo*, No. 12-cv-06065-CRB (KAW), 2013 WL 5443036 (N.D. Cal. Sept. 30, 2013), is misplaced. *Dornell* was an employment discrimination case. The plaintiff, who sought lost wages, apparently went to work for a subsequent employer "while claiming she was unable to work for the" defendant-

employer "due to her severe emotional distress."  Under those circumstances, this Court compelled production of certain employment records.  But that is distinguishable from this case, where the adult Plaintiffs are not pursuing such damages.  Indeed, in cases analogous to this one, courts do not compel discovery into employment information even where the complaint contains a cursory reference to employment.  *See Silva v. Campbell*, 378 F. Supp. 3d 928, 930 (E.D. Wash. 2018) (prohibiting discovery of plaintiff's employment history when plaintiff represented that he would not seek lost wages, even though the complaint omitted such a limitation).

Nor is the requested employment and "community activity" information relevant to liability.  "The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115-16 (E.D.N.Y. 2013).  Similarly, the Government fails to explain how the information it seeks in its final "compromise" position—"the identities of their employers, the hiring and termination dates, their income, and their absences"—is probative of the adult Plaintiffs' emotional distress.  Knowing someone's income does not speak to emotional distress; knowing the mere fact of whether an employee missed work for any reason at all does not speak to emotional distress; and employer identities also do not address the issue.  Rather, the issue of whether Plaintiffs suffered extreme emotional distress will be ascertained through other means, principally through experts.

The request for "community activity" information is not reasonably particular within the meaning of Federal Rule of Civil Procedure 34(a) and is too vague to be enforced.  "Regularly scheduled activities lasting more than an hour each week" could include such basic tasks as the children Plaintiffs doing homework in the afternoons, the adult Plaintiffs going grocery shopping on a Saturday, or any Plaintiff watching a television show that airs at a fixed hour.  "To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state.  But that is hardly justification for requiring the production of every thought she may have reduced to writing, or, indeed, the deposition of everyone she may have talked to.  Thus, while a party may conduct discovery concerning another party's emotional state, the discovery itself must still comply with the general principles underlying the Federal Rules of Civil Procedure that govern discovery," such as Rule 34(a).  *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) (simplified).  A request that six Plaintiffs provide interrogatory responses about all regularly scheduled or "especially significant" activities is too vague to satisfy Rule 34.  *Cf. Abcellera Biologics Inc. v. Berkeley Lights, Inc.*, 2021 U.S. Dist. LEXIS 144194, at *9-10 (N.D. Cal. Aug. 2, 2021) (denying motion to compel where "requests require subjective judgments about which documents are responsive" and are thus "ambiguous").

***Prejudice.***  The Court must consider these requests within the larger context of this case.  At the same time as it brings this motion, the Government moves to compel on its RFP No. 1 (Plaintiffs' immigration decisions) while also opposing Plaintiffs' motion for a further protective order that would "firewall" discovery in this case from Government personnel involved in Plaintiffs' deportation proceedings.  In joint discovery letters addressing those issues, Plaintiffs explain how the Government's discovery strategy—if allowed—will have a chilling effect on immigrants seeking redress in court.  The instant discovery requests pose the same problem.

Asylum is granted as a matter of discretion.  *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).  This request seeks information that implicates several discretionary factors to be

4

considered as part of Plaintiffs' asylum eligibility, including "[h]istory of employment," "business ties in the United States," "[c]ommunity service," and "value and service to the community." USCIS Policy Manual, Vol. 1, Part E, Ch. 8.C.2. Employment records and information about "community activities," while not relevant to Plaintiffs' claims here, are potentially relevant to their asylum claims. For this reason, the Government's invocation of the existing protective order is not persuasive; Plaintiffs have explained how that order does not provide sufficient protection in the context of this case and against the backdrop of the Government's current and anticipated discovery requests.

Further, any marginal relevance of this information is outweighed by the potential for harassment and intimidation—and the Government's discovery strategy is harassing and intimidating. It is troubling that the Government, having separated Plaintiffs upon their arrival to the United States in the first place, is now using this Court's discovery processes to obtain information that could undermine Plaintiffs' asylum claims (RFP No. 1) and to force Plaintiffs to disclose the identities of their current and past employers, schools, churches, and clubs (these requests)—all of which is potential grist for further harassing third-party subpoenas. There is a high risk that, if allowed, the Government's discovery strategy would deter these Plaintiffs and other potential litigants from seeking redress from the courts. *See EEOC v. Sol Mexican Grill LLC*, 2019 WL 2896933, at *5 (D.D.C. June 11, 2019). ("If victims [ ] fear that bringing their claims to court will result in the discovery of information which could negatively impact their immigration status, those victims may well be chilled from bringing their claims.").

***Burden and Plaintiffs' final position.*** The Government misrepresents the record regarding burden. Until the eleventh hour, the Government failed to offer any concrete alternative to its "all documents" request, encompassing "employment offers, contracts, agreements, descriptions of responsibilities, pay statements and records, termination or resignation letters, and any other documents created or maintained by each employer or other organization involved with such activities." Plaintiffs assessed the burden that the request as written imposed and reported to the Government that it would be onerous to collect several years' worth of such documents, noting in particular, that the request purports to require Plaintiffs to obtain documents from third parties. The Government responded by making its request even *more* vague, asking for information about "material aspects" of Plaintiffs' employment and community activities.

The first time the Government put its "final compromise" position into writing was when it circulated a draft of this joint letter. Still, the narrowed request remains burdensome. Some of the adult Plaintiffs have had multiple jobs since entering the United States. Some of that work has been less formal, meaning that "start and termination dates" may be hard to identify. And it is the rare employee who systematically tracks their own absences, as opposed to on a timecard in the employer's possession. Given that this information is not probative of Plaintiffs' claims, it would impose a disproportioned burden on Plaintiffs to produce the requested materials.

Throughout the meet-and-confer process, the Government insisted that Plaintiffs respond to the requests as written, and Plaintiffs stood on their initial objection that these requests are improper. The Government's newfound willingness to compromise on the courthouse steps has not changed Plaintiffs' position, and Plaintiffs ask that the Court deny the Government's efforts to compel responses to these requests.