KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - #335733 \
jconcilla@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
BREE BERNWANGER - # 331731
bbernwanger@lccrsf.org
VICTORIA PETTY - #338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 814 7631

*Attorneys for Plaintiffs*

STEPHANIE M. HINDS
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:     415 436-7167
Facsimile:     415 436-7169

*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**DISCOVERY LETTER BRIEF RE PLAINTIFFS' REQUEST FOR MODIFICATION OF PROTECTIVE ORDER** |

Dear Judge Westmore:

      Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America (the "Government") (collectively, the "Parties") hereby jointly submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred by video conference on February 2, 2023, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: February 9, 2023

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Travis Silva* | */s/ Kelsey J. Helland* |
| Travis Silva<br>KEKER, VAN NEST & PETERS LLP<br>*Attorney for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |

**Background**:  The Parties dispute whether the Protective Order (Dkt. 58) should be modified such that Defendant may not disclose materials designated by Plaintiffs as highly confidential to individuals involved in Plaintiffs' parallel deportation proceedings without providing advance notice to Plaintiffs and affording Plaintiffs an opportunity to object prior to the disclosure.

**Plaintiffs' Position**:  The unique nature of this case requires further modification of the Protective Order to create a "firewall" between discovery materials in this case and Plaintiffs' deportation proceedings.  In this Court, Plaintiffs seek redress for the Government's tortious conduct.  At the same time, the Government is prosecuting deportation proceedings against Plaintiffs with the ultimate goal of deporting them from this country.  This situation presents the risk that the information obtained through the powerful discovery tools provided for in civil litigation—including document requests, third-party subpoenas, and compelled psychological evaluations—may contaminate the deportation proceedings against Plaintiffs, where such discovery is not permitted.  This puts Plaintiffs between a rock and a hard place: they can pursue their rights in this case, but only at the risk of their confidential discovery materials bleeding into their deportation proceedings.  Fortunately, there is a available solution to this problem: a protective order that erects a firewall between this case and Plaintiffs' immigration proceedings.

All six Plaintiffs have filed for asylum.  "Asylum is a two-step process, requiring the applicant first to establish his eligibility for asylum by demonstrating that he meets the statutory definition of a 'refugee,' and second to show that he is entitled to asylum as a matter of discretion."  *Gulla v. Gonzales*, 498 F.3d 911, 915 (9th Cir. 2007) (simplified).  At the second step, "all relevant favorable and adverse factors must be considered and weighed."  *Id.* (simplified).  Importantly, the Government has no way of conducting discovery into these factors in immigration proceedings.  The Government is not entitled to propound discovery requests to asylum seekers; nor can it depose them.  Nor can the Government subpoena their mental-health records or compel them to sit for psychological evaluations.

The Government is now trying to seek this very discovery—to which it is not entitled in deportation proceedings—in this case.  As Plaintiffs' portions of the concurrently-submitted joint letters regarding the Government's RFP No. 1 and its RFP and Interrogatory No. 4 make clear, the Government is seeking in this case discovery into Plaintiffs' motivations for migrating to the United States and their employment and community activities in this country—information that goes to Plaintiffs' eligibility for asylum, but that does not relate to Plaintiffs' claims here.  The Government also intends to subpoena Plaintiffs' healthcare providers for their mental-health records and will also likely seek to conduct psychological evaluations of Plaintiffs to assess not only the trauma Plaintiffs suffered as a result of their family separations at the United States-Mexico border, but also—as the Government has made clear—the trauma they endured in their respective countries of origin prior to their separations.  And while the Government claims that the invasive discovery it seeks was contemplated by the Parties during negotiations over the Protective Order and the 90-day disclosure period, the record belies this narrative.  The Government served these discovery requests *after* this Court entered the current Protective Order; and Plaintiffs did not agree to produce information about their asylum claims or employment and community records during the 90-day disclosure period.  *See* Dkt. 47 at 5.

As Plaintiffs explain in companion joint discovery letters, this intrusive and harassing discovery should not be allowed because it seeks irrelevant information and is overly burdensome and disproportionate to the needs of this case.  But even if the Court disagrees with Plaintiffs and compels Plaintiffs to respond, the Government's current discovery requests clearly

1

seek information that is more relevant to Plaintiffs' deportation proceedings than to this case—and the Government's future discovery requests are likely to do the same. For immigration court prosecutors to receive such information by way of discovery in this litigation would result in an end-run around the procedures that apply to the asylum process.

