1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2  MICHELLE LO (NYRN 4325163)
   Chief, Civil Division
3  KENNETH W. BRAKEBILL (CABN 196696)
   KELSEY J. HELLAND (CABN 298888)
4  Assistant United States Attorneys

5  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
6  Telephone: (415) 436-7167
7  Fax: (415) 436-6748
   kenneth.brakebill@usdoj.gov
8
   Attorneys for Defendant
9
   KEKER, VAN NEST & PETERS LLP            LAWYERS' COMMITTEE FOR CIVIL
10 BROOK DOOLEY (# 230423)                 RIGHTS OF THE SAN FRANCISCO BAY AREA
   TRAVIS SILVA (# 295856)                 BREE BERNWANGER - # 331731
11 CHRISTOPHER S. SUN (# 308945)           131 Steuart Street #400
   CHRISTINA LEE (# 314339)                San Francisco, CA 94105
12 JACQUELINE CONCILLA (# 335733)          Telephone: 415-814-7631
13 633 Battery Street
   San Francisco, CA 94111-1809
14 Telephone: 415-391-5400
   Facsimile: 415-397-7188
15

16 Attorneys for Plaintiffs WILBUR P. G.;
   WILFREDO BALTAZAR P. E., a minor child;
17 ERENDIRA C. M.; YASMIN ALICIA M. C., a
   minor child; JOSHUA G. G.; and KARL LUIS
18 G. G., minor child

19                        UNITED STATES DISTRICT COURT

20                     NORTHERN DISTRICT OF CALIFORNIA

21                              OAKLAND DIVISION

22 WILBUR P.G., et al.,                ) CASE NO. 4:21-cv-4457-KAW
                                       )
23       Plaintiffs,                   )
                                       ) **JOINT DISCOVERY LETTER REGARDING**
24    v.                               ) **DEFENDANT'S REQUEST FOR PRODUCTION**
                                       ) **NO. 1**
25 UNITED STATES OF AMERICA,           )
                                       )
26       Defendant.                    )
                                       ) Honorable Kandis A. Westmore
27                                     )

28

Pursuant to the Standing Order for Magistrate Judge Kandis A. Westmore, the parties hereby submit and attach hereto a joint letter concerning a discovery dispute relating to Defendant's Request for Production No. 1.  Lead counsel for Plaintiffs and Defendant attest that they met and conferred by video conference on February 2, 2023 and have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery before submitting this Joint Discovery Letter.

| | |
|---|---|
| DATED: February 9, 2023 | Respectfully submitted, |
| | STEPHANIE M. HINDS<br>United States Attorney |
| | */s/ Kelsey J. Helland*[1]<br>KENNETH W. BRAKEBILL<br>KELSEY J. HELLAND<br>Assistant United States Attorneys<br>Attorneys for Defendant |
| | KEKER, VAN NEST & PETERS LLP |
| | */s/ Travis Silva*<br>BROOK DOOLEY<br>TRAVIS SILVA<br>CHRISTOPHER S. SUN<br>CHRISTINA LEE<br>JACQUELINE CONCILLA<br>Attorneys for Plaintiffs |
| | LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA |
| | */s/ Bree Bernwanger*<br>BREE BERNWANGER<br>VICTORIA PETTY<br>Attorneys for Plaintiffs |

---

[1] In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.



*United States Attorney*
*Northern District of California*

*9th Floor, Federal Building*   Phone  (415)436-7200
*450 Golden Gate Ave., Box 36055*   Fax  (415)436-7234
*San Francisco, CA 94102-3495*

February 9, 2023

**FILED VIA ECF**

The Honorable Kandis A. Westmore
United States Magistrate Judge
United States District Court, Northern District of California
Ronald V. Dellums Federal Building and United States Courthouse
1301 Clay Street, Fourth Floor
Oakland, California 94612

     Re:   *P.G. v. United States of America*, No. 4:21-cv-04457-KAW (N.D. Cal.)

Dear Judge Westmore:

Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively "Plaintiffs") and Defendant United States of America ("Defendant") jointly submit this discovery-dispute letter pursuant to Sections 13 and 14 of the Court's Standing Order. The dispute concerns Defendant's Request for Production No. 1, which was served on September 13, 2022. The parties hereby attest that on February 2, 2023, lead trial counsel for Plaintiffs and Defendant unsuccessfully met and conferred by videoconference in an effort to resolve this dispute and that the parties have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this joint letter.

