ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7167
Fax: (415) 436-6748
kenneth.brakebill@usdoj.gov

Attorneys for Defendant

KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY (# 230423)
TRAVIS SILVA (# 295856)
CHRISTOPHER S. SUN (# 308945)
CHRISTINA LEE (# 314339)
JACQUELINE CONCILLA (# 335733)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
BREE BERNWANGER - # 331731
131 Steuart Street #400
San Francisco, CA 94105
Telephone: 415-814-7631

Attorneys for Plaintiffs WILBUR P. G.;
WILFREDO BALTAZAR P. E., a minor child;
ERENDIRA C. M.; YASMIN ALICIA M. C., a
minor child; JOSHUA G. G.; and KARL LUIS
G. G., minor child

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILBUR P.G., et al., | CASE NO. 4:21-cv-4457-KAW |
| Plaintiffs, | |
| v. | **FURTHER JOINT CASE MANAGEMENT STATEMENT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | Honorable Kandis A. Westmore |

The parties to the above-captioned action jointly submit this FURTHER CASE MANAGEMENT STATEMENT pursuant to the Court's January 17, 2023 Order (ECF No. 65) and Section 8 of the Court's Standing Order:

**1. Jurisdiction and Service**

Plaintiffs bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. There are no known issues regarding personal jurisdiction, venue, or service at this time. Defendant has been served.

Defendant asserts that the Court lacks subject-matter jurisdiction for the reason that Congress has not waived the federal government's sovereign immunity from claims for money damages in the circumstances presented in this case.

**2. Facts**

This case concerns three Plaintiff families that entered the United States by crossing from Mexico into Arizona in or around May 2018. ECF No. 1 ¶ 3. Plaintiffs are three pairs of parents and children, totaling six individuals: a father and son from El Salvador (using pseudonyms Wilbur P.G. and Wilfredo Baltazar P.E.), one mother and daughter from Guatemala (using pseudonyms Erendira C.M. and Yasmin Alicia M.C.) and one father and son from Guatemala (using pseudonyms Joshua G.G. and Karl Luis G.G.) (collectively "Plaintiffs"). *Id*. ¶¶ 10-12. Plaintiffs allege that "[t]he government forcibly separated these parents and children in CBP's [Customs and Border Protection] Arizona facilities without notice or explanation," and "Plaintiffs then spent weeks detained in different facilities with the government facilitating little to no communication between parents and children." *Id*. ¶ 67.

According to the Complaint, Plaintiffs' separations resulted from the United States' adoption of a "Family-Separation Policy" that "intentionally separat[ed] immigrant families [] for the express purpose of causing families emotional harm." ECF No. 1 ¶ 1. Plaintiffs allege that "[t]he policymakers who created and directed the implementation of the Policy sought to 'deter' immigrants, believing that if arriving asylum-seekers were subjected to inhumane treatment—including the severe emotional distress of having their children taken from them—they would 'give up' on their asylum applications and agree to be deported from the United States." *Id*. ¶ 2. Plaintiffs allege that the parents were separated from

their children for months, oftentimes without knowing anything about where their children were, and with the children thinking they would never see their parents again. *Id.* ¶¶ 56-57. Plaintiffs were ultimately reunited after months of detention, but they continue to suffer prolonged effects related to their forcible separation. *Id.* ¶¶ 111-116, 150-152, 194-196.

Defendant admits that in 2018, the United States implemented a Zero-Tolerance policy which directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." ECF No. 45 ¶¶ 45, 54. Defendant further admits that some families were separated at the United States–Mexico border during the Zero-Tolerance policy, and some children were classified as Unaccompanied Children ("UCs") and transported to Office of Refugee Resettlement ("ORR")-funded care provider facilities. *Id*. ¶ 16, 54. Defendant contends that federal law required that children be placed into ORR custody once the children were classified as UCs. ECF No. 29 at 2:21-3:6, 3:26-4:10. Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent. ECF No. 45 ¶ 53. Defendant admits that the three Plaintiff families in this action were separated. *Id*. ¶ 54.

**3. Legal Issues**

Plaintiffs assert five causes of action under Arizona law for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, and loss of consortium arising out of Plaintiffs' separation after crossing into the United States. ECF No. 1 ¶¶ 214-240. Plaintiffs claim that they suffered extreme emotional distress when they were separated, during their separation and after they were reunified. *Id*. ¶ 4. Defendant denies that Plaintiffs are entitled to the requested relief and asserts various defenses, including that Plaintiffs' claims are barred to the extent that they are based on the exercise or performance, or the failure to exercise or perform, a discretionary function or duty. ECF No. 45 at 33 ¶ 2.

