KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - #335733
jconcilla@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
BREE BERNWANGER - # 331731
bbernwanger@lccrsf.org
VICTORIA PETTY - #338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 814 7631

*Attorneys for Plaintiffs*

ISMAIL J. RAMSEY
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:   415 436-7167
Facsimile:    415 436-7169

*Attorneys for United States of America*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>                Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**DISCOVERY LETTER BRIEF RE: DEFENDANT'S PRODUCTION** |

Dear Judge Westmore:

      Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America (the "Government") (collectively, the "Parties") hereby jointly submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred by video conference on May 2, 2023, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: May 11, 2023

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ Christopher S. Sun[1] | /s/ Kelsey J. Helland |
| BROOK DOOLEY<br>TRAVIS SILVA<br>CHRISTOPHER S. SUN<br>CHRISTINA LEE<br>JACQUELINE CONCILLA<br>KEKER, VAN NEST & PETERS LLP<br>*Attorneys for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |

---

[1] In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.

**Unresolved Discovery Issue:** Whether the Government should be compelled to conduct supplemental searches in response to Plaintiffs' policy-level Requests for Production.
**Plaintiffs' Position:** In this case about the effects that a *national policy* had on specific *individual people*, the parties have informally divided discovery into a "policy-level" bucket and a "plaintiff-specific" bucket. This motion is about policy-level discovery.[2] In response to almost all of Plaintiffs' policy-level RFPs, the Government has refused to produce any documents beyond those it already produced in similar litigation pending in the District of Arizona (*C.M. v. United States*, No. 19-cv-05217-PHX-SRB, and *A.P.F. v. United States*, No. 20-cv-00065-PHX-SRB). (The parties call the Arizona policy-level production the "Common Discovery.") Out of 37 policy-level requests in Plaintiffs' First Set of RFPs, for example, the Government agreed to conduct supplemental searches for *one* request. For the rest, the Government will produce only the Common Discovery from Arizona, in some cases **while even refusing to certify that this production included *any document* responsive to Plaintiffs' requests**. Plaintiffs have identified several deficiencies in this production and have asked the Government to confer about an ESI protocol to conduct limited supplemental searches for additional responsive documents, but the Government has categorically refused to engage. **This is improper**. Plaintiffs ask the Court to order the Government to confer with Plaintiffs about, and then to run, supplemental searches responsive to Plaintiffs' policy-level RFPs. *See* Exhibit A (highlighting example RFPs).

**The Government's Reliance on the Common Discovery is Improper:** It is "well-established" in this District that ESI discovery requires significant cooperation between the parties. *Baranco v. Ford Motor Co.*, 2018 WL 9869540, at *1 (N.D. Cal. Apr. 10, 2018); *see also* U.S. Dist. Ct., N. Dist. Of Cal., *Guidelines for the Discovery of ESI*, Guideline 1.02 (Cooperation). But instead of cooperating with Plaintiffs, the Government essentially seeks to discharge its discovery obligations by simply re-producing the Common Discovery and, in doing so, shackling Plaintiffs to discovery agreements the Government made with entirely different counsel and parties in Arizona. That conduct is particularly egregious given that the Government culled otherwise-responsive documents from its Arizona production with technology-assisted review ("TAR"), a process which "requires an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282172, at *4 (N.D. Cal. Oct. 11, 2021) (internal citations omitted).

This matters because the Government has acknowledged that Plaintiffs' RFPs seek relevant documents that are missing from the Common Discovery. In resisting supplemental searches, the Government instead rests solely on a burden objection, relying on its efforts collecting the Common Discovery documents for the Arizona cases. But objections based on undue burden must be substantiated by specific evidence. *See In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005). The Government has not even attempted to provide such evidence regarding the burden of the limited supplemental searches requested by Plaintiffs, instead spilling much ink on its discovery efforts in the Arizona litigation. But, courts in this Circuit routinely hold that the burden of re-producing documents that were already collected and produced in a separate case is minimal and does not affect the proportionality calculus. *See Hernandez v. Sephora USA, Inc.*, 2017 WL 956653, at *4 (N.D. Cal. Mar. 13, 2017)

---

[2] When it became clear the Government would rely on this distinction in opposing this motion, Plaintiffs offered to confer further so the Court could resolve the plaintiff-specific and policy disputes at once. The Government refused and insisted the Parties file on this discrete issue.

