UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P.G., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 21-cv-04457-KAW<br><br>**ORDER REGARDING MAY 11, 2023 DISCOVERY LETTER**<br><br>Re: Dkt. No. 82 |

Plaintiffs, three pairs of parents and children, allege that Defendant United States forcibly separated them pursuant to its family-separation policy. (Compl. ¶¶ 3, 67.) On June 10, 2021, Plaintiffs filed the instant case, asserting harm resulting from the separation and while in federal custody. On May 11, 2023, the parties filed a joint discovery letter to resolve whether Defendant "should be compelled to conduct supplemental searches in response to Plaintiffs' policy-level Requests for Production" ("RFP"). (Joint Ltr. at 1.)

### I.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The scope of electronically stored information ("ESI") is further limited, such that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P.

26(b)(2)(B). In addition, the Northern District Guidelines for the Discovery of Electronically Stored Information ("N.D. Cal. Guidelines") provides additional guidance for ESI discovery. The Northern District Guidelines advocate for the proportionality set forth in Rule 26(b)(1) and recommend that "discovery requests for production of ESI should be reasonably targeted, clear, and as specific as practicable." (N.D. Cal. Guidelines ¶ 1.03.) The Guidelines further recommend "[t]he phasing of discovery so that discovery occurs first from sources most likely to contain relevant and discoverable information and is postponed or avoided from sources less likely to contain relevant and discoverable information." *Id.* at ¶ 2.02(d).

Regardless, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed" if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

## II.  DISCUSSION

The current dispute revolves around Defendant's reliance on the "Common Discovery," the term the parties use to refer to documents collected pursuant to similar litigation in the District of Arizona, to answer policy-level RFPs. (Joint Ltr. at 1.) Defendant provides the following background:

> The policy-level Common Discovery was originally collected and produced in the Arizona litigation pursuant to the District of Arizona's Mandatory Initial Discovery Pilot Project ("MIDPP"), which required Defendant to produce virtually all materials that are relevant to the claims and defenses in the case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses. The Arizona parties agreed to a list of 69 custodians from DHS, CBP, ICE, DOJ, and HHS, as well as dozens of search terms. They agreed to a start date of June 26, 2018. Two more custodians, and further non-custodial searches, were later added in response to the Arizona plaintiffs' RFPs.
>
> These ESI searches identified several hundred thousand documents, totaling several million pages. It took Defendant more than 4,000 attorney-hours within the DOJ, and countless additional hours spent by contractors and agency counsel, to collect and review these

> documents. The Arizona parties also agreed to the use of Technology Assisted Review ("TAR") to reduce the universe of documents requiring manual review. This process resulted in the production of 220,000 pages of documents—which Plaintiffs in this litigation already have.

(Joint Ltr. at 3-4) (cleaned up).

        Plaintiffs assert Defendant's reliance on the common discovery in response to their RFPs is improper because Plaintiffs here were not parties to the agreements regarding ESI and TAR in the Arizona litigation and they "should have the opportunity to develop the case that they allege, not be bound by strategic or tactical decisions made by other counsel." (Joint Ltr. at 1-2.) Additionally, Plaintiffs contend the Common Discovery is insufficient because it "does not include the ESI of custodians relevant to numerous specific document requests in this case;" the Arizona search terms contain "significant internal inconsistencies" and are not sufficient to produce all documents responsive to Plaintiffs'' RFPs; and the date range does not account for Plaintiffs' allegation that Defendant knew before 2017 that a family-separation policy would harm people like Plaintiffs. (Joint Ltr. at 2-3.) Plaintiffs ask the Court to require Defendant to meet and confer with them about supplemental searches to the policy-level RFPs and, if after a limited period the parties cannot agree, implement a mechanism, "such as baseball arbitration, to drive the process forward." (Joint Ltr. at 3.)

        Defendant argues this Court should follow the example of the judge in the Arizona litigation and reject Plaintiffs' attempts to expand the Common Discovery ESI search. (Joint Ltr. at 4.) It argues anything policy-related before or after the time range addressed by the Common Discovery is irrelevant; there is no need to search plaintiff-specific custodians in response to policy-level RFPs; and the use of TAR does not make further discovery necessary because it was "agreed to by the Arizona plaintiffs, whose sophisticated counsel include multiple international law firms and prominent immigration nonprofits, and its 95% confidence level and 5% margin of error are consistent with best practices." (Joint Ltr. at 4-5.) Defendant contends that, contrary to Plaintiffs' assertions, it "conducted an individualized investigation to determine whether [each] request was addressed by the Common Discovery," including discussions with numerous representatives for each agency involved in the Arizona litigation, before it determined "the

1  comprehensive searches conducted for the Common Discovery adequately collected responsive
2  documents" to all but two of Plaintiffs' RFPs.  (Joint Ltr. at 4.)  Defendant argues that the burden
3  of "expand[ing] the date range, custodians, and terms to bring in documents beyond the hundreds
4  of thousands of pages Defendant already has collected and produced" would be "enormous" and
5  would have an "impact on the dozens of other pending cases involving similar issues around the
6  country."  (Joint Ltr. at 5.)

7  The Court agrees with Plaintiffs that they should have the opportunity to develop this case
8  without necessarily being bound by decisions made by the Arizona plaintiffs' counsel as to
9  custodians and search terms.  This is especially true given Plaintiffs' allegation that Defendant
10 "has never actually disclosed what searches it has run."  (Joint Ltr. at 2.)  While the Court is
11 sympathetic to Defendant's position that is has already incurred a significant burden in producing
12 discovery in the Arizona litigation, the Court does not agree that such relieves Defendant of its
13 obligation to produce responses to Plaintiffs' requests in this litigation.  Additionally, based on
14 Plaintiffs' position that they are unaware of what searches have previously been conducted, it is
15 not clear that Plaintiffs' requested "limited supplemental searches" would produce the same
16 burden on Defendant.  Thus, the Court GRANTS Plaintiffs' request that Defendant be required to
17 meet and confer.  The parties shall meet and confer within ten days of this order to discuss the
18 searches Defendant has already conducted; why Defendant believes such searches are sufficient to
19 produce all documents responsive to Plaintiffs' RFPs; and additional search terms and discovery
20 Plaintiffs believe will yield information responsive to their requests.

21 However, the Court expresses no opinion at this time on whether supplemental searches
22 are required to satisfy Defendant's discovery obligations or whether the Common Discovery is
23 sufficiently responsive to the RFPs.  Rather, if the parties are unable to reach an agreement
24 following the meet and confer, they may file an updated discovery letter.  Such letter should
25 identify the specific supplemental searches Plaintiffs feel are necessary; address why each
26 supplemental search is proportional to the needs of the case based on the factors listed in Federal
27 Rule of Civil Procedure 26(b)(1); and why the requested searches will yield information that is not
28 cumulative or duplicative, or capable of being obtained from another source that is more

1  convenient, less burdensome, or less expensive.

2  This order disposes of Dkt. No. 82.

3  IT IS SO ORDERED.

4  Dated: May 30, 2023

5  _____
KANDIS A. WESTMORE
6  United States Magistrate Judge