KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - #335733
jconcilla@keker.com
EVAN H. MCINTYRE - #349409
emcintyre@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
VICTORIA PETTY - #338689
vpetty@lccrsf.org
JORDAN WELLS - #326491
jwells@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:    415 814 7631

*Attorneys for Plaintiffs*

ISMAIL J. RAMSEY
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:  415 436-7167
Facsimile:   415 436-7169

*Attorneys for United States of America*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**DISCOVERY LETTER BRIEF RE: SUPPLEMENTAL ESI SEARCHES** |

Dear Judge Westmore:

Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America ("Defendant") (collectively, the "Parties") hereby jointly submit this letter to supplement the discovery dispute described in ECF No. 82, which dispute the Court addressed in its May 30, 2023 Order at ECF No. 83.  That Order instructed the parties to file "an updated discovery letter" if further meet/confer did not resolve the dispute.  *Id.* at 4.  The Parties met and conferred by video conference within ten days, as the Court ordered, and continued to confer, most recently on June 26, 2023, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: July 3, 2023

Respectfully submitted,

*/s/ Evan McIntyre*
_____

BROOK DOOLEY
TRAVIS SILVA
CHRISTOPHER S. SUN
CHRISTINA LEE
JACQUELINE CONCILLA
EVAN H. MCINTYRE
KEKER, VAN NEST & PETERS LLP
*Attorneys for Plaintiffs*

Respectfully submitted,

*/s/ Kelsey J. Helland*
_____

Kenneth W. Brakebill
Kelsey J. Helland
UNITED STATES ATTORNEY'S OFFICE
*Attorneys for Defendant*

1

2294969.v2

**Unresolved Discovery Issue:** Whether Defendant should be compelled to conduct certain supplemental ESI searches in response to Plaintiffs' policy-level Requests for Production.

**Plaintiffs' Position:** In response to the Court's May 30 Order, Plaintiffs proposed a narrow list of supplemental searches to Defendant. Defendant refused and provided no counterproposal. Seeking compromise, Plaintiffs significantly narrowed their proposal. Defendant again refused to run any searches and failed to substantiate its burden claims. But "[b]lanket statements" of burden "do not constitute meeting and conferring in good faith." *Finisar Corporation v. Nistica, Inc.*, 2014 WL 12887160 at *3 (N.D. Cal. 2014). Instead, "if a party insists that a search term results in too many hits, the party [must] run the search and … provide the opposing party with the number of hits and specific examples of irrelevant documents captured by the search." *Id.* Since Defendant failed to identify **any specific burden or expense whatsoever** or **any narrowing proposal at all**, Plaintiffs ask the Court to order the searches identified in Exhibit A, which are non-cumulative as outlined below and are proportional to the needs of the case based on the $30 million amount in controversy, the vast disparity between the Parties' resources and access to the relevant documents, and the gravity of Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1).

**Search 1:** Plaintiffs allege that ***before 2017*** Defendant knew that a family-separation policy, such as the one at the core of this case, would harm people like Plaintiffs and choose not to implement such a policy ***because*** of that harm. Dkt. 1 ¶ 35. Defendant's knowledge about the harm that such a policy would inflict on immigrant families is relevant to whether Defendant committed extreme or outrageous conduct and whether it acted with the intent to cause emotional distress (or with reckless disregard for the same). These are the primary elements of Plaintiffs' IIED claim. Dkt. 1 ¶ 215. Defendant has produced sworn testimony from Health & Human Services (HHS) official Jonathan White that, in 2014, Defendant considered and rejected such a policy. Further, public reports confirm that the then-Secretary of DHS discussed the policy proposal with DHS officials Kevin McAleenan, Ronald Vitiello, and Thomas Homan—individuals who, Defendant's documents show, were involved in developing the 2018 policy. *See* Caitlin Dickerson, *The secret history of the U.S. government's family-separation policy*, The Atlantic, Aug. 7, 2022, at Ch. 1. (Indeed, all three officials are Common Discovery custodians.)

