UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P.G., et al., <br>     Plaintiffs, <br> v. <br> UNITED STATES OF AMERICA, <br>     Defendant. | Case No. 21-cv-04457-KAW <br><br> **ORDER RE 7/3/2023 DISCOVERY LETTERS** <br> Re: Dkt. Nos. 86, 87 <br><br> [Discovery Letter Nos. 7-8] |

    Plaintiffs, three pairs of parents and children, allege that Defendant United States forcibly separated them pursuant to its family-separation policy. (Compl. ¶¶ 3, 67.) On June 10, 2021, Plaintiffs filed the instant case, asserting harm resulting from a separation and while in federal custody. Multiple discovery disputes have since ensued and the matter is currently before the Court on the parties' seventh and eighth discovery letters, both filed July 3, 2023. (Joint Ltr. 7, Dkt. No. 86; Joint Ltr. 8, Dkt. No. 87.)

### I.    RELEVANT BACKGROUND

    On May 11, 2023, the parties filed their sixth discovery letter to resolve whether Defendant should be required to perform supplemental searches of electronically stored information ("ESI") on top of the previously provided Common Discovery, which was collected pursuant to similar litigation in the District of Arizona. (Dkt. No. 82.) On May 30, 2023, the Court ordered the parties to meet and confer to attempt to resolve the dispute and, if unable to do so, to file an updated discovery letter which identified the specific supplemental searches Plaintiffs felt were necessary; address why each supplemental search was proportional to the needs of the case; and indicated why they believed the requested searches would yield information that was not cumulative or duplicative, or capable of being obtained from another source that was more

1  convenient, less burdensome, or less expensive.  (Dkt. No. 83 at 4-5.)

2      On July 3, 2023, the parties filed their seventh discovery letter identifying four specific

3  searches Plaintiffs seek to compel Defendant to run.  (Joint Ltr. 7, Ex. 1.)  The same day, the

4  parties filed their eighth discovery letter, concerning whether Defendant should be compelled to

5  produce documents in response to certain of Plaintiff's Third Set of Requests for Production

6  ("RFP").  (Joint Ltr. 8 at 1.)

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The scope of ESI is further limited, such that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).  In addition, the Northern District Guidelines for the Discovery of Electronically Stored Information ("N.D. Cal. Guidelines") provide additional guidance for ESI discovery.  The Guidelines advocate for the proportionality set forth in Rule 26(b)(1) and recommend that "discovery requests for production of ESI should be reasonably targeted, clear, and as specific as practicable." (N.D. Cal. Guidelines ¶ 1.03).  The Guidelines further recommend "[t]he phasing of discovery so that discovery occurs first from sources most likely to contain relevant and discoverable information and is postponed or avoided from sources less likely to contain relevant and discoverable information." *Id.* at ¶ 2.02(d).

Regardless, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed" if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the

scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

### III.  DISCUSSION

#### A.  Joint Letter 7

Joint Letter 7 addresses whether Defendant should be required to run four supplemental ESI searches.

##### i.  Search 1

Search 1 seeks three DHS officials' "2014-2015 communications about Obama-era consideration of a family-separation policy." (Joint Ltr. 7 at 1.)  Plaintiffs contend "Defendant's knowledge about the harm that such a policy would inflict on immigrant families is relevant to whether Defendant committed extreme or outrageous conduct and whether it acted with the intent to cause emotional distress (or with reckless disregard for the same)" and each of the three individuals was involved in developing the 2018 policy at issue in this case.  (*Id.*)

Defendant argues that Plaintiff has not shown this search is not duplicative given that the Common Discovery "includes at least 3,000 documents from these custodians from the 2017-2018 timeframe that is actually at issue in this case" and Plaintiffs "already have the transcripts of depositions of these three witnesses in the Arizona litigation, which *specifically* addressed the consideration of similar policies during the Obama administration." (Joint Ltr. 7 at 3-4.)  Defendant also argues that "the ultimate decisionmaker who authorized the DHS referral policy was DHS Secretary Kirsten Nielsen" and Plaintiffs have not shown "how years-old documents from Secretary Nielsen's subordinates could shed meaningful light on *Secretary Nielsen*'s reasons for authorizing the policy." (*Id.* at 4.)  Finally, Defendants argue that these searches would place a substantial burden on it because it would have to "collect two additional years' worth of ESI returned by 28 search terms for each of three custodians and review the resulting documents for responsiveness and privilege." (*Id.*)

