KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
EVAN H. MCINTYRE - # 349409
emcintyre@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
JORDAN WELLS - # 326491
jwells@lccrsf.org
VICTORIA PETTY - # 338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 543 9444

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
OF NORTHERN CALIFORNIA
BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs

ISMAIL J. RAMSEY
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:   415 436-7167
Facsimile:   415 436-7169

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**DISCOVERY LETTER BRIEF RE: MOTION TO COMPEL**<br><br>Judge:　　Hon. Kandis A. Westmore<br><br>Date Filed: June 10, 2021<br><br>Trial Date: May 6, 2024 |

Dear Judge Westmore:

      Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America ("Defendant") (collectively, the "Parties") hereby jointly submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred by video conference on September 11, 2023, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: September 15, 2023

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Travis Silva* | */s/ Kelsey J. Helland* |
| BROOK DOOLEY<br>TRAVIS SILVA<br>CHRISTOPHER S. SUN<br>CHRISTINA LEE<br>JACQUELINE CONCILLA<br>EVAN H. MCINTYRE<br>KEKER, VAN NEST & PETERS LLP<br>*Attorneys for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |

**Unresolved Discovery Issue:** Whether Plaintiffs are entitled to take the depositions of former Attorney General Jefferson Sessions and former DHS Secretary Kierstjen Nielson and/or to pierce the asserted deliberative process privilege for 16 documents on Defendant's privilege log.
**Plaintiffs' Position**

  Intent and governmental discretion are key issues in this case.  Throughout the discovery period, Defendant represented that its position was that ***dozens*** of people exercised relevant discretion and formed a relevant intent.  Then, on the last day of fact discovery, Defendant served an "Amended Response" to an interrogatory response (which Defendant says supersedes its prior response) indicating a dramatic change in position.  Defendant now claims that the only officials whose intent Defendant contends "matters" for the purpose of this case are former Attorney General Sessions and former DHS Secretary Nielsen.  A drastic change of position like that, on the last day of discovery, is classic sandbagging.  The Court should cure this misconduct by authorizing depositions of these officials and forcing the disclosure of certain documents.

  **Background.**  In 2018, DOJ and DHS issued memoranda implementing the policy at the center of this case.  The policy instructed Border Patrol officials to refer any adult immigrant apprehended after illegally entering the country for misdemeanor prosecution and it instructed DOJ prosecutors to prosecute them.  That instruction applied even when the immigrant adult was accompanying a child.  This fact is important because when such an adult is referred for prosecution, DHS officials separate the adult and the child and send the child to foster care (in this case, as far away as New York), even if the prosecution takes less than a day and results in a "time served" sentence (as it almost invariably does).  For that reason, this policy represented an unprecedented departure from prior practice.

  Plaintiffs allege that the entire prosecution scheme was a mere pretext for the Government to implement its true policy aim—to separate immigrant families. Dkt. 1 at ¶¶ 45 & 53.  This allegation, and the relevant legal framework, put official governmental intent and the permissible scope of the exercise of official discretion at the heart of the case.  To support their prima facie IIED claim, Plaintiffs must show that Defendant acted with an intent to cause harm (or reckless disregard toward that risk).  And, Defendant asserts that it is immune from this action because of the discretionary function exception (DFE) to the FTCA.  To counter this affirmative defense, Plaintiffs intend to show that Defendant's conduct does not fit within the DFE for several reasons, including that Defendant violated substantive due process rights by intending to separate families and that Defendant implemented a policy with no legitimate rationale.  *See Myles v.U.S.*, 47 F.4th 1005, 1012 (9th Cir. 2022).

  Because intent and discretion go to the core of the case, Plaintiffs sought related discovery.  Defendant served interrogatory responses identifying: (1) five people with knowledge of the "policy goals" (Mr. Sessions, Ms. Nielsen, and three sub-Cabinet officials) for the policy at issue and (2) over 70 people who Defendant contends exercised "discretion" within the meaning of the DFE.  The "policy goal" request is especially important because it goes to whether a legitimate governmental interest was served and thus whether the DFE applies.  *See Myles*, *supra*.  In reliance on these responses, Plaintiffs obtained[1] deposition testimony for two of the three sub-Cabinet officials with "policy goal" knowledge.  This, along with other officials' testimony, establishes that some Government officials indeed acted with intent to separate

---

[1] Plaintiffs conducted depositions and also obtained deposition testimony given in a parallel case pending in the District of Arizona, and Defendant agrees those can be used at trial.  So, Defendant's attempt to discredit the number of depositions Plaintiffs took is unavailing.

families. Plaintiffs also obtained (or will obtain) testimony from five of the discretion-exercising officials, as well as related Rule 30(b)(6) testimony. Aware that Defendant objected to depositions of Mr. Session and Ms. Nielsen, in reliance on Defendant's disclosures, and satisfied with the existing evidence, Plaintiffs did not seek testimony from Mr. Sessions or Ms. Nielsen.

