KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
EVAN H. MCINTYRE - # 349409
emcintyre@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
JORDAN WELLS - # 326491
jwells@lccrsf.org
VICTORIA PETTY - # 338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 543 9444

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
OF NORTHERN CALIFORNIA
BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs

ISMAIL J. RAMSEY
United States Attorney
MICHELLE LO
Chief, Civil Division
KENNETH W. BRAKEBILL
kenneth.brakebill@usdoj.gov
KELSEY J. HELLAND
kelsey.helland@usdoj.gov
450 Golden Gate Avenue, Box 36055
San Francisco, CA  94102-3495
Telephone:   415 436-7167
Facsimile:   415 436-7169

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**DISCOVERY LETTER BRIEF RE: MOTION TO COMPEL**<br><br>Judge:      Hon. Kandis A. Westmore<br><br>Date Filed:  June 10, 2021<br><br>Trial Date:  May 6, 2024 |

Dear Judge Westmore:

Plaintiffs Wilbur P.G., Wilfredo Baltazar P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G., and Karl Luis G.G. (collectively, "Plaintiffs") and Defendant United States of America ("Defendant") (collectively, the "Parties") hereby jointly submit this letter regarding a discovery dispute, pursuant to Paragraph 14 of the Court's Standing Order. The Parties met and conferred by video conference on September 11, 2023, and were unable to resolve the disputed issue described below. The Parties hereby attest that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct.

Dated: September 15, 2023

Respectfully submitted,                          Respectfully submitted,


/s/ Travis Silva[1]                               /s/ Kelsey J. Helland
_____                _____
BROOK DOOLEY                               Kenneth W. Brakebill
TRAVIS SILVA                               Kelsey J. Helland
CHRISTOPHER S. SUN                         UNITED STATES ATTORNEY'S OFFICE
CHRISTINA LEE                              *Attorneys for Defendant*
JACQUELINE CONCILLA
EVAN H. MCINTYRE
KEKER, VAN NEST & PETERS LLP
*Attorneys for Plaintiffs*

---

[1] Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

1

**Issue presented:** Whether the Government may claim privilege over certain documents related to a legal memorandum that the Government has disclosed in response to a FOIA request.

**Plaintiffs' position**

The Government recently agreed that it has waived privilege over "the Mitnick Memo" (Ex. A), a legal memorandum sent to DHS Secretary Nielsen just prior to the launch of the family separation policy, that concludes: "[T]o the extent that there is any consideration of separating adults and children through the immigration process, our legal position is likely strongest in those cases in which separation occurs in connection with a referral of an adult family member for criminal prosecution." Ex. A at 3 (internal pagination). The Government continues to assert privilege over communications soliciting and derived from the memorandum. Both the Mitnick Memo and the privilege log suggest that communications related to the Mitnick Memo likely undermine the Government's defenses and in fairness should be considered alongside the memo. The Government should be compelled to produce them.

**Background on the Mitnick Memo and its relationship to this case.** For months preceding the conduct at issue, federal officials discussed how to accomplish the purposeful separation of migrant families at the southern border. By late April 2018, the Government was considering adopting a public policy of increasing the number of border prosecutions and was holding out family separation as a mere unavoidable byproduct of that policy. In May 2018, the Government did increase the number of border prosecutions, and in connection with this policy, the Government separated thousands of immigrant parents and children (including Plaintiffs).

Plaintiffs contend that the Government implemented this policy for the purpose of separating families, and that the Government's purported reliance on prosecutions was pretextual. Dkt. 1 at ¶¶ 41–57. The Government denies that it ever adopted a family-separation policy, and claims that separations were a necessary consequence of its exercise of prosecutorial authority. The dispute about the Government's intent is relevant to Plaintiffs' prima facie case, where they must show an intent to inflict emotional distress (or a reckless disregard to that risk). It is also relevant to the Government's FTCA-specific discretionary-function exception (DFE) affirmative defense, and to one of Plaintiffs' defenses to the DFE defense, which is that the Government lacks discretion to violate the substantive due process right to familial integrity.

The Government's privilege log shows that in April 2018, DHS Chief of Staff Chad Wolf asked DHS General Counsel John Mitnick to provide "legal advice on family separations policy" (the very policy that Defendant denies ever existed). The responsive Mitnick Memo concludes that a prosecution-based rationale would "likely" be the "strongest" legal position to justify family separation. Ex. A at 3. That Mr. Mitnick offered this advice strongly suggests that family separation itself was a conscious policy goal and that DHS (in communications withheld from Plaintiffs on privilege grounds) had sought advice on ways to justify family separation. The DHS Secretary was provided the Mitnick Memo before she signed the contested policy, and Mr. Mitnick continued to advise DHS about a "family separation policy."

