KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY #230423
bdooley@keker.com
TRAVIS SILVA #295856
tsilva@keker.com
CHRISTOPHER S. SUN #308945
csun@keker.com
SARAH SALOMON - # 308770
ssalomon@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
EVAN H. MCINTYRE - # 349409
emcintyre@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiffs

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
JORDAN WELLS - # 326491
jwells@lccrsf.org
VICTORIA PETTY - # 338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 543 9444

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
OF NORTHERN CALIFORNIA
BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER**<br><br>Date:      February 1, 2024<br>Time:     1:30 p.m.<br>Dept.:    Remote via Videoconference or Zoom<br>Judge:    Hon. Kandis A. Westmore<br><br>Date Filed: June 10, 2021<br><br>Trial Date: May 6, 2024 |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
|  | A. Factual background | 1 |
|  | B. Background to this confidentiality dispute | 2 |
| III. | LEGAL STANDARD | 3 |
| IV. | ARGUMENT | 4 |
|  | A. The Court should resolve this Motion now, in advance of pre-trial proceedings. | 4 |
|  | B. The challenged material does not include sensitive information the release of which would adversely affect law enforcement or national security. | 6 |
|  | C. The challenged material is not subject to protection as "agency deliberative material." | 7 |
|  | D. Even if Defendant can establish good cause, the public-interest factors weigh in favor of disclosure. | 9 |
|  | E. Plaintiffs do not challenge government employee PII. | 11 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Berryhill v. Bonneville Power Admin.*,
    509 F. Supp. 3d 1288 (D. Or. 2020) ..................................................................................9

*Carter v. U.S. Dep't of Commerce*,
    307 F.3d 1084 (9th Cir. 2002) .........................................................................................8

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ......................................................................................3, 4

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ..............................................................................4, 5, 7, 8

*Glenmede Tr. Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995)...........................................................................................5, 10

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
    264 F.R.D. 595 (N.D. Cal. 2009).......................................................................................8

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018)......................................................................2, 7, 9

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)...............................................................................................10

*In re Roman Cath. Archbishop of Portland in Or.*,
    661 F.3d 417 (9th Cir. 2011) ..................................................................................*passim*

*Todd v. Tempur-Sealy Int'l, Inc.*,
    2015 WL 1006534 (N.D. Cal. Mar. 6, 2015)....................................................................9

**Federal Statutes**

8 U.S.C. § 1325....................................................................................................................2

**Rules**

Fed. R. Civ. P. 26................................................................................................................6

Fed. R. Civ. P. 30............................................................................................................2, 3

I.  **INTRODUCTION**

Defendant is relying on a blanket protective order ("Protective Order") to avoid publicly disclosing information harmful to its litigation position. But "as a general rule, the public is permitted access to litigation documents and information produced during discovery." *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (simplified).[1] That common law right of access is especially important here, where other family-separation plaintiffs have an interest in receiving discovery material developed in this case. The Protective Order and governing case law explain that the "party opposing disclosure has the burden of proving 'good cause,' which requires a showing that ***specific*** prejudice or harm will result if the protective order is not granted." *Id.* (simplified and emphasis added). The good-cause showing is not the end of the inquiry; where good cause exists, courts move onto a balancing test to weigh the value of public disclosure versus the private interests implicated. Defendant makes only conclusory statements about good cause while failing to articulate any specific "prejudice or harm" that would arise from disclosure; indeed, the documents at issue do not fall within any of the categories enumerated in the Protective Order. And Defendant neglects to grapple with the balancing test at all. Because Defendant cannot justify its Motion to Retain Confidentiality over the documents at issue, the Court should deny the Motion.

II.  **BACKGROUND**

A.  **Factual background**

In April 2018, three agency heads sent DHS Secretary Kirstjen Nielsen a "Decision Memo," seeking her approval to alter the Border Patrol's practices involving apprehended immigrant families. Exhibit 16.[2] Ms. Nielsen accepted her subordinates' recommendation on May 4, 2018. *Id.* at 6. Thereafter, Border Patrol began separating immigrant parents from their children where Border Patrol officers concluded (without attorney review) that the parent could potentially be prosecuted for an immigration crime, including misdemeanor violations of 8 U.S.C. § 1325.

