| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP | ISMAIL J. RAMSEY (CABN 189820) |
| BROOK DOOLEY #230423 | United States Attorney |
| bdooley@keker.com | MICHELLE LO (NYRN 4325163) |
| TRAVIS SILVA #295856 | Chief, Civil Division |
| tsilva@keker.com | KENNETH W. BRAKEBILL (CABN 196696) |
| CHRISTOPHER S. SUN #308945 | KELSEY J. HELLAND (CABN 298888) |
| csun@keker.com | Assistant United States Attorneys |
| CHRISTINA LEE #314339 | |
| clee@keker.com | 450 Golden Gate Avenue, Box 36055 |
| JACQUELINE CONCILLA #335733 | San Francisco, California 94102-3495 |
| jconcilla@keker.com | Telephone: (415) 436-7167 |
| SARA FITZPATRICK #337360 | Fax: (415) 436-6748 |
| sfitzpatrick@keker.com | kenneth.brakebill@usdoj.gov |
| EVAN H. MCINTYRE #349409 | |
| emcintyre@keker.com | Attorneys for Defendant |
| 633 Battery Street | |
| San Francisco, CA 94111-1809 | |
| Telephone:   415 391 5400 | |
| Facsimile:   415 397 7188 | |

Attorneys for Plaintiffs

*[Additional Counsel on the following page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child, | Case No. 4:21-cv-04457-KAW |
| | **JOINT STATUS REPORT RE TRIAL SCHEDULE** |
| Plaintiffs, | |
| | Judge:      Hon. Kandis A. Westmore |
| v. | Date Filed: June 10, 2021 |
| UNITED STATES OF AMERICA, | Trial Date: July 11, 2024 |
| Defendant. | |

2630122

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
RACHEL SHERIDAN #230409
rsheridan@lccrsf.org
JORDAN WELLS #326491
jwells@lccrsf.org
VICTORIA PETTY #338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:    415 543 9444

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
BREE BERNWANGER #331731
bbernwanger@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437


Attorneys for Plaintiffs

1    Pursuant to the Court's Scheduling Order (Dkt. 192), the parties hereby submit the

2    following Joint Status Report.

3    **I.    PLAINTIFFS' POSITION**

4    The Court should maintain the current pre-trial schedule and keep the July 11, 2024 trial

5    date, holding the record open at the conclusion of the trial for the sole purpose of receiving any

6    evidence from former Secretary Nielsen, if necessary.  This schedule remains reasonable, and it

7    would permit the Court to resolve pre-trial motions regarding issues about intent evidence that

8    could narrow or even moot issues surrounding Ms. Nielsen's testimony.  Any further continuance

9    prejudices Plaintiffs' ability to present their case and postpones indefinitely their day in court.

10   The Government should not be permitted to reap the benefit of a delay resulting from its bad-faith

11   litigation conduct.  In any event, there is no reason to grant any continuance, let alone the

12   Government's requested indefinite continuance, *now*.  Knowing that this Court moved the trial

13   from May to July, the Ninth Circuit recently moved argument on Ms. Nielsen's mandamus

14   petition from July/August to early June.  Appellate proceedings may well be concluded by the

15   time of trial.

16   **It is reasonable to hold a trial in July 2024**.  At the March 5, 2024 CMC, the Court

17   stated "I think most of the trial could be completed with the exception of . . . any evidence

18   coming from Nielsen, if there would be any at all, after all the appeals are exhausted."  3/5/24

19   Hr'g Tr. at 3:10-13.  This remains correct.  Ms. Nielsen's specific testimony, if it becomes

20   available, should not bear on how the parties present evidence at trial.  The parties recently

21   conferred about trial witnesses.  Plaintiffs intend to call eight live witnesses within their control.

22   The Government intends to call 27 live witnesses (excluding possible document-custodian

23   witnesses) within its control.[1]  Of these 35 people, ***only two*** plausibly could have discussed the

24   policy at issue with Ms. Nielsen.  Both Plaintiffs and Defendant can and should question these

25   witnesses about their communications with Ms. Nielsen at trial regardless of the outcome of the

26   mandamus proceedings.  Neither percipient witness needs to know, or even should know, whether

27

28   [1] Plaintiffs will move to preclude some of these witnesses.  Also, Plaintiffs intend to adversely
call some Government-controlled witnesses in their case-in-chief.

and what Ms. Nielsen testified about before appearing at trial.  Further, the vast majority of witnesses will testify about the Government's implementation of the policy at issue in Yuma, Arizona (where Plaintiffs were separated) and Plaintiffs' specific injuries.  Ms. Nielsen's testimony does not bear on these subjects.[2]  Thus, the Government's suggestion that it would need to hold multiple trial phases so that its witnesses could get their stories straight—and it is notable that the Government is already anticipating that Ms. Nielsen may testify "differently" than the Government's hand-picked trial witnesses—is based on nothing but conjecture.  The Government fails to identify any specific, non-speculative way in which a July trial will prejudice it.

