1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2  MICHELLE LO (NYRN 4325163)
   Chief, Civil Division
3  KENNETH W. BRAKEBILL (CABN 196696)
   KELSEY J. HELLAND (CABN 298888)
4  Assistant United States Attorneys

5  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
6  Telephone: (415) 436-7167
   Fax: (415) 436-6748
7  kenneth.brakebill@usdoj.gov

8  Attorneys for Defendant

9

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                         OAKLAND DIVISION

13  WILBUR P.G., et al.,              )   CASE NO. 4:21-cv-4457-KAW
                                      )
14          Plaintiffs,               )
                                      )
15       v.                           )   **DEFENDANT'S OPPOSITION TO MOTION IN**
                                      )   **LIMINE RE: UNDEPOSED WITNESSES**
16  UNITED STATES OF AMERICA,         )
                                      )   Date:  May 16, 2024
17          Defendant.                )   Time:  1:30 p.m. (via Zoom)
                                      )
18                                    )
                                      )   Honorable Kandis A. Westmore
19  ─────────────────────────────────)

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Plaintiffs appear to have the misimpression that the Federal Rules of Civil Procedure require a party to know exactly who its trial witnesses will be before the close of fact discovery, and that the Rules allow an opposing party to take the depositions of every witness who will be called at trial. Neither is true.  The government followed the correct procedure for identifying its possible witnesses.

The government first identified the witnesses it may call at trial on July 1, 2022—over two months before discovery opened.  While plaintiffs' motion in limine notably avoids discussion of that disclosure, that list identified 28 witnesses (plus plaintiffs) who the government was aware it might call at that time, as well as a description of each of their jobs and the specific topics of their possible testimony.  *See* Dkt. 199-2, Ex. 1.  The government—just like plaintiffs—also updated this list on September 8, 2023 (which was the close of fact discovery even though significant discovery took place after that date), to include witnesses who the government had learned of during the discovery process to that date who also could be called as trial witnesses.[1]  And that September 8 disclosure ("Amended Disclosure") was not "late," as plaintiffs contend.[2]  In fact, one of the most important periods of discovery—fact depositions—*did not even star*t until August 2, 2023.  Of the 36 deposition days taken in this litigation, just five were taken before September 8—and three of those were on or after August 29.  It was largely during the preparation for and attendance at those depositions that the government determined it may call the witnesses at issue in this motion whom the government had not included in its initial disclosures.

The timing of the government's Amended Disclosure was therefore substantially justified.  It was also harmless.  Even though plaintiffs' counsel was well aware of these individuals through the discovery process, and even though plaintiffs waited seven months after the close of fact discovery to

---

[1] Plaintiffs claim the government served amended disclosures on March 22, 2023.  Mot. 2.  That is incorrect, as evidenced by the fact that the exhibit plaintiffs cite in support is the government's July 1, 2022 initial disclosures.  *See* Dkt. 199-2, Ex. 1.

[2] Ironically, while plaintiffs complain seven months later about the government's "late" update on September 8, 2023, plaintiffs did the exact same thing, adding 27 names on that date to the six in their July 1, 2022 disclosure.  And in contrast to the government's amended disclosure, plaintiffs did not provide any specific Rule 26 subject matter for each witness, instead providing only the exact same generic description each witness's testimony: "[f]acts and circumstances surrounding the incidents that are the subject of this action, including Plaintiffs' detention, separation, and the harm that resulted."

raise this issue,[3] the government has *already* agreed that plaintiffs may take the depositions of five out of the six individuals added to the government's Amended Disclosure.  But for the sixth individual, in addition to having received adequate notice, plaintiffs fail to make the required showing for why they should be allowed to take what would be their 39th fact deposition.

Remarkably, plaintiffs also seek to exclude three witnesses the government *included in its initial disclosures on July 1, 2022*.  Plaintiffs made the strategic decision not to take these witnesses' depositions during discovery.  The only thing that has changed is that the government has now indicated it does indeed plan to call these previously disclosed witnesses at trial.  There is no authority supporting plaintiffs' challenge to these witnesses.  Precluding previously disclosed witnesses because plaintiffs chose not to depose them—or granting plaintiffs' alternative remedy of extra depositions—would only increase the already-high costs of litigation by pressuring parties to depose every witness who might possibly be called at trial, or else risk preclusion.  The Federal Rules do not support this result.

