| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>BROOK DOOLEY #230423<br>bdooley@keker.com<br>TRAVIS SILVA #295856<br>tsilva@keker.com<br>CHRISTOPHER S. SUN #308945<br>csun@keker.com<br>CHRISTINA LEE - # 314339<br>clee@keker.com<br>JACQUELINE CONCILLA - # 335733<br>jconcilla@keker.com<br>SARA FITZPATRICK - #337360<br>sfitzpatrick@keker.com<br>EVAN H. MCINTYRE - # 349409<br>emcintyre@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:   415 391 5400<br>Facsimile:   415 397 7188<br><br>Attorneys for Plaintiffs | ISMAIL J. RAMSEY (CABN 189820)<br>United States Attorney<br>MICHELLE LO (NYRN 4325163)<br>KENNETH W. BRAKEBILL (CABN 196696)<br>KELSEY J. HELLAND (CABN 298888)<br>Assistant United States Attorneys<br>450 Golden Gate Avenue, Box 36055<br>San Francisco, California 94102-3495<br>Telephone: (415) 436-7167<br>Fax: (415) 436-6748<br>kenneth.brakebill@usdoj.gov<br><br>Attorneys for Defendant |

*[Additional Counsel on the following page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 4:21-cv-04457-KAW<br><br>**JOINT PRETRIAL STATEMENT**<br><br>Judge:     Hon. Kandis A. Westmore<br><br>Date Filed: July 23, 2024<br><br>Trial Date: September 9, 2024 |

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
RACHEL SHERIDAN - # 230409
rsheridan@lccrsf.org
JORDAN WELLS - # 326491
jwells@lccrsf.org
VICTORIA PETTY - # 338689
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:   415 543 9444

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs

The parties respectfully submit this Joint Pretrial Statement pursuant to the Court's April 11, 2024 Order Continuing Trial and Remaining Case Deadlines (Dkt. 197).

# I.     THE ACTION

## A.     Substance of the Action

Plaintiffs bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.* Plaintiffs are three pairs of parents and children who were separated at the United States-Mexico border in May 2018. Plaintiffs assert five causes of action under Arizona law for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, and loss of consortium arising out of Plaintiffs' separations after crossing into the United States. Plaintiffs allege that they suffered extreme emotional distress when they were separated, during their respective separations, and after they were reunified. Defendant claims, among other things, that the government decisions with respect to separation and detention are subject to the FTCA's discretionary function exception and, moreover, that the alleged harms for which Plaintiffs seek damages in this case were substantially caused by factors other than Plaintiffs' separation and detention.

## B.     Relief Prayed

Plaintiffs seek damages and relief in the form of pre- and post-judgment interest, emotional distress damages, compensatory damages, and punitive damages based on the Government's tortious conduct. Plaintiffs' damages request is capped at $5 million, per Plaintiff, by operation of statute, because that amount was listed on Plaintiffs' administrative claims. Plaintiffs will offer evidence in support of their request for damages through the testimony of the parent Plaintiffs, the expert testimony of Dr. Mikel Matto, the expert testimony of Dr. Tianyi Zhang, the expert testimony of Dr. Monica Noriega, the expert testimony of Dr. William Martinez, the expert testimony of Dr. Lisa Fortuna, relevant Government records regarding Plaintiffs' separations, detention, and reunification, relevant medical records for the Plaintiffs, and potentially Government witnesses and documents relating to the policies and/or practices at issue in this case.

