ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH BRAKEBILL (CABN 196696)
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorneys

    450 Golden Gate Ave. Box 36055
    San Francisco, CA 94102-3495
    Telephone:    (415) 436-7167
    Kenneth.Brakebill@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| WILBUR P.G., et al., | ) CASE NO. 4:21-cv-4457-KAW |
| | ) |
| Plaintiffs, | ) **DEFENDANT'S NOTICE OF MOTION AND** |
| | ) **MOTIONS *IN LIMINE*, FILED UNDER SEAL** |
| v. | ) |
| | ) Pretrial Conference:  August 28, 2024 |
| UNITED STATES OF AMERICA, | ) Place:  Courtroom 4, 3rd Floor |
| | ) Time:  2:00 p.m. |
| Defendant. | ) |
| | ) The Honorable Kandis A. Westmore |
| | ) |
| | ) |
| | ) |

1

**NOTICE OF MOTION**

2          PLEASE TAKE NOTICE that on August 28, 2024, at 2:00 p.m., or as soon thereafter as the

3    parties may be heard, in the Ronald V. Dellums Federal Building and United States Courthouse, 1301

4    Clay Street, Oakland, CA 94612, before the Honorable Kandis A. Westmore, United States Magistrate

5    Judge, Defendant United States of America will and hereby does move this Court for an order *in limine*

6    precluding Plaintiffs, Wilbur P.G., Wilfredo B.P.E., Erendira C.M., Yasmin Alicia M.C., Joshua G.G.,

7    and Karl Luis G.G. (collectively "Plaintiffs"), from proffering at trial (1) opinions and testimony from

8    Plaintiffs' expert Dr. Lisa Fortuna; (2) opinions and testimony from lay witnesses on subjects that

9    require specialized knowledge or are irrelevant to the issues before this Court; and (3) testimony relating

10   to any claim for lost wages, which Plaintiffs have affirmatively stated that they are not pursuing in this

11   case. Such evidence is neither relevant to the issues to be decided at trial nor helpful for the Court. The

12   motion is based on this notice, the memorandum of points and authorities, the accompanying

13   Declaration of Kenneth Brakebill and attached exhibits, all the matters of record filed with the Court,

14   and such other evidence as may be submitted.[1]

15

**RELIEF REQUESTED**

16          The United States moves for an order:

17          (1) Excluding at trial any opinions and testimony from Plaintiffs' expert witness Dr. Lisa

18   Fortuna, as her testimony is not relevant to the underlying issues at hand, is unreliable given Dr.

19   Fortuna's lack of treatment of the Plaintiffs and lack of expertise in adult psychiatry, and is duplicative

20   of other expert witnesses that Plaintiffs intend to proffer at trial;

21          (2) Excluding at trial any attempt to elicit opinions, commentary, and policy-based views from

22   individuals who had no personal involvement in the development and approval of the Zero Tolerance

23   Policy and the DHS Referral Memorandum at issue in this case, and any attempt to introduce news

24   articles to elicit personal opinions about these policies, as such testimony is not relevant to the issues

25   before the Court; and

26

27

28          [1] This motion is filed under seal in light of Plaintiffs' designation of the transcript of Dr.
Fortuna's deposition as confidential.

1    (3) Excluding at trial any testimony relating to lost wages or lost employment opportunities, as

2    Plaintiffs have affirmed in discovery that they do not seek to recover lost wages in this action.

3    **MOTION *IN LIMINE* #1: TO EXCLUDE OPINIONS AND TESTIMONY OF**
     **PLAINTIFFS' EXPERT WITNESS DR. LISA FORTUNA**

4    **I.    INTRODUCTION**

5          In this action against the United States of America brought under the Federal Tort Claims Act,

6    28 U.S.C. §§ 1346(b)(1), 2671-2680, Plaintiffs, three parent-child family units, allege that they suffered

7    intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of

8    fiduciary duty, and loss of consortium arising out of Plaintiffs' separation as a result of the prior

9    Administration's Zero Tolerance Policy and the approved DHS Referral Memorandum responding to

10   that policy.