There is a ready solution to this problem. Recognizing that immigrants should not have to litigate between a rock and a hard place, courts routinely enter protective orders to safeguard immigrants' rights to petition a court for redress without affecting their immigration proceedings. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (affirming protective order barring discovery into plaintiffs' immigration status due to "the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights"); *Zepeda Rivas v. Jennings*, 3:20-cv-02731-VC (N.D. Cal. 2020) (Dkt. 161) (granting further protective order prohibiting ICE "from using information it obtains about proposed custodians or members of their households through this litigation in enforcement actions against those custodians or members of their households"). The Government's attempt to distinguish these cases only bolsters Plaintiffs' position. Consistent with *Rivera*, Plaintiffs contend that the harassing discovery that the Government seeks should not allowed. And the rationale underlying the order in *Zepeda Rivas* prohibiting ICE from using information discovered in litigation to prosecute non-parties applies no less forcefully to parties to an action.

The Government will not agree to modify the Protective Order, offering shifting and speculative explanations for its refusal; indeed, the Government's response highlights the necessity of Plaintiffs' proposal. When Plaintiffs first raised this issue, the Government responded that law enforcement personnel *might* need to act in "exigent" circumstances with respect to Plaintiffs and would not be able to consult the Protective Order before doing so. When Plaintiffs offered to include an "exigent circumstances" exception, the Government shifted tack and said that it *might* need to show confidential materials to: (1) a single attorney in DHS's Office of General Counsel; (2) law enforcement personnel overseeing Plaintiffs' immigration cases; and (3) Government fact witnesses testifying in both Plaintiffs' immigration cases and this case.[1] Plaintiffs agreed to accommodate the first category and the Government later admitted that its fact witnesses do not need to see Plaintiffs' discovery materials.

The Government has dug in with respect to the second category—the few law enforcement personnel (both prosecutors and investigators) working on Plaintiffs' immigration proceedings. The Government has offered to stipulate not to "use" Plaintiffs' confidential discovery material in their removal proceedings (that's just stipulating to follow an existing court order), and it assures Plaintiffs that it has no "intention" to show their confidential materials to law enforcement personnel. But that preserves the Government's right to do so at a later date "*if anything changes*." Indeed, in rejecting Plaintiffs' final proposal—a compromise that counsel for *the Government* in fact initially proposed but ultimately did not adopt—whereby the Government would provide Plaintiffs with advance notice of any disclosure and an opportunity to object, the Government candidly acknowledged that "we cannot agree to giving Plaintiffs advance notice *if we decide that disclosure to a specific Field Office attorney or ERO employee is necessary for this litigation*."

---

[1] The Government's claim that a firewall would affect "litigation attorneys" at various agencies is a red herring. This motion is about immigration court prosecutors and the access they should have to discovery materials. The Government does not claim that the attorneys working on class actions are the same personnel who prosecute Plaintiffs' asylum cases—because they aren't.

The Government's position is concerning.  Immigration court prosecutors and investigators are not typically involved in civil litigation, let alone in reviewing discovery materials.  There is no reason to preserve the Government's ability to show Plaintiffs' confidential discovery materials to the personnel involved in Plaintiffs' deportation cases.  Further, Plaintiffs cannot verify compliance regarding the "use" of their discovery materials by prosecutors.  "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (simplified).  Unable to "selectively suppress information" learned from this case, prosecutors involved in Plaintiffs' deportation proceedings would be able to direct investigators to develop evidence that appears facially independent of this litigation, but that ultimately derives from the Government's discovery in this case.  Moreover, by refusing to agree to a procedure providing Plaintiffs notice and an opportunity to object, the Government preserves its ability to disclose Plaintiffs' confidential materials without Plaintiffs' knowledge.  And while the Government protests that it does not want to field requests for similar safeguards from plaintiffs in other cases, the fact that the Government has been sued elsewhere for separating families has no bearing on whether the specific circumstances of *this case*, where Plaintiffs are staring down the barrel of invasive discovery while also defending against deportation proceedings, warrant additional protections.