                              Very truly yours,

| | | | |
|---|---|---|---|
| | KEKER, VAN NEST & PETERS LLP | | STEPHANIE M. HINDS United States Attorney |
| By: | */s/ Travis Silva*<br>BROOK DOOLEY<br>TRAVIS SILVA<br>CHRISTOPHER S. SUN<br>CHRISTINA LEE<br>JACQUELINE CONCILLA<br>*Attorneys for Plaintiffs* | By: | */s/ Kelsey J. Helland*<br>KENNETH BRAKEBILL<br>KELSEY J. HELLAND<br>Assistant United States Attorneys<br>*Attorneys for Defendant* |

**Unresolved Discovery Dispute:**  Whether Plaintiffs must produce documents responsive to Defendant's Request for Production No. 1 ("RFP 1"), which reads as follows:

> All documents and communications concerning the reasons that each Plaintiff left her or his country of origin, including, but not limited to, the allegations that she or he fled her or his country of origin because of violence and/or fear of persecution. This request includes, but is not limited to, all correspondence, declarations, affidavits, attestations, or sworn statements, copies of any and all documents that mention, contain evidence of, or in any way relate to the reasons that each Plaintiff left her or his country of origin. This request includes, but is not limited to, any such documents submitted to any government agency, entity, or office.

**Defendant's Position:**  RFP 1 seeks documents that are directly related to specific factual allegations in Plaintiffs' Complaint as well as legal claims and defenses. Plaintiffs' vague and unsupported assertions of burden do not outweigh Defendant's need for these documents.

**Relevance.**  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "'Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.'" *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO (DMR), 2018 WL 2441518, at *3 (N.D. Cal. May 31, 2018) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006)). "Information . . . need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Documents concerning Plaintiffs' reasons for leaving their countries of origin ("COO") are relevant in two ways.

First, the requested documents will tend to prove or disprove causation and damages for Plaintiffs' claimed injuries. While Plaintiffs seek a substantial sum of damages ($30 million) for the "severe emotional distress" and other injuries that they allege Defendant caused them after they crossed the border illegally (*e.g.*, Dkt. No. 1 ("Compl.") ¶ 219; *see also* Dkt. No. 1-1 (Civil Cover Sheet)), evidence indicates that Plaintiffs may have left their COOs due to traumatic or otherwise harmful events they experienced there. Indeed, the fact that each Plaintiff is seeking asylum in the United States suggests that they may have suffered persecution or fear persecution in their COOs. *See* 8 U.S.C. § 1101(a)(42)(A). Thus, documents related to Plaintiffs' reasons for leaving their COOs will demonstrate the extent to which Plaintiffs' emotional injuries were not caused by Defendant but instead were caused by events in their COOs that pre-date their entry into the United States. *See, e.g.*, *Planned Parenthood*, 2018 WL 2441518, at *7 ("Plaintiffs are entitled to test Defendants' claim that their damages were exclusively caused by third parties who were beyond Defendants' control."); *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-cv-01891-CRB (LB), 2022 WL 16856349, at *3 (N.D. Cal. Nov. 10, 2022) (documents pre-dating alleged violations were relevant to determining damages for those violations).

After multiple rounds of meet-and-confer, Plaintiffs conditionally agreed to produce documents sufficient to show any traumatic events they experienced in their COOs—effectively conceding the relevance of such documents. Nevertheless, Plaintiffs ultimately refused to produce any documents, because Defendant did not withdraw its request for documents concerning Plaintiffs' other "non-traumatic" reasons for coming to the United States, discussed immediately below.