Accordingly, the parties believe the Court may be called upon to resolve a number of legal issues, including but not limited to: (1) whether Defendant intentionally inflicted emotional distress upon Plaintiffs; (2) whether Defendant breached any duties of care to Plaintiffs that proximately caused

them damages; (3) whether Defendant abused judicial process in the conduct of proceedings against Plaintiffs; (4) whether Defendant breached a fiduciary duty in its supervision of, or negligently supervised, Plaintiff children, thereby proximately causing them damage; (5) whether Plaintiffs suffered a loss of consortium; (6) whether Plaintiffs' claims are barred by the discretionary function exception to the FTCA; (7) whether Plaintiffs' claims are barred by the FTCA's due care exception (28 U.S.C. § 2680(a)); and (8) whether Plaintiffs' claims are barred because the challenged government actions have no private-person analogue.

**4. Motions**

      **(i)**      **Motion to Transfer; Motion to Dismiss**

On January 5, 2022, Defendant filed a Motion to Transfer; Motion to Dismiss, which the parties fully briefed. ECF Nos. 29, 40, 41. The Court denied the motions on May 10, 2022. ECF No. 44.

      **(ii)**      **Unopposed Motion for Protective Order Relief**

On September 6, 2022, Defendant filed an unopposed administrative motion for protective order relief. ECF No. 54. The Court granted this motion on September 7, 2022, resulting in the entry of a protective order for use in this litigation.

**5. Amendments to the Pleadings**

The parties have no plans to amend the pleadings.

**6. Evidence Preservation**

The parties previously certified that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirmed that they met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7. Disclosures**

As part of the initial case management process, the parties agreed to engage in two disclosure exchanges prior to the opening of discovery on September 13, 2022. ECF No. 47 at 4-5. The parties made their disclosure of documents dependent on the execution of privacy waivers by each Plaintiff and the entry of an appropriate protective order. *Id.* The privacy waivers were executed on July 18, 2022,

and the Court entered a stipulated protective order on September 7, 2022. Subsequently, on September 9, 2022, Defendant produced 200,731 pages of documents bearing the Bates range CD-US-U-00000001 to CD-US-0200731A. On September 13, 2022, Plaintiffs produced nine pages of documents bearing the Bates range PGPLFS00000001 to PGPLFS00000009.

**8. Discovery**

### (i) Discovery Schedule

Pursuant to the parties' agreement during the initial case management process, formal discovery in this case opened on September 13, 2022. ECF No. 47 at 8. Fact discovery is currently scheduled to close on June 9, 2023. ECF No. 50. The parties agree that the fact discovery cutoff should be extended three months to September 8, 2023; that expert discovery should be extended three months to November 10, 2023; and that summary judgment briefing should be extended approximately one month. But the parties disagree on the extent to which the pretrial and trial schedule should be altered as a result. The parties discuss their competing proposals in § 16, below.

### (ii) Orders On Prior Discovery Disputes

On March 10, 2023, the Court ruled on four then-pending discovery disputes. ECF No. 70. The Court denied Plaintiffs' request for a revised Common Discovery[1] privilege log; granted Defendant's request that Plaintiffs provide supplemental responses to Defendant's RFP No. 4 and Interrogatory No. 4; denied Plaintiffs' request to modify the Protective Order; and granted-in-part and denied-in-part Defendant's request that Plaintiffs produce additional documents in response to Defendant's RFP No. 1. *See id.* The Court ordered Plaintiffs to serve supplemental responses and documents within 21 days, or March 31, 2023. *Id.* at 5. On March 31, Plaintiffs served supplemental responses and produced additional documents in accordance with the Court's March 10 order. Defendant is currently reviewing Plaintiffs' supplemental response and productions.

On April 11, 2023 (the same day this Joint Case Management Statement is being filed), the Court ruled on another discovery dispute. ECF No. 72. The Court granted Plaintiffs' requests that Defendant

---

[1] "Common Discovery" is the term the parties use to refer to Defendant's production of "policy-level" documents that Defendant produced in similar litigation pending in the District of Arizona.

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                   4
2122166

1  supplement its responses to Plaintiffs' Interrogatory Nos. 6 and 8, and ordered Defendant to provide
2  such supplemental responses within 21 days.

### (iii) Discovery Served Since Last Case Management Conference

Since the January 17, 2023 case management conference, the parties have served the following new discovery requests:

On January 19, 2023, Plaintiffs served their Second Set of Requests for Production, consisting of a single request. Defendant served its response on February 21, 2023.