("[Defendant] will likely be able to produce California-specific discovery [from a separate state-court case] with almost no additional burden."); *Munoz v. PHH Corp.*, 2013 WL 684388, at *6 (E.D. Cal. Feb. 22, 2013) ("Defendants will suffer little if any burden by producing the documents . . . because [they] have already been produced [in a separate matter]."). The Government cannot skate by, citing prior production efforts, without even conferring with Plaintiffs' counsel about the actual burden of supplementing the Common Discovery.

The Government's citation-less argument that Plaintiffs should be denied additional discovery because of the hypothetical impact on "dozens of other pending cases" is likewise improper. Each court superintends the litigation in front of it, and the plaintiffs in all of these cases, including Plaintiffs here, are represented by counsel of their choosing. They should have the opportunity to develop the case that they allege, not be bound by strategic or tactical decisions made by other counsel. And indeed, because Plaintiffs are pressing a different case than Arizona plaintiffs, Plaintiffs seek crucial policy-level discovery that is omitted from the Arizona-based Common Discovery.

**The Common Discovery is Insufficient:** As Plaintiffs have explained to the Government, the Common Discovery is inadequate for several of Plaintiffs' document requests.

**Custodians:** The Common Discovery does not include the ESI of custodians relevant to numerous specific document requests in this case. For example, Plaintiffs propounded a request for documents concerning the "implementation" of the family separation policy. In response, the Government has refused to search for responsive documents in the custodial files of 80% of the individuals that *the Government itself* contends exercised discretion for purposes of its discretionary function exception ("DFE") defense *in this case*, even though the Court has already ruled that Plaintiffs are entitled to "inquire as to whether [those individuals'] action[s were] a matter of choice . . . for purposes of the DFE." Dkt. 72 at 4. Essentially, the Government wants to limit Plaintiffs to implementation documents that were identified for entirely different families in the Arizona cases, even while acknowledging in correspondence that there are material "factual differences" between how those families and Plaintiff families were separated.

In response to this point, the Government vaguely alludes to forthcoming "Plaintiff specific" discovery. But this is the first time the Government has ever suggested it might perform additional ESI searches for Plaintiff-specific custodians. Indeed, the Government has never actually disclosed what searches it has run (which is why Plaintiffs wanted to confer further before filing, which the Government refused to do). What is clear, however, is that the Government is refusing to search the files of *any* "Plaintiff-specific" custodians—the Government employees that actually separated Plaintiffs, or oversaw the separations—for documents regarding the family separation policy's implementation. In other words, the Government is refusing to search for documents about how that policy was implemented in the files of the people that **actually implemented the policy against Plaintiffs**. This is true even though the Government affirmatively contends that these individuals are relevant to their defenses, including the DFE, and have responsive information. The Government cannot have it both ways. And to be clear, this is not a new issue or request. Plaintiffs have been demanding discovery from additional custodians, in both meet-and-confers and correspondence, for months.

**Search Terms:** The Arizona search terms contain significant internal inconsistencies that artificially limit the universe of documents. For example, despite HHS's critical role in the Government's execution of its Family-Separation Policy—and subsequent centrality to Plaintiffs' discovery requests—the Common Discovery search terms included only four search strings for HHS custodians, compared to fourteen search strings for every other Department. The

2

Government has not explained this inconsistency or agreed to run supplemental searches for the HHS custodians. There are also **no search terms related to reunification, recording, or tracking of separated family members**, nor are there search terms related to complaints sent to the Government by NGOs, despite Plaintiffs explicitly requesting such documents. Indeed, Plaintiffs have discovered dozens of highly probative documents that the Government produced in response to FOIA requests but did not produce in the Common Discovery due to faulty search terms or over-aggressive TAR. When Plaintiffs identified several of these documents to the Government, however, it refused to even consider a modest expansion of search terms.

**Date Range**: The Common Discovery search collected documents from January 20, 2017 to June 26, 2018. The Government insists that pre-2017 documents are wholly irrelevant. But Plaintiffs allege that before 2017, the Government knew that a family-separation policy would harm people like Plaintiffs. Dkt. 1 ¶ 35. And, in discovery, Plaintiffs have learned that HHS official Jonathan White has testified that as early as 2014, the Government rejected such a policy because it was aware of the harm it could case to people like Plaintiffs. Plaintiffs should therefore be entitled, on a targeted set of RFPs, to seek documents from before 2017.