To implement Plaintiffs' RFPs 1, 21, 24-28, and 42, Search 1 seeks McAleenan, Vitiello, and Homan's 2014-2015 communications about the Obama-era consideration of a family-separation policy. The knowledge of these three specific individuals is proportionate to the needs of Plaintiffs' case because of their involvement in developing the 2018 policy that led to Plaintiffs' separations. But Defendant refuses to produce *any* pre-2017 documents on relevance, proportionality, and burden grounds. Defendant's relevance argument is belied by the knowledge and intent requirements of the IIED claim, discussed above. The proportionality argument is belied by the specific targeting of these three custodians and Plaintiffs' proposal to limit the search to 2014 and 2015, a period where Defendant's own witness, as well as credible reporting, pinpoint Defendant's prior consideration, and rejection, of a family-separation policy. And after Defendant raised its unsubstantiated burden objection, Plaintiffs revised their proposal to include (1) only McAleenan, Vitiello, and Homan, (2) "BUT NOT" terms on the end of the proposed search string to weed out non-responsive documents that Defendant speculates may exist, and (3) a more limited date range targeting documents related to the 2014 meeting. Defendant again balked at this proposal as too burdensome, while providing **no document hit count to substantiate that burden claim** and **no counterproposals for how to more narrowly tailor the search string to target responsive documents**. The Court should compel the searches, rather than deferring to the speculative burden claim put forth by Defendant, which

1

unpersuasively argues that even identifying its burden would be too burdensome.

**Search 2:** Plaintiffs allege that HHS officials designed the family-separation policy with the unlawful purpose of using family separation to deter migration. Dkt. 1 ¶¶ 17, 51, 197 n.82. The issue here is whether former Secretary Alex Azar's documents should be searched in response to Plaintiffs' RFPs 1, 4-5, 27-28, and 36-39 using the *same search terms* Defendant used in the Common Discovery for all other HHS custodians. While Defendant did search some HHS officials' documents, Secretary Azar was not a Common Discovery custodian.

Secretary Azar oversaw HHS during the development and implementation of the family-separation policy. Even if Secretary Azar was not the ultimate decisionmaker for family separation, Defendant identified him in a "rog" response as someone it contends exercised discretion in connection with Defendant's discretionary function exemption defense (DFE). The Court held that certain issues related to the DFE fall within the scope of discovery. Dkt. 72 at 4. Yet, Defendant refuses to search Secretary Azar's ESI and fails to provide a "hit count" to substantiate its burden objection.

Defendant objects to searching Secretary Azar's documents because he was a cabinet secretary. But Defendant searched the documents of former DHS Secretary Kirstjen Nielsen and former Attorney General Jeff Sessions as part of the Common Discovery. Defendant also contends that Secretary Azar's inclusion as a custodian would be cumulative because he regularly forwarded emails to certain deputies who are Common Discovery custodians. But of the documents produced from those deputies, **only one email** included Secretary Azar's email address on the From, To, or CC lines. Defendant claims that HHS produced Secretary Azar's hardcopy documents in the Common Discovery, but Secretary Azar is listed in Defendant's metadata as the custodian of **zero produced documents**. Because Defendant invokes Secretary Azar in connection with its DFE defense, it is proportionate to search his documents—in the same way other HHS custodians' documents were searched—so Plaintiffs can test that assertion.

**Search 3:** Defendant searched the documents of some line-level officials who interacted with Plaintiffs. But those searches were limited to Plaintiff-specific documents, with terms like Plaintiffs' names. Search 3 would compel Defendant to use the same "policy-level" search terms from the Common Discovery on these custodians' documents, so that Plaintiffs can see whether these line-level officials—almost all of whom Defendant contends exercised discretion such that their conduct is immunized by the DFE—were purportedly granted discretion, or, rather, required to act under the family-separation policy at issue. *See United States v. Varig Airlines*, 467 U.S. 797, 813 (1984) ("the basic inquiry concerning the application of the [DFE] is whether the challenged acts of a Government employee . . . are of the nature and quality that Congress intended to shield from tort liability."). Plaintiffs cannot access this information by any other means; contrary to Defendant's contention, the fact that some Common Discovery documents discuss the contours of Government officials' discretion under the family-separation policy is no substitute for discovery from the officials that **actually interacted with Plaintiffs**.