The Court agrees with Plaintiffs that because these individuals were involved in developing the 2018 policy, their knowledge is relevant to the case even if they were not the ultimate decisionmaker as Defendant contends.  However, the Court agrees with Defendants that Plaintiffs have not shown why the additional searches are expected to yield information that is not

3

cumulative or duplicative of information they already have, especially given Defendant's representation that Plaintiffs already have deposition transcripts from these individuals addressing the Obama administration's consideration of a similar policy. Given that the additional search is likely to yield information that is duplicative of information already available to Plaintiffs, it does not warrant the burden that conducting the supplemental search would place on Defendant.

Accordingly, Defendant is not required to run Search 1.

### ii.   Search 2

Search 2 would require Defendant to search Secretary Alex Azar's documents with the same search terms used in the common discovery for all other HHS custodians. (Joint Ltr. 7 at 2.) Plaintiffs argue this information is relevant because "Secretary Azar oversaw HHS during the development and implementation of the family-separation policy" and Defendant identified him as someone who exercised discretion in connection with its discretionary function exemption defense. (*Id.*)

Defendant argues that "[t]he responsive hardcopy documents of former Secretary Azar were already collected and produced to Plaintiffs" and "Plaintiffs have not identified any particular need for additional ESI from Secretary Azar" especially since their complaint does not mention Azar, they make no claims based on Azar's actions, and Azar's practice was to forward all his emails to his Chief and Deputy Chief of Staff, who were ESI custodians for the Common Discovery. (Joint Ltr. 7 at 4.) Defendant also argues that its "willingness to produce apex-level discovery from certain officials based on the allegations of this case does not by itself open the door to apex discovery from other cabinet officials without any showing of need" and "the burden on the government of such a collection and review is not justified by the utility of this information for Plaintiff's case." (*Id.* at 5.)

Considering Defendant's representations regarding (1) the documents that have already been produced and (2) Azar's standard practice of forwarding any emails, the Court agrees that the additional search would likely produce documents that are duplicative of those already produced. Additionally, the complaint alleges that HHS supervised and managed the detention of unaccompanied children *after* they were separated from their parents but, while it generally alleges

1    that HHS officials worked with other agencies officials to design and promulgate the Family-
2    Separation Policy, it does not contain any factual allegations as to how HHS was involved in
3    promulgating the Policy or mention Azar specifically. Thus, the documents do not seem to be of
4    high importance to the Plaintiff's ability to prove their case. Together, these considerations
5    combined with the burden to Defendant do not warrant the additional search.

6    Accordingly, Defendant is not required to run Search 2.

### iii. Search 3

Plaintiffs represent that "Search 3 would compel Defendant to use the same 'policy-level' search terms from the Common Discovery" on eleven "Plaintiff-specific" custodians. (Joint Ltr. 7 at 2.) Plaintiffs contend this information is relevant to show whether the individuals "were purportedly granted discretion, or, rather, required to act under the family-separation policy at issue." (*Id.*)

Defendant responds that "Plaintiffs make no allegation that any of these individuals had anything to do with the development of the DOJ Zero-Tolerance policy or the DHS referral policy at issue in this case" and Plaintiffs "have not explained why the approximately 250,000 pages of both plaintiff-specific and Common Discovery that they already have is not sufficient to establish the nature of the relevant policies and how they were implemented in Plaintiff's cases." (Joint. Ltr. 7 at 5.) Defendant argues the additional searches would be "tremendously burdensome" and are "dramatically disproportionate to Plaintiffs' non-existent need." (*Id.*)

Defendant is correct that Plaintiffs do not assert that these individuals developed the policies at issue. However, Defendant identified each of these individuals as exercising discretion for the purposes of the discretionary function exception. Whether these individuals were granted discretion regarding implementing the policies is certainly at issue and relevant to the case, specifically as to whether they exercised discretion when dealing with Plaintiffs. Thus, it seems Search 3 would possibly return relevant documents.