On the last day of fact discovery, Defendant issued an amended interrogatory response to state "the goals that Defendant sought to achieve in adopting those policies are solely the goals for which Attorney General Sessions and Secretary Nielsen, respectively, adopted those policies." Ex. B at 7. In other words, Defendant asserted for the first time that the *only* two decision-makers whose intent Defendant believes "matters" in this case are the former Attorney General and the former DHS Secretary.[2]

**Depositions.** Plaintiffs seek leave to depose Mr. Sessions and Ms. Nielsen. (Leave is necessary because these would be Plaintiffs' eleventh and twelfth depositions.) Defendant does not dispute that these individuals' testimony is irrelevant; indeed, it concedes that it will place substantial reliance on Mr. Sessions' and Ms. Nielsen's intent. Rather, Defendant asserts that Plaintiffs made a tactical decision not to seek these depositions, Plaintiffs should have foreseen the Government's late disclosure, and apex depositions are inappropriate. These rationales fail.

Plaintiffs acknowledge that they previously decided not to seek these depositions—in reliance on Defendant's disclosures. Defendant held out over 80 people with relevant knowledge of Defendant's intent or discretionary conduct. Eighty depositions would be excessive. So, Plaintiffs obtained deposition testimony developed in the parallel Arizona case, including from the two sub-Cabinet officials described above. *This testimony includes evidence that several government officials acted with the intent to separate families*, so Plaintiffs saw no need to seek depositions of former Cabinet members in light of the apex rules on which Defendant now relies. Then, Plaintiffs noticed other individual and Rule 30(b)(6) depositions to develop additional evidence. The basis for this decision-making was in large part Defendant's disclosure that it would argue that dozens of disparate government actors had relevant intent and discretion related to this case. Had Defendant timely disclosed that it would rely exclusively on Mr. Sessions and Ms. Nielsen for intent, Plaintiffs would have sought their depositions instead and earlier.

Defendant faults Plaintiffs for not foreseeing Defendant's last-day amended response, asserting that Plaintiffs should have anticipated it upon reading the Arizona summary judgment papers. That is nonsense; Defendant has repeatedly represented that it is not litigating this case in the same way it is litigating in Arizona. Indeed, Defendant has opposed producing discovery responses from Arizona on precisely that basis. Its defense counsel has made several decisions that diverge from the decisions made there. What Plaintiffs had before them—until the last day of discovery—were Defendant's disclosures and discovery responses served in this case, which maintained that dozens of individuals acted with relevant intent.

Finally, Defendant makes apex arguments, citing *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). The Ninth Circuit denied a Cabinet-level deposition there because the relevant Cabinet secretary did not have unique evidence that was necessary to probe the claim. *Id.* at 704. But where a Cabinet secretary has unique personal knowledge and "Plaintiffs' claims turn on the intent" of that official, a deposition is appropriate. *State v. United States Dep't of Com.*, 333 F. Supp. 3d 282, 287 (S.D.N.Y. 2018) (later vacated as moot). Here, Mr. Sessions and Ms. Nielsen have unique personal knowledge of their own intent, meaning that Plaintiffs meet the second and

---

[2] To be clear, Plaintiffs disagree with the contention that only Mr. Sessions's and Ms. Nielsen's intent matters in this case. But that's a merits issue, and this is a discovery dispute.

third prongs of the *U.S. Dep't of Education* standard, which are that the information be "essential to the case" and not otherwise obtainable. And, Plaintiffs meet the first prong because they make an allegation of agency bad faith by alleging that Defendant engaged in unconstitutional behavior, an allegation the Court accepted at the motion to dismiss stage.

Finally, Defendant notes that the Arizona court denied those plaintiffs' effort to depose Ms. Nielsen. True, but at that time, the Arizona court did not know that the Defendant would rely so heavily on Ms. Nielsen in summary judgment. Indeed, there is now a Rule 56(d) issue present in that case that Plaintiffs seek to avoid.

**Deliberative process privilege assertions**. The deliberative process privilege is qualified and can be pierced upon a showing of need. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156 (9th Cir. 1984), gives a four-factor test governing whether the privilege can be pierced: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* at 1161. The privilege log shows the 16 documents listed in Exhibit A were sent to Mr. Sessions or Ms. Nielsen or at their instruction and suggests that they relate to the development of the challenged policy. Some of the documents are briefing notes for one of the secretaries; where the document has a different custodian, that custodian a direct report who acted at the Secretary's instruction. The *Warner* factors compel disclosure where Defendant does not deny the relevance of Mr. Sessions's or Ms. Nielsen's knowledge, intent evidence is difficult to obtain, the government is a defendant (rather than a third party) in this case, and the officials at issue have left government service. Moreover, a federal court held that the policy at issue was unconstitutional and enjoined it; public servants do not have special solicitude to deliberate illegal policies. *Ms. L. v. U.S Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018).