For over a year, the Government claimed privilege over the Mitnick Memo and all communications related to it. On September 6, 2023, Plaintiffs' counsel learned that in 2022 the Government had released the Mitnick Memo in response to a FOIA request that specifically sought the Mitnick Memo.[2] On September 13, 2023, the Government withdrew its privilege

_____

[2] Defendant faults Plaintiffs for raising this challenge late. This challenge is timely under Civil Local Rule 37-3. Plaintiffs' counsel can provide sworn testimony confirming that they learned about the Mitnick Memo's public disclosure only on September 6, and Plaintiffs raised the issue

asserting over the Mitnick Memo itself, but re-asserted privilege over related communications. Exhibit B shows the privilege log entries that Plaintiffs believe are related to the Mitnick Memo.

**Legal Standard.**  As this Court has noted, "[v]oluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject." *Guidiville Rancheria of California v. United States*, No. 12-cv-01326-YGR-KAW, 2013 WL 5303748, at *4 (N.D. Cal. Sept. 20, 2013) (simplified); *accord Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged communication . . . results in waiver as to all other communications on the same subject.").[3]  Although it does not directly apply here (because the FOIA disclosure was not a "federal proceeding"), Federal Rule of Evidence 502 may be instructive: it provides that a "waiver extends to an undisclosed communication or information" where (1) the waiver is intentional; (2) "the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  FRE 502(a).  "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (simplified).  "[I]t is the burden of the party who asserts privilege to show that the privilege has not been waived." *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016).

**Analysis.**  Defendant argues that its disclosure of the Mitnick Memo was inadvertent and not made for the purposes of obtaining a litigation advantage.  The record tells another story. The FOIA response letter shows that DHS released the memo after receiving a request for a single document: a memo "signed on or around April 24, 2018 by John Mitnick entitled 'Criminal Prosecution of Aliens Who Entered Unlawfully: Legal Guidance on Potential Separation of Family Members.'"  DHS released the Memo after it "carefully review[ed] the responsive document" and "determined that it [was] appropriate for public release."  Ex. A. Thus, this case is not like *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480 (2009), where "Defendant's disclosures resulted from its failure to exercise caution and diligence in . . . responding to FOIA requests." *Id*. at 521.

As for litigation advantage, on this point, the Government's theory of the case is clear: It will argue that it had legal authority and discretion to implement a "zero tolerance" prosecution policy that had the collateral consequence of separating families.[4]  But Plaintiffs allege that the Government sought pretextual legal advice, then adopted a policy facially focused on prosecutions, as a means to advance its true intent—to separate children from their families.  The Mitnick Memo supports this claim.  Mr. Mitnick's phrasing that the government's "legal position" is "likely strongest in those cases where separation occurs in connection with a referral [for] criminal prosecution" suggests that Mr. Mitnick was likely responding to a request for a

---

with Defendant the same day.  Defendant was not forced to write this brief in a day.

[3] "[F]ederal privilege law applies to discovery and the admission of evidence in Federal Tort Claims Act cases." *Young v. United States*, 149 F.R.D. 199, 204 (S.D. Cal. 1993).

[4] For example, Kevin McAleenan, the Border Patrol Commissioner, testified in deposition that "the goal was to increase prosecutions, to have a criminal consequence for the crossing, and for the detention through the immigration proceedings . . ." *See also* Dkt. 29 at 38 (arguing 8 U.S.C. § 1232(b)(3) "required the separation of the children from the adults to provide care and physical custody while the adults were in immigration detention").

legal rationale that would justify family separations.  This statement, read in its full context, suggests that DHS officials asked Mr. Mitnick to evaluate what "legal position" would be "strongest" to justify a "separation," rather than to analyze the legality of a policy about prosecutions.  There are privilege log entries pre-dating the Memo's publication, which seek "legal advice on family separations policy" and "Email chain discussing request for strategic arguments in response to family separation issues, looping in legal."  (Recall that Defendant has repeatedly asserted that no such thing as a "family separation policy" ever existed; its very appearance on the privilege log calls that assertion into doubt.) And related communications post-dating the memo likely contain material derived from the Mitnick Memo (so privilege has been expressly waived) and may also speak to the relevant officials' intent.  Thus, "in fairness" and in light of the nature of Plaintiffs' claims, the Mitnick Memo should "considered" alongside the communications that solicited it and that are derived from it.  FRE 502(a).

Waiver is appropriate even if Defendant disclaims any intent to rely on the Mitnick Memo itself.  "Subject matter waiver has always been about fairness to all parties, ensuring the full story emerges, and concern about the impact of selective disclosure on the fact-finding process." *Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012).  Defendant has put its "it was a prosecution policy, not a family-separation policy" claim squarely at issue, and compelled disclosure under FRE 502(a) is not limited to situations where the party resisting disclosure relies on the document over which privilege was waived in court.  *E.g,. Rains v. Westminster Coll.*, 627 F. Supp. 3d 1267, 1275, 1280 (D. Utah 2022) (fairness dictated disclosure of communications related to final report, over which privilege was waived before litigation, where communications were "relevant to central issues in this case, including whether [Defendant's] stated reason for terminating [plaintiff] was legitimate or a pretext").