---

[1] In this brief, the "simplified" parenthetical notes that non-substantive internal quotation marks, brackets, footnotes, and/or citations omitted.

[2] Unless otherwise noted, "Exhibits" refer to the exhibits to the Motion, which are docketed in their unredacted form at Nos. 159-3 through 159-40.

Plaintiffs are three parent-child pairs that were separated under this policy in May 2018. Compl. at ¶¶ 3, 10-12. Only one parent was even referred to DOJ for prosecution, and she received a time served sentence on May X 2018. *Id.* ¶ 54. All Plaintiffs were detained, apart from each other, in government-run or -contracted facilities. *Id.* ¶¶ 67, 75-110, 120-49, 154-190. After being ordered to do so by a federal judge, immigration officials began reunifying Plaintiffs in July 2018. *Id.*; *see Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019).

### B. Background to this confidentiality dispute

The Protective Order (Dkt. 58) requires the parties to limit designations "to specific material that qualifies under appropriate standards." *Id.* at 37.[3] It lists eight categories of documents that qualify for protection. *Id.* at 34-35. The category most relevant here, Sec. 2.2(f), includes:

> sensitive information about Defendant's law enforcement or national security staffing, resources, intelligence and/or methods (including the names and contact information of third parties, and non-supervisory federal and non-federal employees), the release of which to the public may adversely impact identifiable law enforcement or national security interests.

*Id.* at 34. "Mass, indiscriminate, or routinized designations are prohibited." *Id.* at 37. Confidentiality designations may be challenged at any time. *Id.* at 39.

This challenge centers on the three Rule 30(b)(6) depositions that Plaintiffs took in this case. Those depositions were of the U.S. Attorney's Office for the District of Arizona (Mr. Lokey), the Department of Homeland Security (Mr. McCament), and Customs and Border Protection (Mr. Huffman). Initially, Defendant designated as confidential the full transcripts of depositions of Mr. McCament and Mr. Huffman, and many of the exhibits used in those depositions were designated during written discovery as confidential. Declaration of Michael Keough, Dkt. 160-2, at ¶ 3. Defendant did not designate Mr. Lokey's deposition as confidential, but many of the exhibits used in his deposition were designated during written discovery as confidential. *Id.* In addition, Plaintiffs challenge two documents (Exhibits 35 and 36) not used in

---

[3] When citing to Dkt. 58, Plaintiffs refer to the ECF pagination and the "clean" version of the Protective Order that was so-ordered.

1  these depositions. *Id.*

2  Plaintiffs initiated this challenge about two weeks after concluding the Rule 30(b)(6) depositions. Defendant agreed to retreat from its blanket designation approach and now has taken a line-by-line approach. Although Defendant initially noted that "one of [its] primary concerns is the protection of government employees' personally identifying information," it continued to designate other information as confidential.[4] Declaration of Travis Silva ("Silva Decl."), filed herewith, ¶ 3.

In the face-to-face meet-and-confer, Plaintiffs identified two rationales that motivated this challenge. First, Plaintiffs stated that, with pre-trial and trial filings on the horizon, it is efficient to resolve good-cause issues now so that the parties can avoid serial administrative motions to seal in connection with those forthcoming filings. Silva Decl., ¶ 4. Second, Plaintiffs explained that, in light of the Government's efforts to obstruct other family-separation plaintiffs from obtaining the deposition transcripts at issue during discovery in those other cases, Plaintiffs desire to disclose these transcripts to those other plaintiffs. *Id.* Plaintiffs desire to resolve confidentiality issues to the maximum extent possible prior to disclosing the transcripts so that a complete set of materials can be disclosed. *Id.* Plaintiffs offered a compromise, centered on the latter of these objectives, whereby the parties would agree that Plaintiffs could provide unredacted deposition transcripts and exhibits to other family-separation plaintiffs, and those documents would be governed by the protective orders governing those other cases. *Id.* Defendant declined and instead filed its Motion. *Id.*

### III.  LEGAL STANDARD

Information produced in discovery is presumptively public. *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (hereinafter, "*Archbishop*") (quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)). To overcome this presumption, the party seeking protection must show "good cause" why a protective order is necessary. *Id.* The party opposing disclosure must show "that ***specific***

---

[4] Plaintiffs do not challenge the designation of government employee PII. *See infra*, p. 12.