The Government tries to make Plaintiffs look inconsistent by quoting, without context, a portion of a motion Plaintiffs filed in the Ninth Circuit.  Here is the entire footnote:

> The district court has orally suggested that if this mandamus action is not resolved by the time of trial, it will leave the record open to be supplemented by Ms. Nielsen's testimony, once it becomes available. The district court has not issued a written order to this effect. Even so, the parties to the underlying action should be able to try their case knowing the substance of the testimony of this potentially critical witness.

*Nielsen v. Dist. Ct.*, No. 24-867, ECF 18, at 3 n.2 (9th Cir.).  There is no inconsistency here. Plaintiffs acknowledged that Ms. Nielsen's testimony was likely to be entered into the record after the July trial.  But more important is the purpose of this motion and the Ninth Circuit's response to it.  Plaintiffs sought to expedite oral argument from either July or August to June. The Ninth Circuit, which is aware of the July 11 trial date, granted that motion and may rule before trial.  This counsels in favor of keeping the current trial date and addressing scheduling issues, if necessary, in the future, rather than two months before argument at the Ninth Circuit.

Furthermore, this Court's pre-trial rulings are likely to narrow, or potentially dispose of, issues relating to "whose intent matters."  As the Court knows, Plaintiffs protectively sought Ms. Nielsen's motion after the Government disclosed its litigation position that Ms. Nielsen is the only DHS official whose intent matters in this case.  *See* Dkt. 98 at 2-3.  Plaintiffs have

---

[2] The Government contends that Ms. Nielsen's written deposition testimony would bear on "Yuma-related subjects."  "Yuma" does not appear in any of the cited questions, and the Government does not and cannot suggest that Ms. Nielsen was involved in how the policy was implemented in Yuma specifically.

1   consistently argued that the Government's narrow view of intent is improper as a matter of law.

2   *See, e.g.*, *id.* at 3 n.2.  Indeed, no court has accepted the Government's argument.  The *CM/APF*

3   court thought so little of this argument that it summarily rejected it in a footnote when it denied

4   the Government summary judgment.  *C.M. v. United States*, -- F. Supp. 3d. --, 2023 WL 7102132,

5   at *9 n.8 (D. Ariz. Oct. 24, 2023); *see also id.* at *9-*10 (holding that intent of Mr. McAleenan,

6   Mr. Homan, and Mr. Albence, among others, is relevant to intent inquiry).  Even in this case, the

7   Government lacks the courage of its convictions; it intends to bring Mr. McAleenan, Mr. Homan,

8   and Mr. Albence to trial, which the Government would have no reason to do if it believed those

9   witnesses' intent was irrelevant.

10       Because the Government did not seek summary judgment in this case, this Court has not

11   had occasion to consider the question of "whose intent matters."  But that opportunity will arise

12   during the pre-trial phase in connection with motions in limine or potentially on an indicative

13   ruling about this issue.  Rulings on these issues will aid the parties in focusing their trial

14   presentation and, if the Court agrees with Plaintiffs, could have the effect of obviating the issue of

15   Ms. Nielsen's deposition altogether.  The Government calls this common-sense observation a

16   "red herring" and claims that a "full record" is needed for the Court to consider this intent issue.

17   The Government's objection here is incoherent; the Court will need to resolve the dispute about

18   intent at some point and the *CM/APF* court had no trouble dispatching the Government's

19   citationless intent argument ***at the summary judgment stage*** and without Ms. Nielsen's

20   testimony.  Thus, the interest of judicial economy is served by keeping the current pre-trial and

21   trial schedule so that these issues can be resolved sooner rather than later.  Keeping the trial date

22   will also have the broader salutary effect of holding both parties' feet to the fire[3] with respect to

23   meeting and conferring, necessary pre-trial filings, and any ongoing settlement discussions.