Plaintiffs complain about the number of potential witnesses the government has identified in this litigation, but it was plaintiffs who chose to bring a sprawling case on behalf of six individuals.  This is not your average tort case, based on the alleged misconduct of a single tortfeasor relating to a specific event.  Rather, plaintiffs chose to challenge the development and implementation of federal immigration policy, as well as various aspects of plaintiffs' time in the government's custody and care over a two-month time period.  By plaintiffs' choice, their claims necessarily involve officials at DOJ, DHS (including HQ, CBP, ICE and USCIS), HHS, and various contractors.  The government's disclosures reflected the breadth of plaintiffs' claims.  Indeed, the same day the government amended its disclosures, plaintiffs did the same thing, increasing their number of disclosed witnesses from six to 33.  And plaintiffs had more than an adequate opportunity to take discovery, having already obtained 33 fact depositions (not including the five additional depositions the government has agreed to below) and hundreds of thousands of pages of documents.

---

[3] Plaintiffs' seven-month silence is notable since plaintiffs' counsel reached out to defense counsel on September 11 with a query about three specific witnesses on the government's September 8 disclosure.  Yet plaintiffs raised no other issue, including any inquiries about the witnesses of which they now complain or any demand for depositions—notwithstanding the prescription of Civil Local Rule 37-3 and the Court's September 11 order that discovery disputes must be raised within seven days of the pertinent deadline.  *See* Dkt. 95 at 5.

Plaintiffs' motion is meritless.  Plaintiffs themselves waited until the close of fact discovery to amend their witness disclosures.  Indeed, plaintiffs' hypocrisy on this issue is especially galling considering the fact that plaintiffs have indicated they plan to call at least four witnesses at trial that they did not even include on their amended disclosures at the close of fact discovery.  In any event, plaintiffs received adequate notice of all of the witnesses at issue in their motion, and the government has made more than reasonable accommodations by agreeing that plaintiffs can take their 34th through 38th fact depositions in this matter.  There is no basis to impose the extreme remedy of excluding these witnesses' testimony at trial.

## II.    ARGUMENT

Rule 26 requires the parties to identify in their initial disclosures "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  And parties must "supplement" their disclosures "in a timely manner, . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  *Id.* 26(e)(1).  In other words, there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition."  Fed. R. Civ. P. 26, advisory committee note to 1993 amendment.

A witness has "otherwise been made known" where the parties have become of aware of the witness's "identity and role" in the course of discovery.  *Procongps, Inc. v. Skypatrol, LLC*, 2013 WL 4551828, at *1 (N.D. Cal. Aug. 27, 2013).  A party need not use magic words to expressly indicate that they intend to call the witness at trial.  *See id.*; *see also Jackson v. Express*, 2011 WL 13268076, at *1 (C.D. Cal. June 16, 2011) (sufficient that "identity and relevance to this litigation" were disclosed).  In short, while the mere "passing reference" to an individual at a deposition or in documents is generally not enough to provide notice, "clea[r]" or "repeate[d]" mentions and appearances in key documents that convey the individual's relevance will suffice.  *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2018 WL 3646842, at *12-13 (N.D. Cal. Aug. 1, 2018); *see also, e.g.*, *Patton v. Hanassab*, 2016 WL 6962747, at *4 ("The testimony . . . was greater than a 'passing reference' in a deposition."); *Procongps*,

2013 WL 4551828, at *1; *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *3 (N.D. Cal. June

3, 2011); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("[W]hen the Plaintiff

brought the identities of Martinez and Smith to Keebler's attention during Gates' deposition, she

effectively satisfied her Rule 26(e)(1) duty to supplement her initial discovery disclosures."). This is all

the more so when the opposing party's "attorneys demonstrated their knowledge of [the witness's] role

through their deposition questions." *HB Dev., LLC v. W. Pacific Mut. Ins.*, 86 F. Supp. 3d 1164, 1174

(E.D. Wash. 2015).

Even where a supplemental disclosure was required and untimely, exclusion of the witness's

testimony is improper where the late disclosure was "substantially justified" or "harmless." Fed. R. Civ.

P. 37(c)(1). "Among the factors that may properly guide a district court in determining whether a

violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against

whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of

disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."

*Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (affirming no prejudice).

Applying these rules here, there are three categories of witnesses at issue: (1) witnesses whom

the government identified in its July 1, 2022 initial disclosures; (2) witnesses whom the government

added to its Amended Disclosure on September 8, 2023 and whom the government has agreed plaintiffs

can depose; and (3) a single witness whom the government added to its Amended Disclosure—after the

witness was repeatedly discussed during discovery—whom the government has not agreed may be

deposed. Plaintiffs' motion should be denied as to all three.