Defendant denies that Plaintiffs are entitled to the requested relief and asserts various

defenses identified in Defendant's separately filed Trial Brief. Defendant will offer evidence in support of those defenses and the failure of Plaintiffs to prove certain elements of their claims. That evidence will include the testimony of various government employees that were involved in the policies, decision-making and processes relating to Plaintiffs' apprehensions, separations and reunifications; mental health providers that treated certain Plaintiffs following the events at issue in this case; the care providers at the shelters that were responsible for the Plaintiff children prior to their reunification with their separated Plaintiff parents; the expert testimony of psychiatrists Dr. Renee Binder and Dr. Anlee Kuo; and the expert testimony of neuropsychologists Dr. Shelley Peery and Johanna Rengifo. Defendant's evidence also will include various contemporaneous records concerning the relevant events that transpired in 2018, including records from various government agencies (CBP, ICE, DOJ, DHS, HHS), mental health records of Plaintiffs, medical records of Plaintiffs, and the shelter records for each Plaintiff child.

## II. THE FACTUAL BASIS OF THE ACTION

### A. Undisputed Facts

1. On April 6, 2018, Attorney General Jeff Sessions issued a "Memorandum for Federal Prosecutors Along the Southwest Border" regarding "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)" (the "Zero Tolerance Policy"). The Zero Tolerance Policy "direct[ed] each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."

2. On April 23, 2018, Commissioner of U.S. Customs and Border Protection ("CBP") Kevin McAleenan, Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Thomas Homan, and Director of U.S. Citizenship and Immigration Services ("USCIS") Francis Cissna drafted a memorandum titled "Increasing Prosecutions of Immigration Violations" to Kirstjen Nielsen, the Secretary of the Department of Homeland Security (the "DHS Referral Memorandum").

3. On May 4, 2018, DHS Secretary Kirstjen Nielsen adopted a recommendation made by Mr. McAleenan, Mr. Homan, and Mr. Cissna in the DHS Referral Memorandum that

DHS "work . . . to develop a quickly scalable approach to achieve 100% immigration violation prosecution referrals for all amenable adults, including those initially arriving or apprehended with minors."

4. On May 11, 2018, DHS Secretary Nielsen issued a memorandum directing DHS law enforcement officials to implement the recommendation that she had adopted on May 4, 2018.

**Plaintiffs Erendira and Yasmin**

5. Plaintiff Erendira is the mother of Plaintiff Yasmin. They are citizens of Guatemala.

6. On May 11, 2018, Border Patrol agents arrested Erendira and Yasmin, then six years old, after they crossed the United States-Mexico border. Border Patrol agents transported them to, and detained them at, the Border Patrol Station in Yuma, Arizona.

7. One or more Border Patrol agents decided to separate Erendira and Yasmin after one or more Border Patrol agents determined that Erendira was amenable to prosecution for violating 8 U.S.C. § 1325(a).

8. On May 13, 2018, Border Patrol agents separated Erendira and Yasmin.

9. On May 13, 2018, Yasmin was booked out of the Yuma Station.

10. Yasmin was subsequently transferred to the custody of the Department of Health and Human Services and placed at a facility called Cayuga Centers in New York on May 15, 2018.

11. On May 16, 2018, Erendira was convicted of violating 8 U.S.C. § 1325(a) and sentenced to time served.

12. Erendira was booked back into the Yuma Border Patrol Station on May 16, 2018 and then permanently booked out on May 22, 2018, when she was transferred to ICE custody.

13. From May 22, 2018 to July 23, 2018, Erendira was detained in ICE immigration detention facilities.

14. During this period of time, Yasmin remained in the custody of HHS.

15. Erendira and Yasmin were reunited on or about July 25, 2018.

**Plaintiffs Joshua and Karl**

16. Plaintiff Joshua is the father of Plaintiff Karl. They are citizens of Guatemala.

17. On May 18, 2018, Border Patrol agents arrested Joshua and Karl, then thirteen years old, after they crossed the United States-Mexico border. Border Patrol agents transported them to, and detained them at, the Border Patrol Station in Yuma, Arizona.

18. One or more Border Patrol agents decided to separate Joshua and Karl after one or more Border Patrol agents determined that Joshua was amenable to prosecution for violating 8 U.S.C. § 1325(a).