1  ████████████████████████████████████████████

2  ████████████████████████████████

3        Pursuant to Federal Rule of Evidence 702, the Court should exclude the opinions and testimony

4  of Dr. Fortuna for several reasons: ███████████████████████████████

5  ████████████████████████████████████ (2) Dr. Fortuna's

6  opinions do not aid the trier of fact in understanding other experts' testimony; and (3) any opinions and

7  testimony by Dr. Fortuna would be duplicative of the other four expert witnesses Plaintiffs intend to call

8  at trial: Dr. Mikel Matto, Dr. William Martinez, Dr. Monica Noriega, and Dr. Tianyi Zhang.  *See* Expert

9  Report of Mikel Matto ("Matto Report 1," attached as Ex. C) ████████████████

10 ████████████████████████████████████████████

11 ████████; Expert Report of Mikel Matto ("Matto Report 2," attached as Ex. D) ████

12 ████████████ Expert Report of William Martinez ("Martinez Report," attached as

13 Ex. E)████████████████████████████

14 ████████████████████.); Expert Report of Monica Noriega

15 ("Noriega Report 1," attached as Ex. F) ████████████████████

16 ████████████████████████

17 Expert Report of Monica Noriega ("Noriega Report 2," attached as Ex. G) ████████

18 ████████ Expert Report of Tianyi Zhang ("Zhang Report," attached as Ex. H) ██

19 ████████████████████████████

20 ████████████████████████████

21 ████████████████████████████

22 ████████████. *See* Exs. C-H.  These four other expert witnesses can

23 testify about their evaluations of the Plaintiffs, rendering Dr. Fortuna's expected testimony duplicative

24 and unnecessary.

25        Accordingly, the Court should exclude the opinions and testimony of Dr. Fortuna.

1   **II.      ARGUMENT**

2          **A.      Legal Standard for Expert Witness Testimony**

3          Under Federal Rule of Evidence 702, an expert "may testify in the form of an opinion . . . if: (a)

4   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand

5   the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

6   testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the

7   principles and methods to the facts of the case." Fed. R. Evid. 702. To be admitted, expert testimony

8   must reflect "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The

9   opinion must be "based on sufficient facts or data." Fed. R. Evid. 702(b). "When an expert opinion is

10  not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts

11  contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Abarca v.*

12  *Franklin Cnty. Water Dist.*, 813 F. Supp. 2d 1199, 1213 (E.D. Cal. 2011) (citations and quotation marks

13  omitted); *see also Gray v. Shell Oil Co.*, 469 F.2d 742, 749–50 (9th Cir. 1972) (excluding an expert's

14  opinion that was speculative and not supported by the evidence).

15         The Supreme Court has found that an expert's testimony must withstand a three-prong test: (1)

16  the expert must be qualified; (2) the testimony must be relevant; and (3) the testimony must be reliable.

17  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *Kumho Tire Co. v. Carmichael*,

18  526 U.S. 137, 152 (1999). Rule 702 tasks a district judge with "ensuring that an expert's testimony both

19  rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Rule 702

20  instructs a district judge to determine whether an expert has "sufficient factual grounds on which to draw

21  conclusions." *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022).

22         Expert opinion testimony is considered "reliable" if the knowledge underlying it has a reliable

23  basis in the knowledge and experience of the relevant discipline. *Daubert*, 509 U.S. at 597. The

24  reliability inquiry focuses on the expert's principles and methodology rather than the expert's

25  conclusions. *Id.* at 595. To guide a district court's analysis of whether expert testimony is sufficiently

26  reliable, the Supreme Court in *Daubert* set forth a non-exhaustive list of "factors" that the court may

27  consider. 509 U.S. at 593–94. Because there are "many different kinds of experts, and many different

28  kinds of expertise," the reliability analysis should be geared toward the precise sort of testimony at issue

1    and not any fixed evaluative factors. *Kumho Tire Co.*, 536 U.S. at 150. The trial court must use the

2    criteria relevant to a particular kind of expertise in a specific case to "make certain that an expert,

3    whether basing testimony upon professional studies or personal experience, employs in the courtroom

4    the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at

5    152.

6         The relevance of an expert is guided by Rule 702's requirement that the testimony "will help the

7    trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591; *see*

8    *also Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 783 F.3d 960, 969 (9th Cir. 2013) ("Expert opinion

9    testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.").

10   Evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be

11   without the evidence." Fed. R. Evid. 401(a). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

12   The relevance of an expert is guided by Rule 702's requirement that the testimony "will help the trier of

13   fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591; *see* Fed. R.