**Plaintiffs' final position.** The protective order should be modified to have a "highly confidential" tier modeled on this District's Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  If the Government seeks to disclose Plaintiffs' highly confidential discovery materials to personnel involved in Plaintiffs' removal proceedings, it should provide Plaintiffs advance notice of the information it intends to disclose and the intended recipient(s) of the information.  Plaintiffs will then have an opportunity to object to the intended disclosure and seek relief from the Court, if necessary, pursuant to the Court's procedure for discovery disputes.  This proposal is modeled on § 7.4 of this District's model two-tiered protective order.

**Defendant's Position:**  The existing Protective Order ("PO"), entered by this Court after three months of party negotiations, fully protects Plaintiffs against their speculative risks.  There is no good cause to modify the PO, which would impose undue burdens on the government.

The existing PO is based on this District's Model PO, with certain modifications negotiated by the parties and approved by the Court.  Section 7 of the PO provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only for prosecuting, defending, or attempting to settle this litigation*."  Dkt. 58 at 41 (emphasis added).  Moreover, "[s]uch Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order," including "the employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound.'" *Id.* The PO was entered on September 7, 2022—the product of three months of negotiations between the parties, after the Court initially declined to adopt wholesale the PO from the Arizona litigation.  *See generally id.* at 2-6, 8-13 (describing procedural history and justifying requested changes to Model PO); *see also* Dkt. 64 at 7-8 (summarizing history).

Despite having just spent months negotiating a Court-approved PO that expressly applies to financial, private, and asylum-related information, Plaintiffs unilaterally halted their productions of documents in October 2022 (after producing just 172 pages of education records)

3

on the ground that modifications to the PO were necessary.  Plaintiffs claimed that they needed these modifications because Defendant's September 13, 2022 discovery requests suddenly sought certain immigration, employment, and other private information from Plaintiffs—even though the parties had agreed to exchange similar information as part of their 90-day disclosures (*see* Dkt. 47 at 5), and the existing PO was deliberately crafted to cover the types of information Plaintiffs purport to be concerned about (*see* Dkt. 58 at 16 (redlines reflecting the parties added terms protecting "personal financial, medical or other private information" and "information pertaining to applications for asylum or withholding of removal")).  Plaintiffs' claim is further belied by their willingness to use this issue to hold hostage documents such as their medical records, which Plaintiffs expressly agreed to produce by September 12, 2022 during the parties' 90-day disclosure period.  *See* Dkt. 47 at 5.  It has been eight months, and Defendant still does not have basic information that Plaintiffs agreed to produce before the existing PO was entered.

Plaintiffs claim that a further "firewall" is necessary, such that the government could not disclose Plaintiffs' confidential information from this litigation to any "individuals involved in Plaintiffs' removal proceedings" without giving Plaintiffs "advance notice" and "an opportunity to object."  But as the government has repeatedly explained in meet-and-confer, Plaintiffs' proposal is unnecessary and would impose unjustifiable burdens and prejudice on the government, for several reasons.

First, as noted above, the existing PO already strictly limits the use of confidential information to prosecuting or defending this litigation, and strictly limits the disclosure of confidential information to certain individuals whose access is reasonably necessary for this litigation.  *See* Dkt. 58 at 41.  Thus, the behavior that Plaintiffs are concerned about—that the government would either intentionally or accidentally use Plaintiffs' confidential information to prosecute or adjudicate other immigration proceedings—would be a clear violation of the existing PO.  The government is well aware of its obligations under the PO and has every intention of complying.  Indeed, "there is a presumption of legitimacy accorded to the Government's official conduct." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties").

Plaintiffs do not and cannot put forward any "clear evidence" that the government will violate the PO here.  Instead, all Plaintiffs can offer is pure speculation and unsupported suggestion of Defendant's nefarious motive to procure discovery in this case to use in Plaintiffs' immigration proceedings.  Even Plaintiffs' hypotheticals are exceedingly unlikely, especially considering the government's representations in the meet-and-confer process.  The government has told Plaintiffs, in writing, that the government has no intention to disclose Plaintiffs' confidential information to any fact witness who did not already have independent access to that information, or to any ICE Field Office attorney working on Plaintiffs' removal proceedings.  Additionally, ICE is segregating materials in this litigation, such that the attorneys and personnel working on Plaintiffs' removal proceedings cannot access them.  And if anything changes (which the government does not presently expect), any disclosure and use would be limited by the terms of the existing PO, including the requirement that any receiving individuals sign the Acknowledgement and Agreement to Be Bound by the existing PO.  *See* Dkt. 58 at 41.