Second, documents concerning Plaintiffs' reasons for leaving their COOs are relevant to Plaintiffs' allegations that they each left "to seek asylum" in the United States. Compl. ¶¶ 68, 118, 153. Plaintiffs' Complaint emphasizes the historical significance of asylum, describing it as reflecting "'one of the oldest themes in America's history'" and "'giv[ing] statutory meaning to our national commitment to human rights and humanitarian concerns.'" Id. ¶ 18 (citation omitted). But the central theme of Plaintiffs' Complaint is that the federal government allegedly devised a policy "to deter potential immigrants from coming to the United States to seek asylum," id. ¶ 2, and that Plaintiffs' alleged suffering "was the intentional purpose of [that] Policy," id. ¶ 4. Plaintiffs allege that the government under the prior Administration "engaged in a concerted effort to curtail the number of individuals applying for asylum in the United States" by harming them through separations. Id. ¶ 20; see also id. ¶¶ 19, 21, 22, 24, 42, 55, 56 (describing government policy as targeting asylum-seekers).

These allegations are not confined to the Complaint's background factual allegations; Plaintiffs' causes of action expressly claim that Defendant injured them because they were asylum seekers—and that Defendant is liable for that reason. For example, Plaintiffs' first cause of action, for intentional infliction of emotional distress, alleges that the government's conduct was "extreme and outrageous"—one of the elements of the claim—because "[t]he government separated the Plaintiff families to deter future asylum applications and to encourage asylum seekers like the Plaintiff families to abandon their asylum claims." Compl. ¶ 217. And Plaintiffs' third cause of action, for abuse of process, similarly alleges that the government had "the improper ulterior motive of deterring Plaintiffs from asserting their rights, protected by both U.S. and international law, to seek asylum in the United States." Id. ¶ 228. Plaintiffs have thus put their status as bona fide "asylum seekers" at issue both thematically and legally.

Documents concerning all of Plaintiffs' reasons for leaving their COOs—including any non-traumatic, non-asylum-related reasons Plaintiffs may have had (e.g., to seek better economic or educational opportunities, or to reunite with other family members in the United States) are therefore relevant to the existence of a material fact: whether Plaintiffs truly did leave to seek asylum. Contrary to Plaintiffs' claim that RFP 1 is a "fishing expedition" for documents that may not even "exis[t]," discovery in this case has already revealed documents that bear directly on this issue. A reasonable factfinder may ultimately decide that the government's conduct toward Plaintiffs was less "extreme and outrageous" if Plaintiffs did not solely leave their COOs to seek asylum relief in the United States. The factfinder could also find this evidence undermines Plaintiffs' damages claim for the "profoun[d] chang[es]" to their lives, to the extent it shows Plaintiffs achieved their other objectives for coming to the United States—a point Plaintiffs do not dispute.

**Burden.** Plaintiffs have not conducted any efforts to collect or review documents responsive to RFP 1. Instead, they argue that the requested documents are not relevant, and so any time spent on the task would be an improper "collateral investigation" that they should not have to undertake. But this argument fails because the documents are relevant, as explained above. Moreover, the government has already produced Plaintiffs' A-files, which contain Plaintiffs' immigration filings, and which total no more than a few hundred pages for each Plaintiff. Thus, the "comprehensive" investigation Plaintiffs refer to would not be unduly burdensome.

2

To the extent Plaintiffs have asserted any particular burdens, those assertions crumble upon inspection. Plaintiffs' counsel have represented that certain responsive documents were previously turned over to Plaintiffs' immigration counsel. But Plaintiffs' immigration counsel are under Plaintiffs' "control" for purposes of responding to requests for production. *See, e.g.*, *Miller v. IBM*, No. 02-cv-02118-MJJ (MEJ), 2006 WL 8459961, at *2 (N.D. Cal. Apr. 13, 2006) (explaining that "documents in the possession of a party's former attorney are within the party's control for the purposes of Rule 34"). Plaintiffs' counsel have also stated that they would not know how to search for documents related to the other, non-asylum reasons why Plaintiffs left their COOs. But there is no reason Plaintiffs cannot make a reasonable effort to collect potentially responsive documents from their most likely locations (such as Plaintiffs' email accounts, text messages, app-based messages, and personal files, all of which are routinely done in federal litigation) and review them for responsiveness to this Request. Indeed, Defendant has repeatedly offered to discuss potential search terms or other techniques that might efficiently identify responsive documents. However, rather than engage in any such discussions or even investigate how burdensome such searches would be, Plaintiffs have simply refused.