On March 10, 2023, Plaintiffs served their Third Set of Requests for Production, Second Set of Interrogatories, and First Set of Requests for Admission. These sets consisted of 36 requests for production, four numbered interrogatories, and 43 requests for admission. Defendant served its responses and objections to the Third Set of RFPs and the Second Set of Interrogatories on April 10, 2023. At Defendant's request, which was prompted by the need for the several federal agencies at issue to sufficiently consider and respond to Plaintiffs' 43 requests for admission, Plaintiffs granted Defendant a two-week extension on the First Set of RFAs, responses to which are now due on April 24, 2023.

On March 10, 2023, Plaintiffs also served supplemental responses to Defendant's Interrogatories Nos. 1 and 3.

On March 24, 2023, Defendant served its Second Set of Requests for Production and Second Set of Interrogatories. These sets consisted of three requests for production and six numbered interrogatories. Plaintiffs' responses are due on April 24, 2023.

On March 28, 2023, Plaintiffs served a supplemental response to Defendant's Interrogatory No. 5.

On April 4 and 5, Plaintiffs served subpoenas and deposition notices on two of Defendant's contractors that took physical custody of the minor Plaintiffs during the events at issue. No other depositions have been noticed or taken.

### (iv) Document Productions Since Last Case Management Conference

Plaintiffs have made two productions since the January 17, 2023 case management conference, on March 17, 2023 and March 31, 2023 totaling 1,920 pages (PGPLFS00000173 to PGPLFS00002092).

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                5
2122166

Defendant has made three productions since the January 17, 2023 case management conference, on March 3, 2023, March 20, 2023, and March 29, 2023. The March 3 and March 29 productions totaled 7,836 pages (USA00022685 to USA00030520). The March 20 production consisted of an up-to-date production of all "Common Discovery" from the Arizona litigation (including documents which were produced to Plaintiffs in this litigation previously; documents for which technical issues had been corrected; documents for which redactions had been changed based on privilege rulings in the Arizona litigation, and documents which were otherwise newly produced in the Arizona litigation), totaling 219,829 pages (CD-US-U-00000001 to CD-US-0219829). This re-production of the "Common Discovery" includes 2,765 documents, containing 9,443 pages, that Defendant had not previously produced. Due to the volume of documents involved and the fact that they were processed in the first instance by a separate litigation team, Defendant produced all of the current Common Discovery as a complete set, including documents which were previously produced to Plaintiffs in this litigation. As Plaintiffs describe below in further detail, it is currently unclear to Plaintiffs whether the nature of the March 20 production is prejudicial to Plaintiffs, and Plaintiffs are seeking to confer on that point.

### (v) Ongoing Discovery Issues

The parties have been engaged in meet and confer efforts on several additional issues relating to the parties' outstanding discovery requests and responses. Below is a non-exhaustive list of the topics in the parties' meet and confer discussions. With respect to any issues that become ripe for judicial intervention, as necessary the parties will crystallize those disputes and thereafter file discovery letters pursuant to Section 14 of the Court's Standing Order.

### (a) Defendant's Responses to certain of Plaintiffs' "Policy-Level" Requests for Production

**Plaintiffs' position**: Out of 38 "policy-level" (i.e., non-plaintiff-specific) Requests for Production (Set One), Defendant has agreed to a case-specific search for documents responsive to just two RFPs. For the remaining 36 requests, Defendant refuses to search for or produce responsive documents beyond those already included in the "Common Discovery." However, simply producing the Common Discovery and departing the field is improper. Plaintiffs had no control over discovery in the Arizona litigation, and Plaintiffs disagree that the "Common Discovery" adequately responds to

Plaintiffs' RFPs.  In particular, Plaintiffs have identified several issues that render the Arizona discovery procedures insufficient to respond to Plaintiffs' Requests for Production, including inadequate custodians, incomplete search terms, improper date ranges, and a Technology Assisted Review ("TAR") procedure that Plaintiffs did not agree to.  (Defendant first disclosed the Arizona parties' use of TAR to Plaintiffs on March 31, 2023.)

The parties already held the conference between lead counsel on this issue that is required by the Court prior to raising a discovery dispute, but at the conclusion of that conference, the parties agreed to continue conferring in writing.  Plaintiffs provided compromise proposals on some of these issues, but Defendant did not agree to supplement any of the searches conducted in the Arizona litigation.  Thus, on April 10, Plaintiffs demanded a final conference on these (and other) issues within ten days, pursuant to the Court's Standing Order. Defendant, citing scheduling conflicts, stated that it is unavailable to confer until May 2.  Recognizing that any compelled document production would take time, Plaintiffs proposed limiting the conference to just these RFPs and agreeing to a flexible briefing schedule.  Defendant refused.  Although the impasse is apparent, Plaintiffs will comply with the Court's Standing Order and wait for the Government to make itself available before filing a motion to compel.