**Plaintiffs' Final Position:** When in the past this Court has met similar Government intransigence, it has ordered the Government to confer in good faith about supplemental searches, with an apparent nudge toward "ensur[ing] that Defendants have met their discovery obligation." *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.,* No. CV 11-04001 RS (KAW), 2013 WL 4511925, at *2-3 (N.D. Cal. Aug. 23, 2013). Plaintiffs seek similar relief here. The Government should be ordered to confer about supplemental searches to "policy-level" requests. To avoid further heel-dragging, the meet and confer period should be time-limited in this case where the discovery cut off has already been extended once. And if the parties do not agree, there should be a mechanism, such as baseball arbitration, to drive the process forward.

**Defendant's Position:**  As Judge Bolton explained in rejecting virtually identical arguments by the plaintiffs in the Arizona litigation, "[s]earching ESI is costly and burdensome and in this case the burden and cost falls entirely on the Defendant." *C.M.*, ECF 61 at 4. Considering the "numerous terms and custodians" and "significant time period" used for the government's Common Discovery ESI search, Judge Bolton rejected the Arizona plaintiffs' effort to expand that search. *Id.* For the same reasons, the Court should reject Plaintiffs' expansion attempt here.

To understand the present dispute, it is critical to understand (1) the scope of the Common Discovery that Defendant has produced; and (2) how Defendant conducted its investigation in response to Plaintiffs' policy-level discovery requests in this matter.

The policy-level Common Discovery was originally collected and produced in the Arizona litigation pursuant to the District of Arizona's Mandatory Initial Discovery Pilot Project ("MIDPP"), which required Defendant to produce virtually all materials "that are relevant to the claims and defenses in the case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses." *C.M.*, ECF 4 at 4. The Arizona parties agreed to a list of **69 custodians** from DHS, CBP, ICE, DOJ, and HHS, as well as **dozens of search terms**. They agreed to a start date for ESI searches of January 20, 2017, and Judge Bolton agreed with Defendant's end date of June 26, 2018. Two more custodians, and further non-custodial searches, were later added in response to the Arizona plaintiffs' RFPs.

These ESI searches identified several hundred thousand documents, *totaling several million pages*. It took Defendant more than 4,000 attorney-hours within the DOJ, and countless additional hours spent by contractors and agency counsel, to collect and review these documents. The Arizona parties also agreed to the use of Technology Assisted Review ("TAR")

to reduce the universe of documents requiring manual review. This process resulted in the production of 220,000 pages of documents—which Plaintiffs in this litigation already have.

Contrary to Plaintiffs' egregiously misleading assertion, Defendant has not simply relied on Common Discovery productions to satisfy its discovery obligations. In response to each RFP, Defendant conducted an individualized investigation to determine whether the request was addressed by the Common Discovery or if additional searches were justified. Defendant held many discussions with numerous representatives for each agency involved in the Arizona litigation. For the majority of Plaintiffs' policy-level requests, Defendant determined the comprehensive searches conducted for the Common Discovery adequately collected responsive documents. For two, Defendant determined that the Common Discovery searches did not target the requested documents and agreed to conduct additional searches.

Plaintiffs for the most part fail to even identify the RFPs that they claim are now at issue. But in light of the comprehensive searches performed for the Common Discovery, Defendant's thorough investigation into each RFP, and its certifications for all but one RFP (which asked for U.S. House of Representatives documents, of which Defendant does not have custody), Plaintiffs' arguments for additional policy-level searches are meritless.

*First*, there is no reason to require Defendant to search for policy-level documents from before January 20, 2017 (former President Trump's inauguration) or after June 26, 2018 (the date of the *Ms. L.* injunction). As Judge Bolton recognized and as the volume of Common Discovery confirms, this is already a "significant time period" for ESI searches for which "the burden and cost falls entirely on the Defendant." *C.M.*, ECF 61 at 4. Plaintiffs argue that the government should go back to 2014 to determine the intent of officials in the Obama administration. But the intent of prior officials who did not implement the policies at issue is not relevant here. And any marginal relevance would be disproportionate to the excessive burden on Defendant to identify and review such documents. Indeed, Defendant's ESI searches already returned hundreds of thousands of documents for the 18-month Common Discovery period; to go back three years would likely result in millions of additional documents to be reviewed. Also, Plaintiffs *admit* that they already have the depositions of Trump-era officials who discussed Obama-era practices—further undermining Plaintiffs' supposed need for more ESI on this issue.

There is likewise no reason for Defendant to produce policy-level documents dated after the *Ms. L.* injunction. Indeed, Judge Bolton rejected the exact same argument to expand the ESI searches in the Arizona litigation. *C.M.*, ECF 61 at 4 ("without a later showing of good cause the end date for the ESI search across the agreed upon custodians is June 26, 2018"). And just as in the Arizona litigation, Defendant has produced, and will continue to produce, the Plaintiff-specific documents dated after the *Ms. L.* injunction that relate to Plaintiffs' reunifications.