Plaintiffs initially proposed supplemental searches including "policy-level" search terms for all "Plaintiff-specific" custodians. After Defendant objected to these searches as too burdensome, Plaintiffs trimmed their proposal to two HHS project officers, seven Border Patrol agents, and two ICE officers, all of whom Defendant identified as exercising discretion for purposes of its DFE defense. Most are listed in Defendant's initial disclosures, and Defendant has already collected "Plaintiff-specific" custodial documents from the proposed ICE and Border Patrol custodians, all of whom had direct contact with Plaintiffs. The two HHS project officers, meanwhile, oversaw the relationship between HHS's Office of Refugee Resettlement

and the two Government contractors that housed the separated minor Plaintiffs. Despite this key role, Defendant has collected **no custodial data at all** from these two HHS officers. Plaintiffs are entitled to these documents in order to test Defendant's DFE defense, and the Court should ignore Defendant's complaints about the breadth of the proposed search terms given that Defendant (1) approved these terms for the Common Discovery ESI protocol and (2) refused to provide any counterproposals to narrow these terms or hit counts to substantiate any burden. **Search 4:** Plaintiffs allege that Defendant's failure to plan for family reunification, or to track families, was negligent. *E.g.*, Dkt. 1 ¶¶ 30, 52. But the Common Discovery ESI protocol included no search terms related to the reunification or tracking of separated family members. Search 4 is a narrow search of ICE custodians for documents related to these allegations.

Plaintiffs' initial proposal for supplemental searches included a reunification-related search string to be run against all Common Discovery and supplemental custodians, as these documents would be responsive to RFPs 4-5 and 36-39. Defendant then represented that HHS documents related to reunification were produced in the Common Discovery and that CBP and DOJ played no role in the reunification of families. Consequently, Plaintiffs revised their proposal to only seek such documents from ICE custodians. Defendant acknowledged that ICE was necessarily involved in the reunification of family members and that ICE custodians' documents were not searched for any reunification-related documents, but still refused to run any supplemental searches. Evidence about ICE's understanding of the procedures—or lack thereof—for reunifying separated family members weighs on Plaintiffs' IIED and negligence claims, *see e.g.*, Dkt. 1 ¶¶ 109-10 (ICE failure to track family members) & 204 (ICE leveraging policy to pressure plaintiff to accept deportation), and such evidence would not be duplicative because **not a single search has been conducted** for reunification-related documents from any ICE custodian. And Defendant's wholly unsubstantiated burden claim should be overruled.

**Defendant's Position:** In the parties' prior discovery letter on this issue, Defendant explained the thousands of hours of effort that went into the collection and review of several million pages of documents resulting in the production of 220,000 pages of policy-related Common Discovery documents that Plaintiffs already have. *See* Dkt. 82 at 3-4. In light of that substantial effort and the vast amount of information Plaintiffs have, Plaintiffs' demands for additional ESI searches are not justified by the needs of this tort case.

The Court previously ordered that, in any further briefing on these issues, Plaintiffs must "address why each supplemental search is proportional to the needs of the case based on the factors listed in Federal Rule of Civil Procedure 26(b)(1); and why the requested searches will yield information that is not cumulative or duplicative, or capable of being obtained from another source that is more convenient, less burdensome, or less expensive." Dkt. 83 at 4-5. Plaintiffs disregard the Court's clear instructions, arguing their need for each set of documents as if in a vacuum while consistently ignoring what they already have on these issues.