However, Plaintiff indicates that Search 3 would use the "policy-level" search terms but does not disclose those search terms to the Court. Defendant provides one example of a proposed search term of "Separat* w/5 (famil* OR FAMU OR FMUA OR child* OR kid* OR parent* OR

5

mother* OR father*)" and argues it is "so overly broad that it would likely return thousands, if not tens of thousands of non-responsive documents because the search would encompass documents related to every unaccompanied child in ORR custody." (Joint Ltr. 7 at 5.) Based on this example, the Court agrees that the search terms would likely return irrelevant documents.

Given that the parties failed to provide the specific terms that would be encompassed by Search 3 and the conclusion that the only sample search would encompass documents irrelevant to whether the individuals exercised discretion, the Court declines to order Defendant to perform Search 3 as currently drafted. Rather, within **10 days** of this order, the parties are ordered to meet and confer regarding narrowed searches which specifically address whether the individuals exercised discretion in implementing the policies with respect to Plaintiffs. If the parties are unable to resolve the issue following meeting and conferring, another discovery letter may be filed, providing the exact searches to be run and any other information that the court will need to resolve the dispute.

### iv. Search 4

Through Search 4, Plaintiffs seek to conduct "a narrow search of ICE custodians for documents" related to the reunification and tracking of separated families. (Joint Ltr. 7 at 3.) Plaintiffs argue that "[e]vidence about ICE's understanding of the procedures—or lack thereof— for reunifying separated family members weighs on Plaintiffs' IIED and negligence claims … and such evidence would not be duplicative because not a single search has been conducted for reunification-related documents from any ICE custodian." (*Id.*)

Defendant responds that Plaintiffs "have not explained why the universe of documents they already have is insufficient" given that they already have deposition transcripts from five ICE witnesses who were asked about reunification efforts; congressional testimony and government reports regarding reunification; and previously produced discovery. (Joint Ltr. 7 at 5.)

Here, the Court agrees with Plaintiffs that Search 4 is warranted based on their representation that "not a single search has been conducted for reunification-related documents from any ICE custodian." (Joint Ltr. at 3.) While Defendant argues that the documents Plaintiffs already have from the Common Discovery on this issue do not warrant imposing the burden of the

1  additional searches, in this instance the Court does not see how the search would impose anything
2  more than the ordinary burden of discovery. As the Court has previously observed, while it
3  understands that Defendant has already incurred a significant burden in producing documents in
4  the Arizona litigation, such does not relieve Defendant of its discovery obligations in this case.

5  Accordingly, Defendant is ordered to perform Search 4 and provide any responsive,
6  nonprivileged documents to Plaintiffs within **30 days** of this order.

### B. Joint Letter 8

Joint Letter 8 concerns Defendant's responses to certain RFPs.

#### i. RFPs 61-62

RFPs 61-62 "seek documents sufficient to show how DOJ and DHS develop sub-regulatory policy." (Joint Ltr. 8 at 1.) Plaintiffs assert that Defendant failed to produce any documents in response to these requests, instead directing them to a "DHS 30(b)(6) witness's deposition in the Arizona litigation, while refusing to identify any specific responsive testimony in that DHS deposition transcript and failing to identify any document regarding DOJ's procedures for developing sub-regulatory policy." (*Id.*)

Defendant argues these documents are not relevant because "Plaintiffs did not bring an APA claim challenging the procedures used to enact the policies at issue" and they "cannot challenge the government's policies through this FTCA suit." (Joint Ltr. 8 at 3.) To the extent the requests are relevant, Defendant asserts Plaintiffs already have the deposition transcript of the DHS 30(b)(6) witness addressing the process for developing immigration policy as well as transcripts from "high-level DOJ witnesses that discussed the development and implementation of the Zero-Tolerance policy" and the Common Discovery concerning policy issues. (*Id.* at 4.) Additionally, Defendant argues it would face a "massive" burden in collecting and reviewing additional documents because the "undefined term 'sub-regulatory policy' is vague and ambiguous, and has no clear limiting principle," such that a search would "take substantial government resources and capture countless policies that have nothing to do with this case." (*Id.* at 3.)