**Final position.** Defendant should be compelled to produce the documents in Exhibit A and Plaintiffs should be granted leave to conduct depositions of Mr. Sessions and Ms. Nielsen.

**Defendant's Position**: Plaintiffs have chosen to pursue a discovery dispute process on an issue they raised for the first time on the eve of filing. Plaintiffs have known since the outset of the case, reinforced many months ago during discovery, that the intent of former Attorney General Sessions—the author of the Zero Tolerance Policy (ZTP) memorandum—and former DHS Secretary Nielsen—the signatory of the DHS Referral Memo implementing ZTP—potentially "mattered" in this case. The Court should reject Plaintiffs' attempt to effectively re-open discovery on issues relating to both Mr. Sessions and Secretary Nielsen that Plaintiffs chose not to pursue earlier. Plaintiffs do not provide a valid factual or legal basis to take apex depositions of two Cabinet-level officials, much less after the close of fact discovery. Nor do Plaintiffs present any justifiable reason to pierce any deliberative-process privilege assertion for documents they claim concern the intent of Mr. Sessions and Secretary Nielsen.

*First*, Plaintiffs' proffered hook for late discovery—their purported lack of awareness of the importance of Mr. Sessions or Ms. Nielsen—is undermined by the record in this case. Over two years ago when Plaintiffs filed their complaint in June 2021, they explicitly alleged that Mr. Sessions was not only the author of ZTP but an individual with knowledge of ZTP's policy goals. *See* Dkt. 1 ¶ 44-49 (citing Mr. Session's ZTP memorandum; quoting his alleged public statements about ZTP's goals; arguing that "[o]n May 11, 2018, Sessions stated his goal even more clearly"). That same complaint, through its dozens of cited sources, identified Ms. Nielsen as yet another government individual with knowledge of policy goals. *See id.* ¶ 48 n.38, ¶ 55.

4

Seventeen months later, or on November 22, 2022, Plaintiffs propounded Interrogatory no. 7, asking Defendant to describe "any policy goals YOU purportedly sought to achieve by any proposed or executed" policy and to identify "all individuals with knowledge of the policy goals." Nine months ago, or on January 12, 2023, in response Defendant specifically identified Mr. Sessions, Secretary Nielsen and three other government officials as having knowledge of the relevant policy goals. But having read the approximately 20 national policy deposition transcripts from *CM* and *APF* produced on March 3, 2023, which included depositions of two of these individuals (Thomas Homan, the Former Acting Director, ICE; and Kevin McAleenan. Former Commissioner of U.S. CBP), Plaintiffs made the intentional decision not to pursue the depositions of the remaining three individuals, including Mr. Sessions and Secretary Nielsen. Instead, Plaintiffs pursued other discovery devices targeting, for example, the intent of Mr. Sessions. *See* RFAs 55, 56 (served on August 6, 2023) (requesting that Defendant admit an alleged public statement by Mr. Sessions as to the purpose of family separations). These choices should preclude them from now seeking to change course after the close of fact discovery by seeking depositions of Mr. Sessions and Secretary Nielsen.

       Plaintiffs now try to excuse their earlier failure to seek the depositions of Mr. Sessions and Secretary Nielsen by referencing the government's disclosure during discovery that "dozens of disparate government actors" had—they argue—"relevant intent and discretion related to this case," suggesting that Plaintiffs lost focus on Mr. Sessions and Secretary Nielsen. Setting aside the fact that this disclosure came more than four months ago (on May 2, 2023) and concerned a different topic altogether than Interrogatory 7's query concerning policy goals (where the government identified Mr. Sessions and Secretary Nielsen as two of five witnesses with relevant knowledge), Plaintiffs' argument is unavailing. As explained above, Plaintiffs were long aware that Mr. Sessions and Secretary Nielsen had knowledge of policy goals. Plaintiffs' argument also is belied by the record in this case. As Plaintiffs concede, Defendant disclosed the names of other witnesses "throughout the discovery period" and, in particular, over four months ago in serving its supplemental responses to Interrogatory 8. And in these interrogatory responses, which listed individuals that exercised discretion, the government identified Mr. Sessions and Secretary Nielsen at the very top of the list of individuals at DOJ and DHS.[3] Yet Plaintiffs still never sought take the depositions of either of them during the remaining four months of discovery.