**Final position.**  Defendant having waived privilege over the Mitnick Memo, Defendant should be compelled to retract any privilege claim over any communications related to the memo (i.e., any communications showing that Mr. Mitnick was asked to advise about the legality of separating families), and any derivative material.  Alternatively, given the complexities of a privilege challenge, this dispute may be appropriate for full briefing.[5]

**Defendant's Position:**  Defendant has not selectively waived its claimed privilege over the Mitnick Memo to gain a tactical advantage in this litigation.[6] To the contrary, Defendant *asserted* privilege over the Memo in this litigation, and only withdrew that assertion upon Plaintiffs' demand after Defendant recently learned that the DHS FOIA office had released the Memo in error as part of a FOIA request that was unrelated to this litigation or to any Plaintiff.  The doctrine Plaintiffs rely on does not apply here, and their request therefore should be denied.

As Plaintiffs admit, "The idea is to limit subject matter waiver to situations in which the privilege holder *seeks to use the disclosed material for advantage in the litigation* but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." *Century Aluminum*, 285 F.R.D. at 472 (emphasis added). Indeed, as the note to FRE 502 explains, "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." FRE 502 advisory cmte. note (Nov. 28, 2007).

[5] While Defendant faults Plaintiffs for seeking duplicative copies of the Memo, Plaintiffs have no way of knowing whether withheld documents are prior versions or exact duplicates.

[6] Plaintiffs' submission of the Memo as Exhibit A violates ¶ 14(b) of the Court's Standing Order.

Courts therefore find that where, as here, the waiver was not made for tactical advantage in the litigation, it does not extend to other information regarding the same subject matter. *See, e.g.*, *Valenzuela v. Union Pacific R.R. Co.*, 2016 WL 7385037, at \*3 (D. Ariz. Dec. 21, 2016) (where document only became public because it was "introduced as evidence in [another action] over [Defendants'] objection," "the Court cannot conclude that Defendants are 'intentionally putting protected information into this litigation in a selective, misleading and unfair manner' as required by the Advisory Committee Note") (cleaned up); *De Los Santos v. City of Roswell*, 2013 WL 12330144, at \*11 (D.N.M. May 21, 2013) (finding no subject matter waiver where "[t]here is no evidence that Defendants disclosed the lease and memorandum while withholding other information in order to gain a strategic advantage in litigation").

Indeed, another court has previously addressed the exact scenario where a document was disclosed pursuant to a FOIA request, and held that there was no subject-matter waiver because the waiver was not made to gain advantage in litigation. In *Eden Isle Marina, Inc. v. United States*, the plaintiff used a FOIA request to obtain privileged emails sent between an agency attorney and other agency employees. 89 Fed. Cl. 480, 516 (2009). The plaintiff then argued that the "defendant's disclosure . . . should result in the waiver of privilege for all documents of the same subject matter." *Id.* at 520. The court squarely rejected the claim, because the "plaintiff ha[d] not demonstrated that defendant [wa]s selectively disclosing documents to gain an advantage in litigation." *Id.* at 521. "Rather than constituting some sort of scheme to bolster its defense," the defendant's "disclosures resulted from its failure to exercise caution and diligence in [] responding to FOIA requests." *Id.* Plaintiffs attempt to distinguish *Eden Isle* on the ground that the FOIA request here specifically sought the Mitnick Memo, but that does not change the fact that the DHS HQ FOIA office has determined the Memo was released in error, and in no way for tactical advantage in the litigation.

Plaintiffs ignore this distinction between the authorities they cite and this case. Indeed, virtually all of the subject-matter waiver cases Plaintiffs cite involved parties who had intentionally disclosed privileged information *for use in litigation*. *See Hernandez v. Tanninen,* 604 F.3d at 1100 ("In opposing the City's motion for summary judgment, Hernandez disclosed communications between him and Ferguson about Tanninen. He also disclosed favorable portions of Ferguson's communications with Tanninen and produced some of Ferguson's notes of those conversations."); *Wadler v. Bio–Rad Laboratories, Inc.*, 212 F. Supp. 3d at 853 ("[I]n this action Bio–Rad has repeatedly, and in great detail, described Wadler's communications with the Audit Committee and the investigations of outside counsel (both Steptoe & Johnson and DPW) relating to Wadler's concerns."); *Century Aluminum*, 285 F.R.D. at 472 ("AGCS' counsel, acknowledging that the document is 'probably privileged,' chose to then produce the privileged document and report from Bob Cohen which Robb claimed 'greatly strengthens the improper packing defense.'"). Such intentional disclosure for use in litigation is a far cry from disclosure by a large federal agency pursuant to a FOIA request that was unrelated to this case. As stated above, the DHS HQ FOIA Office had disclosed this Memo in error to a requester that is not a party of this litigation as part of a FOIA referral from a DHS Component nearly 21 months ago.