3

OPPOSITION TO DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER
Case No. 4:21-cv-04457-KAW

2514855

prejudice or harm will result if the protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (simplified and emphasis added). When, as here, the parties stipulate to a protective order and one party challenges materials designated as confidential under the order, "the burden of proof remains with the party seeking protection." *Id.* (simplified) (quoting *Phillips*, 307 F.3d at 1211 n.1). If a court determines that disclosure of information will result in particularized harm, it must then balance public and private interests to decide whether the protective order is necessary. *Phillips*, 307 F.3d at 1211.

IV.   **ARGUMENT**

   A.   **The Court should resolve this Motion now, in advance of pre-trial proceedings.**

Defendant attempts to sidestep its burden by arguing that the Court should wait until the "pre-trial period" to decide Plaintiffs' challenge and claiming that Plaintiffs' motives for the challenge are somehow improper. This argument fails for several reasons.

First, there is no reason for the Court to delay a decision on the merits. The Protective Order permits confidentiality challenges at any time. Dkt. 58 at 39-40. Indeed, Defendant's logic has no limiting principle; if this argument is accepted, any litigant could say "let's wait to see if there's really going to be a trial in this case." The common-law right of access to discovery materials—even materials not filed in court—is not contingent upon a trial occurring or the proximity to trial. *See Archbishop.*, 661 F.3d at 423 (applying presumption to documents "produced during discovery but not filed with the court").

Second, because this case effectively *is* in the pre-trial period, the impending trial date cuts in favor of resolving this motion now. Initial pre-trial filings are due March 25. Dkt. 114 at 2. Plaintiffs wish to streamline that and other pre-trial filings by relieving the Court and the parties of the need to file and adjudicate repetitive motions to file under seal. By bringing this motion, Plaintiffs intend to get guidance from the Court—that the parties could draw on when considering other documents as well—about how to draw confidentiality lines throughout the pre-trial period.

Third, Defendant argues that Plaintiffs' challenge is improper because Plaintiffs offered to let Defendant's designations stand if the parties could come to an agreement to share designated

4
OPPOSITION TO DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER
Case No. 4:21-cv-04457-KAW

2514855

material with plaintiffs in other cases. This is nonsensical. Plaintiffs explained that one of their goals in bringing this challenge was to be able to share these deposition transcripts (with complete sets of exhibits) with other family-separation plaintiffs, particularly the set of plaintiffs set to start trial in Phoenix in late April 2024.[5] Silva Decl., ¶ 4. From a process perspective, Plaintiffs' good-faith effort to compromise and relieve the Court of a motion should not be held against them. And on the merits, Plaintiffs' position is above reproach. The sharing of information among litigants to promote efficiency is explicitly recognized by the Ninth Circuit as a factor weighing *in favor* of disclosure. *Archbishop*, 661 F.3d at 424 n.5 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Defendant has refused to produce Mr. Huffman and Mr. McCament's deposition transcripts to other family-separation plaintiffs. Silva Decl. ¶ 5; *see* Mot. at 3-4. This is consistent with Defendant's conduct in this case, where it resisted turning over discovery taken in other family-separation cases, arguing that "cloned" discovery is improper, Dkt. 96 at 3, a position this Court rejected, Dkt. 106. In fact, the Government's conduct with respect to the depositions at issue here is unjustifiable; its "heads I win, tails you lose" approach to the depositions at issue here suggests a lack of coordination at best and bad faith at worst. *See* Silva Decl., ¶¶ 4-5 (final sentences of each paragraph showing conflicting government positions). Defendant's suggestion that plaintiffs in other cases must move to compel production of documents produced in this case, *id.*, is unnecessarily burdensome and could leave documents subject to different protective orders in multiple courts. This is not an efficient course of action.