24       **The Government's requested continuance severely prejudices Plaintiffs.**  Defendant

25   seeks an open-ended continuance until "appellate proceedings are complete."  This is tantamount

26   to an indefinite stay.  While there is every prospect that the Ninth Circuit panel may resolve the

27

28   ---
    [3] *See* 3/5/24 Hr'g Tr. at 21:21-23 ("THE COURT: . . . I do think that there's something to be said
    for holding parties' feet to the fire. . . . And, so, I'm not inclined to totally reset these deadlines.").

expedited mandamus proceeding quickly, the "completion" of appellate proceedings potentially encompasses more than just that panel decision.  This could encompass three layers of rarely-granted, entirely discretionary, and slow review: a petition for panel rehearing, a petition for rehearing *en banc*, and a petition for certiorari.  If at each step of the process Ms. Nielsen and her Government "amici" wait the full amount of time allowed under the Rules—and this Court noted she was slow to file her mandamus petition in the first instance[4]— this timeline could easily push trial into the second half of 2025, even while the chance of intervention by the *en banc* Ninth Circuit or the Supreme Court is exceedingly unlikely.  The Government's only response to this point is to speculate that such proceedings might be expedited, notably, without committing to asking the appellate courts for expedited decisions.  This highlights how linking the trial date to the opportunity to seek these successive levels of review will invite further delay.

Indefinite delay will prejudice Plaintiffs' ability to obtain oral testimony because memories grow stale.  The Government separated Plaintiffs almost six years ago.  Plaintiffs' relevant memories may fade over time.  Further, the Government intends to examine Plaintiffs about traumatic events that occurred to them in their home countries; many of those events are over a decade old and some happened thirty years ago.  Given the limitations of human memory, it would be unfair and prejudicial to put off Plaintiffs' day in Court any longer, especially as it is the Government that seeks testimony about the most distant events.  The Government tries to wave away this concern by blithely asserting that Plaintiffs can use deposition transcripts or documentary records (a significant portion of which are records created by the Government or Government contractors) to refresh their recollections before trial.  This is ridiculous.  The Government ignores that no Plaintiff is literate in English.  The Government ignores that two of the three adult Plaintiffs have sub-elementary school reading-comprehension levels even in Spanish.  The Government ignores, that unlike any Government witnesses, Plaintiffs are testifying about traumas that they suffered, and one symptom of trauma is that the victim has

---

[4] No. 23-mc-80280-KAW, Dkt. 95 at 3 (Feb. 13, 2024).

subsequent difficulties recalling that same trauma.[5]  Indeed, the Government intends to specifically scrutinize Plaintiffs' memories about pre-separation traumas that they suffered and the resulting symptoms, as it has already done in deposition and through its experts' evaluations, and any difficulty that may arise on Plaintiffs' part in recalling their traumas and symptoms due to the passage of time in this litigation should not be weaponized against Plaintiffs.  The Government ignores that its witnesses have memos and emails that they can use to review past events, whereas Plaintiffs have no analogous option.[6]  The Government ignores that the Plaintiff parents will have to testify not just about their own long-ago experiences, but also about their perceptions of how their children were affected by the separations.  The Government has no straight-faced response to any of this; rather, it seeks to leverage procedural irregularities that the Government itself caused to restrict Plaintiffs' ability to access justice.

The issue of stale memories is most burdensome for Plaintiffs, but it applies to other witnesses as well.  The Government intends to call as many as 22 fact witnesses under its control. Some of them have not been deposed and thus may testify for the first time at trial, many years after the events at issue, without the witnesses or the parties having the benefit of earlier-in-time deposition testimony.  Even for those who were deposed, the passage of time may dull memories. Again, the Government offers no reasonable response.

Delay will complicate the Court's fact-finding in additional ways.  Eight mental health experts are offering opinions that go to liability and damages.  Plaintiffs' experts examined Plaintiffs between February and April 2023.  Defendant's experts examined Plaintiffs in November and December 2023.  With a July 2024 trial, these diagnoses will already be between 8-15 months old; if there is a further continuance, that gap will grow.  Plaintiffs respectfully request that the Court render a decision as close in time to these examinations as possible.

---

[5] American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 302 (5th-TR ed.) (noting that "inability to remember an important aspect of the traumatic event(s)" is a symptom of post-traumatic stress disorder).