### A.    Witnesses Disclosed On July 1, 2022

Although plaintiffs style their motion as one to "Exclude Late-Disclosed Witnesses," Mot. 1,

plaintiffs actually seek to preclude the trial testimony of three witnesses the government listed in its

initial disclosures almost two years ago, on July 1, 2022, *see* Mot. 9-10.[4] Plaintiffs do not cite a *single*

case where a court has precluded witnesses who were identified in a party's initial disclosures. *See* Mot.

---

[4] Plaintiffs initially challenged a fourth such witness that was one of the 28 witnesses identified on the government's July 1, 2022 initial disclosures list, but the government agreed not to call that witness at trial as a compromise to avoid unnecessary disputes.

OPPOSITION TO MOTION IN LIMINE RE: UNDEPOSED WITNESSES
CASE 4:21-CV-4457-KAW                    4

9-10.  Nevertheless, plaintiffs claim the government "over-disclosed cumulative Border Patrol line agents and ORR officials," even though plaintiffs admit that each Border Patrol Agent "interacted with different Plaintiffs," Mot. 9, and even though the different Office of Refugee Resettlement ("ORR") officials each had different responsibilities—as plaintiffs are well aware.  Plaintiffs' unsupported argument is frivolous, as reflected by the discussion of each of these three witnesses.

### 1.   James De La Cruz

Mr. De La Cruz was the Senior Federal Field Specialist Supervisor for the ORR Unaccompanied Alien Children program from October 2013 to January 2021, with supervisory responsibility over all ORR Federal Field Specialist staff nationwide.  *See* Dkt. 30.  The government disclosed Mr. De La Cruz as a potential witness in the government's initial disclosures on July 1, 2022.  *See* Dkt. 199-2, Ex. 1 (witness 5).  Six months prior to that (on January 5, 2022), Mr. De La Cruz submitted a declaration in support of the government's motion to transfer; motion to dismiss, wherein he described his role at ORR, the records system maintained by HHS relating to juveniles in ORR custody, and his review of that system as it relates to the plaintiff children.  *See* Dkt. 30 ¶¶ 1-2.  The government disclosed him as a document custodian on November 4, 2022, and identified him in its May 2, 2023 supplemental response to plaintiffs' 8th interrogatory, Dkt. 199-2, Ex. 6.  Mr. De La Cruz also was mentioned in depositions **<u>at least 82 times</u>** (Comella, Harper, Lloyd, Swartz, White, ICE 30(b)(6)), including repeatedly by plaintiffs' counsel.  *See, e.g.,* Lloyd Tr. 324:22-23 (Sept. 6, 2023) ("Q. Okay. And who is Mr. De La Cruz? A. He was one of the deputy directors in ORR.").  At least three of his documents were introduced by plaintiffs as deposition exhibits.

### 2.   Jallyn Sualog

Ms. Sualog was the Acting Deputy Director and later the Acting Director for the Office of Refugee Resettlement Unaccompanied Alien Children program from March of 2018 to March of 2023, including the entire time that plaintiffs were in the government's custody and care.  The government disclosed Ms. Sualog in its initial disclosures on July 1, 2022.  *See* Dkt. 199-2, Ex. 1 (witness 25).  The government also disclosed her as a document custodian on November 4, 2022, and identified her in its May 2, 2023 supplemental response to plaintiffs' 8th interrogatory. Dkt. 199-2, Ex. 6.  She was mentioned in depositions **<u>at least 30 times</u>**, including repeatedly by plaintiffs' counsel.  *See, e.g.,* Lloyd

Tr. 304:9-15 ("Q. And is it – it's Ms. Sualog? A. Yes. Q. And she's the acting deputy director for children's programs in your office? A. Yes."). At least eight of her documents were introduced as deposition exhibits. And while plaintiffs place much significance on former ORR Deputy Director Johnathan White's testimony (*see* Mot. 9), plaintiffs ignore his testimony that it was Ms. Sualog that replaced him in March 2018 (*see* White Tr. 29:4-6), meaning that she—not Captain White—was in the relevant ORR position during the important time period in this case (*i.e.*, Zero-Tolerance, the DHS Referral Memo, plaintiffs' entry into the United States, and the plaintiff children's transfer to ORR).