19. Border Patrol agents separated Joshua and Karl.

20. HHS took custody of Karl on May 20, 2018 and he remained in HHS custody until July 24, 2018. Karl was placed in a facility operated by Southwest Key.

21. On May 29, 2018, Joshua was transferred from the Yuma Border Patrol Station to ICE custody.

22. Joshua was detained by ICE in immigration detention facilities until August 14, 2018.

23. Joshua was not prosecuted for violating 8 U.S.C. § 1325(a).

24. Joshua and Karl were reunited on July 24, 2018.

**Plaintiffs Wilbur and Wilfredo**

25. Plaintiff Wilbur is the father of Plaintiff Wilfredo. They are citizens of El Salvador.

26. On May 27, 2018, Border Patrol agents arrested Wilbur and Wilfredo, then eleven years old, and detained them at the Border Patrol Station in Yuma, Arizona.

27. On or about May 27, 2018, one or more Border Patrol agents decided to separate Wilbur and Wilfredo after one or more Border Patrol agents determined that Wilbur was amenable to prosecution for violating 8 U.S.C. § 1325(a).

28. On or about May 27, 2018, Border Patrol agents separated Wilbur and Wilfredo.

29. HHS took custody of Wilfredo on May 28, 2018, and he remained in HHS custody until July 23, 2018. Wilfredo was placed in a facility operated by Southwest Key.

30. On June 2, 2018, Wilbur was transferred from the Yuma Border Patrol station to ICE custody.

31. From then until July 20, 2018, Wilbur was detained in ICE immigration detention facilities.

32. Wilbur was not prosecuted for violating 8 U.S.C. § 1325(a).

33. Wilbur and Wilfredo were reunited on or about July 23, 2018.

The parties will confer about setting forth a more extensive list of undisputed facts in their Joint Statement of Stipulated Facts, which is due to be filed on September 3, 2024. *See* Dkt. 197.

### B. Disputed Factual Issues[1]

The disputed factual issues include:

1. Whether Defendant, through its adoption, implementation, and maintenance of the policies and practices that led to Plaintiffs' separations, intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from its conduct.

2. Whether Defendant's conduct in adopting, implementing, and maintaining the policies and practices that led to Plaintiffs' separations was extreme and outrageous.

3. Whether Defendant breached any duty of care or fiduciary duty to Plaintiffs, including in its supervision of the minor Plaintiffs.

4. Whether Plaintiffs suffered emotional distress and whether Plaintiffs' alleged emotional distress was caused by Defendant's alleged conduct/breaches.

5. What are Plaintiffs' damages (if any) for their claimed emotional injuries resulting from Defendant's alleged conduct/breaches.

6. Whether Defendant committed a willful act in the use of judicial process for an ulterior purpose not proper in the regular conduct of the proceedings.

7. Whether Plaintiffs suffered a loss of consortium within a parent-child relationship

---

[1] The parties do not address the respective burdens of proof in this section of the Joint Pretrial Statement.

during and after their separations.

8. Whether Defendant and its employees made discretionary judgments in their decisions to separate and detain Plaintiffs.

**C.    Agreed Statement**

As noted above, the parties anticipate stipulating to additional undisputed facts and will continue to confer in advance of their deadline to submit their Joint Statement of Stipulated Facts.

**D.    Stipulations**

**1.    Stipulation to Streamline Witness Testimony**

In order to streamline the presentation of evidence at trial, and to minimize the inconvenience for all witnesses, the parties agree that trial witnesses designated as percipient witnesses by both parties will only be called to testify one time, except for possible rebuttal testimony. For those specific percipient witnesses, the scope of cross-examination shall not be restricted to the scope of the direct examination.

**2.    Stipulation Regarding Authenticity of Documents**

Each party's exhibit list is due concurrently with the filing of this Pretrial Statement. The parties have agreed to confer about authenticity and admissibility of specific trial exhibits once those exhibit lists are exchanged. Such meet and confer, and agreements therfrom, will take into consideration any prior agreements about the authenticity of those documents.