14   Evid. 702. In this regard, the Court once again acts as "a gatekeeper, not a fact finder" in determining

15   whether the expert's "testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-*

16   *Car, Inc.*, 738 F.3d at 970.

17        Ultimately, an expert opinion is inadmissible if it fails to satisfy either the reliability or relevancy

18   requirements. *See Daubert*, 509 U.S. at 589. The trial court "may conclude that there is simply too great

19   an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146. Expert

20   testimony should be excluded where it is based upon speculation or conjecture, fails to rule out

21   alternative possibilities, or account for relevant factors. *See id.* at 145–46; *Claar v. Burlington N. R.R.*

22   *Co.*, 29 F.3d 499, 502 (9th Cir. 1994).

23        **B.    Dr. Fortuna's Opinions Are Unreliable and Do Not Assist the Trier of Fact.**

24            **1.**  ███████████████████████████

25   ███████████████████████████████████

26   ███████████████████████████████████

27   ███████████████████████████████████

28   ███████████████████████████████████

1   Because Dr. Fortuna did not evaluate the patients, any opinion or testimony Plaintiffs seek to

2   proffer from Dr. Fortuna would not assist the trier of fact.

3           **2.**        **Dr. Fortuna Did Not Independently Verify Her Findings.**

4           Additionally, Dr. Fortuna's opinions lack reliability because of the absence of any independent

5   verification of her findings. Courts routinely require experts to independently verify the information

6   when reaching their own expert conclusion. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D.

7   Cal. 2014) ("[A]n expert can appropriately rely on the opinions of others if other evidence supports his

8   opinion and the record demonstrates that the expert conducted an independent evaluation of that

9   evidence."); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) ("The

10  [Rules of Evidence] do not permit an expert to rely upon opinions developed by another expert for

11  purposes of litigation without independent verification of the underlying expert's work."); *Hanson v.*

12  *Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1292 (S.D. Ga. 2018) ("An expert 'may not simply repeat

13  or adopt the findings of another expert without attempting to assess the validity of the opinions relied

14  upon.'") (quoting cases).





1 ████████████████████████████████████████
2 ████████████████████████████████████████████
3 ████████████████████████████████
4 ██  ████████████████████████████████████
5 ████████████████████████████████████████
6 ████████████████████████████████████████████
7 ████████████████████████████████████████████
8 ████████████████████████████████████████████
9 ████████████████████████████████████████████
10 ████████████████████████████████████████████
11 ████████████████████████████████████████████
12 ████████████████████████████████████████████
13 ████████████████████████████████████████████
14 ████████████████████████████████████████████
15 ████████████████████████████████████████████
16 ████████████████████████████████████████████
17 ████████████████████████████████████████████
18 ████████████████████████████████████████████
19 ████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ████████████████████████████████████████
23 ████████████████████████████████████████████
24 ████████████████████████████████████████████
25 ████████████████████████████████████████████
26 ████████████████████████████████████
27 ████████████████████████████████████████████
28 ████████████████████████████████████████████

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████████

7 ███████████████████████████

8      For the foregoing reasons, Dr. Fortuna's opinions and testimony are unreliable and would not assist

9 the Court and should therefore be excluded.

10 **III.   CONCLUSION**

11      Dr. Fortuna's opinion testimony should be excluded as unreliable and unhelpful. Dr. Fortuna did

12 not independently verify her conclusions ███████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 Accordingly, the Court should preclude Plaintiffs from proffering at trial any opinions or testimony from

16 Dr. Fortuna.

17 **MOTION *IN LIMINE* #2: TO PRECLUDE LAY WITNESS TESTIMONY THAT**
**REQUIRES SPECIALIZED OR TECHNICAL KNOWLEDGE**

18 **I.   INTRODUCTION**

19      The Court should preclude Plaintiffs from attempting to elicit from lay witnesses opinion

20 testimony on matters that require specialized knowledge or goes beyond the witnesses' own perception.

21 Lay witness opinion testimony regarding the alleged psychological harm Plaintiffs may have

22 experienced or opinion testimony from witnesses who had no involvement in the development or

23 approval of the challenged policies is irrelevant and unreliable. The lay witnesses do not have the

24 requisite "scientific, technical, or other specialized knowledge" to assist the court in understanding the

25 points at issue. Fed. R. Evid. 702. Rather, the testimony relating to the alleged emotional weight and

26 effect of the Zero Tolerance Policy and/or family separation is speculative and does not assist the trier of

27 fact. Accordingly, any attempt to elicit such testimony should be excluded.