Second, Plaintiffs' firewall would impose undue burdens and prejudice on the government.  As the government previously informed Plaintiffs, government attorneys and employees at multiple levels could be said to be "working on" Plaintiffs' immigration

4

proceedings, and therefore could be impacted by Plaintiffs' firewall.  For example, there are district-court-litigation attorneys at DHS, CBP, ICE, and USCIS—not just "a single attorney in DHS's Office of General Counsel," as Plaintiffs incorrectly assert above—working on both this litigation (including reviewing discovery) and the *Ms. L* and other class-action litigation, the resolution of which could directly impact Plaintiffs' immigration proceedings.  There is no reason to force these attorneys to be on one side or the other of Plaintiffs' firewall; these attorneys need to be able to advise the agencies on any effect the separate class actions may have on Plaintiffs' proceedings.  The government is also concerned that Plaintiffs' firewall would be an administrative quagmire, improperly limiting the government's ability to reallocate resources internally, promote line attorneys to broader litigation positions, and staff future matters—where there is absolutely no risk that these individuals would use Plaintiffs' confidential information in Plaintiffs' immigration proceedings.  And of course, the government's concerns are magnified by the possibility that any special procedures established in this case will be requested by the plaintiffs in the 33 other Zero-Tolerance policy cases pending around the country.  Thus far, when plaintiffs in other cases have raised similar concerns, the government's re-affirmation of the substantially similar protective orders in those cases has been sufficient.

   Plaintiffs' cited cases do not support their requested firewall here.  The Ninth Circuit's decision in *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004), involved an antidiscrimination lawsuit brought by employees against their employer; the employees' immigration status was "not relevant to determining whether [the employer] violated Title VII."  The case therefore concerned whether discovery into an issue would be allowed at all, not the details of to whom responsive information could be disclosed under various versions of a protective order.  Judge Chhabra's order in *Zepada-Rivas v. Jennings*, No. 3:20-cv-02731-VC (N.D. Cal. 2020) (Dkt. 161) merely prevented ICE from "using" information it obtained in litigation to prosecute certain non-parties, including by prohibiting ICE from adding the non-parties' confidential information to the plaintiffs' A-files.  But again, such use and disclosure is already prohibited by the existing PO in this case, and the government will not put confidential information from this litigation in Plaintiffs' A-files.  And in *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010), the Federal Circuit recognized that "provisions specifying that designated confidential information may be used only for purposes of the current litigation" "are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation."  *Id.* at 1378.

   Finally, Plaintiffs' arguments that the government's discovery requests demonstrate Plaintiffs' need for a heightened PO are misguided.  As Defendant explains in its concurrently filed letters, the requests at issue seek information that is directly related to liability, causation, and damages in this litigation—indeed, contrary to Plaintiffs' unsupported assertion, this information is "more relevant" to this litigation than to Plaintiffs' removal proceedings.  Plaintiffs' efforts to portray the government as using litigation tools to conduct a nefarious fishing expedition are contradicted by the government's explicit representations in this litigation, including its repeated position that such conduct would be prohibited by the existing PO.

   **Defendant's Final Proposed Compromise:**  Defendant proposed to stipulate that DHS, ICE, CBP, and USCIS attorneys will limit the sharing of documents marked "Confidential" pursuant to the terms of the Protective Order.  However, if DHS agencies obtain the information completely independent of Plaintiffs' disclosure in this litigation, or if the document is entered on the public docket, DHS component agencies could disclose or use that information in immigration or other proceedings or adjudications.

Dated: February 9, 2023

Respectfully submitted,

*/s/ Travis Silva*

Travis Silva
KEKER, VAN NEST & PETERS LLP
*Attorney for Plaintiffs*

Respectfully submitted,

*/s/ Kelsey J. Helland*

Kenneth W. Brakebill
Kelsey J. Helland
UNITED STATES ATTORNEY'S OFFICE
*Attorneys for Defendant*