**Defendant's Final Proposed Compromise:** Defendant's final proposed compromise was that Plaintiffs would produce documents sufficient to show all of the reasons they left their countries of origin—including both traumatic reasons and any other reasons Plaintiffs had.

**Plaintiffs' Position:**

The Government forcibly separated Plaintiffs, all of whom have filed asylum applications, at the United States-Mexico border and kept them separated for weeks, causing Plaintiffs severe emotional distress. Plaintiffs' claims are about that conduct. Plaintiffs are not litigating the strength of their asylum claims in this forum—the parties can address that issue in immigration court. But, through this RFP, the Government seeks discovery that is directly relevant to Plaintiffs' asylum claim and obviously irrelevant to Plaintiffs' tort claims. Whether intended or not, the Government's discovery request is harassing and, if allowed, will chill immigrants' access to the courts. And, compliance with the RFP will burden Plaintiffs by forcing their counsel in this case to conduct a mini-investigation into Plaintiffs' immigration cases that is entirely collateral to the issues in this case. The Government's request should be denied.

**The RFP seeks irrelevant information**. The scope of this dispute is narrow. During the meet-and-confer, the parties bifurcated discussion of the term "reasons," as that term is used in the RFP, to "traumatic reasons" and "non-traumatic reasons."

There is no dispute about "traumatic reasons." The Government asserts that pre-separation trauma is relevant to parsing out the trauma Plaintiffs suffered as a result of their separations from the trauma Plaintiffs suffered prior to their separations—put differently, the Government seeks to determine the "net" amount of trauma that Plaintiffs suffered as a result of the Government's tortious conduct. Setting aside the soundness of the Government's "net trauma" theory, Plaintiffs offered (and remain willing) to produce documents sufficient to identify traumatic events that precipitated their departure for the United States, to the extent such documents exist. By contrast, the Government's compromise position does not appear to be much of a compromise at all—while the Government has limited its request for "all documents" to "documents sufficient to show," the substantive scope of the request remains unchanged. The parties' relevance dispute boils down to whether Plaintiffs should be compelled to provide the Government—which, in parallel to this proceeding, is prosecuting Plaintiffs' deportation

cases—with discovery into "non-traumatic reasons" (if any) that Plaintiffs had for migrating to the United States. There is no connection between any such "reasons" and this case because the strength of Plaintiffs' asylum claims is irrelevant to the issues before this Court. The Government's contrary arguments are easily belied. The Government points to Plaintiffs' allegations in the Complaint about the historical significance of asylum, but this case does not put America's historical commitment to asylum on trial. The Government points to Plaintiffs' allegations that they are asylum seekers, but the underlying *fact* that all six Plaintiffs have sought asylum is not in dispute; all have filed asylum applications and indeed, the Government possesses the applications. And while the Government contends that the discovery sought is relevant to allegations that the Government intended to deter asylum seekers from coming to the United States, the Government's contention strains credulity—how would documents about why *Plaintiffs* chose to immigrate here have any probative value as to whether *the Government* implemented the family separation policy to deter immigration? Evidence of the Government's intentions and policy goals is in the Government's possession, not in documents about Plaintiffs' pre-separation lives.

        Unable to show a connection between Plaintiffs' reasons for migrating to the United States and Plaintiffs' claims, the Government candidly concedes that its ultimate goal is to determine "whether Plaintiffs truly did leave to seek asylum," *i.e.*, whether Plaintiffs are "bona fide" asylum seekers. But that, too, has nothing to do with this case. For one, the Government applied the family separation policy to both asylum seekers and non-asylum seekers. For another, practically speaking, the Border Patrol officials who separated Plaintiffs at the border could not have determined at the time whether Plaintiffs (or any other families separated at the border) were "bona fide" asylum seekers (whatever "bona fide" might mean to the Government). Border Patrol officers never adjudicate asylum decisions; only asylum officers and immigration judges resolve asylum claims and, even then, only through a process subject to Article III review. These processes necessarily post-date Plaintiffs' separation. All that the Border Patrol officials might have known at the time they separated Plaintiffs is whether Plaintiffs stated that they intended to seek asylum—and this RFP bears no relation to that question. Finally, the Government supposes that a "reasonable" factfinder might conclude that the Government's conduct was less outrageous if Plaintiffs had multiple reasons for leaving their countries of origin. The Government offers no authority for this troubling suggestion.