**Defendant's position:** Plaintiffs misrepresent Defendant's discovery responses and productions of policy-level documents.  Contrary to Plaintiffs' assertion, Defendant searched for and produced documents responsive to almost all of Plaintiffs' policy-level document requests.  For many of these, Defendant's search primarily consisted of communicating with the DOJ and agency attorneys involved in the Arizona litigation to determine whether the extensive searches conducted in that case were directed toward the same sets of documents Plaintiffs request here.  For multiple requests, the relevant agencies did agree to conduct additional searches beyond what was collected in the Arizona litigation, where Defendant determined that the searches conducted in the Arizona litigation were not directed at the documents Plaintiffs requested (and where Defendant agreed that such documents were properly discoverable). Defendant's search in response to these requests was reasonable, both (1) because of the significant, often verbatim overlap of the requests with those in the Arizona litigation; and (2) because of the comprehensive nature of the document review in the Arizona litigation—which involved

reviewing several hundred thousand documents, and producing more than 200,000 pages (which Plaintiffs here now have), at the cost to Defendant of more than 4,000 attorney-hours and countless additional hours spent by contractors and agency counsel. In spite of the significant resources Defendant already expended and the vast number of documents Plaintiffs already have to review, Plaintiffs nevertheless insist that Defendant conduct yet more searches here. Plaintiffs' demand is wholly out of proportion with their need for such documents in this FTCA case.

Plaintiffs requested a final meet-and-confer on these issues by April 24. Defendant in good faith explained that both of its counsel in this matter are unavailable on the same day due to multiple work-related and personal reasons until May 2 – a mere eight days after the date Plaintiffs requested. Defendant strongly believes that both counsel should be available for any "final conference" under the Court's scheduling order, as well as during any discovery-dispute briefing, just as Plaintiffs have convened a team of multiple lawyers during the parties' previous meet and confer conferences and briefing periods. Defendant would hope that the parties could resolve such modest scheduling issues informally, without requiring the Court's intervention, but Plaintiffs appear to disagree. Defendant will further respond to Plaintiffs' arguments regarding these requests at the appropriate time.

### (b)  Government's Production of Plaintiff-Specific Documents (First Set)

**Plaintiffs' position:** Defendant agreed to produce three categories of plaintiff-specific documents by September 12, 2022. *See* ECF No. 47 at 4-5; ECF No. 50. Defendant produced the first such documents on December 8, 2022. (In its section below, Defendant does not dispute this, but instead discusses the irrelevant production of other documents.) Plaintiffs subsequently identified several documents missing from Defendant's production of plaintiff-specific documents. Defendant has not confirmed when (or even that) it will produce these documents. Accordingly, Plaintiffs do not know when production of plaintiff-specific documents will be complete. Defendant has also confirmed that it is withholding portions of plaintiff-specific documents on the basis of privilege. Plaintiffs have repeatedly requested a privilege log, but Defendant has not provided one.

**Defendant's position:** Defendant produced more than 200,000 pages of documents to Plaintiffs on September 9, 2022. Plaintiffs, by contrast, did not produce *any* documents to Defendant before the

agreed-upon date of September 12, 2022, and did not produce *any* of the medical records they had agreed to produce by that date until ordered to do so by the Court in March of this year. Defendant has also produced more than 22,000 pages of Plaintiff-specific documents from multiple federal agency components after numerous searches. Defendant is coordinating with agency counsel to diligently search for and produce a small number of additional documents, which Defendant has made clear to Plaintiffs will be produced promptly if and when they can be located. Finally, Defendant has repeatedly informed Plaintiffs that Defendant is preparing and will serve a Plaintiff-specific privilege log when the Plaintiff-specific productions are completed, and in the meantime the nature of Defendant's privilege claims are apparent from the labels used on the redactions themselves, and Defendant stands ready to meet and confer with Plaintiffs regarding specific assertions at any time.