*Second*, there is no reason for Defendant to search the files of additional custodians or use additional terms. Plaintiffs already have almost 220,000 pages of responsive policy-level documents from more than 70 custodians. Defendant has produced ESI discovery from all of the policy-level individuals in its disclosures. Plaintiffs have had the eight-page document summarizing the 69 custodians and dozens of search terms used for the MIDPP ESI searches for months (and which at the Court's request Defendant can submit in camera or under seal). Plaintiffs also argue that the terms did not cover HHS' tracking and reunification efforts, but the Common Discovery contains 10,000 pages originally collected for congressional inquiries from Congressmen Nadler and Pallone in 2019 related to those efforts.

And while Plaintiffs admit the present dispute does not concern the "'plaintiff-specific' bucket," Plaintiffs also argue, for the first time in this briefing on the Common Discovery, that

the government should search the records of "'Plaintiff-specific' custodians" in response to an unidentified set of Plaintiffs' policy-level RFPs. These plaintiff-specific custodians include virtually all of the individuals Defendant contends exercised discretion in this case whose ESI has not yet been produced. Defendant has **already** produced tens of thousands of pages of plaintiff-specific discovery, and such productions—and related meet-and-confers—are ongoing. For months, Defendant has played whack-a-mole responding to Plaintiffs' shifting accusations about Common Discovery custodians. Their belated, plaintiff-specific argument is improper.

*Third*, Defendant's use of TAR for the Common Discovery does not make further discovery necessary in this case. The TAR protocol was agreed to by the Arizona plaintiffs, whose sophisticated counsel include multiple international law firms and prominent immigration nonprofits, and its 95% confidence level and 5% margin of error are consistent with best practices. *See, e.g.*, BOLCH JUDICIAL INST. & DUKE LAW, Technology Assisted Review (TAR) Guidelines 23 (Jan. 2019); *The Sedona Conference TAR Case Law Primer*, 18 SEDONA CONF. J. 1, 37-38 (2017). Plaintiffs argue that they did not personally agree to the TAR protocol, but Plaintiffs had not even filed this case when the Arizona parties agreed to the TAR protocol in December 2020 and, in any event, there is no requirement that opposing parties must agree to the use of TAR in advance. *See, e.g.*, *Winfield v. City of New York*, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) (rejecting plaintiffs' challenge based on lack of transparency into defendant's TAR process). Finally, Plaintiffs argue that because they have identified **just two documents** from the relevant time period that were omitted from the 220,000 pages of Common Discovery, the TAR process was inherently flawed. But "perfection in ESI discovery is not required; rather, a producing party must take reasonable steps to identify and produce relevant documents." *Id.* "[T]he proper inquiry is whether the 'search results are reasonable and proportional.'" *Id.* at *11. Defendant's best-practice use of TAR to produce hundreds of thousands of responsive pages was reasonable and proportional to the need here.

Plaintiffs minimize the burden Defendant would face from their requested additional searches, but Plaintiffs' string-cite cases simply discuss the burden of producing *already-collected* documents. *See supra*. Defendant has already produced the already-collected documents. The burden issue here is different: whether to expand the date range, custodians, and terms to bring in documents beyond the hundreds of thousands of pages Defendant already has collected and produced. The burden of *that* effort—especially considering its impact on the dozens of other pending cases involving similar issues around the country—would be enormous. "A litigant does not have to examine every document in its voluminous files to comply with discovery obligations." *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016). "Rather, a litigant has to conduct a diligent search which involves developing a reasonably comprehensive search strategy." *Id.* Defendant's search and production in response to Plaintiffs' policy-level discovery requests was more than reasonably comprehensive.

In the end, this case is a tort case involving six individual plaintiffs. *See id.* ("While recognizing the importance of the issues addressed here, the Court also considers that this is an action involving a single individual in Fresno, California."). This is not a challenge to the government's policies themselves. Even so, an enormous amount of discovery has already been produced to Plaintiffs concerning the development and implementation of the policies at issue. The additional policy-level discovery that Plaintiffs seek would impose a massive additional burden on the government that is wholly disproportionate to the needs of this tort case. **Defendant's Final Proposed Compromise:** Defendant stands on its comprehensive, individually investigated responses and productions to Plaintiffs' policy-level RFPs.