Documents from the Obama administration: Plaintiffs request that Defendant run 28 search terms for the 2014-2015 documents of Thomas Homan, Kevin McAleenan, and Ronald Vitiello. These three individuals occupied different roles in ICE and CBP during both the Obama and Trump administrations. Plaintiffs argue that they need these nearly decade-old documents to shed additional light on these individuals' knowledge during the development of the DHS referral policy in 2017-2018. But Plaintiffs have not explained why the documents and deposition transcripts that they *already have* from these individuals, which cover the beginning of the Trump Administration through the *Ms. L* preliminary injunction governing family

3

separations, are not sufficient. Indeed, the Common Discovery that Plaintiffs already have includes at least 3,000 documents from these custodians from the 2017-2018 timeframe that is actually at issue in this case. Plaintiffs also already have the transcripts of the depositions of these three witnesses in the Arizona litigation, which *specifically* addressed the consideration of similar policies during the Obama administration. Plaintiffs do not even try to explain why their requested additional searches would not be "cumulative or duplicative," Dkt. 83 at 4, with the information they already have.

Moreover, the ultimate decisionmaker who authorized the DHS referral policy was DHS Secretary Kirsten Nielsen. Plaintiffs have made no showing for how years-old documents from Secretary Nielsen's subordinates could shed meaningful light on *Secretary Nielsen*'s reasons for authorizing the policy, especially compared to the mountain of contemporaneous evidence Plaintiffs already have. In short, these documents are not relevant to the "intent," or the "outrageousness" of the conduct, of the actual relevant decisionmaker here.

Plaintiffs' need for these documents is therefore minimal. But the burden that these additional searches would place on Defendant would be substantial. Plaintiffs would have the government collect two additional years' worth of ESI returned by 28 search terms for each of three custodians and review the resulting documents for responsiveness and privilege. Even providing the "hit count" that Plaintiffs demand would impose the undue burden of collecting and processing these individuals' years-old ESI. The *Finisar* case therefore does not apply; Defendant is not merely "insist[ing] that a search term results in too many hits," 2014 WL 12887160, at *3, but rather insisting that collecting and processing this ESI is unjustified. As Judge Bolton explained in the Arizona litigation, "[s]earching ESI is costly and burdensome and in this case the burden and cost falls entirely on the Defendant." *C.M.*, ECF 61 at 4 (denying plaintiffs' request for additional ESI). The Court should deny this request.

<u>Documents from former HHS Secretary Azar</u>:  Plaintiffs request that Defendant run 28 search terms for the documents of former HHS Secretary Alex Azar. The responsive hardcopy documents of former Secretary Azar were already collected and produced to Plaintiffs. However, Secretary Azar was not used as an ESI custodian for the Common Discovery productions, because (1) he had no role in the development of the DOJ and DHS policies at issue in this case; and (2) he was not a frequent user of email, and when he did use email, it was his practice to forward emails to his Chief of Staff Peter Urbanowicz and/or Deputy Chief of Staff Brian Harrison, both of whom *were* included as ESI custodians here. Their documents were among the more than 10,000 pages of HHS documents Plaintiffs already have. Plaintiffs also argue about the metadata for these custodians, but they fail to recognize that, due to the nature of the HHS collections, the metadata for many HHS Common Discovery documents identifies the agency itself as the only custodian.

Plaintiffs have not identified any particular need for additional ESI from Secretary Azar. Indeed, Plaintiffs' complaint does not mention Secretary Azar even once. *See generally* Compl. Plaintiffs also make no claims based on Secretary Azar's actions, much less a showing that the existing discovery concerning other HHS officials is insufficient. Instead, Plaintiffs' argument is simply that Secretary Azar's ESI should be collected, reviewed, and produced because the ESI of other cabinet-level officials was collected, reviewed, and produced in this case. But this ignores the vast differences between those other cabinet officials' alleged conduct and that of Secretary Azar, as well as the material distinction that Secretary Azar did not use email the way other cabinet officials did. The government's willingness to produce apex-level discovery from certain officials based on the allegations of this case does not by itself open the door to apex

4

discovery from other cabinet officials without any showing of need. Even setting aside the apex issue, the burden on the government of such a collection and review is not justified by the utility of this information for Plaintiffs' case. The Court should deny this request.