The Court agrees with Defendant that the term "sub-regulatory policy" is not sufficiently

1  limited to produce relevant documents.  This is especially true considering Defendant's position
2  that Plaintiffs cannot challenge the policies themselves.  In fact, the Court has previously observed
3  that Plaintiffs are challenging the *actions* "various agencies, their employees, and the named
4  public officials took." (*See* Dkt. No. 44 at 11.) Accordingly, the Court declines to compel a
5  response to these RFPs.

          **ii.    RFPs 63-65**

RFPs 63-65 seek "discovery into the personal files, social media posts, and complaints about or negative evaluations of the specific Border Patrol agents who Defendant listed in its initial disclosures and who separated Plaintiffs." (Joint Ltr. 8 at 1.)  Plaintiffs contend that these materials could help them detect whether the agents had a record of displaying racial animus, which would impact whether Defendant's actions "shocked the conscience" in support of Plaintiffs' IIED claim and to negate Defendant's DFE defense. (*Id.*)

Defendants argue this information is not relevant to the case because Plaintiffs challenge their separation pursuant to a nationwide policy rather than the individual actions of the agents. (Joint Ltr. 8 at 4.)  Additionally, Defendants argue that because the discretionary function exception applies whether or not the discretion involved was abused, Plaintiffs are not intitled to invasive discovery into the personal files of the agents involved. (*Id.*)  Finally, Defendants argues the agents' privacy interest weigh against granting this discovery. (*Id.*)

The Court believes the actions of the individual agents are relevant to the underlying case, especially given that Defendants rely on the discretionary function exception.  To the extent the privacy of the agents weighs against discovery of this information, the Court does not see why the operative protective order is insufficient to protect the agents' privacy interest.  Accordingly, Defendant is ordered to respond to RFPs 63-65 within **30 days** of this order.

          **iii.    RFP 74**

RFP 74 seeks documents and communications concerning 860 complaints involving family separations made to the DHS Office of Civil Rights and Civil Liberties ("CRCL"). (Joint Ltr. 8, Ex. 1 at 8.) Plaintiffs assert that "[w]hile Defendant produced a publicly-available spreadsheet summarizing some information about the complaints, there is no dispute that

1   Defendant did not search for or produce (1) the initial complaint that CRCL received and (2)
2   follow-up communications from CRCL to other officials regarding next steps, if any, DHS took to
3   address the complaints." (Joint Ltr. 8 at 2.)  Plaintiffs argue this information is relevant to show
4   whether Defendant acted with a reckless disregard to the risk of emotional distress caused by the
5   policy and would place no more than the ordinary burden of ESI discovery on Defendant.  (*Id.*)

6   Defendant responds that Plaintiffs already have the publicly available spreadsheet detailing
7   the complaints; the July 2019 CRCL report summarizing its findings and recommendations;
8   policy-level deposition transcripts from the Arizona litigation discussing this investigation; and
9   Common Discovery documents discussing this investigation, including from CRCL's leader at the
10  time.  (Joint Ltr. 8 at 4.)  Defendant represents that "the only CRCL investigation conducted into
11  family separation during this timeframe was the investigation reflected in the publicly available
12  July 2019 CRCL report" and "the remaining documents responsive to this request (such as the
13  underlying complaints and the CRCL opening and closing letters) do not exist in any centralized,
14  readily searchable database." (*Id.*)  Defendants argue the burden of collecting these documents "is
15  disproportionate and unjustified" in light of all the evidence Plaintiffs already possess.  (*Id.*)

16  Based on Defendant's representations of the documents Plaintiffs already have addressing
17  the complaints CRCL received and investigation into the complaints, any responsive documents to
18  RFP 74 would likely be cumulative of information already provided.  The Court agrees the burden
19  Defendant represents it would face in gathering these additional documents is not justified by their
20  importance to this litigation in light of the information already available to Plaintiffs.
21  Accordingly, the Court will not compel Defendant to provide a further response to RFP 74.