       *Second*, Plaintiffs have been aware of the government's position on these issues of intent through the summary judgment briefings in the *CM* and *APF* litigation in the District of Arizona, filed in March and May 2023. Those cases have been cited repeatedly by both parties in many filings with this Court, including this one. In particular, the government's summary judgment memoranda there contained multiple references to Secretary Nielsen and her selection of the policy option that resulted in Plaintiffs' separations. *See C.M. v United States*, No. 2:19-cv-05217-SRB, Dkt. 371, 424. While Plaintiffs state that they reviewed the government's months-old summary judgment briefing after Defendant amended its response to Interrogatory No. 7, they fail to inform the Court of when they first reviewed those briefing papers and became aware of the government's position on this issue. But, as indicated by language that Plaintiffs inserted into the parties' last case management conference statement in this case, Plaintiffs were aware of that summary judgment briefing two months ago. Dkt. 88 at 4 n.1 (noting summary judgment

---

[3] Despite the government's identification of witnesses who exercised discretion, Plaintiffs only noticed the percipient depositions of two of these individuals during discovery, plus the 30(b)(6) deposition of the United States Attorney's Office for the District of Arizona.

5

was pending in *CM* and *APF* as of July 18, 2023).

*Third*, Plaintiffs cannot satisfy the legal standard required to take the depositions of the two Cabinet officials at issue, as suggested by their failure to cite a single case applying the apex standard. The test to be applied here is laid out in the Ninth Circuit's decision in *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022), where the Court held "that extraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist when the party seeking the depositions can demonstrate: (1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way." *Id.* at 702. As Judge Bolton found in the *CM* and *APF* cases, "Secretary Nielsen's testimony while relevant is not essential to the case. Plaintiffs have obtained both documentary and testimonial evidence about the government's intentions in adopting the Zero Tolerance and family separation policies…" *C.M.*, No. 2:19-cv-05217-SRB, Dkt. 325 at 4 (denying plaintiffs' motion for leave to conduct Sec'y Nielsen's deposition). The same rationale applies to Mr. Sessions.  Plaintiffs attempt to distinguish Judge Bolton's application of the apex standard to deny a deposition of Secretary Nielsen in the *CM* and *APF* cases, suggesting that Judge Bolton did not have sufficient knowledge of the government's case when she made her ruling. This assertion lacks any foundation and also ignores the reality that the documentary and testimonial evidence on national policy facts (including on policy goals) that informed her decision have been shared and utilized in this case. Thus, the rationale to deny the deposition of Secretary Nielsen in *CM* and *APF* is equally applicable here to deny Plaintiffs' attempt to depose Mr. Sessions and Secretary Nielsen.

*Fourth*, Plaintiffs' attempt to pierce the deliberative process (DP) privilege asserted by Defendant for 16 documents on its privilege log has no merit. As an initial matter, Plaintiffs' attempt to obtain these documents is untimely. Setting aside the fact that Plaintiffs did not disclose the complete list of 16 disputed documents until 12:42am the day of filing, for the reasons explained above, Plaintiffs have long been on notice that Mr. Sessions' and Secretary Nielsen's intent with regard to the ZTP policy and DHS referral was part of this lawsuit. Indeed, Plaintiffs do not address the fact that there are custodial documents for Mr. Sessions and Secretary Nielsen that were produced a year ago without redaction and that may bear on their intent. But although Defendant's privilege log was served in May of this year, Plaintiffs chose not to pursue piercing the DP privilege for documents they believed related to Mr. Sessions and Secretary Nielsen's intent until almost one week after fact discovery's close. In any event, Plaintiffs arguments for waiver do not pass muster under the Ninth Circuit case they cite. For example, it is unclear how these 16 documents are relevant to the intent of Mr. Sessions or Secretary Nielsen as it concerns the ZTP or the DHS referral policy or are uniquely personal in nature when none of the 16 documents was authored or received by either of them. Plaintiffs speculate that these documents were sent to Mr. Sessions or Secretary Nielsen or at their instruction, apparently focusing on just three of them as being "draft talking points" for Mr. Sessions, but that is, again, just speculation. Even those three "draft talking points" documents concern a different policy ("catch and release") than the policy at issue in this case.

**Final position.** Plaintiffs' motion to take the depositions of Mr. Sessions and Secretary Nielsen and to compel production of unredacted versions of the 16 documents in Exhibit A should be rejected. Due to the potential presence of privileged information unrelated to this case, and for which the DP privilege therefore would not be pierced, if the Court is inclined to lift any redactions, Defendant respectfully requests an in camera review.

Dated: September 15, 2023

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Travis Silva* | */s/ Kelsey J. Helland* |
| BROOK DOOLEY<br>TRAVIS SILVA<br>CHRISTOPHER S. SUN<br>CHRISTINA LEE<br>JACQUELINE CONCILLA<br>EVAN H. MCINTYRE<br>KEKER, VAN NEST & PETERS LLP<br>*Attorneys for Plaintiffs* | Kenneth W. Brakebill<br>Kelsey J. Helland<br>UNITED STATES ATTORNEY'S OFFICE<br>*Attorneys for Defendant* |