Plaintiffs cite two other cases where the waiver occurred outside the litigation. In *Mills v. Iowa*, the court found "limited subject matter waiver" where a university's board had intentionally and publicly waived privilege over an investigation into the university's handling of a sexual assault incident. 285 F.R.D. at 416. Importantly, the court noted that "the waiver, not merely the disclosure, must be intentional." *Id.* at 416 n.3. The court reasoned that further "disclosure [wa]s consistent with the announced purpose of the intentional waiver pertaining to

the Stolar report and notes—to be completely open and transparent about the conduct of the investigation and its independence." *Id.* at 416-17. But here, the waiver was in error, and further disclosure would be entirely inconsistent with the government's continued assertion of privilege over other attorney-client communications.

In *Rains*, the other case Plaintiffs cite, a college had expressly relied on an investigation report as the basis for firing the plaintiff. 627 F. Supp. 3d at 1276. Specifically, in the termination letter at issue, the college president wrote that he "'carefully considered the investigation report" and "'[b]ased on this information,' the president determined Ms. Rains' conduct at issue in the Washington state case was grounds for termination." Having intentionally waived certain aspects of the report and *explicitly put its reliance on the privileged material at issue*, it was fair to allow the plaintiff discovery into communications and other versions of the report. *Id.* at 1280. But here, the government has not put its reliance on the Mitnick Memo at issue; the government has not made an "advice of counsel" defense. To the contrary, the government did not disclose the unredacted Memo to Plaintiffs and had no intention to rely on it in this litigation.

Plaintiffs have nevertheless speculated about ways the Memo might be used in this litigation, in various attempts to argue that, in "fairness," the government should be forced to waive its claims of privilege over other documents. Indeed, over the single day that Plaintiffs have forced the parties to brief this issue, Plaintiffs have alternatively argued (in previous versions of this brief) that the Memo tends to support the government's case (and therefore fairness dictates that Plaintiffs should see related privileged documents) and, now, that the Memo tends to support Plaintiffs' case (and so, for some reason, fairness still dictates that Plaintiffs should see related privileged documents). But if the Memo already tends to support Plaintiffs' theory, as Plaintiffs argue above, there is no need to pierce the privilege over other communications. The whole point of the subject-matter waiver doctrine is to make sure a selective disclosure does not misrepresent the truth; it is not meant to confirm the disclosure.

In any event, these considerations of "fairness" apply only if there was an intentional and selective waiver of the privileged material in the first place. As explained, there was not. Defendant has not sought to use the Mitnick Memo in this litigation, and would have maintained its assertion of privilege over it had Plaintiffs not brought the FOIA disclosure of the memo to the government's attention. Contrary to Plaintiffs' argument, the government did not "selective[ly] disclos[e]" the Memo in this case.

Moreover, Plaintiffs raised this issue for the first time two days before the close of fact discovery, despite acknowledging that the Memo was released to the public in February 2022. Plaintiffs do not dispute that they could have learned of the public disclosure of this document last year. Having this significant issue sprung on it at the last minute prejudices the government's ability to investigate and litigate the implications of this issue. Nevertheless, in the short time the government has had to investigate this issue, it has determined that several of the documents Plaintiffs identified in the privilege log entries do not even directly involve Mr. Mitnick (for example, records do not indicate he was a participant in the communication). And of the documents that do directly involve Mr. Mitnick, several of those are merely the signed Memo itself, which Plaintiffs already have in unredacted form. This would be clear to Plaintiffs if they reviewed the documents they reference, as the documents' header information is unredacted.

Subject-matter waiver does not apply here. The government did not disclose the Mitnick Memo to gain advantage in this litigation, and so the doctrine does not apply.

**Defendant's Final Position:** Plaintiffs' request should be denied in full.

Dated: September 15, 2023

Respectfully submitted,                          Respectfully submitted,

/s/ Travis Silva                                 /s/ Kelsey J. Helland

BROOK DOOLEY                                     Kenneth W. Brakebill
TRAVIS SILVA                                     Kelsey J. Helland
CHRISTOPHER S. SUN                               UNITED STATES ATTORNEY'S OFFICE
CHRISTINA LEE                                    *Attorneys for Defendant*
JACQUELINE CONCILLA
EVAN H. MCINTYRE
KEKER, VAN NEST & PETERS LLP
*Attorneys for Plaintiffs*