At bottom, it is Defendant's burden to show good cause for the documents at issue to be protected. Spurious arguments about timing and the trial date do not relate to that standard. If anything, the fast-approaching trial date, the efficiencies to be gained by resolving this Motion now, and the fact that Plaintiffs seek to disclose the materials at issue for an unquestionably permissible purpose all cut in favor of resolving—and denying—the Motion now.

---

[5] *CM/APF v. United States*, Case Nos. 2:19-cv- 05217-SRB and 2:20-cv-00065-SRB (D. Ariz), is one of several cases concerning the same family separation practices at issue here.

**B.    The challenged material does not include sensitive information the release of which would adversely affect law enforcement or national security.**

Defendant argues that some material is confidential because it is "law enforcement sensitive information." Mot. at 4-5. The relevant provision of the Protective Order applies to

> sensitive information about Defendant's law enforcement or national security staffing, resources, intelligence and/or methods … the release of which to the public may adversely impact identifiable law enforcement or national security interests.

Dkt. 58. The Ninth Circuit has explained that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" relating to protective orders. *Archbishop*, 661 F.3d at 424. Yet, Defendant makes little attempt in its motion to explain why the material designated here meets the Protective Order's definition. The motion includes a conclusory statement that the material "implicate[s] information and methods utilized by law enforcement agencies at the nation's borders" and "if made publicly available and accessible … would hinder the important and identifiable law enforcement and national security interests rooted in regulating the flow of goods and people across the nation's borders." Mot. at 4. Defendant makes no further attempt to identify the law enforcement or national security interests in question, much less to explain what information is implicated here or why that information is sensitive. *See id.* at 4-5. Defendant's unsupported assertion that the challenged material would harm border security is exactly the type of broad, unsubstantiated claim the Ninth Circuit cautioned against. *See Archbishop*, 661 F.3d at 424.

Defendant's conclusory argument is not saved by accompanying filings. The Keough Declaration, authored by litigation counsel rather than a law enforcement official, contains no factual information supporting a specific finding that the release of any of the challenged material would harm law enforcement or border security. Indeed, Defendant failed to file any supporting declarations by law enforcement or national security personnel explaining why the release of the challenged material would harm law enforcement or national security interests, or to give document-by-document reasons for affording these documents protection. This is too blunderbuss an approach given that a "party asserting good cause bears the burden, ***for each particular***

6
OPPOSITION TO DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER
Case No. 4:21-cv-04457-KAW

2514855

*document* it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130 (emphasis added).

Attachment A to Defendant's motion purports to provide specific reasons for each document excluded, but even here, Defendant relies on broad, unsupported claims. Most of the entries state only that the designated material "contains law enforcement sensitive material." Dkt. 160-1 at 1–9. Only six entries include even a conclusory assertion that the material could harm national security or law enforcement efforts if revealed, and none of these entries offer particularized reasons that are specific to the document at issue. *Id.* at 1, 6–7 (entries 4, 37:228, 37:242–243, 37:316, 37:318, 37:394–395).

The documents themselves reveal why Defendant failed to offer any specifics: none of the challenged designations include information that could jeopardize law enforcement or national security interests. The information contained in the documents is years out of date and concerns a policy that ended in 2018—after it was enjoined for violating the Constitution. *See Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1145–46, 1149 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019). Very few of the policymakers remain in government service. Much of the information is so broad and high-level that its publication could not conceivably pose a law enforcement or national security risk even if it were up-to-date. For example, Defendant claims that Exhibit 10 contains law enforcement sensitive material, but the single sentence challenged in that exhibit contains no actual data, only a high-level description of a policymaker's goal. It is difficult to imagine any national security risk its public release could create even at the time it was written, let alone five years later. Plaintiffs offer further document-by-document rationales in their accompanying Appendix.