[6] The Government makes misleading statements about Plaintiffs' asylum applications.  Those applications do not call for applicants to memorialize every trauma ever suffered, and Plaintiffs did not.  Asylum applications must only set forth high level facts, and that's what Plaintiffs did. Plaintiffs had no cause to comprehensively detail their separations at the hands of U.S. officials in forms about persecution suffered in foreign countries, and they did not do so.

2630122

Delay will prejudice Plaintiffs in other ways.  Regardless of the case's ultimate outcome, there is no reasonable dispute that what Plaintiffs endured is a substantial emotional trauma; indeed, Defendant's experts opine that participating in this litigation exacerbates Plaintiffs' various mental health challenges.  Plaintiffs filed this case three years ago and should be entitled to obtain a prompt resolution of the case so they can move on with their lives.

As this Court noted elsewhere in the case-management context "it is unwieldly to set soft deadlines," which is what Defendant seeks.  Dkt. 104 at 1.  Between now and whenever the full appellate process runs its course, the Court's calendar will continue to fill, so deferring scheduling a trial until the conclusion of appellate proceedings, as Defendant requests, will compound delay and reward the Government misconduct described below.  As compared to a 2025 trial for a case filed in 2021, the better option is to maintain consistency with the Court's prior case-management efforts[7] to minimize any movement of the trial date.

**<u>The Government should not be allowed to obtain delay as a result of its misconduct.</u>** The reason the Ninth Circuit is considering Ms. Nielsen's mandamus petition now instead of a year ago is because the Government engaged in misconduct when it changed its litigation position on the final day of a fifteen-month fact discovery period.  As the Court observed then, "The Court is disappointed that the Government amended its responses at the close of fact discovery to suddenly claim that only the intent of two former cabinet secretaries matters, and that it is now attempting to hide behind the apex doctrine to prevent their depositions from going forward. Such an injustice cannot stand." Dkt. 103 at 2.  As Plaintiffs note above, the Government could end the Nielsen mandamus proceeding simply by withdrawing its meritless argument that only Ms. Nielsen's intent matters.  *See C.M.*, 2023 WL 7102132, at *9 n.8.  Instead, the Government continues to press this argument, while simultaneously aiding Ms. Nielsen's efforts to deprive Plaintiffs of Ms. Nielsen's testimony by filing an "amicus" brief in the appellate court, then leveraging appellate proceedings to obtain a delay of the trial.  The Government should not

---

[7] At a July 25, 2023 CMC, the Court stated "I'm not moving the dates, so I was hoping you weren't going to ask me for that and relieved that you didn't." 7/25/23 Hrg Tr. at 18:19-22.  At the most recent CMC, the Court stated "I am not inclined to go to September for this trial. I think that's too far out. . . . I'm -- no way am I thinking about moving this all the way to September." 3/5/2024 Hr'g Tr. at 19:16-20.

2630122

benefit from its obvious gamesmanship.

The Nielsen mandamus proceeding is just the latest example of the Government's efforts to put off a trial on Plaintiffs' claims.  Seeking to avoid the spectacle of publicly defending a policy that the current administration admits (even in this case) was a "human tragedy," Dkt. 29 at 1, 9, the Government has twice asked for a continuance of the trial date.[8]  The Government also obtained over six months of delay at the outset of this case when, over Plaintiffs' objection, it received an informal stay[9] so that it could explore global settlement talks that excluded these Plaintiffs and their counsel—talks that the Government later utterly abandoned in dramatic fashion and in full public view.[10]  All of this delay prejudices Plaintiffs' ability to present their case for the reasons previously noted.

**A September 2024 alternative.**  The option that is fairest to Plaintiffs is to keep the July trial, which remains a practical option.  But if the Court declines to do so, Plaintiffs respectfully suggest that the Court set the trial for September with the proviso that further appellate proceedings will not alter the trial date.  Contrary to the Government's assertions, a September trial date would not be "arbitrar[y]."  The Government appears not to disagree that there is a very significant chance that there will be an appellate ruling by then because of the Ninth Circuit's decision to expedite oral argument, which suggests that that court may rule promptly.  But any *further* appellate proceedings are highly speculative and not a reason to defer trial.  *En banc* review is unusual at the Ninth Circuit.  Notably, even the *DeVos* matter, which established the standard that governs whether Ms. Nielsen will be deposed, did not go *en banc*.  Supreme Court review is exceedingly rare and typically reserved for situations where there is a circuit split, a circumstance not present here.  But while it is rare for a litigant to obtain these subsequent levels of appellate review, any litigant can seek that review, and the process for doing so is lengthy.  At

---

[8] Dkts. 73 at 14 & 185 at 7.  While the Government asserts below that it did not seek a continuance in advance of the March 5, 2024 CMC, both the written statement and its attorneys' on-the-record comments tell a different story.  *See* 3/5/2024 Hr'g Tr. at 7 (Government counsel seeking to move trial to September).