### 3.    Jonathan Castillo

Agent Castillo is a Border Patrol Agent who has been stationed in Yuma, Arizona since 2005. Agent Castillo completed immigration paperwork (specifically the Form I-213 that explains the circumstances of a person's apprehension and entry, as well as any witness statements) for plaintiff WBPE. The government identified Agent Castillo in its initial disclosures on July 1, 2022. *See* Dkt. 199-2 (witness 4). The government also identified him in its January 12, 2023 response to plaintiffs' fifth interrogatory; its April 10, 2023 response to plaintiffs' eleventh interrogatory; and its May 2, 2023 supplemental response to plaintiffs' eighth interrogatory, *see* Dkt. 199-2, Ex. 6. The government disclosed him as a document custodian on May 25, 2023. Plaintiffs introduced the Form I-213 that he prepared as an exhibit in the CBP 30(b)(6) deposition, and asked extensive questions about it (*e.g.*, CBP 30(b)(6) Tr. 406:1 to 411:15). Given plaintiffs' multiple allegations about their treatment by CBP officials and given that there are six plaintiffs in this case, it is unfathomable that plaintiffs were not aware of the significance of Agent Castillo as a witness—as an agent interacting with one of the plaintiffs at the border and memorializing those interactions in a Form I-213 that plaintiffs have cited.

*        *        *

Plaintiffs' argument for precluding these witnesses is frivolous. Plaintiffs admit that the government told them as early as July 2022 that it may call these individuals as witnesses—and on top of that, each of them was discussed extensively in discovery. As plaintiffs' motion makes clear, there is simply no authority to exclude these witnesses at trial. *See* Mot. 9-10.

By requesting the alternative remedy of depositions, plaintiffs reveal the true motivation for their motion: obtaining additional depositions to which they are not entitled. Indeed, plaintiffs' statements

elsewhere in this litigation demonstrate their intentional deposition strategy: acutely aware of the ten-deposition limit, plaintiffs first "obtained deposition testimony developed in the parallel Arizona case," and then "noticed other individual and Rule 30(b)(6) depositions to develop additional evidence." Dkt. 98 at 4. Through this strategy, plaintiffs obtained 33 fact depositions. But despite knowing about the above witnesses for years, plaintiffs never sought leave to take extra depositions for them.

Plaintiffs argue that their request is supported by *Bladeroom Group v. Facebook, Inc.*, 2017 WL 8948736 (N.D. Cal. June 12, 2017). Just the opposite. *Bladeroom* makes clear that a party requesting to take more than ten depositions must make "a 'particularized showing' of the need for the additional depositions," including an explanation of "why the depositions of these additional witnesses would not be cumulative or duplicative." *Id.* at *1, *2. But here, plaintiffs have affirmatively and repeatedly argued that these witnesses are "cumulative," *e.g.*, Mot. 2, 3, 9, 10—the exact opposite of the showing they need to make, *see Bladeroom*, 2017 WL 8948736, at *1-2. Plaintiffs also claim that the depositions of these witnesses are necessary to avoid "surprise." Mot. 9. But the same can be said of literally any witness who has not been deposed before trial; the Federal Rules notably do not provide for the automatic depositions of all trial witnesses.

Finally, plaintiffs claim that taking these witnesses' depositions will allow plaintiffs "to prepare substantially shorter cross-examinations" at trial. There is no support for this speculation. If anything, plaintiffs' counsel's scorched-earth approach to this case suggests that letting them depose these witnesses would *extend* their cross-examinations with unnecessary references to the deposition transcripts. Plaintiffs' request for the depositions or preclusion of these witnesses should be denied.

## B. Witnesses The Government Agrees Can Be Deposed

Even though the government has already agreed that the following witnesses can be deposed before trial, plaintiffs seek to preclude their testimony. The request should be denied. Even if the government's disclosure of any of these witnesses was untimely (it was not, as explained below), the timing was harmless. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, 2021 WL 1375860, at *2 (N.D. Cal. Apr. 12, 2021) ("providing the party an opportunity for a deposition" resulted in "no violation of Rule 26"); *Ortiz v. CVS Caremark Corp.*, 2013 WL 6236743, at *8 n.1 (N.D. Cal. Dec. 2, 2013) ("[A]ny failure to disclose was harmless because Plaintiffs were able to depose nine of the declarants.").