**3.    Stipulation Regarding Procedures for Protecting Plaintiffs' True Names**

The Court has previously ordered that "the parties shall refer to Plaintiffs by the[ir] pseudonyms . . . in all filings and public proceedings." Dkt. 12 at 2. The parties agree to maintain this protection throughout trial and to confer in advance of the pre-trial conference about specific ways of withholding Plaintiffs' true names. The parties will continue to confer about specific procedures (e.g., replacing Plaintiffs' names with pseudonyms when reading deposition testimony) and present their agreements, and seek any further guidance from the Court, at the parties' Final Pretrial Conference on August 29.

**4.    Stipulation Regarding Calling Witnesses**

A party will provide notice by 9am Pacific Time three days before calling any witness.

           **5.**      **Stipulation Regarding Exchange of Trial Exhibits**

For efficiency and to facilitate the parties' process of negotiating admissibility of and evidentiary objections to trial exhibits, the parties shall exchange their respective trial exhibits on July 23 as follows: (1) each trial exhibit shall be produced as a distinct electronic file in pdf format; (2) each pdf shall have the parties' respective trial exhibit number affixed on the first page of each document in the format required by the Court; and (3) each pdf shall have an electronic naming convention that includes the trial number (e.g., Plaintiff Trial Ex. 1.pdf).

## III. DISPUTED LEGAL ISSUES

The disputed legal issues include:

1. Whether Plaintiffs have established their burden to prove that Defendant's conduct was extreme and outrageous; whether Defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from its conduct; and whether severe emotional distress occurred as a result of Defendant's conduct. *See Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987); *see also Mintz v. Bell Atl. Sys. Leasing Intern., Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995).

2. Whether Plaintiffs have established their burden to prove that Defendant had a duty requiring it to conform to a certain standard of care; whether Defendant breached that standard; whether there was a causal connection between Defendant's conduct and the resulting injury; and whether there were actual damages. *See Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007); *Quinn v. Turner*, 745 P.2d 972, 973, 974 (Ariz. Ct. App. 1987).

3. Whether Plaintiffs have established their burden to prove that Defendant committed a willful act in the use of judicial process; and whether such an act was for an ulterior purpose not proper in the regular conduct of the proceedings. *See Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004); *Nienstedt v. Wetzel*, 651 P.2d 876, 880-82 (Ariz. Ct. App. 1982).

4. Whether Plaintiffs have established their burden to prove that Defendant breached

a fiduciary duty in its supervision of, or negligently supervised, Plaintiff children, and whether there are damages causally related to such breach. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1004 (D. Ariz. 2011).

5. Whether Plaintiffs have established their burden to prove that they are entitled to recover for a loss of consortium, *i.e.*, loss of society, companionship, care, support, and affection within a parent-child relationship. *See Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019); *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989).

6. Whether Defendant has established its burden to prove that its actions were the result of discretionary judgments susceptible to policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 328-32 (1991).

7. Whether the challenged conduct violated the Constitution.[2]

8. Whether Defendant has established its burden to prove that government officials were executing mandatory statutory duties when they transferred the minor Plaintiffs to the custody of ORR. 28 U.S.C.§ 2680(a); *see also, e.g.*, *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985).

9. Whether Plaintiffs have established their burden to prove that their claims are based on acts or omissions of "employee[s] of the Government" while acting within the scope of their employment or contractors or instead on acts or omissions of employees of contractors. *See* 28 U.S.C. § 1346(b)(1); *see also Laird v. Nelms*, 406 U.S. 797, 801 (1972); *Logue v. United States*, 412 U.S. 521, 526 (1973); *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).