28

Defendant intends to call fact witnesses to offer testimony concerning the structure of the Government agencies implementing the Zero Tolerance Policy and their contemporaneous observations of and experiences with the Plaintiffs after they entered the United States.  During depositions, Plaintiffs' attorneys questioned Defendant's fact witnesses on the witnesses' personal opinions regarding the Zero Tolerance Policy and family separation. *See, e.g.*, Deposition Tr. of Michael Wisniewski ("Wisniewski Tr.," attached as Ex. I) at 323:19-324:2. This line of questioning should not be permitted at trial.

## II.   ARGUMENT

### A.   Legal Standard for Lay Witness Testimony

Lay witness testimony is limited to opinions "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 701(a), moreover, includes a personal knowledge requirement that can be met "if the witness can demonstrate firsthand knowledge or observation." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). The testimony must be helpful to the trier of fact, going beyond "meaningless assertions which amount to little more than choosing up sides." Fed. R. Evid. 701 advisory committee's note. Further, lay witness opinions may not be "based on speculation, rely on hearsay or interpret unambiguous, clear statements." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014).

### B.   Lay Witness Opinion is Not "Rationally Based on the Witness's Perception" and Calls For Specialized Knowledge Outside of Witness's Expertise

Lay witness testimony eliciting opinions on the alleged harm caused by the Zero Tolerance Policy or family separation requires speculation outside a lay witness's expertise and therefore should be excluded. Admissible lay testimony must be based on personal knowledge of the witness and cannot rely on specialized knowledge. Fed. R. Evid. 701. "In the mental health context, courts have generally found that a lay witness may not testify to the mental health diagnosis of another person when that testimony would necessarily rely on scientific, technical or other specialized knowledge." *United States v. Broderick*, No. 5:22-CR-00251-EJD-1, 2024 WL 694486, at *4 (N.D. Cal. Feb. 20, 2024); *see also Mouradian v. City of Los Angeles*, No. CV213880DMGSHKX, 2023 WL 2558398, at *3 (C.D. Cal. Jan.

25, 2023) ("[O]pinions regarding the basis for a PTSD diagnosis and the symptoms of such a diagnosis would likely require 'scientific, technical, or other specialized knowledge' that would bring such testimony within the scope of Rule 702."). Testifying about the alleged harm caused by the Zero Tolerance Policy or family separation goes beyond the "personal knowledge" of the lay witnesses and require specialized knowledge. Fed. R. Evid. 701. Accordingly, to the extent Plaintiffs seek to introduce lay witnesses' testimony regarding any causal connection between the Zero Tolerance Policy and alleged harm, or between family separation and alleged harm – as they repeatedly attempted to do during depositions in this case, this testimony would lack scientific, technical, or other specialized knowledge necessary to form such opinion and should be precluded. It cannot reliably aid the trier of fact.

While an opinion as to the ultimate issue such as causation is not admissible by a lay witness, that witness may testify to their own discrete tasks and responsibilities. For example, Assistant Chief Border Patrol Agent Michael Wisniewski may testify regarding his specific responsibilities related to the Prosecutions Unit for Yuma Sector. *See* Wisniewski Tr. at 36:14-25. Agent Wisniewski has firsthand knowledge of his responsibilities and can speak to them without technical expertise. The Court should, however, preclude Plaintiffs from attempting at trial to elicit from Agent Wisniewski speculation as to the potential harm caused to children or families by separation.

> Q.    Okay. Setting aside a situation where the safety and well-being of the child necessitates a separation, do you think that separating -- that Border Patrol separating a parent from a child while the two are in custody hurts the child?
>
> A.    I can't contemplate on what the feelings of the child were.

Wisniewski Tr. at 323:19-324:2.

> Q.    Okay. If you were separated by Border Patrol agents and then separately detained at a Border Patrol facility from your children, do you think that that would cause you harm?
>
> A.    Again, I -- short of saying that I would do something -- I would do my best not to be in a position that I would commit a criminal action where that would be a necessary result, you know, I -- I don't know how I would react in that situation.

*Id.* at 326:13-24.