        Plaintiffs assert a claim for an intentional infliction of emotional distress. This puts the ***Government's motives*** are at issue. The victims' motives for making the decisions that ultimately put them in the Government's crosshairs are irrelevant to Plaintiffs' claim. This invasive and harassing discovery should not be allowed.

        **The RFP chills access to the courts and highlights the necessity of granting Plaintiffs' cross-motion for a further protective order.** In requesting Plaintiffs' "non-traumatic reasons" for migrating, the Government is seeking information that (if it exists) could undermine Plaintiffs' asylum claims. This fishing expedition is obviously improper.[1] The Government not only administers Plaintiffs' asylum cases (immigration courts are administrative fora housed within the same Department of Justice whose conduct is at issue in this case) but it also investigates and prosecutes Plaintiffs' deportation cases. Any decision permitting the

---

[1] The Government claims that "discovery in this case has already revealed documents that bear directly on this issue." But even after substantial meet/confer about this specific statement, the Government declines to identify any such documents for the Court—because it cannot, in good faith, substantiate this assertion.

4

Government to conduct irrelevant discovery into the merits of an immigrant's deportation case will deter immigrants from accessing the courts. Furthermore, permitting the Government to obtain the discovery it seeks here is an end-run around immigration court procedures, which do not allow the Government to propound document requests or interrogatories or to take depositions. Immigrants brave enough to assert their rights in court should not be forced to fight against deportation on unequal terrain.

The Government's stated intent to wield this harassing discovery to challenge Plaintiffs' eligibility for asylum makes Plaintiffs' pending request for a modification of the Protective Order all the more paramount. After seeing the scope of RFP 1, Plaintiffs asked the Government to stipulate to amend the Protective Order such that Government personnel involved in Plaintiffs' deportation proceedings could not have access to Plaintiffs' confidential discovery materials. As set forth in further detail in a companion joint discovery letter, for the Government to build a record in this case challenging Plaintiffs' status as "bona fide" asylum seekers, all the while refusing to agree to a firewall between this case and Plaintiffs' deportation proceedings, puts Plaintiffs in a precarious position, where pursuing this action may result in consequences for their deportation proceedings. These *in terrorem* effects are precisely the kinds of harm that courts have held warrant additional protective order safeguards for immigrant litigants. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (affirming protective order barring discovery into plaintiffs' immigration status due to "the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights"). Plaintiffs reiterate their request for a modification of the Protective Order here.

**Burden.** The Government's request for documents concerning all reasons Plaintiffs left their countries of origin is unduly burdensome and disproportionate to the needs of the case. RFP 1 burdens Plaintiffs and their counsel with an unnecessary collateral investigation into Plaintiffs' asylum claims. This case is not about Plaintiffs' reasons for migrating, and Plaintiffs and their counsel should not be burdened with a document-collection effort into Plaintiffs' reasons for immigrating. Such an investigation would require Plaintiffs and their counsel to continue liaising and closely coordinating with Plaintiffs' immigration counsel and could require counsel in this case to undertake a comprehensive review of immigration counsel's files for each Plaintiff. Such a search is far more involved than the Government's production of Plaintiffs' centrally-produced A-files. All Plaintiffs have alleged is that they are asylum seekers; that fact is not in dispute; and that should be the end of discovery into that issue.

The Government's offer to confer about "search terms" is beside the point. To start, the Government's request for a search of all of Plaintiffs' email accounts, text messages, app-based messages, and other personal files is extreme—the Government has not produced a single text message or app-based message and would almost certainly resist a request to search those kinds of repositories. The Government's request should be denied on that basis alone. And, as Plaintiffs explain above, the type of burden at issue here is not one that search terms can address. Unlike the "there's too much ESI to search" burden that is typical in other civil litigation, the burden Plaintiffs resist here is a compelled detour of a counsel-led investigation into the merits of Plaintiffs' asylum claims, which are being presented by other counsel in a different forum.

**Plaintiffs' Final Position:** Plaintiffs have offered and remain willing to produce documents sufficient to identify traumatic events that precipitated their departure for the United States, to the extent such documents exist.

5