### (c) Government's "Common Discovery" Production

**Plaintiffs' position:** Defendant "re-produced" the entire "Common Discovery" on March 20, 2023. This "re-production" (1) omitted 1,799 documents that Defendant had previously produced, (2) included 2,765 documents that were not in prior productions, and (3) included several previously-produced documents with altered metadata. Defendant has not yet provided Plaintiffs with an explanation for all of these changes. Almost all of the 1,799 previously-produced documents that were excluded from the March 20 production are not listed on Defendant's privilege log. Plaintiffs began conferring about the March 20 production during a March 23 videoconference between counsel. Defendant admitted that numerous documents first produced to Plaintiffs on March 20, 2023 were produced in the Arizona litigation in October 2022. Defendant has not provided an explanation for this delay. Also on March 20, Defendant produced a revised privilege log with 8,318 entries that Plaintiffs are reviewing, including for the purpose of potentially challenging Defendant's privilege assertions. Finally, Plaintiffs are awaiting responses to multiple inquiries about technical aspects of Defendant's document production.

**Defendant's position:** Defendant made an initial production of more than 200,000 pages of Common Discovery on September 9, 2022, which consisted of all of the policy-level documents which had been produced in the Arizona litigation at that time. In the months that followed, Defendant became

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                9
2122166

aware of technical issues with some of the Common Discovery documents; moreover, Defendant made additional productions in the Arizona litigation following Defendant's September 9, 2022 production in this matter.  Although Defendant was under no obligation to do so under the parties' agreement for initial productions, Defendant made clear to Plaintiffs on November 4, 2022 that Defendant would in fact produce additional documents from the Arizona litigation to Plaintiffs.  Notwithstanding Defendant's agreement, Plaintiffs subsequently served 52 requests for production, including specific requests for these documents, on November 22, 2022, to which Defendant responded on January 12, 2023, agreeing to produce all Common Discovery documents from the Arizona litigation.  Defendant repeatedly experienced technical difficulties of its own in its efforts to locally process these very large productions, and on March 20, 2023, Defendant again produced the Common Discovery documents to Plaintiffs, reflecting the current Common Discovery set as of the date of that production, including approximately 17,000 pages of documents that had been produced in the Arizona litigation between September 2022 and March 20, 2023.

On April 4, 2023 Plaintiffs emailed Defendant with several questions about the March 20, 2023 Common Discovery production.  Defendant informed Plaintiffs that it was investigating these questions by coordinating with the DOJ attorneys who had collected and produced the Common Discovery in the Arizona litigation in the first instance.  Defendant will promptly answer Plaintiffs' questions about the Common Discovery as it obtains the information needed to do so.

### (d) Defendant's Responses to Plaintiffs' First Set of Interrogatories, Set One

**Plaintiffs' position:** On April 11, the day that the parties submitted this Joint Further Case Management Statement, the Court resolved the parties' discovery dispute concerning Interrogatories Nos. 6 & 8, holding that Defendant's use of Rule 33(d) in its responses to those Interrogatories was improper and ordering Defendant to produce supplemental responses.  Defendant also used Rule 33(d) in a substantively similar manner in its other responses (Nos. 1-5 & 7).  Plaintiffs requested that Defendants supplement its responses to these Interrogatories.  Defendant has not replied.  Plaintiffs will continue to confer with Defendant about these responses.

Separately, Defendant agreed to serve a supplemental response to one interrogatory, but has not

provided a date certain by when it will do so. Defendant has not identified the individual(s) who will verify these interrogatory responses, which impedes the deposition process.

**Defendant's position:** Defendant is currently assessing the Court's discovery ruling of the morning this Joint Case Management Statement is due, which may impact the parties' ongoing discussions regarding these interrogatories. Moreover, as Defendant has informed Plaintiffs, Defendant is working diligently to identify the necessary representative(s) from the relevant federal agencies for purposes of verifications, and Defendant will serve such verifications when they have been finalized.

### (e)  Depositions

**Plaintiffs' position**: Defendant is hampering Plaintiffs' ability to conduct depositions. The primary obstacle is Defendant's decision, described above, not to provide substantive responses to written discovery. In addition, Defendant is not forthcoming about allowing discovery into its potential trial witnesses. Defendant's initial disclosures identify 28 potential witnesses that Defendant may call at trial. Plaintiffs asked to confer about this and requested that Defendant narrow its list. Defendant refused—in fact, on April 7, Defendant stated that it would identify *additional* relevant "individuals" for Plaintiffs' consideration. Defendant also refuses to produce custodial documents for 17 of the individuals on its initial disclosures. Further, Defendant refuses to respond to multiple interrogatories that seek the identities of key actors in the events at issue.