Policy-level searches of plaintiff-specific custodians:  Plaintiffs request that Defendant run a variety of search terms related to family separations, prosecutions, and reunifications for 11 plaintiff-specific custodians (seven from CBP, two from HHS, and two from ICE). But Plaintiffs make no allegation that any of these individuals had anything to do with the development of the DOJ Zero-Tolerance policy or the DHS referral policy at issue in this case.

These 11 individuals were involved to various degrees in Plaintiffs' individual apprehensions, ORR placements, and ICE detentions. Accordingly, the government has already produced, or is in the process of producing, documents from these custodians (and approximately 80 others) relating to Plaintiffs' specific cases, using dozens of search terms based on Plaintiffs' names and immigration case numbers (the "plaintiff-specific terms"). This has already resulted in the production of more than 20,000 pages of plaintiff-specific documents, with additional documents to be produced. That is in addition to the 220,000 pages of policy-related Common Discovery that Defendant has already produced to Plaintiffs.

Plaintiffs nevertheless argue that the government should run numerous other Boolean searches using policy-related terms (such as "Separat* w/10 (shelter* OR policy OR border OR "port of entry" OR immigrat* OR migrant* OR ORR OR "Office of Refugee Resettlement" OR trauma or deter*)," or "prosecut* w/5 (place* OR refer*)"). Plaintiffs argue that they need these documents because the government identified these 11 individuals (along with 65 others) as having exercised discretion for purposes of the government's discretionary function exception defense. But Plaintiffs have not explained why the approximately 250,000 pages of both plaintiff-specific and Common Discovery that they already have is not sufficient to establish the nature of the relevant policies and how they were implemented in Plaintiffs' cases.

The additional searches Plaintiffs request also would be tremendously burdensome. For example, the proposed term "Separat* w/5 (famil* OR FAMU OR FMUA OR child* OR kid* OR parent* OR mother* OR father*)" for the HHS custodians is so overly broad that it would likely return thousands, if not tens of thousands, of non-responsive documents because the search would encompass documents related to every unaccompanied child in ORR custody (all of whom were "separate" from their family, whether or not the government caused that separation). These searches are dramatically disproportionate to Plaintiffs' non-existent need.

Reunification-related searches from ICE custodians:  Finally, Plaintiffs request that Defendant run 24 additional search terms related to reunification efforts for all 16 ICE custodians already used for the policy-level Common Discovery in the Arizona litigation and the two additional ICE custodians referenced above. But again, Plaintiffs have not explained why the universe of documents they already have is insufficient. Most notably, Plaintiffs already have the policy-level deposition transcripts from five ICE witnesses from the Arizona litigation, all of whom were asked about ICE's reunification efforts. Plaintiffs also have publicly available congressional testimony and government reports related to this issue. And of course, Plaintiffs have the 220,000 pages of Common Discovery broadly related to family-separation and reunification issues, and 20,000 pages of plaintiff-specific discovery, including from ICE and HHS, that cover how Plaintiffs themselves were reunited. There is no reason to impose the burden of these additional searches on the government for this case.

**Defendant's Final Proposed Compromise**:  Defendant stands on its comprehensive searches for documents in this matter.

Dated: July 3, 2023

Respectfully submitted,                          Respectfully submitted,

*/s/ Evan McIntyre*                              */s/ Kelsey J. Helland*
_____                 _____
BROOK DOOLEY                                     Kenneth W. Brakebill
TRAVIS SILVA                                     Kelsey J. Helland
CHRISTOPHER S. SUN                               UNITED STATES ATTORNEY'S OFFICE
CHRISTINA LEE                                    *Attorneys for Defendant*
JACQUELINE CONCILLA
EVAN H. MCINTYRE
KEKER, VAN NEST & PETERS LLP
*Attorneys for Plaintiffs*

2294969.v2