22        **iv.    RFP 80**

23  RFP 80 "seeks documents and communications regarding the protocols that governed CBP
24  officials' separations of Parent Plaintiffs from their children," including "when and how families
25  should be separated, what CBP employees should communicate to family members about
26  separation, and how to care for children after separation." (Joint Ltr. 8 at 2.)  Plaintiffs argue
27  Defendant's search for responsive documents was inadequate because it "delegated document
28  collection and responsiveness review to a non-lawyer—during which review he somehow

determined that all responsive documents were already accounted for in the Common Discovery—without meaningful attorney supervision." (*Id.*)

Defendant represents that "the Common Discovery includes the ESI returned by a broad set of 'family separation'-related search terms from four supervisory-level CBP officials from the Yuma Sector, which is the geographical region where Plaintiffs were apprehended and separated." (Joint Ltr. 8 at 5.) In response to this specific request, "CBP's former Special Operations Supervisor in the Yuma Sector (who is a Common Discovery custodian and a government subject matter expert in these cases) searched his email folders, shared government drives, and individual drives using the keywords 'SWB ConOps' (the Yuma Sector's term for its implementing guidance);" the supervisor reviewed the results, discussed the issue with his colleagues, and concluded no responsive documents beyond the Common Discovery existed; and "government counsel evaluated this additional search in conjunction with the Common Discovery …, considered the individual's expertise with respect to this issue and types of documents requested, and determined that Defendant had completed a reasonable and diligent investigation." (Joint Ltr. 8 at 5.) Defendant argues that any further search would impose an undue burden on the government. (*Id.*)

Given Defendant's representation of the contents of the Common Discovery, the outline of the additional search for responsive documents to this specific RFP, and Defendant's indication that, contrary to Plaintiffs' position, defense counsel evaluated the additional search, the Court agrees that Defendant has performed a diligent and reasonable investigation. Thus, no further response to this RFP is warranted.

**v.   RFPs 87-89**

RFPs 87-89 seek documents Defendant provided to Cayuga Centers and Southwest Key Programs, two contract shelters where the minor Plaintiffs were housed, concerning "(1) Defendant's separation of families, (2) how Defendant tracked and facilitated reunification of separated family members, and (3) the number of separated minors in the contractors' custody, as well as related communications." (Joint Ltr. 8 at 3.) Plaintiff argues Defendant's reliance on the Common Discovery and a limited set of Plaintiff-specific searches is insufficient to respond to

these requests and Defendant "refused to confer about search terms." (*Id.*)

Defendants assert that "[i]n addition to the Common Discovery, [it] agreed to search the records of the ORR Project Officers assigned to these shelters and the ORR Federal Field Specialists and Federal Field Specialist Supervisors assigned to the minor Plaintiffs' cases, using plaintiff-specific search terms" and, based on its experience in other cases, these are "an appropriate complement to the Common Discovery, because the types of documents requested would largely overlap with documents and communications mentioning the names of children in ORR custody." (Joint Ltr. 8 at 5.) Defendants argues that "Plaintiffs' demand for some unspecified additional set of search terms would bring in large numbers of non-responsive documents and communications between HHS and the shelters, which would require significant effort to process and review." (*Id.*)

The Court agrees with Plaintiffs that Defendant's Plaintiff-specific search terms are unlikely to return documents related to how "Defendant and its contractors reunified immigrants *generally*." (Joint Ltr. 8 at 3.) Additionally, it is not clear that the Common Discovery would include documents from the two specific contract shelters that housed the Minor Plaintiffs in this action, which presumably were different shelters than were involved in the Arizona litigation. Thus, Defendant will be required to respond to these RFPs. Because Defendant asserts a burden objection based on the "demand for some unspecified additional set of search terms" and Plaintiffs represent that Defendant refused to confer about search terms, within **10 days** of this order, the parties are ordered to meet and confer concerning search terms and within **30 days** of an agreement on search terms, Defendant shall provide responsive documents to RFPs 87-89.

This order disposes of Dkt. Nos. 86 and 87.

IT IS SO ORDERED.

Dated: August 7, 2023

_____
KANDIS A. WESTMORE
United States Magistrate Judge

11