**C.    The challenged material is not subject to protection as "agency deliberative material."**

Defendant also argues "agency deliberative material" should be covered under the

Protective Order.[6] Mot. at 5-7. This argument has no basis in the Protective Order. Defendant concedes that the deliberative process ***privilege*** does not apply. *Id.* at 5. Nor does Defendant cite any relevant portion of the Protective Order that applies to the purported deliberative materials. *See* Mot. at 5-7. This is because "agency deliberative material" does not meet any of the enumerated definitions of confidential information in the Protective Order. Put simply, the Protective Order does not protect these documents.

Even if the rules regarding the deliberative process privilege were relevant here, Defendant has made no showing that the documents in question meet the standard for deliberative process protection. "Generally, the deliberative process privilege" —which, again, does not apply here, where Defendant produced the relevant documents— "may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted." *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009). Defendant supplies no such evidence here. Further, as the Court has recognized, "deliberative process privilege only protects those documents that are both 'predecisional' and 'deliberative.'" Dkt. 103 at 3 (quoting *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002)). Defendant offers only a conclusory statement that the documents are agency deliberative material and instead urges the Court to "address the designation of deliberative documents on a categorical basis." Mot. at 5. This makes no sense. Even if the (inapplicable) deliberative process privilege guided the analysis, each assertion needs to be justified by identifying the decision at issue and explaining how the underlying material is deliberative. *See Foltz*, 331 F.3d at 1130. Defendant's Attachment A again fails to offer the more tailored rationales promised by Defendant.

Defendant's argument that there would be a chilling effect if the material is released falls flat. Family separation was extensively reported on, and much about the agencies' deliberations concerning family separation has already been publicized through journalism and government

---

[6] Attachment A to Defendant's motion states that Exhibit 1 is designated in part because it "[c]ontains material marked For Official Use Only." Nowhere in its brief does Defendant explain its apparent assertion that any documents marked For Official Use Only fall under the ambit of the Protective Order.

8
OPPOSITION TO DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY PURSUANT TO PROTECTIVE ORDER
Case No. 4:21-cv-04457-KAW
2514855

investigations.[7] There is a Pulitzer Prize award-winning article in *The Atlantic* that gets into the nitty gritty of the family-separation policy's development. Silva Decl., Ex. A. A House Judiciary Committee report goes into detail about the policy's development. U.S. H. Comm. On the Judiciary, Majority Staff Report, *The Trump Administration's Family Separation Policy: Trauma, Destruction, and Chaos* (Oct. 2020), https://perma.cc/4RY5-RN2B. In fact, some of the designated material has already been published outright. For example, key portions of Exhibit 2 were published in a report by the Office of the Inspector General. U.S. Dep't of Justice, Office of the Inspector General, *Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services* (Jan. 2021) at 11–12, https://perma.cc/2JBA-59Q8. Moreover, any chilling effect is mitigated by Plaintiffs' agreement not to challenge Defendant's designation of personal identifying information of individual government employees (discussed below).

Defendant argues that in the parallel Arizona litigation, the District Court upheld the Government's confidentiality designations as part of its overall resolution of that case's plaintiffs' challenge to deliberative process privilege assertions. Mot. at 6 (citing *CM v. United States*, No. 19 Civ. 5217, Dkt. 328 (D. Ariz. December 8, 2022), at 2). But the brief order cited by Defendant does not relate to the documents at issue here, and the *CM* order is bound up in a series of case-specific orders. This Court has suggested that it does not necessarily agree with the deliberative process line drawing that the CM court engaged in, Dkt. 127 at 1 n.1, and, in any event, the orders of that coordinate court do not bind this Court.