[9] *See* Dkts. 18, 21, 22 & 24.

[10] Miriam Jordan, *Justice Department Halts Settlement Talks With Migrant Families*, N.Y. Times (Dec. 16, 2021), https://www.nytimes.com/2021/12/16/us/biden-migrant-family-separation-settlement.html.

1   each stage, petitions and potentially oppositions would be filed, and appellate courts have

2   discretion to dispose of such petitions on their own timelines.  It is not hyperbolic to suggest that

3   waiting for that process to play out could take a year.  In seeking to balance the parties' respective

4   interests, waiting until 2025 would greatly over-weigh the Government's claimed interests against

5   the obvious and very real prejudice that Plaintiffs would suffer from delay.  A firm September

6   2024 trial date would, even if it also rewarded the Government's gamesmanship, at least strike

7   some balance between the parties.

8   **II.    DEFENDANT'S POSITION**

9         As Plaintiffs recently told the Ninth Circuit regarding Secretary Nielsen's testimony (just

10   one week after the last CMC), "the parties to the underlying action should be able to try their case

11   knowing the substance of the testimony of this potentially critical witness."  *Nielsen v. Dist. Ct.*,

12   No. 24-867, ECF 18, at 3 n.2 (9th Cir. Mar. 12, 2024) ("Plaintiffs' Ninth Circuit Motion").  The

13   government agrees: if Secretary Nielsen is required to testify, she is a potentially critical witness,

14   the parties do not know her substantive testimony, and her testimony should be known before this

15   case is tried.

16         **A.    Judicial Efficiency and An Orderly Presentation of Evidence Counsel in
              Favor of Holding a Trial After Secretary Nielsen's Appeal**

17

18         Plaintiffs are quick to accuse the government of seeking to delay the July 11 trial.  But the

19   government recognizes—consistent with the Court's request for this status report—that the

20   calculus for a trial-setting has changed since the parties' last CMC on March 5, 2024.  Given that

21   the Ninth Circuit has now set oral argument on Secretary Nielsen's mandamus petition for June 5,

22   2024, the parties no longer face the specter of an unknown appellate schedule.  Hence the

23   rationale for vacating the July 11 date so that this Court can conduct one cohesive trial, with all

24   evidence presented and all argument submitted, is more pronounced.  Because Secretary Nielsen

25   is, in Plaintiffs' own words, a "potentially critical witness," the government respectfully submits

26   that it makes the most sense from a trial management perspective to schedule the trial after

27   Secretary Nielsen's appellate proceedings are complete.  This will enable the parties to address

28   any testimony from Secretary Nielsen in the myriad issues addressed in their pre-trial filings, as

   well as in presentation of the case at trial and the argument that follows the presentation of

2630122

evidence.  Once the parties know whether Secretary Nielsen's testimony will be part of the trial record, they can then proceed with an orderly presentation of opening statements, witness testimony, rebuttals, closing arguments, and findings of facts and conclusions of law—none of which could be accomplished if fact discovery relating to Secretary Nielsen were to remain open when the trial begins.

Plaintiffs' argument that other witnesses' testimony is "fixed" by their depositions, and therefore there is no need to wait for any testimony from Secretary Nielsen, does not stand up to scrutiny.  To be clear (and contrary to Plaintiffs' suggestion above), the government fully expects that any testimony from Secretary Nielsen would be consistent with that of her staff, and would support those witnesses' uniform testimony that the decisions at issue in this litigation were made for legitimate and permissible government reasons.  But if Secretary Nielsen remembers any events differently from her staff, or if any testimony she may give covers subjects that differ in any way from the depositions of her staff, the parties should be allowed to explore those issues with her staff at trial.