### 1.    Michael Wisniewski

Agent Wisniewski is a Border Patrol Agent and an Assistant Chief Patrol Agent at Yuma Sector, where he has been stationed since 2005.  Agent Wisniewski supervised the Prosecutions Unit in Yuma Sector in the relevant timeframe, and is identified (on the face of the document) as one of the authors of the Yuma Sector Concept of Operations implementing the DHS Referral Policy.  The government first determined that it may call Agent Wisniewski as a witness in August 2023, and therefore added his name to its Amended Disclosure.  *See* Dkt. 199-2, Ex. 3 (witness 100).  Agent Wisniewski was mentioned in depositions **at least 10 times**, including repeatedly by plaintiffs' counsel (*e.g.*, Jordan Tr. 146:3-6 ("Q. Does that mean that you and Agent Wisniewski and Agent Darling collaborated on the -- on developing this document?"), and at least 13 of his documents were introduced as exhibits.

### 2.    Elizabeth Strange

Ms. Strange was the Acting United States Attorney for the District of Arizona from January 2017 to May 2019.  Ms. Strange retired from federal service in June 2019.  The government did not intend to call her as a potential trial witness until after plaintiffs took the 30(b)(6) deposition of the USAO-AZ on August 29, 2023.  During that deposition, Ms. Strange was mentioned **at least 82 times**, and plaintiffs introduced at least seven of her documents as exhibits—including 16 pages of her handwritten notes. Following that deposition, plaintiffs demanded a second deposition session so that the 30(b)(6) witness *could specifically speak with Ms. Strange* and provide additional testimony based on her responses.  The government agreed, and based on that experience, the government determined it may call Ms. Strange as a witness and added her to the amended disclosures in September 2023.  Notably, Ms. Strange was mentioned **another 43 times** during the second session of the USAO-AZ deposition.

### 3.    Anila Persuad-Roy

Ms. Persuad-Roy is a Clinician with Cayuga Centers, where she provided care to minor plaintiff YAMC.  The government first determined that it may call Ms. Persuad-Roy as a witness after plaintiffs took the deposition of Cayuga's 30(b)(6) witness (Henil Pena, who was YAMC's case manager) on August 29, 2023.  Ms. Persuad-Roy was a significant part of the deposition:  she was mentioned **at least 24 times**; plaintiffs' counsel confirmed that Ms. Persuad-Roy was the mental health clinician for plaintiff YAMC during the entirety of her stay at Cayuga; plaintiffs' counsel introduced Ms. Persuad-

1    Roy's 12 pages of clinical notes of her sessions with YAMC; and two other exhibits reflecting Ms.

2    Persuad-Roy's provision of mental health services to YAMC at Cayuga were also introduced. *See*

3    Cayuga Tr. 116:4 to 117:13.  Moreover, there were nearly two dozen pages of testimony about details in

4    Ms. Persuad-Roy's clinical notes concerning YAMC.  *See id.* at 132:21-146:2, 159:20-166:13.

5           **4.    Desaray Klimenko**

6           Ms. Klimenko is a Clinician with Southwest Key Programs, where she provided care to minor

7    plaintiff KGG.  The government first determined that it may call Ms. Klimenko as a witness after

8    plaintiffs took the 30(b)(6) deposition of Southwest Key on August 3, 2023.  One centerpiece of that

9    deposition was an exhibit marked by plaintiffs' counsel: the ORR records reflecting the services and

10   care for KGG during the approximately two months he was sheltered with Southwest Key. *See*

11   Southwest Key Ex. 13.  That document includes **<u>dozens of references</u>** to Ms. Klimenko, who was the

12   mental health clinician for KGG at the shelter, including various mental health assessments and intake

13   notes that she wrote describing her visits and counseling sessions with KGG.

14          **5.    Jamie Garcia**

15          Ms. Garcia is the Program Director for Immigrant Children's Services at Southwest Key

16   Programs.  The government intends for Ms. Garcia to testify regarding Southwest Key's programming

17   and policies.  The government first determined it may call Ms. Garcia as a witness in August 2023, after

18   the 30(b)(6) deposition of Southwest Key on August 3, 2023.