10. Whether Defendant has established its burden to prove that any Plaintiff failed to mitigate damages by, through his or her own voluntary activity, unreasonably

---

[2] The parties dispute the governing standard for determining whether the assertion of a violation of a constitutional right overcomes the DFE. Plaintiffs contend that the constitutional inquiry presents a mixed question of fact and law. Defendant contends that Plaintiffs must establish that the constitutional prohibition or proscription at issue was mandatory and specific, and the constitutional right was clearly established at the time of the challenged conduct.

exposing himself or herself to damage or increasing injury. *SDR Assocs. v. ARG Enters., Inc.*, 170 Ariz. 1, 4 n.2 (Ariz. Ct. App. 1991) (quoting McCormick on Damages, § 34 at 131 (1934)).

## IV. TRIAL PREPARATION

### A. Witnesses to Be Called

The Court's pre-trial order calls for the parties to submit separate witness lists of "witnesses to be called." Dkt. 53 at 4. The parties will separately file these to the docket, indicating for each witness the witness's name and whether they will testify live or through designated deposition testimony.

In their respective witness lists, the parties will identify any document custodians, or other witnesses, that they anticipate they may need to call in the absence of an agreement on admissibility. Defendant will be identifying any interpreter witnesses that may be necessary to call at trial absent any advance agreement by the parties.

The parties have agreed to confer about authenticity and admissibility after the exchange of exhibit lists, which may obviate the need to call these witnesses.

### B. Estimate of Trial Time

The Court has allotted 15 days for trial, from 9:00 a.m. to 5:00 p.m. The parties will divide trial time in half, subject to the Court's discretion to provide any additional time as reasonably necessary for completion of the trial of this action. If the appellate proceeding of Secretary Nielsen remains open at the time of the Final Pretrial Conference, the parties will be prepared to discuss at said conference what impact, if any, that issue will have on the trial management.

### C. Use of Discovery Responses

The parties' lists of designated discovery responses and deposition designations, excluding excerpts from discovery that will be used solely for impeachment or rebuttal, will be separately filed by each party on the docket for this case. Copies of the designated discovery responses will be lodged with the Court at the same time the parties lodge the trial exhibits.

## V. TRIAL ALTERNATIVES AND OPTIONS

### A. Settlement Discussion

On January 30, 2024, the parties participated in a settlement conference held by Judge Beeler. The case did not settle. On July 18, 2024, the parties participated in another settlement conference held by Judge Beeler. The parties are currently engaged in ongoing direct settlement discussions.

### B. Amendments, Dismissals

The parties do not contemplate any amendments to pleadings or dismissals of parties, claims, or defenses at this time.

## VI. MISCELLANEOUS

### A. Captain White, Tricia Swartz, and Certain Other Government Witnesses

**Plaintiffs:** Captain Johnathan White is a member of the U.S. Public Health Service and currently an official at the U.S. Department of Health and Human Services. Tricia Swartz is also an HHS official. Both officials have unique personal knowledge of Government officials' intent in developing and implementing the family separation practices at issue in this lawsuit. Defendant's overbroad use of confidentiality designations made under the Protective Order prohibits Plaintiffs from describing their testimony in more detail in a public filing, but suffice it to say that these officials' testimony about the Government's intent in ordering mass family separations is damning. (The Government's assertion that these officials have no knowledge of Plaintiff-specific facts is thus a red herring—many of the Government's witnesses lack any such knowledge, too.)

Plaintiffs have requested that the Government bring these witnesses, who still work for the Government, to testify live. Defendant has refused to bring Captain White and Ms. Swartz to testify at trial in this case, despite the Court's admonition that "[t]estimony by deposition designation should be a rare occurrence" (Dkt. 196), and despite the fact that Defendant is bringing other current, and even former, Government employees of its choosing for live testimony at trial. Plaintiffs request that, subject to their availability, the Court order Defendant to bring Captain White and Ms. Swartz to testify live at trial.