Similarly, Former Acting Director for the Office of Refugee Resettlement Unaccompanied Alien Children Program Jallyn Sualog has personal knowledge of and can testify about her knowledge of the

Office of Refugee Resettlement for the period she worked there. *See, e.g.*, Deposition Tr. of Jallyn Saulog ("Sualog Tr.," attached as Ex. J) at 35:17-24. She cannot, however, testify about whether the Zero Tolerance Policy or family separations "unnecessarily harmed children." These types of questions seek to elicit from Ms. Sualog opinion testimony on the ultimate issue—causation of the harm alleged by plaintiffs. The causation issue of potential harm on children encompasses topics that surpass Ms. Sualog's perception or personal knowledge.

Lay witnesses like Agent Wisniewski and Ms. Sualog may speak to their experiences and knowledge pursuant to Federal Rule of Evidence 701. They cannot, however, give testimony relating to the alleged psychological harm Plaintiffs may have faced, and accordingly, lay witness opinion testimony on this subject should be precluded.

### C.    Opinion Testimony Regarding the Zero Tolerance Policy And the DHS Referral Memorandum Is Not Relevant And Should Be Excluded

Pursuant to Federal Rule of Evidence 401, the Court should exclude attempts by Plaintiffs to introduce opinions, commentary, and policy-based views from individuals who had no personal involvement in the development and approval of the Zero Tolerance Policy and the DHS Referral Memorandum at issue in this case.  Nor should Plaintiffs be permitted to introduce news articles regarding the Zero Tolerance Policy and/or the DHS Referral Memorandum to elicit personal opinions about these policies.  Such evidence does not reflect "personal knowledge" of the intent or decisional process behind the policies and therefore is not relevant to the issues before the Court.  For the same reasons, the Court should exclude lay witness opinion testimony derived from the analysis or interpretation of news articles. The media articles do not establish intent on behalf of the Government at the time the policy and the referral memorandum were adopted, but merely offer speculative commentary from outside parties.

Moreover, introducing a witness's opinions on news articles relies on hearsay in news articles and interpretations of news statements, neither of which is helpful to the trier of fact. *See Vera*, 770 F.3d at 1242; *see also Fogleman v. Cnty. of Los Angeles*, No. CV 10-6793 GAF (SHX), 2012 WL 13005832, at *4 (C.D. Cal. July 25, 2012) (finding that news articles that do not contain quoted statements from a named defendant are excluded as hearsay and are irrelevant "to the extent that such articles are not

offered to prove the truth of the matters asserted"). Accordingly, lay witnesses testimony in the form of opinions on news articles should not be permitted, as personal opinions on news articles would not assist the trier of fact.

## III.    CONCLUSION

Lay witness testimony should not depend on a scientific or technical background, nor require an external basis of knowledge beyond the witnesses' own perception. As such, any testimony or questioning that necessitates such external knowledge or background should be precluded.

### MOTION *IN LIMINE* #3: TO PRECLUDE TESTIMONY RELATING TO LOST EMPLOYMENT OR LOST WAGES

Pursuant to Federal Rule of Civil Procedure 37(c)(1), a party failing to provide information in discovery "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008). On July 24, 2023, Plaintiffs' counsel sent a letter to Defendant asserting that Plaintiffs "will not seek to recover lost wages in this action." *See* Plaintiffs' letter to Defendant dated July 24, 2023 (attached as Ex. K). In reliance on Plaintiffs' representation, Defendant did not conduct discovery concerning any claimed lost employment opportunities, lost wages, or the causes thereof. Notwithstanding this representation by counsel, at his deposition on October 13, 2023, Plaintiff Wilbur P.G. testified that he intended to seek damages for his alleged inability to attain certain jobs due to foot pain. *See* Deposition Tr. of Wilbur P.G. ("P.G. Tr.," attached as Ex. L) at 231:24-232:2. This directly contradicts Plaintiffs' litigation position, and accordingly, Plaintiffs should be precluded from introducing at trial evidence or testimony related to any lost employment opportunities or lost wages.

### CONCLUSION

For the foregoing reasons, the Court should grant the United States' motions *in limine* in their entirety.

DATED: July 23, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Kenneth Brakebill*
Kenneth Brakebill
Assistant United States Attorney

Counsel for the United States

DEFENDANT'S MOTIONS *IN LIMINE*
4:21-cv-4457-KAW