With respect to the number of depositions, given the complexity of the underlying events, the court overseeing the Arizona litigation allowed plaintiffs there to take at least 18 depositions. Defendant provided some of these deposition transcripts to Plaintiffs here. Plaintiffs are willing to confer with Defendant about ways to streamline depositions, given the production of the Arizona depositions here. But Defendant has not yet agreed to the admissibility of any of the Arizona depositions in this matter, which is an important threshold issue that inhibits Plaintiffs' ability to confer further about the use the Arizona depositions in this case. And, Defendant's "proposal" referred-to below involved Defendant proposing that Plaintiff take no depositions of "policy-makers," something Plaintiffs cannot agree to at this point. Plaintiffs will continue to confer with Defendant about how to conduct depositions in this case. Plaintiffs believe that it is premature for the Court to wade into this dispute but foresee the

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                11
2122166

likelihood that the Court may need to resolve a dispute on this point.

**Defendant's position:** Plaintiffs again misrepresent Defendant's discovery responses. Defendant has repeatedly identified its potential witnesses in its matter, through its initial disclosures, the documents it has produced to Plaintiffs, and its interrogatory responses, including most recently its April 10, 2023 responses to Plaintiffs' Second Set of Interrogatories, which identify the additional witnesses that Defendant represented to Plaintiffs on April 7, 2023 would be forthcoming. Plaintiffs have plenty of information with which they can evaluate potential witnesses and prioritize their depositions. Indeed, Plaintiffs have been in possession of over 200,000 pages of policy-level documents for more than six months, and more than 20,000 pages of Plaintiff-specific documents for more than three months, yet Plaintiffs still assert that they need Defendant to explain to them which witnesses Plaintiffs should depose. With respect to the policy-level depositions, Defendant put forward a proposal months ago for how the transcripts from those depositions could be used in this matter, but Plaintiffs stated that they needed to review those transcripts before making any determinations regarding policy depositions here. Defendant recently asked Plaintiffs whether they had completed their review and determined whether they believe additional policy-level depositions are warranted here. Plaintiffs have not responded to Defendant's question.

Defendant understands that Plaintiffs are willing to work cooperatively on a plan for depositions in this matter, such that duplicative depositions of witnesses who were previously deposed in similar litigation can be avoided. The parties will continue to confer on such a plan.

### (vi) Medical Records

Defendant has indicated that it intends to subpoena all of Plaintiffs' medical records. During the parties' meet and confer, Plaintiffs raised an overbreadth and relevance objection. To date, in response to parallel discovery requests concerning their medical care, Plaintiffs have agreed only to produce records from mental health providers. Defendant, on the other hand, believes that Plaintiffs' medical conditions bear directly on the issue of mental health and, therefore, are relevant to their damages claims. To date the parties have agreed to bifurcate the two issues and for now, the parties are working collaboratively to see if they can agree upon the scope of the subpoenas to Plaintiffs' mental health

providers. Defendant may seek judicial relief in the event the parties are not able to resolve their dispute concerning Plaintiffs' medical records.

### (vii)  Medical Examinations

On April 10, 2023 (the day before the parties filed this Statement), Defendant presented a proposal to Plaintiffs explaining the nature and estimated timing of medical examinations.  The parties will confer further regarding these proposed medical examinations of Plaintiffs.  Defendant's proposal contemplates commencing the examinations in June 2023.

**9. Class Actions**

This case is not a class action.

**10. Related Cases**

There are approximately 30 pending cases across district courts in this country that arise out of separations of non-citizen families at the U.S-Mexico border in 2017 or 2018. *See* ECF No. 47 at 7. Two are pending in this District: *I.T. v. United States*, No. 4:22-cv-05333-DMR; and *J.R.G. v. United States*, 4:22-cv-05183-KAW.

**11. Relief Sought**

Plaintiffs' Complaint seeks the following relief: compensatory damages, punitive damages, attorney's fees and costs, and "[s]uch other and further relief as the Court deems just." Each Plaintiff's FTCA administrative claim sought $5 million in damages, for a total of $30 million requested by the Complaint. ECF No. 1-1.

**12. Settlement and ADR**

In 2021, the government engaged in negotiations to globally settle district court cases and pending administrative tort claims arising from family separations at the U.S.-Mexico border. Neither the Plaintiffs in this case nor their counsel were part of those negotiations. No settlement was reached.

In their Rule 26(f) conference, the parties discussed ADR and agreed that they would exchange disclosures and pursue discovery before engaging in any further ADR discussions.

**Defendant's further statement:** Defendant has filed its ADR certification and still believes it is premature to engage in ADR at this time given the amount of discovery remaining to be conducted,

including depositions and medical examinations of Plaintiffs, and the significant damages demanded by Plaintiffs ($30 million).