### D. Even if Defendant can establish good cause, the public-interest factors weigh in favor of disclosure.

If a producing party establishes good cause, the reviewing court "must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *Archbishop*, 661 F.3d at 424 (simplified); *e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 1006534, at *7 (N.D. Cal. Mar. 6, 2015) (applying balancing test required by *Archbishop*). The

---

[7] Deliberative process privilege "is routinely denied" when government misconduct is at issue. *Berryhill v. Bonneville Power Admin.*, 509 F. Supp. 3d 1288, 1298 (D. Or. 2020). The policy at issue was unconstitutional. *Ms. L.*, 310 F. Supp. 3d at 1145–46.

relevant factors are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Archbishop*, 661 F.3d at 424 n.5 (citing *Glenmede Tr. Co.*, 56 F.3d at 483). Defendant makes no attempt to address any of these factors; indeed, the motion fails to acknowledge that the balancing of interests is required.[8]

The factors support releasing the documents. As to the first factor, disclosure will not violate any privacy interests because the confidentiality of PII is not challenged. The information is sought for the legitimate purposes of streamlining the pretrial process and sharing information among litigants; factors two and five therefore weigh in favor of Plaintiffs. Factor four weighs in favor of disclosure; while the policies at issue in the challenged materials are no longer in place, those policies did implicate the health and safety of the families who were separated. As to factor six, the public's interest in disclosure is "particularly legitimate" where, as here, the party benefiting from confidentiality is a public entity or official. *Glenmede Tr. Co.*, 56 F.3d at 484 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Finally, the case involves issues highly important to the public. Family separation was extensively covered in the media and resulted in public outcry and official investigations. Factor seven therefore weighs strongly in favor of disclosure.

Factor three is neutral because PII designations will remain in place, mitigating any concerns that the information will cause embarrassment to individuals involved. Further, even where embarrassment will result from disclosure, courts have found disclosure appropriate where the other factors weigh in favor of disclosure. In *Archbishop*, for example, the Court ordered

---

[8] Defendant does argue that Plaintiffs seek release of the information for an improper purpose, namely to share the information with plaintiffs in other cases. Mot. at 1-2. But the *Glenmede* test recognizes sharing information among parties as a factor courts should weigh in favor of *denying* confidentiality. *Glenmede Tr. Co.*, 56 F.3d at 483, 485.

disclosure of the name of a practicing Catholic priest accused of sexual abuse, finding that the public interest outweighed the priest's privacy interests. *Archbishop*, 661 F.3d at 433.

### E. Plaintiffs do not challenge government employee PII.

The Protective Order does protect the PII of ***non-supervisory*** government employees. Defendant abuses this provision by designating the names of supervisory employees—even a cursory Google search of the recipients of Exhibit 1 shows that many of the email's recipients were high-level CBP officials whose identities are associated with family-separation policy—and so Plaintiffs dispute these designations. But Plaintiffs agree that an employee-by-employee litigation of who is "supervisory" should be deferred to trial, where it may be clearer whether identifying an individual serves a compelling interest. Plaintiffs informed Defendant of this during the meet-and-confer, Silva Decl., ¶ 3, so it is unclear why Defendant included "employee PII" notions in its Attachment A and exhibit submissions. *See, e.g.*, Exs. 1, 5, 6, and 18.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Dated: January 10, 2024

KEKER, VAN NEST & PETERS LLP

By: */s/ Travis Silva*
BROOK DOOLEY
TRAVIS SILVA
CHRISTOPHER S. SUN
SARAH SALOMON
CHRISTINA LEE
JACQUELINE CONCILLA
EVAN H. MCINTYRE RE

Attorneys for Plaintiffs

Dated: January 10, 2024

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By: */s/ Jordan Wells*
JORDAN WELLS
VICTORIA PETTY

Attorneys for Plaintiffs

Dated: January 10, 2024

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

By: */s/ Bree Bernwanger*
BREE BERNWANGER

Attorneys for Plaintiffs

**ATTESTATION UNDER CIVIC LOCAL RULE 5-1**

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from the above signatory.

Dated: January 10, 2024

*/s/ Travis Silva*
TRAVIS SILVA