Indeed, at the Court's direction, the parties have already submitted 70 written deposition questions to Secretary Nielsen—and these 70 questions extend beyond the mere question of her intent in authorizing the DHS Referral Memo.  To take just a few examples, Plaintiffs have asked Secretary Nielsen whether "anyone communicate[d] to [her] that in at least four Southwest Border Patrol sectors, prosecutions were capped on a daily or weekly basis" (Question 8); whether "anyone communicate[d] to [her] that in at least some Southwest Border Patrol sectors, 'US Attorney counterparts expressed that they would need time to implement 100% prosecutions'" (Question 9); what she was briefed on over a month after the Referral decision had been made (Re-Direct Question 5); and whether she issued instructions to her staff about reunification (Re-Direct Question 6).  These questions, and others, refute Plaintiffs' unsupported assertion that Secretary Nielsen's testimony would not bear on Yuma-related subjects.

And given the breadth of these questions, it is possible that her testimony will cover areas about which her staff have not previously given testimony, or that could bear on similar subject areas and therefore raise the risk that her recollection of events may differ from theirs in some

1    respects.  It would make no sense to call her staff as witnesses for live testimony in the first phase

2    of trial, then have to re-call staff in a later phase in order to answer questions about any real or

3    perceived discrepancies between their original testimony and that of Secretary Nielsen.  By

4    contrast, it makes a world of sense to present the testimony of all potential witnesses on these

5    central issues at the same time, as a cohesive whole.  This is not about letting witnesses get their

6    "stories straight"; it is about giving the Court, as the finder of fact, the opportunity to understand

7    whether any potential differences in the scope and substance of these witnesses' testimony are

8    real and material, or illusory and irrelevant.

9         Nor does it make sense to hold a trial on certain plaintiff-specific subjects now, and wait

10   to hear testimony about policy subjects until Secretary Nielsen's appeal is complete.  As a matter

11   of chronology, the policy decisions in Washington, D.C. preceded the implementation events in

12   Yuma (and elsewhere).  Events in Yuma, and Plaintiffs' subsequent experiences, cannot be fully

13   understood without an understanding of the policies and instructions originating in Washington.

14   And breaking the trial into these separate-but-related phases will complicate the presentation of

15   evidence, especially for those witnesses who were based in Yuma but communicated with

16   individuals in Washington, or vice versa.

17        Moreover, Plaintiffs' assertion that the government would have no reason to call Secretary

18   Nielsen's staff as witnesses if their own intent were not legally relevant is simply wrong.  The

19   government has consistently maintained that these witnesses have relevant *knowledge*, even if

20   their own personal *intent* is not relevant for purposes of understanding the United States' reasons

21   for taking certain policy action.  The government's preference to avoid burdening an apex witness

22   does not in any way suggest it lacks the courage of its convictions; to the contrary, the

23   government believes the existing record both adequately demonstrates what Secretary Nielsen's

24   intent was, and confirms that her intent was lawful.

25        Finally, Plaintiffs' argument that upcoming pretrial filings may preemptively resolve the

26   question of which government employees' intent matters—and therefore moot their supposed

27   need to take Secretary Nielsen's deposition—is a red herring.  While the government believes

28   Plaintiffs' own allegations make clear that they base their claims on *Secretary Nielsen's* approval

10

JOINT STATUS REPORT RE TRIAL SCHEDULE
Case No. 4:21-cv-04457-KAW

of the DHS Referral Policy, the Court may conclude it needs the full record—including any testimony of Secretary Nielsen's that may be allowed—to decide which conduct is legally relevant.  And either way, Plaintiffs' argument puts the cart before the horse; as the Court already recognized in its Order directing the parties to file this status report, the fact that the Ninth Circuit argument date "is well after the pretrial filings are due" suggests that the pretrial filing deadline should be moved *back* "to accommodate the pending appeal."  Dkt. No. 192 at 1.  And if the pretrial filing deadline is moved back, there will be no preliminary ruling on this issue.  The proper order of events is the one the Court suggested, not Plaintiffs' proposal to submit premature pretrial filings that fail to address any testimony from Secretary Nielsen, should such testimony ever be given.

### B.     The Existing Record Preserves Witnesses' Recollections, Minimizing Prejudice

Plaintiffs' argument that depositions have established certain witnesses' testimony cuts against Plaintiffs' position here.  Plaintiffs claim that they will be prejudiced by any further continuance of the trial date—but they admit, as they must, that even under their proposal, any final decision in this case would come only after Secretary Nielsen's appellate proceedings are completed.  The only source of potential prejudice Plaintiffs point to relates to the witnesses' *memories*, but the depositions have been taken of each adult plaintiff, each expert, and each treating medical provider who may be called to testify.  In fact, expert discovery only just recently concluded, with the final expert deposition occurring on March 22 of this year.  Those depositions not only "fix" those witnesses' testimony; they also provide a record which each witness can use to refresh their recollection in preparation for trial.