19                        *    *    *

20          Even though the government has agreed that these witnesses can be deposed before trial,

21   plaintiffs argue that the Court should hold the threat of preclusion over the government's head if the

22   witnesses are not deposed by June 21.[5] *See* Mot. 8.  There is no need for such an order.  The parties are

23   already conferring about the deposition date for the only witness the government controls—Agent

24

25         [5] Plaintiffs' selection of June 21 is puzzling.  They claim that date is "21 days before pre-trial

26   filings are due," Mot. 8, but pre-trial filings are due July 23, *see* Dkt. 197, which is 32 days after June
     21.  June 21 is indeed 21 *business* days before July 23, although it is not clear why that matters.  It also

27   happens to be 21 calendar days before the parties' meet-and-confer deadline of July 12, but again, it is
     not clear why that should matter.  As discussed, the government is not opposed to a deposition, but the

28   dates should be scheduled subject to the availability of the witnesses during the summertime at a
     reasonable time prior to the trial date four months away.

Wisniewski—which seems likely to proceed in June. And the four other witnesses are third parties whom the government does not control. Contrary to plaintiffs' unsupported assertion, the fact that the government hopes to be able to call these four witnesses live at trial does not mean that the government exercises "control" over them; the government is merely relying on their cooperation. The government should not be penalized with preclusion if these third-party witnesses happen to be unavailable during plaintiffs' desired deposition window—especially since plaintiffs waited seven months to even raise this issue. And in fact, plaintiffs' requested order would effectively give plaintiffs the unilateral ability to exclude these witnesses if *plaintiffs themselves* choose not to depose them prior to June 21. To be clear, the government will cooperate with the scheduling of these depositions. But it would be improper to automatically preclude these witnesses' testimony if the depositions do not occur by an arbitrary date, without any safety valve in case the depositions may not occur by then based on the witnesses' unavailability or plaintiffs' own delay.

Finally, plaintiffs argue that the government should pay reporter fees for these depositions. *See* Mot. 8. But this relief is improper because the government's disclosure of these witnesses was not untimely, as discussed above. Moreover, plaintiffs never even requested leave to take what would be their 34th through 38th fact depositions—much less have they shown that good cause exists for these extra depositions. The government has already made significant accommodations in agreeing that plaintiffs can depose these witnesses at this late juncture; there is no basis whatsoever to also make the government *pay* for these depositions that plaintiffs waited until now to request.

### C.    Witnesses Disclosed in Discovery Who Should Not Be Deposed

#### 1.    Debra Thomas

Debra Thomas is the ORR Federal Field Specialist responsible for supervising Southwest Key's care and reunification of plaintiff WBPE. Ms. Thomas's name and role as an FFS appear **at least 17 times** in WBPE's ORR records, which were produced to plaintiffs on January 6, 2023 and which were the subject of repeated questioning during plaintiffs' deposition of the Southwest Key 30(b)(6) witness on August 3, 2023. The government also identified Ms. Thomas in its May 2, 2023 supplemental response to plaintiffs' 8th interrogatory. Dkt. 199-2, Ex. 6. The government identified Ms. Thomas as a plaintiff-specific ESI custodian on May 25, 2023, and in subsequent negotiations about ESI searches

1  responded to plaintiffs' questions about the "job descriptions" of an FFS and expressly noted that Ms.

2  Thomas was the FFS "assigned to WBPE."

3       The government more than adequately disclosed Ms. Thomas's "identity and role" during

4  discovery.  Therefore, there was no need to also add Ms. Thomas to the government's Rule 26(a)

5  disclosures.  *See Procongps*, 2013 WL 4551828, at *1.  And plaintiffs cannot seriously maintain they

6  would have handled their depositions differently if the government had added Ms. Thomas's name

7  earlier.  Indeed, the government did include another FFS and an FFS Supervisor in its initial disclosures

8  on July 1, 2022, *see* Dkt. 199-2, Ex. 1 (witnesses 6 and 9), and plaintiffs never sought to depose them (or

9  any other current ORR employee) during discovery.  And plaintiffs have not come close to making a

10 "particularized showing" why they should be permitted to take Ms. Thomas's deposition as their 39th

11 fact deposition in this matter.

12 **III.     CONCLUSION**

13      By seeking to preclude the trial testimony of witnesses the government included in its initial

14 disclosures two years ago, and witnesses the government has already agreed plaintiffs can depose,

15 plaintiffs only underscore the meritless nature of their motion.  The Court should deny the motion in

16 limine in its entirety.

17

18 Dated: May 6, 2024                                   Respectfully submitted,

19                                                      ISMAIL J. RAMSEY
                                                        United States Attorney
20

21                                                      */s/ Kelsey J. Helland*

22                                                      KENNETH W. BRAKEBILL
                                                        KELSEY J. HELLAND
23                                                      Assistant United States Attorneys
                                                        Attorneys for Defendant

24

25

26

27

28