In addition to Captain White and Ms. Swartz, who the Government refuses to bring live despite Plaintiffs' request, Plaintiffs further request that the Court order Defendant to bring certain other Government witnesses live. The Government recently notified Plaintiffs that certain witnesses who the Government previously planned to call to testify live to trial (when trial was formerly scheduled to occur in July, *see* Dkt. 195 at 1 n.1) are purportedly no longer available to testify live at trial in September. These witnesses include critical individuals such as Mr. McAleenan and Mr. Homan, who are two of the three authors of the 2018 DHS Referral Memorandum. Having successfully requested to continue the trial date over Plaintiffs' objection, the Government should not be allowed to benefit from unavailability issues caused by movement of the trial date to September from July. While Plaintiffs will designate deposition testimony from Mr. McAleenan and Mr. Homan's depositions in the *C.M./A.P.F.* case, Plaintiffs reserve all rights with respect to any prejudice that may ensue from Mr. McAleenan and Mr. Homan failing to testify live at trial.

**Defendant:** The Government does not intend to call Captain Jonathan White or Tricia Swartz as witnesses in its case in chief. The Government understands that neither individual has specific knowledge concerning these minor plaintiffs. Further, their testimony is not necessary to describe ORR's policies and procedures; other witnesses presented live by the Government will testify to these policies. The Government is entitled to present its case in the manner it deems most efficient and effective, subject to this Court's orders.

Moreover, Plaintiffs provide no reason or authority for this Court to disregard the clear bounds of Rule 45, which provides a 100-mile limitation for compelled attendance. *See* Fed. R. Civ. P. 45, Cmte. Note on Rules—2013 Amendment ("Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state."). The Court "must quash or modify a subpoena that… (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3). This restriction also applies to remote testimony, so Captain White and Ms. Swartz cannot be required to testify remotely. *See* Fed. R. Civ. P. 45, Cmte. Note on Rules—2013 Amendment ("When an order under Rule 43(a)

authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."); *see also In re Kirkland*, 75 F.4th 1030, 1047 (9th Cir. 2023) (adopting a strict adherence to Rule 45(c)'s 100-mile limitation for video testimony).

As part of the pre-trial meet and confer process that the parties resumed on July 11, 2024, the government informed Plaintiffs that it had been revisiting its witness list in an effort to narrow its case and also to account for availability issues. To that end, on July 15 the government notified Plaintiffs that it had removed certain witnesses from its list; converted some witnesses from substantive testimony to mere foundational testimony for admissibility of documentary evidence; and converted certain witnesses from live to deposition designation due to availability issues (Liliana Peralta, Kevin McAleenan, and Tom Homan). As to the latter category of witnesses, the government subsequently explained that it does not control the availability of these witnesses: Ms. Peralta is not a government employee, Mr. McAleenan and Mr. Homan are former government employees, and they all live outside the 100-mile subpoena power of this jurisdiction.

Dated: July 23, 2024                                          KEKER, VAN NEST & PETERS LLP

                                                                            By:     */s/ Christina Lee*
                                                                                      BROOK DOOLEY
      TRAVIS SILVA
      CHRISTOPHER S. SUN
      CHRISTINA LEE
      JACQUELINE CONCILLA
      SARA FITZPATRICK
      EVAN H. MCINTYRE

Attorneys for Plaintiffs

Dated: July 23, 2024                                          LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By:     */s/ Jordan Wells*
      RACHEL SHERIDAN
      JORDAN WELLS
      VICTORIA PETTY

Attorneys for Plaintiffs

Dated: July 23, 2024

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

By: */s/ Bree Bernwanger*
BREE BERNWANGER

Attorneys for Plaintiffs

Dated: July 23, 2024

ISMAIL J. RAMSEY
UNITED STATES ATTORNEY

By: */s/ Kenneth Brakebill*
KENNETH BRAKEBILL
KELSEY J. HELLAND

Assistant United States Attorneys
Attorneys for Defendant

## ATTESTATION UNDER CIVIL LOCAL RULE 5-1

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: July 23, 2024

By: */s/ Christina Lee*
CHRISTINA LEE