**Plaintiffs' further statement:** At the initial CMC, Plaintiffs' counsel requested that—in lieu of verbally translating the Court's ADR manual into Mam and obtaining a Spanish translation of the manual—the Court permit Plaintiffs' counsel to verbally counsel Plaintiffs about this Court's ADR program, including the substance of the ADR manual. The Court verbally agreed. Plaintiffs and their counsel have complied. Plaintiffs are prepared to participate in ADR (other than arbitration) whenever Defendant indicates that it is not "premature" to do so.

**13. Other References**

None.

**14. Narrowing of Issues**

The parties continue to engage in meet and confer to narrow the issues in the case.

**15. Expedited Trial Procedure**

None suggested at this time.

**16. Scheduling**

The parties agree that a modification of the case schedule is necessary. In particular, the parties agree that the fact discovery cut-off, the schedule for expert discovery, and the summary judgment briefing schedule and hearing date should be extended by one month, as indicated in the table below. (For clarity, the parties agree on the dates through the January 11, 2024 hearing date.)

However, the parties disagree as to whether these proposed modifications require moving the trial date and associated pre-trial deadlines. On this point, the parties ask for the Court's guidance at the forthcoming CMC. The parties' proposals are as follows:

| Event | Current Dates | Plaintiffs' Proposed Dates | Defendant's Proposed Dates |
|---|---|---|---|
| Fact discovery cut-off | June 9, 2023 | September 8, 2023 | September 8, 2023 |
| Opening expert disclosures | June 30, 2023 | September 22, 2023 | September 22, 2023 |
| Rebuttal expert | July 28, 2023 | October 20, 2023 | October 20, 2023 |

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW         14
2122166

| | | | |
|---|---|---|---|
| disclosures | | | |
| Expert discovery cut-off | August 25, 2023 | November 10, 2023 | November 10, 2023 |
| Summary judgment opening briefs | | October 24, 2023 | October 24, 2023 |
| Summary judgment opposition briefs | | November 21, 2023 | November 21, 2023 |
| Summary judgment replies | | December 19, 2023 | December 19, 2023 |
| Summary judgment hearing | December 7, 2023 | January 11, 2024 | January 11, 2024 |
| Deadline for pre-trial meet and confer | March 15, 2024 | March 15, 2024 | April 11, 2024 |
| Pre-trial filings due | March 25, 2024 | March 25, 2024 | April 25, 2024 |
| Pre-trial conference | April 24, 2024 | April 24, 2024 | May 22, 2024 |
| First day of trial | May 6, 2024 | May 6, 2024 | June 10, 2024 |

**Plaintiffs' Position:** Moving the trial date would prejudice Plaintiffs. Plaintiffs understand that the Court's docket is congested and do not assume, as Defendant seems to, that the Court can accommodate a four-week continuance of the trial date. Plaintiffs' objection to moving the trial date is informed by their understanding that if the Court does vacate the existing trial date, the Court's calendar may require it to set a new trial date that is many months later than the current May 2024 date, a problem Defendant ignores. Any significant alteration of the trial date would harm Plaintiffs' ability to present their case. Plaintiffs expect that their own testimony will play a key role at this trial about emotional distress. Plaintiffs will not be presenting routine testimony like a commercial witness does. Rather, Plaintiffs' recollections of the events at issue were formed under traumatic circumstances and the memories of the children Plaintiffs in particular may be difficult to preserve already nearly five years

after the events at issue. Furthermore, this case has already been substantially delayed by Defendant. At the outset of this case, Defendant obtained multiple extensions of its deadline to respond to Plaintiff's complaint—about six months' worth—over Plaintiffs' objections.

Plaintiffs believe that it is feasible to conduct pre-trial proceedings on the schedule Plaintiffs propose. There are approximately 10 weeks between the summary judgment hearing and the deadline for pre-trial filings. This is sufficient time to allow counsel to prepare the case for trial. (Indeed, when factoring in the December holidays, the proposed change to the pre-trial period is quite modest.) Defendant may note that Defendant would need to prepare for trial while Defendant's anticipated summary judgment motion is pending. While Plaintiffs endeavor to reduce inefficiencies wherever possible, parties commonly prepare for trial with summary judgment pending and, critically, the proposed extension of the discovery cut-offs is the result of Defendant's positions in discovery and the anticipated need for the Court to resolve the substantial discovery disputes described in Section 8(v) of this Statement.