Moreover, there is voluminous contemporaneous documentation in this case that likewise will not change with time.  Those records include Plaintiffs' own sworn declarations and credible fear statements in support of their asylum applications, describing in their own words many relevant events that happened to them years ago.  The records also include hundreds of pages of notes from Plaintiffs' treating physicians and other clinical workers who interacted with them, memorializing statements Plaintiffs made about events that they experienced and their physical and emotional condition.  Given these stable and existing sources of evidence, the difference

2630122

between holding a premature trial in July versus waiting until the completion of Secretary Nielsen's appellate proceedings is not likely to materially affect any witness's memory.

Plaintiffs argue that the myriad sources of evidence in this case—including the transcripts of their own depositions and the contemporaneous records of relevant events—are of no use to them because some of them have limited ability to read English. But Plaintiffs have extensively used translators in this litigation already, and there is nothing stopping them from using them again in their trial preparations. Moreover, Plaintiffs' memories of the events at issue in this case are preserved in their own languages; their psychological and psychiatric evaluations were held just months ago and were audio-recorded.

**C.   The Government Did Not Commit "Misconduct," and It Is Not Trying To "Obtain Delay"**

Plaintiffs' argument about supposed government "misconduct" is misplaced. While the government does not seek to re-litigate the proceedings that led to this Court's decision regarding Secretary Nielsen's deposition, it responds only to address Plaintiffs' erroneous claim that the government has committed misconduct. As the Court is already well aware, the government (1) disclosed Secretary Nielsen and several of her staff in its initial disclosures in this matter nearly two years ago, on July 1, 2022; (2) disclosed Secretary Nielsen and several of her staff in a January 2023 response to an interrogatory seeking the identification of individuals with knowledge of the policy goals at issue in this matter; (3) argued in discovery letter briefs that "the ultimate decisionmaker who authorized the DHS referral policy was DHS Secretary Kirsten Nielsen," that "Plaintiffs have made no showing for how years-old documents from Secretary Nielsen's subordinates could shed meaningful light on *Secretary Nielsen*'s reasons for authorizing the policy," and therefore "these documents are not relevant to the 'intent,' or the 'outrageousness' of the conduct, of the actual relevant decisionmaker here," Dkt. 86 at 4; *see also* Dkt. 82 at 4 ("[T]he intent of prior officials who did not implement the policies at issue is not relevant here."); and (4) argued in summary judgment briefing in the Arizona litigation in May of 2023 that "Secretary Nielsen" was "the relevant government official" whose "intent" mattered for purposes of the DHS Referral Policy, *see, e.g.*, *C.M. v. United States*, No. 2:19-cv-05217-SRB, ECF 424, at 1 (D. Ariz. May 24, 2023). All of this was months (at least) before the government

12

opted to amend its interrogatory response in September 2023 to reference its legal position on intent.

Moreover, the government was under no obligation—in responding to an interrogatory requesting the *identification* of individuals with knowledge—to inform Plaintiffs of the government's *legal* position that only Secretary Nielsen's intent was legally relevant. The government could have advanced that legal position for the first time at subsequent stages of the case. That the government chose to disclose its legal position in advance is not "misconduct."

Plaintiffs also wrongly argue that the government's prior statement that it was "not seeking a delay of the trial and will be ready to proceed with trial on May 6, 2024," Dkt. No. 185 at 7, was a request for a "continuance of the trial date," *supra* p. 3 & n.3. As the Court is aware, in response to the Court's Order (Case No. 4:23-mc-80280, ECF No. 102 at 2), the government previously articulated the logistical challenges that would result from holding the trial record open to await the potential testimony of Secretary Nielsen, *see* Dkt. No. 185 at 7-8. The Court shared these concerns, which is why the trial date was continued to July. The discussion of the practical realities of this unique and challenging pre-trial posture cannot qualify as "misconduct."

Finally, Plaintiffs also place under the heading of "misconduct" the fact that global settlement negotiations in this and other nationwide cases ultimately were unsuccessful. *See supra* pp. 3-4. But there was nothing untoward about attempting to avoid the costs of litigation while a potential settlement was being discussed, nor any bad faith in the fact that those discussions were not successful. Again, by trying to characterize every government step in this litigation journey as "prejudicial" "misconduct," Plaintiffs only demonstrate the extent to which they are reaching.