Finally, Plaintiffs, too, believe that Defendant's "finger-pointing exercise" and the additional "context" that Defendant provides below are unnecessary. The Court should resolve the dispute about the trial date on the merits of the Government's request and Plaintiffs' objection. Plaintiffs will merely note that it is unpersuasive for the Government to invoke *past*, now-resolved disputes to justify vacating a trial date more than a year away. Indeed, Section 8(v) of this Statement speaks for itself; virtually every outstanding discovery dispute is about the Government's responses to Plaintiffs' discovery requests. And as for the timing of Plaintiffs' discovery requests, Plaintiffs engaged in a review of the Common Discovery produced in September 2022 before propounding case-tailored discovery in November 2022—something the Government urged Plaintiffs to do.

**Defendant's Position:** The thrust of the dispute between the parties is whether one additional month should be added to the pretrial and trial schedule. Defendant believes that Plaintiffs will suffer no prejudice by adding roughly four weeks to that schedule. Plaintiffs cite the need to preserve the memories of the children Plaintiffs yet those memories will be recorded in (1) medical examinations that Defendant proposes to commence in two months and (2) depositions in the fact discovery period that

Plaintiffs already agree to extend by three months to September 8, 2023. As the Court explained in the parties' initial case management conference specifically on the topic of the length of the pretrial schedule, the Court and the parties need ample time to receive the summary judgment order and then negotiate, plan for and file the multitude of pretrial papers in a case that is neither light on documents or witnesses. Defendant believes that it is wholly reasonable to extend the pretrial and trial schedule one month when the summary judgment hearing is also being extended one month.

Finally, Defendant does not believe it is productive to engage in a finger-pointing exercise to attribute blame for any schedule extensions in this case or to cast aspersions because of delay at the outset of the case while the United States sought (unsuccessfully) to engage in a nationwide settlement of family-separation cases. But in the interest of full context, Defendant points out that for approximately four months Plaintiffs unilaterally ceased production of any documents in this case, including their own medical and other records, notwithstanding the existence of a carefully considered and negotiated protective order entered by this Court in September 2022 and Plaintiffs' agreement to produce such medical and other records by September 12, 2022. Moreover, Defendant was forced to seek judicial relief when for months Plaintiffs continued to object to the relevance of their employment and community activities notwithstanding their significant damages claims that their lives had been transformed by the government's tortious acts. Plaintiffs also waited more than two months after discovery opened on September 13, 2022 to serve their first sets of discovery requests on November 22; by contrast, Defendant expeditiously served its first discovery requests on September 13, 2022, the first day that it could. After Defendant served its responses to Plaintiffs' first requests, Plaintiffs waited another six weeks before beginning the meet-and-confer process regarding those requests. The fact is that Plaintiffs initiated the topic of a schedule modification during the parties' meet and confers several weeks ago. And Defendant agreed because it is in the interest of both parties and the Court to complete the necessary discovery in this case.

**17. Trial**

Plaintiffs and Defendant agree that claims brought under the FTCA are tried by the Court. The Court has set the length of the trial for 10 days. ECF No. 53 at 1. As discussed at the Initial CMC, the

Court and the parties may revisit the exact amount of days for trial depending on the issues remaining in the case and the necessary witnesses and evidence.

**18. Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs are unaware of any non-party interested entities or persons. ECF No. 46.

Defendant is exempt from this requirement as a federal government entity.

**19. Professional Conduct**

The parties' counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. Such Other Matters As May Facilitate Just, Speedy and Inexpensive Resolution**

None.

DATED: April 11, 2023                                    Respectfully submitted,

                                                         ISMAIL J. RAMSEY
                                                         United States Attorney

                                                         */s/ Kelsey J. Helland*[2]
                                                         KENNETH W. BRAKEBILL
                                                         KELSEY J. HELLAND
                                                         Assistant United States Attorneys
                                                         Attorneys for Defendant


                                                         KEKER, VAN NEST & PETERS LLP

                                                         */s/ Travis Silva*
                                                         BROOK DOOLEY
                                                         TRAVIS SILVA
                                                         CHRISTOPHER S. SUN
                                                         CHRISTINA LEE
                                                         JACQUELINE CONCILLA
                                                         Attorneys for Plaintiffs

---

[2] In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW                        18
2122166

| | |
|---|---|
| 1 | LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA |
| 2 | |
| 3 | */s/ Bree Bernwanger* |
| 4 | BREE BERNWANGER<br>VICTORIA PETTY |
| 5 | Attorneys for Plaintiffs |

FURTHER CASE MANAGEMENT STATEMENT
CASE 4:21-CV-4457-KAW    19
2122166