As the government has said repeatedly, it is not seeking to "delay" the trial. The government is merely conveying its position of what method of presenting evidence at trial will be most efficient and effective, given the unique circumstances of this litigation.

### D.    Conclusion

Notwithstanding Plaintiffs' protestations in this status report, the parties are in agreement that, if Secretary Nielsen is to provide testimony in this litigation, the parties should understand

2630122

that testimony before presenting the case for trial.  As Plaintiffs specifically argued to the Ninth Circuit just three weeks ago, they "should be able to try their case knowing the substance of the testimony" of Secretary Nielsen, a "potentially critical witness."  Plaintiffs' Ninth Circuit Motion at 3 n.2.  The best way to ensure that will happen—and the most sensible way to manage the trial in this matter—is to schedule the trial following the resolution of Secretary Nielsen's appellate proceedings.  The government therefore respectfully submits that the Court's suggestion to "continue or vacate the current trial schedule to accommodate the pending appeal," Dkt. No. 192 at 1, is the proper course of action in these circumstances, with all pretrial dates to be continued pending the Court's setting of a new trial date.

Plaintiffs argue that the duration of appellate proceedings is uncertain, and therefore any continuance based on them would be "indefinite."  This does not necessarily follow.  Unlike the position the parties were in during the last CMC on March 5, when there was no visibility whatsoever on the schedule for the Nielsen appellate matter, the Ninth Circuit has now taken action by expediting its own proceedings and setting oral argument.  To the extent that there are subsequent appellate steps, if any, those could be accelerated from their normal pace as the Ninth Circuit has already done.  In arguing that further appellate review would be unlikely, Plaintiffs ignore that, in the *DeVos* matter, the former Secretary *won her mandamus petition.*  25 F.4th 692, 695 (9th Cir. 2022).  In any event, Plaintiffs' suggestions about the course of successive appellate proceedings is pure speculation, which would depend on the nature of the Ninth Circuit's decision and Plaintiffs' or Secretary Nielsen's response to it.  This Court can cross those bridges if and when it comes to them; the Court can vacate the trial schedule now, await the Ninth Circuit's decision in what is likely the next few months, and then solicit immediate input from the parties on next steps at that time.

The government believes the above approach is more sensible than Plaintiffs' alternative of setting a new trial date in September.  Awaiting the Ninth Circuit's decision will provide actual information, whereas arbitrarily setting a new trial date could potentially result in the parties and the Court again being in the same position they are now, preparing for trial without the benefit of the Ninth Circuit's ruling.  However, if the Court were to adopt the September approach, the

government would respectfully request that all pretrial deadlines be likewise continued to a reasonable time before the new trial date, so that those filings can take into account any developments with respect to Secretary Nielsen, as well as the witnesses' availability for the new trial date.

Dated:  April 5, 2024                                    KEKER, VAN NEST & PETERS LLP


                                              By:   */s/ Travis Silva*
                                                     BROOK DOOLEY
                                                     TRAVIS SILVA
                                                     CHRISTOPHER S. SUN
                                                     CHRISTINA LEE
                                                     JACQUELINE CONCILLA
                                                     SARA FITZPATRICK
                                                     EVAN H. MCINTYRE

                                                     Attorneys for Plaintiffs


Dated:  April 5, 2024                                    LAWYERS' COMMITTEE FOR CIVIL
                                                     RIGHTS OF THE SAN FRANCISCO
                                                     BAY AREA


                                              By:   */s/ Rachel Sheridan*
                                                     RACHEL SHERIDAN
                                                     JORDAN WELLS
                                                     VICTORIA PETTY

                                                     Attorneys for Plaintiffs

Dated:  April 5, 2024                                    AMERICAN CIVIL LIBERTIES UNION
                                                     FOUNDATION OF NORTHERN
                                                     CALIFORNIA


                                              By:   */s/ Bree Bernwanger*
                                                     BREE BERNWANGER

                                                     Attorneys for Plaintiffs

1    Dated:  April 5, 2024                              ISMAIL J. RAMSEY
                                                        UNITED STATES ATTORNEY
2

3

4                                             By:      */s/ Kelsey J. Helland* [11]
                                                        KENNETH W. BRAKEBILL
5                                                       KELSEY J. HELLAND
                                                        Assistant United States Attorneys
6
                                                        Attorneys for Defendant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
_____
28   [11] Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, the filer attests that concurrence in
     the filing of this document has been obtained from the other signatories.

2630122